UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.
800 Connecticut Avenue
4th Floor East
Norwalk, CT 06854,

                *Plaintiff,*

        v.

United States of America,

                *Defendant.*

Civil Action No. _____

## COMPLAINT

For its complaint, Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") alleges as follows:

### NATURE OF THIS ACTION

1.      This is a Freedom of Information Act ("FOIA") action that seeks declaratory and injunctive relief in light of the failure of the United States Department of Justice to release documents to Stolt-Nielsen as required by law.

### JURISDICTION

2.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

### VENUE

3.      Venue is appropriate in this Court pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

### I.     The Plaintiff — Stolt-Nielsen Transportation Group Ltd.

4.     The plaintiff in this action is Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen"). Stolt-Nielsen provides transportation services for bulk liquid chemicals, edible oils, acids, and other specialty liquids. The Company provides world-wide integrated transportation through its intercontinental parcel tanker, coastal parcel tanker, river parcel tanker, tank container, terminal and rail services. Parcel tanker shipping is the ocean transportation of bulk chemicals, edible oils and other specialty liquids. Parcel tankers are deep-sea vessels equipped with containers designed to carry shipments of various sizes. The temperature and other specifications of the compartments can be regulated according to the specific requirements of the type of liquid being transported.

5.     Stolt Nielsen S.A. ("SNSA"), a Luxembourg company, is the parent corporation of all Stolt-Nielsen entities worldwide. SNSA employs approximately 5,000 people worldwide and 500 people in the United States, primarily in Connecticut, Texas and Louisiana. SNSA's common shares are traded on the Oslo Stock Exchange (under symbol SNI) and on the NASDAQ Exchange as an American Depository Receipt ("ADR") (under symbol SNSA).

### II.     The Defendant — United States of America

6.     The defendant in this action is the United States of America, which includes the Antitrust Division of the United States Department of Justice ("Antitrust Division") as well as all officials of that agency who are empowered to administer the provisions of FOIA.

## FACTUAL BACKGROUND

### I.    The Amnesty Agreement

7.    On January 15, 2003, the Antitrust Division entered into a binding amnesty agreement ("Amnesty Agreement") with Stolt-Nielsen by which that agency promised "not to bring any criminal prosecution" against Stolt-Nielsen (or that company's directors, officers, and employees) in exchange for information provided by Stolt-Nielsen concerning possible collusive activity in the parcel tanker industry violative of the Sherman Act.

8.    Stolt-Nielsen adhered to its part of the bargain by promptly reporting to the Antitrust Division evidence of a hard-core, criminal antitrust conspiracy in the parcel tanker industry.  Subsequently, the Antitrust Division used the information provided by Stolt-Nielsen to obtain guilty pleas from Stolt-Nielsen's co-conspirators.  Odfjell Seachem AS ("Odfjell") was fined $42.5 million.  Its chairman, Bjorn Sjaastad, was sentenced to four months in prison and fined $250,000.  Odfjell Vice-President Erik Nilsen was sentenced to three months in prison and fined $25,000.  Jo Tankers, B.V. was fined $19.5 million.  Its former co-managing director, Henrikus Van Westenbrugge, was sentenced to three months in prison and fined $75,000.

9.    On April 8, 2003, in contravention of its obligations under the Amnesty Agreement, the Antitrust Division abruptly "suspended" Stolt-Nielsen's cooperation requirements due to a purported misrepresentation made by Stolt-Nielsen concerning its discovery and termination of the anticompetitive activity at issue.

10.    On June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was arrested and criminally charged with violations of the Sherman Act.  This action was also in contravention of the Antitrust Division's promise in the Amnesty Agreement not to prosecute Stolt-Nielsen's directors, officers, and employees.

11.     On February 6, 2004, Stolt-Nielsen and SNSA commenced a civil action in the United States District Court for the Eastern District of Pennsylvania. By that action, Stolt-Nielsen sought to enforce its rights under the Amnesty Agreement. Specifically, Stolt-Nielsen requested a declaratory judgment and injunctive relief requiring the Antitrust Division to honor its promise not to indict Stolt-Nielsen. The district court immediately granted Stolt-Nielsen's request to keep the entire action under seal. On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program.

12.     In April 2004, the district court held a trial on the merits. During that trial, the Antitrust Division presented a single witness — Deputy Assistant Attorney General James A. Griffin — whose testimony encompassed a December 4, 2002 meeting between various Antitrust Division officials and John Nannes, counsel for Stolt-Nielsen. Mr. Griffin's testimony concerning Stolt-Nielsen's admission and participation in the amnesty program was authorized by R. Hewitt Pate, Assistant Attorney General for the Antitrust Division.

13.     On May 15, 2004, the Antitrust Division moved the district court to unseal the action, including the trial transcript and exhibits.

14.     On January 15, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). In so doing, the district court concluded that (a) Stolt-Nielsen did not make any misrepresentation to the Antitrust Division; (b) Stolt-Nielsen fulfilled its promise to deliver evidence of the antitrust conspiracy; and (c) the Antitrust Division received the benefit of its bargain by obtaining successful convictions of the other members of the conspiracy.

15. Simultaneously, the district court also granted the Division's motion unsealing the trial testimony and exhibits.

16. Subsequently, the Antitrust Division appealed from the district court's final judgment. That appeal is currently pending before the United States Court of Appeals for the Third Circuit.

## II. The Antitrust Division's Public Statements Concerning Stolt-Nielsen

17. Since April 2003 (when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement), the Antitrust Division has made repeated comments to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of not commenting upon ongoing criminal matters. *See* 28 C.F.R. § 50.2(b)(2) (prohibition concerning criminal actions: "At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial . . ."); 28 C.F.R. § 50.2(c) (prohibition concerning civil actions: "Personnel of the Department of Justice associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trail and which relates to . . . [t]he character, credibility, or criminal records of a party, witness, or prospective witness"); 28 C.F.R. § 50.2(b)(6) ("The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function").

18. After the unlawful arrest of Wingfield, an FBI agent who is assisting the Antitrust Division in its investigation spoke to a major worldwide shipping publication. Specifically, the FBI agent was quoted by that publication as saying that he expected "several more arrests" in the coming months and that "he was not at liberty to divulge names of people other than Mr.

Wingfield who would be arrested, but added: 'I know who they are.'" "FBI's 'Strong Case' May Lead To More Stolt-Nielsen Arrests; Bureau's Stance Over Price Fixing Probe Is Made Public In The Run Up To Wingfield's Indictment," Lloyd's List, August 13, 2003 (attached as Exhibit 1).

19.    The Antitrust Division has subsequently engaged in a public speaking campaign concerning Stolt-Nielsen.  Specifically, Scott D. Hammond, Deputy Assistant Attorney General and Director of Criminal Enforcement for the Antitrust Division, has spoken about Stolt-Nielsen at the following venues:

a.    "Recent Developments In Antitrust Law," 19th Annual National Institute On White Collar Crime 2005, March 2005.  During this speech, Mr. Hammond stated that "the removal or the attempt to remove Stolt from the corporate leniency" was the number one "blockbuster development" in criminal antitrust enforcement in recent months.  Mr. Hammond also commented on Antitrust Division deliberations associated with a December 4, 2002 meeting with counsel for Stolt-Nielsen, noting:  "We went into the hall, we looked at those letters, we thought about it, and we said, 'it's pretty good.'"  Finally, Mr. Hammond stated in his speech that Stolt-Nielsen was "a company that did everything wrong from the beginning."

b.    Spring 2005 American Bar Association Antitrust Section Meeting, March 30, 2005.

c.    Langdon Hall 2005 Competition Law Invitational Forum in Canada, May 6, 2005.

     d.     Executive Committee meeting, New York State Bar Association Antitrust Law Section, September 14, 2005. During this speech, Mr. Hammond stated that Stolt-Nielsen continued in an antitrust conspiracy up the point of a November 2002 article published in the *Wall Street Journal*, a proposition with which Stolt-Nielsen strongly disagrees.

     e.     American Bar Association's International Law Section Meeting in Brussels, October 26, 2005.

20.     Upon information and belief, Mr. Hammond and other Antitrust Division officials have spoken critically about Stolt-Nielsen at other public venues.

21.     The Antitrust Division has also assisted at least one private author in writing an article critical of Stolt-Nielsen. The article in question, Jim Walden, Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, The Antitrust Source (March 2005) (attached as Exhibit 2), benefited from assistance provided by Mr. Hammond. *See* Exhibit 3 (e-mail from Jim Walden to Scott Hammond, dated January 25, 2005: "Thanks for all the helpful information, which was great. We will cite a bunch of it in the article").

22.     As a result of the Antitrust Division's prejudicial communications to the public, Stolt-Nielsen filed a series of FOIA requests with the Antitrust Division to ascertain the scope and nature of that agency's improper communications about Stolt-Nielsen.

## III.   The FOIA Requests

23.     From June 2, 2005 to September 20, 2005, Stolt-Nielsen filed six separate FOIA requests with the Antitrust Division. *See* Exhibit 4 (summary chart).

### A.   First Request: Meeting With John Nannes

24.     The first FOIA request, made on June 2, 2005, requested any and all internal memoranda or notes related to a December 4, 2002 meeting between Antitrust Division officials

and John Nannes, relating to Stolt-Nielsen's application to, and participation in, the Antitrust Division's amnesty program ("First FOIA Request") (attached as Exhibit 5).

25.     Stolt-Nielsen received a letter from the Antitrust Division, dated July 13, 2005, which assigned control number ATFY05-071 to this request.

26.     On September 13, 2005, Stolt-Nielsen received a response to its FOIA requests, which included no documents responsive to this request.

### B.     Second Request: Speeches Of Deputy Assistant Attorney General Scott Hammond

27.     The second FOIA request, made on June 2, 2005, requested copies of, and notes related to, three specific speeches given by Mr. Hammond ("Second FOIA Request") (attached as Exhibit 6).

28.     The three specific speeches are as follows: (a) in Las Vegas, Nevada during the 19th Annual National Institute on White Collar Crime 2005, on March 3-4 2005; (b) at the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 – April 1, 2005; and (c) at the Langdon Hall 2005 Competition Law Invitational Forum in Canada on May 6, 2005.

29.     The Second FOIA Request also requested copies of, or notes related to, any other speeches in which Mr. Hammond discussed the Antitrust Division's pending action(s) against Stolt-Nielsen.

30.     Stolt-Nielsen received a letter from the Antitrust Division, dated July 13, 2005, which assigned control number ATFY05-072 to this request.

31.     On September 13, 2005, Stolt-Nielsen received a response to its FOIA requests, which included no documents responsive to this request.

### C.    Third Request: Opening Of The Investigation

32.    The third FOIA request, made by Stolt-Nielsen on June 13, 2005, requested any and all documents related to the opening of the antitrust investigation of the parcel tanker industry in November 2002, including but not limited to (a) an article published in the Wall Street Journal on November 22, 2002 regarding the opening of such investigation, James Bandler & John McKinnon, *Stolt-Nielsen Is Probed For Traffic With Iran*, Wall St. J., Nov. 22, 2002, at A3; (b) the request to open an investigation by the Philadelphia Field Office of the Antitrust Division, including but not limited to the Preliminary Inquiry Request Memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and (c) any documents memorializing actions taken by the Antitrust Division in opening such investigation ("Third FOIA Request") (attached as Exhibit 7).    The opening of the investigation was already the subject of extensive testimony by Deputy Assistant Attorney General James Griffin in Stolt-Nielsen's civil case against the Antitrust Division in the Eastern District of Pennsylvania.

33.    Stolt-Nielsen received a letter from the Antitrust Division, dated July 14, 2005, which assigned control number ATFY05-080 to this request.

34.    On September 13, 2005, Stolt-Nielsen received a response to its FOIA requests, which included no documents responsive to this request.

### D.    Fourth Request: Antitrust Division Comments About Stolt-Nielsen At The International Competition Network

35.    Stolt-Nielsen made its fourth FOIA request on June 24, 2005, requesting any and all materials relating to presentations or communications by, or involving, officials of the Antitrust Division to the International Competition Network ("ICN") regarding any investigation of SNTG or the parcel tanker industry, or to the revocation of amnesty related to SNTG, including but not limited to:  (a) presentations, speeches, and discussions made to the ICN by any

Antitrust Division officials or any other ICN member relating to any Stolt-Nielsen investigation or the Stolt-Nielsen amnesty revocation; (b) electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to any Stolt-Nielsen investigation or the Stolt-Nielsen amnesty revocation; and (c) any documents in the possession of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to any Stolt-Nielsen investigation or the Stolt-Nielsen amnesty revocation with ICN members ("Fourth FOIA Request") (attached as Exhibit 8). The ICN is an international organization consisting of national and multinational competition authorities such as the Antitrust Division. Its purpose is to facilitate cooperation among its members.

36.     Stolt-Nielsen received a letter from the Antitrust Division, dated July 13, 2005, which assigned control number ATFY05-088 to this request.

37.     On September 13, 2005, Stolt-Nielsen received a response to its FOIA requests, which included no documents responsive to this request.

**E.     Fifth Request: Communications Between The Antitrust Division And The Authors Of "*The Curious Case of Stolt-Nielsen*"**

38.     Stolt-Nielsen made its fifth FOIA request on August 23, 2005, requesting any and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP related to the antitrust investigation into the parcel tanker industry, particularly relating to the article by Mr. Walden and Mr. Dawes, *The Curious Case of Stolt-Nielsen, S.A. v. United States*, The Antitrust Source (March 2005) ("Fifth FOIA Request") (attached as Exhibit 9).

39.     On September 13, 2005, Stolt-Nielsen received a response to its FOIA requests, which included several early drafts of this article, as well as related correspondence.

F.    **Sixth Request: Antitrust Division Correspondence With The Press And Bar Associations About Stolt-Nielsen**

40.    Stolt-Nielsen made its sixth FOIA request on September 20, 2005, requesting any and all documents that reflect, memorialize, embody or contain communications to or from (a) the press, including trade press, (b) bar associations, or (c) any other external communications with individuals uninvolved in the litigation with Stolt-Nielsen or the investigation into the parcel tanker industry, regarding Stolt-Nielsen or the investigation into the parcel tanker industry. In particular, Stolt-Nielsen requested (i) communications to or from James Bandler of the Wall Street Journal, (ii) communications to or from reporter(s) at the Tradewinds publication, and (iii) internal Antitrust Division circulation of press stories regarding Stolt-Nielsen or the investigation into the parcel tanker industry ("Sixth FOIA Request") (attached as Exhibit 10).

41.    Stolt-Nielsen received a letter from the Antitrust Division, dated September 29, 2005, which assigned control number ATFY05-131 to this request.

42.    That letter stated that materials responsive to the Sixth FOIA Request relate to ongoing enforcement proceedings and their disclosure could reasonably be expected to interfere with such proceedings. No documents were provided.

## IV.    The Antitrust Division's Response To Stolt-Nielsen's FOIA Requests

43.    On September 13, 2005, Stolt-Nielsen received a letter from the Antitrust Division (attached as Exhibit 11) along with 277 pages of documents from the Antitrust Division, which purported to be a response to the first five FOIA requests.

## V.    The Administrative Appeal Filed By Stolt-Nielsen

44.    On October 5, 2005, Stolt-Nielsen filed an administrative appeal with the Department of Justice's Office of Information and Privacy ("OIP") regarding the Antitrust Division's failure to properly respond to the six FOIA requests (attached as Exhibit 12). In its

appeal, Stolt-Nielsen argued that the Antitrust Division (a) had not demonstrated that it was entitled to withhold any documents; (b) had failed to create a *Vaughn* index; and (c) was unclear in its response as to whether certain categories of documents are being withheld pursuant to a statutory exception or are not in existence.

### A.    The Division Failed To Demonstrate That It Is Entitled To Withhold Any Documents

45.    According to the Antitrust Division's September 13, 2005 response, certain documents were withheld from Stolt-Nielsen because the disclosure of such documents would interfere with ongoing enforcement proceedings.    But as Stolt-Nielsen established in its administrative appeal, the material sought by Stolt-Nielsen — information pertaining to a Division meeting with Stolt-Nielsen's counsel and the opening of the Division's investigation concerning Stolt-Nielsen — has already been the subject of testimony that is now on the public record.    And the information sought by Stolt-Nielsen relates to correspondence with members of the public who are ***not*** involved in the Antitrust Division's investigation.    Thus, disclosure of the requested material to Stolt-Nielsen will not interfere with the Antitrust Division's investigation. Furthermore, an agency's voluntary disclosure of information to the public acts as a ***waiver*** of an otherwise valid FOIA exemption.

46.    By its September 13, 2005 response, the Antitrust Division also stated that certain documents were being withheld pursuant to the FOIA exemption for intra-agency memoranda, 5 U.S.C. § 552(b)(5).    But as Stolt-Nielsen established in its administrative appeal, the Antitrust Division did not follow the procedural requirements for withholding documents under this exemption and, most critically, seeks to withhold documents from Stolt-Nielsen ***that the agency has already disclosed to other members of the public***.    For example, the Antitrust Division has

refused to disclose portions of an e-mail dated January 26, 2005 that were sent to Jim Walden (*i.e.*, an attorney in private practice and the co-author of *The Curious Case of Stolt-Nielsen*).

**B.    The Division Failed To Create A *Vaughn* Index**

47.    In responding to Stolt-Nielsen's FOIA requests, the Antitrust Division also did not provide a *Vaughn* index (*Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973)) identifying which responsive documents have been withheld pursuant to claims of exemption.

**C.    The Division Failed To Explain Whether Certain Categories Of Documents Are Being Withheld Pursuant To A Statutory Exemption Or Are Not In Existence**

48.    In responding to Stolt-Nielsen's FOIA requests, the Antitrust Division also failed to explain whether certain categories of documents are being withheld pursuant to a statutory exemption or are not in existence.  For example, by its Second FOIA Request, Stolt-Nielsen requested "notes related to" several speeches made by Mr. Hammond, specifically identifying those speeches for the Antitrust Division.  Yet the Antitrust Division provided not a single speech note, outline, or other document relating to these public remarks.

**VI.    The Department Of Justice Acknowledges Stolt-Nielsen's Appeal, But Has Failed To Act On That Appeal**

49.    On October 13, 2005, Stolt-Nielsen received a letter from the OIP assigning control numbers to each FOIA request ("FOIA Appeal Acknowledgement") (attached as Exhibit 13).  The First FOIA Request was assigned control number 06-0062.  The Second FOIA Request was assigned control number 06-0063.  The Third FOIA Request was assigned control number 06-0064.  The Fourth FOIA Request was assigned control number 06-0065.  The Fifth FOIA Request was assigned control number 06-0066.  The Sixth FOIA Request was assigned control number 06-0067.

50.    The FOIA Appeal Acknowledgement stated that the OIP has a "substantial backlog of pending appeals" and that Stolt-Nielsen would be notified of its decision "as soon as we can."

51.    The FOIA Appeal Acknowledgement did not provide a specific time frame in which OIP would respond to Stolt-Nielsen's administrative appeal (as required by statute) and did not provide any specific reason why the appeal could not be processed in a timely manner.

52.    Pursuant to the FOIA, OIP must make a decision on an administrative appeal within twenty (20) business days of its receipt of such appeal. 5 U.S.C. § 552(a)(6)(A)(ii). This time limit may be extended in "unusual circumstances," by written notice and may not be extended more than ten (10) business days. 5 U.S.C. § 552(a)(6)(B)(i).

53.    SNTG's administrative appeal was received by OIP on October 5, 2005. The twenty (20) business day period provided for by statute expired on November 3, 2005 and OIP has not sought to extend this deadline.

54.    To date, SNTG has not received a response from OIP regarding its administrative appeal.

55.    Having made public speeches and corresponded with private citizens concerning Stolt-Nielsen, the guarantees of this free and democratic society require disclosure of the content of those speeches and correspondence to Stolt-Nielsen.

## COUNT ONE

### (Failure to Provide Documents Responsive to FOIA Requests)

56.    Stolt-Nielsen incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

14

57.     Pursuant to FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added).

58.     Stolt-Nielsen made FOIA requests for records that reasonably described the records it sought and were in accordance with published rules of the Department of Justice. Nonetheless, the Antitrust Division has failed (a) to provide documents in its possession that are responsive to the First, Second, Third, Fourth, Fifth and Sixth FOIA Requests; and (b) to identify a legitimate statutory exemption that would entitle it to withhold responsive records.

59.     By failing to produce records in response to the First, Second, Third, Fourth, Fifth and Sixth FOIA Requests without adequate justification, the Antitrust Division has violated the requirements of FOIA.

## COUNT TWO

### (Failure to Provide A *Vaughn* Index)

60.     Plaintiff incorporates by reference paragraphs 1 through 59 as though fully set forth herein.

61.     Pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), and its progeny, an agency that seeks to withhold information in response to a FOIA request must provide a *Vaughn* index, consisting of "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

62.    Despite Stolt-Nielsen's request, the Antitrust Division has failed to provide a *Vaughn* index justifying its failure to disclose records.

63.    By failing to provide a *Vaughn* index, the Antitrust Division has violated the requirements of FOIA.

### DEMAND FOR RELIEF

WHEREFORE, Stolt-Nielsen respectfully prays for an order of this Court:

(a)    entering judgment in favor of Stolt-Nielsen;

(b)    declaring that the Antitrust Division has violated FOIA;

(c)    ordering the Antitrust Division to prepare a *Vaughn* index of materials it proposes to withhold and share such index with Stolt-Nielsen;

(d)    ordering the Antitrust Division to produce to Stolt-Nielsen all documents that are responsive to Stolt-Nielsen's FOIA requests;

(e)    assessing against the Antitrust Division reasonable attorneys fees and other litigation costs reasonably incurred by Stolt-Nielsen in prosecuting this case; and

(f)    issuing such further relief as the Court deems just and proper.

Dated:  November 15, 2005                    Respectfully submitted,

                                             **WHITE & CASE**LLP

                                    By:  _____
                                         J. Mark Gidley (D.C. Bar No. 417280)
                                         Christopher M. Curran (D.C. Bar No. 408561)
                                         Lucius B. Lau (D.C. Bar No. 446088)
                                         701 Thirteenth St., N.W.
                                         Washington, D.C.  20005
                                         tel.: (202) 626-3600
                                         fax: (202) 639-9355

                                         *Counsel to Stolt-Nielsen Transportation Group Ltd.*

16

# Exhibit 1

Subject:   Lloyd's List Press Cuttings - Aug.13.03

**FBI's 'strong case' may lead to more Stolt-Nielsen arrests**
**Bureau's stance over price-fixing probe is made public in the run up to Wingfield's indictment, writes**
**Rajesh Joshi in New York**

THE noose appears to be tightening around the top management of chemical tanker giant Stolt-Nielsen, after the Federal Bureau of Investigation said it has a "strong case" against the accused in its price-fixing

investigation in the US and expects "several more arrests" in the coming months.

The FBI's stance, which does not implicate the company itself in collusive behaviour, has become public in advance of the formal indictment of Richard Wingfield, the former managing director of Stolt-Nielsen's parcel tanker business out of Connecticut, which is expected by the end of September.

Stolt-Nielsen faces the probe in the US for allegedly agreeing with its top rivals, including Odfjell and Tokyo Marine, to control prices for chemical transport into the US. A separate probe of a similar nature is reportedly also under way in Brussels.

The indictment of Mr Wingfield, a New Zealander, comes after the FBI determined that he was "not co-operating" with its investigation and issued a warrant. The executive is currently free on a $500,000 bond that was necessitated largely due to his foreign citizenship. However, he has surrendered his passport to the FBI.

Mr Wingfield has been also removed from a conditional amnesty Stolt-Nielsen has won from Washington for agreeing to co-operate in the investigation.

Some legal experts have wondered whether Stolt-Nielsen can claim ignorance of all of Mr Wingfield's doings. As matters stand, however, the company remains free of any criminal charges, which are now expected to widen to include several of Mr Wingfield's colleagues.

Special agent John Sharp from the FBI's Philadelphia field office told Lloyd's List: "No matter what happens with the case, [the arrest] will remain on Mr Wingfield's record."

Mr Sharp said the FBI had documents to prove that Stolt-Nielsen executives hatched a price-fixing conspiracy. The existence of these documents and the executives' inability to contest their existence was itself tantamount to an admission of culpability, Mr Sharp said.

Mr Sharp said he was not at liberty to divulge names of people other than Mr Wingfield who would be arrested, but added: "I know who they are." He said Mr Wingfield still had the option to turn a government witness in exchange of leniency, but refused to say whether the executive's legal counsel and the FBI had had such a discussion.

Based on the strength of the incriminatory materials in the FBI's possession, the most likely outcome when the indictment is handed down could be a plea bargain that obviates the need for a trial, Mr Sharp added. Stolt-Nielsen referred queries to its New York press spokesman, who could not be reached for comment yesterday.

Mr Wingfield has been charged with violating the Sherman Act, the US law governing antitrust issues.

Any conviction on this count is deemed a felony, carrying a criminal sentence of up to three years. In addition, the law provides for civil penalties of up to $350,000 on an individual proven to be guilty, and up to $10m on a company.

However, from Stolt-Nielsen's perspective, potentially the most damaging provision could be sanctions calculated as a factor of the "unjust enrichment" that can be traced back to the company as a result of price collusion.

Exhibit 2

theantitrustsource ■ www.antitrustsource.com ■ March 2005                    1

# The Curious Case of *Stolt-Nielsen S.A. v. United States*

**Jim Walden and Kristopher Dawes**

On February 25, 2003, Stolt-Nielsen S.A. (SNSA) announced that it and its U.S.-based subsidiary had received conditional amnesty under U.S. and European Union corporate leniency programs for antitrust matters. According to a press release, SNSA sought amnesty because an internal investigation disclosed "possible collusive behavior" in the parcel tanker industry.[1] While some on-line publications heralded this "surprise announcement"[2] in a large and lucrative industry, no one could have imagined the surprises to come.

Less than two months later, on April 8, 2003, SNSA became the first company ever to be suspended from the U.S. Department of Justice's Corporate Leniency Program (Amnesty Program). The Antitrust Division of the Department of Justice charged that SNSA failed to (a) take "prompt and effective action" to end conspiratorial activities and (b) cooperate fully and completely.[3] Both are requirements of the Amnesty Program.[4]

After the Division revoked SNSA's amnesty, SNSA promised to "vigorously challenge" the decision.[5] The Division responded with a press release of its own:

> All companies that apply to the Corporate Leniency Program must meet certain requirements and make accurate representations to the Division. Corporate applicants are accepted on a conditional basis. As part of its enforcement efforts, throughout the investigation, the Division verifies the representations of the corporate leniency applicant. At any time throughout the process, the Division may expel an applicant after concluding that a company has made false representations to the Division or has otherwise not fully complied with the leniency policy requirements.[6]

With this pronouncement, the Division essentially said it would hold companies to their end of the bargain. In addition, Division officials publicly promised a "full accounting" of the basis for SNSA's ejection from the Amnesty Program.[7]

---

■

*Jim Walden is a partner,*
*and Kristopher Dawes*
*is an associate at*
*O'Melveny & Myers LLP,*
*New York, NY.*

[1] Press Release, Stolt-Nielsen S.A., Stolt-Nielsen Transportation Group Granted Conditional Amnesty in Parcel Tanker and Inland Barge Investigations (Feb. 25, 2003), *available at* http://www.stolt-nielsen.com/.

[2] *In a Surprise Announcement, the Stolt-Nielsen Transportation Group Has Been Granted Conditional Amnesty from Prosecution and Fines* (Apr. 3, 2003), *available at* http://www.purchasing.com/article/CA287718.html?text=%22stolt%2Dnielsen%22.

[3] *See* Stolt-Nielsen S.A. v. United States, 352 F. Supp. 2d 553, 568 (E.D. Pa. 2005).

[4] U.S. Dep't of Justice, Corporate Leniency Policy (Aug. 10, 1993), *available at* http://www.usdoj.gov/atr/public/guidelines/0091.htm.

[5] Press Release, Stolt-Nielsen S.A., Stolt-Nielsen S.A. Reports Withdrawal of Amnesty by Department of Justice (Mar. 22, 2004), *available at* http://www.stolt-nielsen.com/.

[6] Press Release, U.S. Dep't of Justice, Justice Department Statement Regarding Antitrust Division's Corporate Leniency Program (Mar. 22, 2004), *available at* http://www.usdoj.gov/atr/public/press_releases/2004/202948.pdf.

[7] *Stolt-Nielsen Misled U.S. on Timing of Price Fixing*, BLOOMBERG, Apr. 2, 2004, *available at* http://quote.bloomberg.com/apps/news?pid= 10000085&sid=acF20WAQJJis&refer=europe.

With the battle lines drawn, SNSA pursued a novel strategy: it moved for an injunction in federal court to stave off any indictment of the company. While the antitrust bar waited in anticipation, January 14, 2005, brought the biggest surprise of all: the district court granted SNSA's application and enjoined the indictment of SNSA and one of its executives.[8]

As the dust starts to settle, some will inevitably characterize both events—the revocation of SNSA's amnesty and the decision to enjoin SNSA's indictment—as watersheds in the development of criminal enforcement policy. It is unlikely, though, that either event will have lasting legal or practical significance, except to the parties in the ongoing litigation.[9] As discussed below, the court's curious decision to enjoin the indictment has dim chances of surviving an appeal. Moreover, the Division's decision to oust SNSA from the Amnesty Program is not likely a portent of more ejections to come.

### SNSA's Amnesty Agreement

The Antitrust Division, like most other divisions of the Department of Justice, has standard cooperation agreements.[10] SNSA's amnesty agreement, like all other such agreements authored by the Division, contained corporate representations that are a condition precedent to admission into the amnesty program.[11] In that regard, SNSA represented that it:

(a) "took prompt and effective action to terminate its part in the anticompetitive activity being reported upon discovery of the activity"; and

(b) "did not coerce any other party to participate in the activity, and was not the leader or the originator of the activity."[12]

The agreements are specifically conditioned on the Division's "verification of [these] representations," and on an applicant's full, complete and unconditional cooperation. The agreements also provide a broadly worded termination provision:

> If the Antitrust Division at any time determines that [the applicant] has violated this Agreement, this Agreement shall be void, and the Antitrust Division may revoke the conditional acceptance of [the applicant] into the Corporate Leniency Program. Should the Antitrust Division revoke the conditional acceptance of [the applicant] into the Corporate Leniency Program, the Antitrust Division may thereafter initiate a criminal prosecution against [the applicant], without limitation.[13]

As described in the district court's opinion, the basis for SNSA's representation about "prompt and effective" termination of conspiratorial activities was supplied to the Division at a meeting on December 4, 2002.[14] At that meeting, SNSA sought to establish a "marker" for amnesty protection. A Division official made reference to an article that had appeared in the *Wall Street Journal*, which reported that SNSA's former general counsel had initiated a lawsuit against SNSA based on

*SNSA represented*

*that it . . . took prompt*

*and effective action to*

*terminate its part in the*

*anticompetitive activity*

*being reported upon*

*discovery of the*

*activity.*

---

[8] *Stolt-Nielsen*, 352 F. Supp. 2d at 562–63.

[9] The Division has not yet filed a notice of appeal.

[10] Department of Justice, Model Amnesty Letter, in Gary R. Spratling, The Corporate Leniency Policy: Answers to Recurring Questions, Presented at the ABA Section of Antitrust Law Spring Meeting (Apr. 1, 1998), *available at* http://www.usdoj.gov/atr/public/speeches/ 1626.htm.

[11] *See* Corporate Leniency Policy, *supra* note 4, Part A.

[12] *Stolt-Nielsen*, 352 F. Supp. 2d at 558.

[13] Model Amnesty Letter, *supra* note 10.

[14] *Stolt-Nielsen*, 352 F. Supp. 2d at 565.

constructive termination. In essence, the general counsel claimed that he had discovered collusive activities and brought them to the attention of senior management, who failed to take action to stop the conduct. Therefore, the general counsel said he was forced to make a choice: resign or become complicit.[15]

In referring to the *Wall Street Journal*'s coverage, the Division official said that SNSA would be ineligible for amnesty if these facts were true because it could not show "prompt and effective termination" of collusive activities. In response to these concerns, SNSA's outside counsel confirmed that the former general counsel had found evidence of the antitrust activities, but characterized his allegations of constructive termination (due to the company's failure to act) as spurious.[16] SNSA's counsel produced documentary evidence that SNSA had actually notified its co-conspirators of its withdrawal from the conspiracy, and claimed that SNSA had implemented "remedial steps to enhance its antitrust compliance program."[17] The Division official explicitly warned SNSA's counsel that it could not secure amnesty if the general counsel's claims were true and the remedial steps were merely a "head fake."[18]

The Division terminated SNSA's amnesty when it determined that the representations made at the December 4 meeting were untrue. The Division's continuing investigation revealed that two of SNSA's high-level executives, who were not disciplined or terminated after discovery of the collusive activity, continued to participate in the conspiracy until at least November 2002, nine months after discovery by the former general counsel.[19]

In spite of this evidence, the court in *Stolt-Nielsen* handed the company a major victory (although possibly a temporary one) by enjoining indictment.

### Good Facts Led to Questionable Law

There are many striking aspects of the *Stolt-Nielsen* opinion, as much for what it omits as for what it says. The opinion took no issue with the Division's evidence concerning the continuation of the conspiracy. The opinion made no mention of the "conditional" nature of the amnesty protection afforded by the agreement, including the express right to "verify" the company's representations about "prompt and effective" termination. The opinion did not discuss the express right the Division retained to "revoke the conditional amnesty protection" and declare the agreement "void" upon breach, including the right to institute a prosecution against the company "without limitation."

While these important provisions of the agreement certainly bear on whether the Division bargained for the right to, in good faith, unilaterally declare the agreement void, as is a common provision of the DOJ's cooperation agreements,[20] the court also made glaringly inconsistent statements about the underlying facts. Importantly, the court stated that the Division "did not and does

---

[15] James Bandler & John McKinnon, *Stolt-Nielsen Is Probed for Traffic with Iran*, WALL ST. J., Nov. 22, 2002, at A3.

[16] *Stolt-Nielsen*, 352 F. Supp. 2d at 565.

[17] *Id.* at 557. Indeed, SNSA's counsel also apparently indicated that an SNSA executive, Richard B. Wingfield, personally advised his co-conspirators that SNSA could no longer have collusive contact. *See* Stolt-Nielsen v. U.S., 04-CV-537 (TJS), Government's Proposed Findings of Fact, ¶ 47(g).

[18] Government's Proposed Findings of Fact, supra note 17, ¶ 47(k).

[19] *Id.*, ¶ 36.

[20] In other circumstances, courts—including the Third Circuit—have been very reluctant to second-guess the government's decision to declare a cooperation agreement in breach. *See, e.g.*, United States v. Fuentes, No. 03-3215, 2004 WL 1179256, at *2 (3d Cir. May 28, 2004) ("Thus, the government need not prove a defendant's breach of a plea agreement by any measure of evidence, but must only act without unconstitutional motive and in good faith.").

not claim that [SNSA] failed to cooperate in the investigation,"[21] even though the court's findings of fact explicitly reflect that the Division did, indeed, assert SNSA's failure to cooperate as grounds for breach.[22] As is clear from the record below, the Division asserted that SNSA "falsely represent[ed] the true duration of [SNSA's] participation in the conspiracy and fail[ed] to fully disclose the roles played by some of its senior executives."[23]

There is a more striking and surprising aspect to the decision: the issuance of an injunction against a federal indictment. Targets of criminal investigations have, from time to time, sought to prevent their indictment through injunctions. Those actions have generally failed. In evaluating such claims, courts typically begin with the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."[24]

Because *Stolt-Nielsen* was decided by a district court in the Third Circuit, another Third Circuit case, *United States v. Kenny*,[25] is of particular interest. There, a defendant was originally indicted in a state criminal case, but the state voluntarily delayed trial pending a subsequently-issued federal indictment. In the federal case, the defendant was severed from the case and granted transactional immunity, after which he testified against his former co-defendants. After his testimony in the federal case, the defendant sought an injunction in federal court against the state prosecution.[26] The district court granted the injunction and the court of appeals reversed.[27] In so doing, the court of appeals held: "[T]he record fails to demonstrate that the pending state prosecution posed any threat to defendant's rights that could not be eliminated by assertion of an appropriate defense in the state courts."[28]

Based on similar reasoning, the Division argued that SNSA had an adequate remedy at law because it could raise the immunity agreement as grounds to dismiss an indictment under Rule 12(b)(1) of the Federal Rules of Criminal Procedure.[29] Students of the *Younger* abstention doctrine might have rated this argument a proverbial "slam dunk" in light of the Supreme Court's clear and unequivocal holding that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution could not by themselves be considered 'irreparable' in the special legal sense of that term."[30]

On the issue of "adequate remedy at law," the *Stolt-Nielsen* Court did not cite *Younger*, nor did it refer to *Kenny*. Instead, in a footnote, the Court quoted language from a 1947 Second Circuit opinion, *In re Fried*, in which a criminal defendant moved for pre-indictment suppression of evidence: "'[A] wrongful indictment . . . works a grievous, irreparable injury to the person indicted'

---

[21] *Stolt-Nielsen*, 352 F. Supp. 2d at 561.

[22] *Id.* at 569.

[23] Letter from James M. Griffin, Deputy Assistant Att'y Gen., U.S. Dep't of Justice Antitrust Division, to J. Mark Gidley, White & Case LLP at 2 (Mar. 2, 2004) (on file with author).

[24] Younger v. Harris, 401 U.S. 37, 43–44 (1971).

[25] 462 F.2d 1230 (3d Cir. 1972).

[26] *Id.* at 1231.

[27] *Id.* at 1233.

[28] *Id.* at 1232.

[29] *Stolt-Nielsen*, 352 F. Supp. 2d at 560.

[30] *Younger*, 401 U.S. at 46.

resulting in damage to the person's reputation which, because the public remembers the accusation and suspects guilt, cannot be simply cured by a subsequent finding of not guilty."[31]

As a brief aside, it is difficult to imagine how SNSA could have experienced the particular "harm" identified by *In re Fried*—damage to its reputation from an unfounded accusation—since it publicly announced that it was involved in collusive activities and had received amnesty. In effect, SNSA had already publicly announced its guilt.

Putting aside the factual problems inherent in the court's finding of harm to SNSA, the court's reliance on *In re Fried* is, at least, contextually awkward. The *In re Fried* opinion is a polemic against the then-prevalent use of coercive and unconstitutional interrogation techniques. Calling these techniques "foul exploits" and "miserable behavior," the opinion promotes the "vigorous exercise" of equity powers to restrain them.[32]

*Stolt-Nielsen makes*

*no mention of . . . the*

*hundreds of federal*

*cases urging caution*

*in the use of equity*

*powers to restrain the*

*criminal process*

Although the historical context makes the sweeping language of *In re Fried* understandable, the overwhelming weight of authority rejects the notion that equity jurisdiction should, in any case, be "vigorously" exercised.[33] Rather, courts have consistently held that such equity powers should be exercised with "caution and restraint."[34] Courts have also rejected the more specific suggestion in *In re Fried* that "irreparable harm" flows from the threat of indictment. Instead, courts have held that "[t]he mere threat of prosecution is not sufficient to constitute irreparable harm."[35]

This rule has been followed in the Third Circuit. In *Johnson v. United States*, the official liquidator of an offshore bank brought an action to recover computer tapes that were stolen by a former managing director and given to the FBI.[36] Although the liquidator argued that the unlawfully obtained tape might result in "widespread investigation and possible prosecution of the [bank's] clients,"[37] the court rejected the contention that such prosecutions constituted "irreparable harm."[38] Indeed, the court noted that it "must exercise 'caution and restraint'" before exercising equitable jurisdiction to restrain the criminal process.[39]

*Stolt-Nielsen* makes no mention of *Johnson*, nor of the hundreds of federal cases urging caution in the use of equity powers to restrain the criminal process when an adequate remedy at law is available. Instead, *Stolt-Nielsen* relied on *United States v. Meyer*,[40] for the proposition that due process required a pre-indictment determination concerning whether SNSA breached the amnesty agreement.

---

[31] *Stolt-Nielsen*, 352 F. Supp. 2d at 560 n.9 (quoting *In re Fried*, 161 F.2d 453, 458–59 (2d Cir. 1947)).

[32] *In re Fried*, 161 F.2d at 459.

[33] *See, e.g.*, Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993).

[34] *Id.*

[35] *Ramsden*, 2 F.3d at 326; *see also* United States v. Search of Law Office, Residence and Storage Unit Alan Brown, 341 F.3d 404, 415 (5th Cir. 2003) ("[W]e conclude that the irreparable harm . . . must have focused on the injury . . . from loss of the property, not simply harm from the grand jury's reliance on the illegally seized evidence in indicting [petitioner]."); Blinder, Robinson & Co. v. United States, 897 F.2d 1549, 1557 (10th Cir. 1990) ("We . . . hold that the mere threat of imminent indictment does not establish irreparable injury[.]"); Matter of Search of 4801 Fyler Ave., 879 F.2d 385, 389 (8th Cir. 1989) ("[I]f we were to allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary. Every potential defendant could point to the same harm, thereby invoking the equitable powers of the court.").

[36] 971 F. Supp. 862, 863 (D.N.J. 1997).

[37] *Id.* at 865 n.2.

[38] *Id.* at 868.

[39] *Id.* at 866 (quoting Ramsden, 2 F.3d at 324).

[40] 157 F.3d 1067 (7th Cir. 1998).

This reliance is curious. The *Meyer* Court did not hold that due process required a pre-indict-ment determination. In *Meyer*, the defendant moved to dismiss a pending indictment based on a prior immunity agreement. The district court rejected that motion, and the defendant was later con-victed at trial. On appeal, the defendant again claimed that the indictment should have been dis-missed based on the immunity agreement. In addition, the defendant claimed that the government should have obtained a pre-indictment determination of his breach before presenting the case to the grand jury. The *Meyer* court rejected this argument, holding that "[o]n the facts of the present case, . . . [the defendant] received all of the protection demanded by due process."[41] However, citing the Seventh Circuit's decision in *United States v. Verrusio*,[42] the court said, "we again stress that, in cases such as these, the preferred procedure, absent exigent circumstances, would be for the government to seek relief from its obligations under the immunity agreement prior to indict-ment."[43]

In spite of *Meyer*'s reliance on *Verrusio*, even a cursory reading reveals that *Verrusio* recognized no such requirement. In *Verrusio*, like *Meyer*, the defendant moved to dismiss a pending indict-ment based on a prior plea agreement.[44] Like *Meyer*, *Verrusio* held that due process required no pre-indictment determination about whether a breach occurred.[45] Instead, the court held that a post-indictment motion to dismiss was an "acceptable procedural mechanism" to resolve the issue. The court went on to say, in dicta:

> It would of course be preferable for the government to notify a defendant that it intends to reindict because he has breached the plea agreement . . . Perhaps an even better procedure would be a motion by the government for relief from its obligations under the plea agreement, before it proceeds to the indictment stage.[46]

Thus, the *Meyer* court's pronouncement about the "preferred procedure" was dicta, which relied on dicta from *Verrusio*—and neither case holds that due process requires the government to obtain a judicial determination concerning the breach of an immunity agreement before pre-senting an indictment to the grand jury.

*Stolt-Nielsen* went further: "Due process dictates that a court must decide whether there has been a breach of the agreement before it can be voided, and the decision should be made before indictment."[47] As striking as this leap may be, it is more striking that the *Stolt-Nielsen* opin-ion failed to even mention, let alone discuss, substantial contrary authority.

---

[41] *Id.* at 1077.

[42] 803 F.2d 885 (7th Cir. 1986).

[43] *Meyer*, 157 F.3d at 1077.

[44] *Verrusio*, 803 F.2d at 887.

[45] *Id.* at 889 ("We merely hold that, under the circumstances of this case, an evidentiary hearing on Verrusio's motion to dismiss is sufficient to satisfy the demands of due process.").

[46] *Id.*

[47] *Stolt-Nielsen*, 352 F. Supp. 2d at 555. The court in *Stolt-Nielsen* found equitable relief imperative because SNSA "gave up significant constitutional rights" when in entered into the immunity agreement. The only example given by the court is as follows: "At the same time it provided evidence against its co-conspirators, [SNSA] incriminated itself in the same illegal activities. Now the government wants to use [SNSA's] self-incriminating evidence against it and [its executive] in prosecuting them." To read this passage, one might believe SNSA gave up its constitutional right against self-incrimination, a right that a corporation does not possess. *See* Braswell v. United States, 487 U.S. 99, 104–08 (1988) ("[W]e have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treat-ed differently from individuals . . . . the Fifth Amendment privilege applies only to natural individuals . . . .").

Until *Stolt-Nielsen*, courts have generally refused to enjoin federal prosecutions.[48] "[I]n no case that we have been able to discover," one circuit court wrote, "has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment."[49] Indeed, courts have repeatedly rejected defendants' attempts to enjoin federal indictments,[50] holding that a motion to dismiss an indictment under Rule 12(b)(1) constitutes an adequate remedy at law. Courts have reached this conclusion even where—as in *Stolt-Nielsen*—the movant sought to enforce an immunity agreement with an injunction against an indictment.[51]

*Stolt-Nielsen*'s failure to address these authorities, and its reliance on dicta to announce a broad new due process protection, may give it a short shelf-life. If appealed, it will not escape the Third Circuit's attention that the announced rule also would create a glaring anomaly: it provides an avenue of appellate redress to one set of litigants (grand jury targets who file for pre-indictment injunctions) that is denied to others (defendants who file motions to dismiss under Rule 12(b)(1)), in spite of the fact that the latter is generally afforded greater protections than the former.[52]

Long ago, the Supreme Court held that a defendant cannot obtain interlocutory appeal from a district court's denial of a motion to dismiss a pending indictment based on a prior immunity or plea agreement.[53] Predictably, this rule has been followed by every circuit to address the issue.[54]

---

[48] In the few cases in which such extraordinary relief is granted, the injunctions are necessary to protect the movants' constitutional rights. *See, e.g.,* PHE, Inc. v. U.S. Dep't of Justice, 743 F. Supp. 15, 26–27 (D.D.C. 1990) (enjoining simultaneous prosecutions designed to suppress constitutionally protected speech); Freedberg v. U.S. Dep't of Justice, 703 F. Supp. 107, 112 (D.D.C. 1988) (enjoining successive federal prosecutions which would be inconsistent with the Double Jeopardy clause of the Fifth Amendment).

[49] Deaver v. Seymour, 822 F.2d 66, 69 (D.C. Cir. 1987); *see also* Doe Corp. v. United States, 714 F.2d 604, 606 (6th Cir. 1983) (finding no jurisdiction to take interlocutory appeal of denial of injunction of indictment); Christoforu v. United States, 842 F. Supp. 1453, 1456 (S.D. Fla. 1994) ("Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure.") (quoting *Deaver*, 822 F.2d at 71); Doe v. United States, 534 F. Supp. 652, 655 (D. Kan. 1982) ("No reported case is found in which the injunctive powers of a federal court have been used to prevent federal prosecutorial functions.").

[50] *See Deaver,* 822 F.2d at 68; *Doe Corp.,* 714 F.2d at 604 (noting district court's denial of injunction); *Christoforu,* 842 F. Supp. at 1456; *Doe,* 534 F. Supp. at 655.

[51] *See Doe Corp.,* 714 F.2d at 604; *Doe,* 534 F. Supp. at 653.

[52] See United States v. Quam, 367 F.3d 1006, 1008 (8th Cir. 2004) (recognizing that neither "the Fifth Amendment privilege [nor] due process rights required an effective warning against self-incrimination be given to a witness before a grand jury"); *In re* Grand Jury Investigation, 182 F.3d 668, 671 (9th Cir. 1999) (noting that "the rights of grand jury witnesses are less broad than those of criminal defendants").

[53] Heike v. United States, 217 U.S. 423, 431 (1910) (A grant of statutory immunity is not intended to "secure to a person making such a plea immunity from prosecution but to provide him with a shield against successful prosecution, available to him as a defense . . . . [and does not] operate to give a right of review upon any other than final judgments.").

[54] *See* United States v. Ecker, 232 F.3d 348, 350 (2d Cir. 2000) ("The law of this Circuit remains that an order denying a motion to dismiss on the ground of an allegedly breached plea agreement is not appealable prior to the entry of final judgment."); United States v. Green, 139 F.3d 1002, 1004 (4th Cir. 1998) ("[T]he district court's decision on [defendant's] contract and due process claims is not an appealable final order."); United States v. Ledon, 49 F.3d 457, 460 (8th Cir. 1995) ("[W]e must dismiss the plea agreement appeal for lack of jurisdiction."); United States v. Crosby, 20 F.3d 480, 487 (D.C. Cir. 1994) ("[W]e conclude that we are without jurisdiction to review" the district court's denial of a motion to dismiss counts in an indictment based on a prior plea agreement); United States v. Dederich, 825 F.2d 1317, 1321 (9th Cir. 1987) ("Indeed, the majority of courts have denied interlocutory appeals grounded in plea-bargain promises or grants of immunity."), *overruled on other grounds* by Midland Asphalt Corp. v. United States, 489 U.S. 794 (1989); United States v. Bird, 709 F.2d 388, 392 (5th Cir. 1983) ("By refusing to hear this interlocutory appeal, of course, we subject [the defendant] to the personal strain, embarrassment and expense of a trial, notwithstanding the possibility that her claim [of immunity from prosecution] might eventually be held well-founded."); United States v. Eggert, 624 F.2d 973, 975–76 (10th Cir. 1980).

Thus, an allegedly immunized defendant must wait until after a conviction to have the district court's denial of a motion to dismiss reviewed.[55]

Under the *Stolt-Nielsen* rule, a putative defendant can make an end-run around this rule by seeking an injunction against the indictment in the first instance, the denial of which is potentially subject to interlocutory review.[56] For this very reason, the *Deaver* court refused to countenance an injunction against a potential indictment:

> Were [appellant] to bring this same claim as a Rule 12(b)(1) motion, we think it likely the final judgment rule would bar any appeal of a denial of that motion until after conviction. Were we to allow [appellant] to bring a civil challenge, with its attendant rights of appeal, before a prosecution even begins, we would thereby undermine the final judgment rule.[57]

Putting aside the many other curiosities in Stolt-Nielsen, the Third Circuit will likely pause before putting its imprimatur on this anomaly.[58]

### Omen or Outlier?

The Division's decision to suspend SNSA from the Amnesty Program sent shock waves through the antitrust bar. One publication announced the Division's decision to suspend SNSA's amnesty with the headline "DOJ In Leniency Shock."[59] Commentators roundly predicted that the Division's decision would cause "some uncertainty for the advisors of companies or individuals . . . if there are questions about the timeliness or quality of their cooperation."[60] Such concern in the immediate aftermath of the *Stolt-Nielsen* decision may well prove unwarranted, given the Division's interest in a continuing—and even increasing—flow of amnesty applications.

Before the Amnesty Program was revised in 1993, transparency in the amnesty process was practically nonexistent. Because corporations could not accurately predict whether their applica-

<div style="margin-left: 2em; font-style: italic;">Before the Amnesty

Program was revised

in 1993, transparency

in the amnesty process

was practically

nonexistent.</div>

---

[55]  *See Ecker*, 232 F.3d at 350 ("The law of this Circuit remains that an order denying a motion to dismiss on the ground of an allegedly breached plea agreement is not appealable prior to the entry of final judgment."); *Green*, 139 F.3d at 1004 (noting that defendant can "subsequently raise these [plea agreement] issues if he is convicted"); *Ledon*, 49 F.3d at 459–60 ("[T]he order denying the motion to dismiss for breach of the plea agreement is not final or appealable."); *Crosby*, 20 F.3d at 487 (holding that review of defendant's plea agreement violation claim is prohibited until after conviction and sentencing); *Dederich*, 825 F.2d at 1321 ("The guarantee afforded by the immunity can be adequately protected by appeal after conviction."); *Bird*, 709 F.2d at 392 ("[Defendant's] plea that the agreement bars her prosecution can be fully vindicated, if appropriate, in an appeal from any conviction the government obtains in her case."); *Eggert*, 624 F.2d at 975 ("[Defendant's] plea agreement claim] can be fully reviewed by this court on direct appeal in the event of a conviction.").

[56]  *See* Blalock v. United States, 844 F.2d 1546, 1548 (11th Cir. 1988) (affirming district court's denial of motion to enjoin grand jury's investigation); *Deaver*, 822 F.2d at 68 (noting that "the denial of [appellant's] application for a preliminary injunction [to prevent independent counsel from obtaining an indictment] is an interlocutory order appealable under 28 U.S.C. § 1292(a)(1)"); *but see* Doe Corp., 714 F.2d at 605 (treating a denial of a civil motion to enjoin indictment as a criminal pretrial order which is not subject to interlocutory appeal).

[57]  *Deaver*, 822 F.2d at 71.

[58]  *See* United States v. Johns, 858 F.2d 154, 160 (3d Cir. 1988) (noting the "long-standing principle that disfavors piecemeal appeals" in refusing to recognize a new exception to the final judgment rule).

[59]  *See DOJ in Leniency Shock*, GLOBAL COMPETITION REV., Mar. 26, 2004, *available at* http://www.globalcompetitionreview.com/ (subscription required).

[60]  *See* D. Martin Low, Cartel Enforcement, Immunity and Jurisdiction: Some Recent Canadian Developments, Address Before International Bar Ass'n, Communications and Competition Law Conference 8 (May 17–18, 2004), *available at* http://www.mcmillanbinch.com/Upload/Publication/Cartel%20Enforcement%20Immunity%20and%20Jurisdiction_Some%20Recent%20Canadian%20Developments_Low_0504.pdf.

tions would be granted, the Division received approximately one amnesty application per year.[61] Since its revision in 1993, the Amnesty Program has been one of the Division's most potent tools in prosecuting criminal antitrust violations.[62] The Division currently receives amnesty applications at a rate of approximately two per month. Since 1997, the program has generated nearly $2 billion in criminal fines, as well as scores of convictions.[63] The Division therefore has a strong interest in encouraging corporations to seek amnesty by making the amnesty process transparent.

To ensure transparency, the 1993 revisions to the Program provided that amnesty would be granted automatically to any corporation that satisfied the enumerated requirements. The Division has characterized the surrender of prosecutorial discretion in these circumstances as "the ultimate sacrifice for transparency,"[64] which provides companies with a high degree of certainty about the program and its benefits.

The Amnesty Program took time to catch on with an antitrust bar skeptical of the program's benefits. The Division sought to encourage participation in the Amnesty Program by engaging in a number of activities designed to alleviate concerns about the fairness of the program's administration. Such activities included the publication of a number of papers, the drafting of a model conditional amnesty letter, and speeches before various legal associations and the media.[65] This enthusiastic and extended effort on the part of the Division illustrates the Amnesty Program's value to the Division.

Because amnesty applications are so highly valued by the Division, the decision to grant or deny amnesty is made at the highest levels. The Division's Corporate Leniency Policy states that the final decision on an amnesty application will be made by the Assistant Attorney General.[66] Because the Division has entrusted one high-level decision-maker with the authority to approve amnesty applications, corporate applicants are assured of greater consistency in the evaluation of amnesty applications.

Division officials are well aware that both the Division and the antitrust bar have an interest in predictability in the enforcement of amnesty agreements. From the Division's perspective, the Amnesty Program will cease to be a valuable tool in the prosecution of antitrust conspiracies unless it challenges amnesty applicants that fail to make a good-faith effort to comply with the terms of the agreement. Failure to police will mean encouragement to continue collusive activities. Nevertheless, practitioners are well aware that the Division's interpretation of the rules has been generous. Even Division officials admit they have "had to swallow hard on a number of amnesty applicants that they would have preferred to prosecute."[67] However, if the Division completely abdicated its responsibility to enforce the promises made in the amnesty agreement, the Division

*The Division . . . has a strong interest in encouraging corporations to seek amnesty by making the amnesty process transparent.*

---

[61] Scott D. Hammond, *An Overview of Recent Developments in the Antitrust Division's Criminal Enforcement Program,* Address Before the American Bar Association Midwinter Leadership Meeting 8–9 (Jan. 10, 2005), *available at* http://www.usdoj.gov/atr/public/speeches/207226.htm.

[62] *See id.* (discussing benefits of revised program).

[63] *Id.* at 9.

[64] *See* Scott D. Hammond, *Cornerstones of an Effective Leniency Program,* Address Before the ICN Workshop on Leniency Programs 20 (Nov. 22–23, 2004), *available at* http://www.usdoj.gov/atr/public/speeches/206611.pdf.

[65] *Id.* at 19–20.

[66] *See* Corporate Leniency Policy, *supra* note 4, at 4–5.

[67] Hammond, *supra* note 64.

would forgo the benefit of the program (prosecuting the most culpable antitrust violators) while enduring the cost (granting amnesty to culpable corporations).

From the point of view of potential applicants, enforcement of the terms of the amnesty agreement is critical to the fair application of the Program. When a conspirator secures the "amnesty chair," it deprives another conspirator of the benefits of amnesty. Many companies endure prosecution and hefty fines (not to mention jail time for senior executives) for being second in line. If the Division turned a blind eye to flagrant violations of the Amnesty Program, the program would be pervaded with a real sense of unfairness, and deserving applicants would be foreclosed from attaining the benefits of the Program. Thus, the Division's actions in *Stolt-Nielsen* should be welcome news to companies seeking amnesty in good faith.

The unusual facts in *Stolt-Nielsen* also reinforce its place as an outlier. As noted above, SNSA did not apply for amnesty on a completely clean slate. The Division's interest in SNSA, and the parcel tanker industry as a whole, was triggered by an article in the *Wall Street Journal*.[68] The article described a lawsuit by SNSA's former general counsel, alleging that he was forced to resign because he would not support various illegal activities, including "price fixing and other collusive conduct."[69] The Division warned SNSA at the outset of the amnesty discussions that the corporation would be ineligible for the Amnesty Program if the conduct continued after the general counsel's discovery. SNSA represented that the conduct stopped because of the company's remedial actions.[70]

SNSA's "remedial actions" certainly appear to have been a "head fake." SNSA apparently failed to suspend or terminate the culpable employees, allowing them to continue their collusive activities.[71] These were not low-level employees in distant places, whom the company had little hope of controlling, but high-level executives and the very targets of the company's internal investigation.[72] Moreover, the continuation of criminal activities was protracted.[73] It would have contravened clearly articulated policies issued by two Deputy Attorney Generals if the Division had ignored these clear signs that the company failed to take meaningful action to terminate the conduct.[74]

### Lesson in Remediation

The lesson of Stolt-Nielsen is clear: when a company discovers collusive activity, it must take decisive action to ensure termination of its involvement in that activity. Obviously, culpable employees are the direct source of the criminal activity. However, these same employees are the source of the company's cooperation, allowing them to "perfect" the company's "marker" for amnesty protection. Indeed, it is common for the government to request interviews with these individuals

---

[68] Bandler & McKinnon, *supra* note 15, at A3.

[69] *Id.* Other allegations included the illegal conduct of business with Iran.

[70] *Stolt-Nielsen*, 352 F. Supp. 2d at 557.

[71] Government's Proposed Findings of Fact, *supra* note 17, ¶¶ 27–36.

[72] *Id.* ¶¶ 5, 8, 19, 20.

[73] *See id.* ¶ 36 (noting that the conspiracy allegedly ran from 1998 through November 2002).

[74] *See* Memorandum from Larry D. Thompson, Deputy Attorney General, to Heads of Department Components and United States Attorneys (Jan. 20, 2003) (citing a corporation's remedial actions as one consideration when determining whether to charge a corporation), *available at* http://www.usdoj.gov/dag/cftf/business_organizations.pdf; Memorandum from Eric Holder, Deputy Attorney General, to All Component Heads and United States Attorneys (June 16, 1999) (same), *available at* http://www.usdoj.gov/criminal/fraud/policy/Chargingcorps.html.

before action is taken to terminate their employment. Thus, it is often impossible to take immediate action to terminate the employees. In these circumstances, what can a company do to prevent further transgressions?

Most importantly, the company must give clear, unequivocal instructions about contact with competitors. With *rare* exception, the rules should proscribe competitor contact. With *no* exception, the rules must prohibit any employee who was suspected of collusive activity from having any competitor contact, and these employees should be reassigned to roles that make the prohibition enforceable. With *no* exception, the rules should forbid sharing competitive intelligence with, or receiving it from, competitors.

If some employees must have contact with competitors for legitimate business reasons, any meeting or contact should be preceded by notice to the company's legal department. The company should adopt clear policies about procedures for such meetings, including the preparation of an agenda, which should be reviewed by the legal department, and the mandatory attendance of company counsel during any competitor contact. All informal and social contact with competitors must be prohibited, and the prohibition must be clearly conveyed to the business units.

To make these prohibitions meaningful, the company must conduct some regular surveillance. While distasteful to many corporate executives and general counsel, the least-intrusive surveillance program could have disclosed the continuing competitor contact at SNSA: monitoring the company's e-mail system. The Information Technology divisions at most companies can monitor employees' communications with specified e-mail addresses, and in the aftermath of an antitrust problem, that system should be used to monitor employees' contact with competitors. If ABC Company is a competitor with which employees were conspiring, the IT systems can send an alert whenever an employee corresponds with an employee of ABC Company. IT need not review the e-mail itself; rather, those e-mails can be escalated to the legal or compliance departments, which can determine whether the contact is permitted or prohibited. This simple technique could have easily revealed the continuing problem at SNSA because some of the continuing contact was via the company's e-mail system.

In addition to specific rules for potential violators and surveillance to make the rules meaningful, the company should immediately implement general ethics policies, including an anonymous hotline to report criminal or unethical activity, and a specific antitrust compliance program, with mandatory participation by all employees. If the company has such programs, they should be enhanced to ensure effectiveness. The company must invest sufficient resources to train employees and make the rules widely known and comprehensible. Certifications for these training sessions should be maintained for each employee in attendance, and the programs should be followed by periodic refresher courses (including on-line training).

Best practices also demand that a senior-level compliance officer (with reporting lines to the chief executive officer, the general counsel, and the audit committee of the board of directors) should oversee the compliance and ethics programs. That officer should be given sufficient resources, and managers at all levels of the company should be given compliance responsibilities. Performance of compliance duties and adherence to the program's requirements should be an aspect of evaluation and compensation for all employees. Audits of the program's effectiveness should occur on a regular basis.

Although all these steps are necessary, they are not enough to create a complete record of the company's efforts to terminate and remediate illegal conduct. Senior management is responsible for ensuring that a company's culture is guided by ethics and integrity, and it must set an appropriate course. Senior management must have "zero tolerance" for ethical lapses, and that mes-

*Senior management is responsible for ensuring that a company's culture is guided by ethics and integrity, and it must set an appropriate course.*

sage must be clearly and repeatedly conveyed to the business. This "tone from the top" is a critical element of the overall success of the company's ethics and compliance programs.

While these many steps cost the company resources, especially in the short term, the long-term benefits far outweigh the costs. However, even all of these efforts may not constrain a rogue employee from continuing to violate the law. If that happens, a company can have complete confidence that, if all of these efforts were undertaken in good faith, its amnesty will not be in peril. *Stolt-Nielsen* teaches that remediation must be taken seriously. ●

Exhibit 3

**Foster, Wayne**

Subject:                    FW: Work in progress

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 8:08 PM
To: Hammond, Scott
Subject: RE: Work in progress

Scott:

Thanks for all the helpful information, which was great.  We will cite a
bunch of it in the article.  Is the termination letter you sent to SNSA
part of the public record (dated 1/15/03)?  If so, we'd like to quote
directly from letter concerning the Court's misstatement about the
Division's position on SNSA's cooperation.

Best,

Jim

-----Original Message-----
om: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 6:30 PM
To: Walden, James
Subject: RE: Work in progress

I just sent you a fax with transcripts and exhibits from the public
record which put into context the representations made by counsel for
the applicant about Stolt's withdrawal from the conspiracy in March 02
as well as our statement that if the letters sent by Stolt to its
competitors to effectuate the withdrawal were simply a "head fake" then
the company would be out of the program.  I'm around tonight or tomorrow
if you want to discuss.

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 4:49 PM
To: Hammond, Scott
Subject: RE: Work in progress

████████████        While I am at it, my cell phone is ████████  ┐  (b)(6)

  anks,

Jim

1

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 2:51 PM
To: Walden, James
Subject: RE: Work in progress

thanks, what is your fax?

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 1:04 PM
To: Hammond, Scott
Subject: RE: Work in progress

By the way, it is: ██████████  (b)(6)

Thanks again for your input.

Best,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 10:09 AM
To: Walden, James
Subject: RE: Work in progress

Jim -- I need your phone number.  Call me.  I have some comments on what
you have sent me so far.

Scott

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 12:02 AM
To: Hammond, Scott
Subject: Work in progress

Scott:

Attached is a very rough draft of the article.  This first section is
most complete, while the second and third (which will be shorter) are
coming along.  In light of the finding's of my research and the harsh
view I take of the Stolt-Nielsen opinion, I thought it would be helpful
have your reactions early (if you have time).

Best,

2

Jim

<<ABAArticle.doc>>

# Exhibit 4

| No. | Date/ Control No. | Issues | Response |
|---|---|---|---|
| 1. | June 2, 2005  ATFY05-072 | Copies of, and notes related to, 4 speeches given by Scott D. Hammond in: (1) Las Vegas, 3/3-4/2005; (2) ABA Meeting, 3/30-4/1/2005 (3) Canada, 5/6/2005; and (4) any other speeches. | No responsive documents received. |
| 2. | June 2, 2005  ATFY05-071 | Internal memoranda or notes relating to a 12/4/2002 meeting with John Nannes relating to SNTG's application to, and participation in, the amnesty program. | No responsive documents received. |
| 3. | June 13, 2005  ATFY05-080 | Documents relating to the opening of the investigation into the parcel tanker industry in November 2002. | No responsive documents received. |
| 4. | June 24, 2005  ATFY05-088 | Any presentations to, or communications with, the ICN regarding the parcel tanker investigation. | No responsive documents received. |
| 5. | August 23, 2005  ATFY05-113 | Correspondence between the Antitrust Division and Jim Walden and/or Kristopher Dawes related to the antitrust investigation into the parcel tanker industry. | Some responsive documents were received on 9/13/2005. |
| 6. | September 20, 2005  ATFY05-131 | Communications to/from the press, bar associations, or other communications with individuals not involved in the investigation. | Rejected outright. |

# Exhibit 5

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + (202) 626-3690

June 2, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:   Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen Transportation Group, Ltd. ("SNTG") hereby requests that the U.S. Department of Justice, Antitrust Division ("Antitrust Division") release any and all internal memoranda or notes related to a December 4, 2002 meeting between Antitrust Division officials and John Nannes relating to STNG's application to, and participation in, the Antitrust Division's Amnesty Program.

Because this information concerns meetings regarding SNTG and does not involve confidential information related to any individuals, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) relating to the release of the material.  If this request is denied in whole or part, STNG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA.  STNG also expects the Antitrust Division to release all segregable portions of otherwise exempt material.  STNG, of course, reserve the right to appeal the Antitrust Division's decision to withhold any information.

STNG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000).  STNG is prepared to appeal any adverse decision regarding release of the requested materials.

Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

Exhibit 6

**WHITE & CASE**

White & Case LLP            Tel  + 1 202 626 3600
701 Thirteenth Street, NW   Fax  + 1 202 639 9355
Washington, DC 20005        www.whitecase.com

Direct Dial + (202) 626-3690

June 2, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:   Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and
regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen
Transportation Group, Ltd. ("SNTG") hereby requests that the U.S. Department of Justice,
Antitrust Division ("Antitrust Division") release copies of, and notes related to, the following
speeches given by Scott D. Hammond, Deputy Assistant Attorney General and Director of
Criminal Enforcement:

1. In Las Vegas, Nevada during the 19th Annual National Institute on White Collar Crime
   2005, on March 3-4, 2005;

2. At the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 –
   April 1, 2005;

3. At the Langdon Hall 2005 Competition Law and Policy Invitational Forum in Canada on
   May 6, 2005; and

4. Any other public speeches or presentations in which Mr. Hammond discussed the
   Antitrust Division's pending action(s) against STNG.

STNG also requests that the Antitrust Division release any drafts of <u>The Curious Case of *Stolt-Nielsen S.A. v. United States*</u>[1] and any comments, notes or other documents relating to this article
that were prepared by any Antitrust Division employees, whether located in Washington, D.C. or
the Antitrust Division's Philadelphia Field Office.

---

[1]   Jim Walden and Kristopher Dawes, The Curious Case of *Stolt-Nielsen, S.A. v. United States*, THE ANTITRUST
SOURCE (March 2005).

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

FOIA/PA Officer, Antitrust Division

**WHITE & CASE**

June 2, 2005

As this material relates to public comments made by Mr. Hammond, as well as articles, regarding STNG and does not involve confidential information related to any individuals, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) relating to the release of the material. If this request is denied in whole or part, STNG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA. STNG also expects Antitrust Division to release all segregable portions of otherwise exempt material. STNG, of course, reserve the right to appeal the Antitrust Division's decision to withhold any information.

STNG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000). STNG is prepared to appeal any adverse decision regarding release of the requested materials.

Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

# Exhibit 7

WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + (202) 626-3690

June 13, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:   Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen Transportation Group, Ltd. ("SNTG") hereby requests that the U.S. Department of Justice, Antitrust Division ("Antitrust Division") release any and all documents relating to the opening of the antitrust investigation of the parcel tanker industry in November 2002, including but not limited to documents and information specifically relating to the following:

1. The article, "*Stolt-Nielsen Is Probed For Traffic With Iran*", published in the Wall Street Journal;[1]

2. The request to open an investigation by the Philadelphia Field Office of the Antitrust Division, including but not limited to the Preliminary Inquiry Request Memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and

3. Any documents memorializing actions taken by the Antitrust Division in opening such investigation.

Because this information concerns documents and meetings regarding STNG and does not involve confidential information related to any individuals, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) relating to the release of the material.  If this request is denied in whole or part, STNG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA.  STNG also expects the Antitrust Division to release all segregable portions of otherwise exempt material.  STNG, of course, reserves the right to appeal the Antitrust Division's decision to withhold any information.

---

[1]   James Bandler & John McKinnon, *Stolt-Nielsen Is Probed For Traffic With Iran*, WALL ST. J., Nov. 22, 2002, at A3.

FOIA/PA Officer, Antitrust Division

**WHITE & CASE**

June 13, 2005

STNG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000).  STNG is prepared to appeal any adverse decision regarding release of the requested materials.

Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

2

# Exhibit 8

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + (202) 626-3690

June 24, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:    Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen Transportation Group Ltd. ("SNTG") hereby requests that the U.S. Department of Justice, Antitrust Division ("Antitrust Division") release any and all materials relating to presentations or communications by, or involving, officials of the Antitrust Division to the International Competition Network ("ICN") regarding any investigation of STNG or the parcel tanker industry, or to the revocation of amnesty related to STNG, including but not limited to:

1. Presentations, speeches and discussions made to the ICN by any Antitrust Division officials or any other ICN member relating to any STNG investigation or to the STNG amnesty revocation;

2. Electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to any STNG investigation or to the STNG amnesty revocation; and

3. Any documents in the possession of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to any STNG investigation or to the STNG amnesty revocation with ICN members.

Because this information concerns documents and meetings regarding STNG and does not involve confidential information related to any individuals, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) relating to the release of the material. If this request is denied in whole or part, STNG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA. STNG also expects the Antitrust Division to release all segregable portions of otherwise exempt material. STNG, of course, reserves the right to appeal the Antitrust Division's decision to withhold any information.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

FOIA/PA Officer, Antitrust Division

**WHITE & CASE**

June 24, 2005

STNG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000).  STNG is prepared to appeal any adverse decision regarding release of the requested materials.

Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

# Exhibit 9

**WHITE & CASE**

| White & Case LLP | Tel + 1 202 626 3600 |
| 701 Thirteenth Street, NW | Fax + 1 202 639 9355 |
| Washington, DC 20005 | www.whitecase.com |

Direct Dial + (202) 626-3690

August 23, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:    Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen Transportation Group Ltd. ("SNTG") hereby requests that the U.S. Department of Justice, Antitrust Division ("Antitrust Division") release any and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP related to the antitrust investigation into the parcel tanker industry, particularly relating to the article by Mr. Walden and Mr. Dawes.[1]

This request relates to SNTG and does not involve confidential information regarding any individuals; accordingly, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) regarding the release of the requested material. If this request is denied in whole or part, SNTG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA. SNTG also expects the Antitrust Division to release all segregable portions of otherwise exempt material. SNTG, of course, reserves the right to appeal the Antitrust Division's decision to withhold any information.

SNTG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000). SNTG is prepared to appeal any adverse decision regarding release of the requested materials. Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

---

[1]    Jim Walden and Kristopher Dawes, The Curious Case of *Stolt-Nielsen, S.A. v. United States*, THE ANTITRUST SOURCE (March 2005).

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

# Exhibit 10

**WHITE & CASE**

White & Case LLP                    Tel  + 1 202 626 3600
701 Thirteenth Street, NW           Fax  + 1 202 639 9355
Washington, DC 20005                www.whitecase.com

Direct Dial + (202) 626-3690

September 20, 2005

FOIA/PA Officer, Antitrust Division
Department of Justice
Suite 200, Liberty Place Building
Washington, DC 20530-0001

Re:    Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (2000) ("FOIA") and regulations promulgated thereunder, particularly 28 C.F.R. Part 16 (2004), Stolt-Nielsen Transportation Group Ltd. ("SNTG") hereby requests that the U.S. Department of Justice ("Department"), Antitrust Division ("Antitrust Division") release any and all documents that reflect, memorialize, embody or contain communications to or from

(1)  the press, including trade press,

(2)  bar associations, or

(3)  any other external communications with individuals uninvolved in the litigation with SNTG or the investigation into the parcel tanker industry

regarding SNTG or the investigation into the parcel tanker industry.  In particular, SNTG requests

(a)  communications to or from James Bandler of the Wall Street Journal,

(b)  communications to or from reporter(s) at the Tradewinds publication, and

(c)  internal Department circulation of press stories regarding SNTG or the investigation into the parcel tanker industry.

This request relates to SNTG and does not involve confidential information regarding any individuals; accordingly, there are no privacy issues under 28 C.F.R. § 16.41(d) (2004) regarding the release of the requested material.  If this request is denied in whole or part, SNTG requests that the Antitrust Division justify all deletions by reference to specific exemptions of FOIA.  SNTG also expects the Antitrust Division to release all segregable portions of otherwise exempt material.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

FOIA/PA Officer, Antitrust Division

**WHITE & CASE**

September 20, 2005

SNTG, of course, reserves the right to appeal the Antitrust Division's decision to withhold any information.

SNTG expects to receive a reply from the Antitrust Division within twenty (20) business days of the receipt of this request, as mandated by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2000). SNTG is prepared to appeal any adverse decision regarding release of the requested materials. Please do not hesitate to contact the undersigned at (202) 626-3690 if you have any questions regarding this request.

Best regards,

Ruta Kalvaitis Skučas

2

Exhibit 11



**U.S. Department of Justice**

Antitrust Division

---

*Liberty Place Building*
*325 Seventh Street NW*
*Washington, DC 20530*

September 13, 2005

Ruta Kalvaitis Skučas
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

    Re:   Freedom of Information Act Request Nos. ATFY05-071,-072,-080,-088,-and-113

Dear Ms. Skučas:

      This letter is in response to your five Freedom of Information Act (FOIA) requests seeking information relating to Stolt-Nielsen Transportation Group, Ltd. ("STNG"). You specifically requested the information described in the FOIA requests listed above.

ATFY 05-071
      All internal memoranda or notes relating to a December 4, 2002 meeting between Antitrust Division officials and John Nannes relating to a STNG application to, and participation in, the Antitrust Division's Amnesty Program.

ATFY 05-072
      Copies of, and notes relating to, speeches given by Scott D. Hammond, Deputy Assistant Attorney General of the Antitrust Division, at the following events: (1) the 19th Annual National Institute on White Collar Crime 2005, held on March 3-4, 2005; (2) the Spring 2005 American Bar Association Antitrust Section Meeting, held March 30 through April 1, 2005; and (3) the Langdon Hall 2005 Competition Law and Policy Invitational Forum in Canada, held on May 6, 2005. You also seek any other public speeches or presentations in which Mr. Hammond discussed the Antitrust Division's pending action(s) against STNG and any drafts, notes, or other documents prepared by any Antitrust Division employee that relate to an article entitled *The Curious Case of Stolt-Nielsen, S.A. v. United States*, written by Jim Walden and Kristopher Dawes.

ATFY 05-080
      All documents relating to the opening of an Antitrust Division investigation of the parcel tanker industry in November 2002 including, but not limited to, documents and

information specifically relating to the following: (1) the article, *Stolt-Nielsen Is Probed For Traffic With Iran,* published in the Wall St. J., Nov. 2, 2002; (2) an Antitrust Division Philadelphia Field Office request to open an investigation, including but not limited to, a preliminary request memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and (3) any documents memorializing actions taken by the Antitrust Division in opening any such investigation.

ATFY 05-088

Any and all materials relating to presentations or communications by, or involving, officials of the Antitrust Division to the International Competition Network ("ICN") regarding any investigation of STNG including, but not limited to, the following: (1) presentations, speeches and discussions made to the ICN by any Antitrust Division officials or any other ICN member relating to any STNG investigation or to the STNG amnesty revocation; (2) any electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to any STNG investigation or to the STNG amnesty revocation; and (3) any documents in the possession of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to any STNG investigation or to the STNG amnesty revocation with ICN members.

ATFY 05-113

Any and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP relating to an antitrust investigation into the parcel tanker industry, particularly relating to the article written by Messrs. Walden and Dawes.

We are enclosing 277 pages of documents responsive to all five of your requests. Deleted portions of certain of these documents contain information which, if released, would constitute an unwarranted invasion of personal privacy, and, accordingly, are withheld from public disclosure pursuant to 5 U.S.C. § 552(b)(6). They also contain information protected by the attorney work-product and deliberative process privileges and are withheld from public disclosure pursuant to 5 U.S.C. § 552(b)(5).

Please be advised that additional documents responsive to your request relate to ongoing enforcement proceedings and their disclosure could reasonably be expected to interfere with such proceedings. Accordingly, such materials are exempt from public disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).

If you are dissatisfied with my action on your request, you may appeal within 60 days to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, DC 20530. Any appeal should be clearly identified as a "FOIA/PA

Appeal." 28 C.F.R. § 16.9. Judicial review is available thereafter in any of the following jurisdictions: (1) where you reside; (2) where you have your principal place of business (if any); (3) in the District of Columbia; or (4) where the records are located if they are not located in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

Sincerely yours,

Ann Lea Richards
Chief, FOIA/PA

Enclosures

3

# Exhibit 12

WHITE & CASE

**White & Case LLP**
701 Thirteenth Street, NW
Washington, DC 20005

Tel   + 1 202 626 3600
Fax   + 1 202 639 9355
www.whitecase.com

Direct Dial + (202) 626-3690

October 5, 2005

BY HAND

Co-Director
Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

Re:   Freedom Of Information Act Appeal:  Freedom Of Information Requests Nos. ATFY 05-
       071, -072, -080, -088, -113 and -131

To Whom It May Concern:

Pursuant to 28 C.F.R. § 16.9(a), Stolt-Nielsen Transportation Group Ltd. ("SNTG") appeals from the Freedom of Information Act responses of the Antitrust Division, United States Department of Justice, dated September 13, 2005 ("First FOIA Response," attached hereto as Attachment 1) and September 29, 2005 ("Second FOIA Response," attached hereto as Attachment 2) (collectively, "FOIA Responses"). By its responses, the Division indicated that materials are being withheld from SNTG without establishing that it is *entitled* to withhold those materials. The Division's FOIA Responses are also unclear as to whether certain categories of documents are being withheld pursuant to a statutory exemption or are simply not in existence. Thus, for the following reasons, SNTG requests that the Department of Justice disclose currently-withheld documents and clarify the FOIA Responses.

I.   **The Division Has Not Demonstrated That It Is Entitled To Withhold Any**
      **Documents**

An agency seeking to invoke one of the exemptions available under FOIA bears the burden of proving that the exemption is, in fact, justified. The applicability of the exemption is not assumed; rather, the agency must demonstrate its right to it. *See Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 556 (1st Cir. 1992). The FOIA Responses received by SNTG, however, do not demonstrate with any level of specificity the reasons for the exemptions claimed by the Antitrust Division for withholding or redacting materials responsive to SNTG's requests.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

10/5/2005 4:26 PM (2K)
WASHINGTON 786309 v5 [786309_5.DOC]

Co-Director
~~Office of Information and Privacy~~
October 5, 2005

WHITE & CASE

### A.    Limited Exception for Law Enforcement Proceedings

In its First FOIA Response, the Antitrust Division indicated that "additional documents responsive to [SNTG's] request relate to ongoing enforcement proceedings and their disclosure could reasonably be expected to interfere with such proceedings." The Antitrust Division then indicated that "such materials are exempt from public disclosure pursuant to 5 U.S.C. § 552(b)(7)(A)." The Antitrust Division denied the entirety of SNTG's request in its Second FOIA Response on the same grounds.

### 1.    Disclosure of the Requested Materials Will Not Affect Ongoing Enforcement Proceedings

The exemption contained in 5 U.S.C. § 552(b)(7)(A) applies to "records of information compiled for law enforcement purposes, but *only* to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . ." (emphasis added).

None of the material sought by SNTG can reasonably be expected to interfere with enforcement proceedings. For example, the information sought in request number ATFY 05-071 pertains to a December 4, 2002 meeting between Antitrust Division officials and John Nannes, an attorney for SNTG. That meeting has already been the subject of extensive testimony by both Mr. Nannes and former Deputy Assistant Attorney General James Griffin in a civil proceeding held on April 13-14, 2004. *Stolt-Nielsen S.A. v. United States*, Civil Action No. 04-537 (E.D. Pa.). Similarly, the information sought in request number ATFY 05-080 pertains to the opening of an Antitrust Division investigation of the parcel tanker industry in November 2002. Again, former Deputy Assistant Attorney General Griffin testified about this issue in the above-referenced civil action. That testimony is on the public record.

The material requested in ATFY 05-131 specifically relates to correspondence with individuals *not* involved in the Antitrust Division's investigation of the parcel tanker industry, including the press and members of the bar. Accordingly, there can be no credible argument that disclosure of such materials will interfere with enforcement proceedings.

### 2.    The Antitrust Division Has Publicly Waived This Exemption

Even if the materials requested by SNTG related to ongoing investigations or enforcement proceedings, the Antitrust Division has waived the exemption by disclosing such material to the public. Established precedent in the U.S. Court of Appeals for the District of Columbia Circuit holds that voluntary disclosure of information may waive an otherwise valid FOIA exemption where the withheld information has been publicly disclosed and the information being withheld is duplicative of that already disclosed. *See Mehl v. U.S. EPA*, 797 F. Supp. 43, 47 (D.D.C. 1992); *Afshar v. Dep't of State*, 702 F.2d 1125, 1133-34 (D.C. Cir. 1983).

The material requested by SNTG has been publicly disclosed. Assistant Attorney General R. Hewitt Pate authorized Mr. Griffin to testify in the above-referenced civil proceeding

2

Co-Director
~~Office of Information and Privacy~~
October 5, 2005

WHITE & CASE

regarding the December 4, 2002, meeting, *see* Attachment 3, and the Antitrust Division has moved successfully to unseal this testimony. Moreover, Deputy Assistant Attorney General Scott D. Hammond has addressed the December 4, 2002 meeting in a public speech in Las Vegas, Nevada on March 3-4, 2005 to lawyers of the antitrust bar. Further, any discussion of this investigation with members of the press (including members of the bar preparing articles for publication of any sort) or with individuals not involved in the investigation into the parcel tanker industry, constitutes disclosure of the relevant information to the public.

> **B.     The Antitrust Division Has Improperly Withheld Documents Pursuant To The Exemption for Intra-agency Memoranda**

In its First FOIA Response, the Antitrust Division indicated that it had deleted certain portions of documents pursuant to 5 U.S.C. § 552(b)(5), which applies to "inter-agency or intra-agency memorandums or letter which would not be available by law to a party other than an agency in litigation with an agency." This section incorporates one of the privileges expressly claimed by the Antitrust Division: the deliberative process privilege.

> **1.     Failure to Make The Necessary Demonstration Is Fatal to the Claim of Privilege**

An agency claiming an exemption under subsection 552(b)(5) must demonstrate that the redacted material is both "predecisional" and "deliberative." A document is considered predecisional if the agency demonstrates that its author prepared the document to assist the agency official charged with making an agency decision. *Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 557 (1st Cir. 1992). A document will be considered deliberative only if it reflects the agency's decision-making process, particularly the give-and-take nature of such process. *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 482 (2nd Cir. 1999). The Antitrust Division has made no showing that any documents it has withheld are "pre-decisional," particularly since the relevant decision was made in March 2004. Further, a conclusory statement that the materials are exempt under this subsection is insufficient. 37A Am. Jur. 2d, Freedom of Information Act § 186. Rather, claims under this exemption must be supported with factual detail – detail that the Division failed to provide. *Id.*

> **2.     Communications With Non-DOJ Personnel Are Not Covered By This Exemption – January 26, 2005 Email**

The Division improperly relies upon subsection 552(b)(5) in support of its decision to redact portions of two copies of an e-mail dated January 26, 2005 (9:21 AM) from Robert Connolly to Scott Hammond. *See* Attachments 4 & 5. The redacted information, however, was also sent outside the Department to James Walden, a lawyer with the private law firm of O'Melveny & Myers LLP. Because a non-government official has received this e-mail, there is no basis to withhold the redacted portions of the e-mail from SNTG.

Co-Director
~~Office of Information and Privacy~~
October 5, 2005

WHITE & CASE

### 3.    A Failure to Obtain A Claim of Privilege by the Head of Agency Is Fatal to the Claim

The First FOIA Response does indicate that certain portions of the released documents were redacted as being protected by the deliberative process privilege. First FOIA Response at 2. However, "[a]ssertion of the deliberative process privilege . . . requires a formal claim of privilege by the head of the department with control over the information." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 n.11 (D.C. Cir. 1984); *see also Walker v. NCNB Nat'l Bank of Florida*, 810 F. Supp. 11, 13 (D.D.C. 1993) ( "To apply, the [deliberative process] privilege must be asserted by the head of the agency about which information is sought, after personal consideration of the material allegedly covered by the privilege"). In this instance, no formal assertion of privilege has been made by the Attorney General. Thus, the Division may not invoke the deliberative process privilege as a basis for withholding information from SNTG.

## II.    The Antitrust Division Failed To Create A *Vaughn* Index

To the extent that the Department continues to believe that it is entitled to withhold documents pursuant to any of the claimed exemptions, SNTG requests that the Department immediately prepare a *Vaughn* index, and share that index with SNTG so that STNG may understand the grounds for any claimed exemptions and determine if judicial review is appropriate. *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) ("[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments.").

## III.    The FOIA Responses Are Unclear As To Whether Certain Categories Of Documents Are Being Withheld Pursuant To A Statutory Exemption Or Are Not In Existence

Since June 2, 2005, SNTG has filed six FOIA requests with the Antitrust Division, some of which contain multiple subparts (*i.e.*, ATFY 05-072, ATFY 05-080, ATFY 05-088 and ATFY 05-131). In response to these six requests, the Antitrust Division provided a single compilation of documents. The Antitrust Division has also indicated that additional documents responsive to these requests have been withheld pursuant to 5 U.S.C. § 552(b)(7)(A).

### A.    Request No. ATFY 05-071: The December 4, 2002 Meeting

SNTG's first FOIA request, assigned control number ATFY 05-071, requested internal memoranda or notes relating to a December 4, 2002 meeting between Antitrust Division officials and John Nannes. Although officials of the Antitrust Division has testified about this meeting, and discussed it in public speeches, such as Scott Hammond's speech in Las Vegas on March 3-4, 2005, SNTG received no documents responsive to this request. Please confirm that the Antitrust Division does not possess any responsive documents, or provide those documents now.

Further, although we assume that the Antitrust Division seeks to invoke the exemption contained in subsection 552(b)(7)(A) for this request, we are unable to confirm from the face of the First FOIA Response whether this is, in fact, the case. Please confirm this assumption.

4

Co-Director
Office of Information and Privacy
October 5, 2005

WHITE & CASE

**B.      Request No. ATFY 05-072: Speeches by Mr. Hammond**

SNTG's second FOIA request, assigned control number ATFY 05-072, requested "notes related to" several speeches made by Scott D. Hammond, Deputy Assistant Attorney General. We are aware of the fact that Mr. Hammond made public speeches related to SNTG (1) in Las Vegas Nevada during the 19th Annual National Institute on White Collar Crime 2005, on March 3-4, 2005; (2) at the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 – April 1, 2005; (3) at the Langdon Hall 2005 Competition Law and Policy Invitational Forum in Canada on May 6, 2005; and (4) in New York City at the New York State Bar Association Antitrust Law Section, on September 14, 2005.  Yet not a single speech note, outline or other document relating to these public remarks has been provided.  Confirm that the Antitrust Division does not possess any notes relating to the speeches made by Scott Hammond concerning the Stolt-Nielsen case, or provide those documents now.

**C.      Request No. ATFY 05-080: The *Wall Street Journal* Article and the Opening of the Investigation**

SNTG's third FOIA request, assigned control number ATFY 05-080, sought documents relating to the November 22, 2002 article in the *Wall Street Journal*, written by James Bandler and John McKinnon, as well as those relating to the opening of the Antitrust Division's investigation of the parcel tanker industry in November 2002.  We received no documents responsive to this request.  Please confirm that the Antitrust Division does not possess any responsive documents, or provide those documents now.

Further, although we assume that the Antitrust Division seeks to invoke the exemption contained in subsection 552(b)(7)(A) for this request, we are unable to confirm from the face of the First FOIA Response whether this is, in fact, the case.  Please confirm this assumption.

**D.      Request No. ATFY 05-088: The International Competition Network**

SNTG's fourth FOIA request, assigned control number ATFY 05-088, sought materials related to presentations, speeches and discussions with the International Competition Network ("ICN"), as well as communications with ICN members, regarding the investigation into the parcel tanker industry.  We received no documents responsive to this request.  Please confirm that the Antitrust Division does not possess any responsive documents, or provide those documents now.

**E.      Request No. ATFY 05-113: *The Curious Case of Stolt-Nielsen***

SNTG's fifth FOIA request, assigned control number ATFY 05-113, sought correspondence between Antitrust Division officials and two members of the private bar, Jim Walden and/or Kristopher Dawes, of the O'Melveny & Myers LLP law firm, particularly regarding the article drafted by Messrs. Walden and Dawes regarding the investigation into the parcel tanker industry for The Antitrust Source.  We received several early drafts of the article, as well as related correspondence.  Please confirm that no further documents responsive to this request are in the possession of the Antitrust Division.

10/5/2005 4:28 PM (2K)
WASHINGTON 786309 v5 [786309_5.DOC]

Co-Director
~~Office of Information and Privacy~~
October 5, 2005

WHITE & CASE

Interestingly, one of the emails (from Jim Walden to Scott Hammond dated January 21, 2005 at 2:45 p.m.) thanked Scott Hammond for agreeing to provide all publicly-available information regarding SNTG to the author. And yet SNTG has been forced to resort to this administrative appeal to obtain similar access to information *regarding itself*.

**F.    Request No. ATFY 05-131: Correspondence With The Press And Bar Associations**

SNTG's sixth FOIA request, assigned control number ATFY 05-131, sought correspondence between Antitrust Division officials and members of the press, bar associations and other individuals not involved in the relevant investigation, regarding the investigation into the parcel tanker industry. This request was denied outright by the Second FOIA Response, pursuant to a claim that such documents relate to an ongoing investigation. There was no indication by the Antitrust Division of whether responsive documents exist, nor was there an attempt to redact any documents which may prove segregable.

Since the Second FOIA Response was mailed only 9 days after the Antitrust Division's receipt of the sixth FOIA request, SNTG finds it difficult to believe that the Antitrust Division conducted a thorough review of its files to determine the nature of potentially responsive documents and whether material in such documents could be appropriately redacted. We also are aware of no authority that would permit the Division to withhold communications to or from the press, or members of bar associations.

*         *         *

Thank you for your prompt attention to this administrative appeal. We look forward to receiving a complete response. It is our hope that this administrative appeal will resolve the issues we have identified, thereby obviating the need for a judicial appeal.

Sincerely,

Ruta Kalvaitis Skučas

**ATTACHMENT 1**



**U.S. Department of Justice**

Antitrust Division

_____

*Liberty Place Building*
*325 Seventh Street NW*
*Washington, DC 20530*

September 13, 2005

Ruta Kalvaitis Skučas
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Re:   <u>Freedom of Information Act Request Nos. ATFY05-071,-072,-080,-088,-and-113</u>

Dear Ms. Skučas:

This letter is in response to your five Freedom of Information Act (FOIA) requests seeking information relating to Stolt-Nielsen Transportation Group, Ltd. ("STNG"). You specifically requested the information described in the FOIA requests listed above.

ATFY 05-071

All internal memoranda or notes relating to a December 4, 2002 meeting between Antitrust Division officials and John Nannes relating to a STNG application to, and participation in, the Antitrust Division's Amnesty Program.

ATFY 05-072

Copies of, and notes relating to, speeches given by Scott D. Hammond, Deputy Assistant Attorney General of the Antitrust Division, at the following events: (1) the 19th Annual National Institute on White Collar Crime 2005, held on March 3-4, 2005; (2) the Spring 2005 American Bar Association Antitrust Section Meeting, held March 30 through April 1, 2005; and (3) the Langdon Hall 2005 Competition Law and Policy Invitational Forum in Canada, held on May 6, 2005. You also seek any other public speeches or presentations in which Mr. Hammond discussed the Antitrust Division's pending action(s) against STNG and any drafts, notes, or other documents prepared by any Antitrust Division employee that relate to an article entitled *The Curious Case of Stolt-Nielsen, S.A. v. United States*, written by Jim Walden and Kristopher Dawes.

ATFY 05-080

All documents relating to the opening of an Antitrust Division investigation of the parcel tanker industry in November 2002 including, but not limited to, documents and

information specifically relating to the following: (1) the article, *Stolt-Nielsen Is Probed For Traffic With Iran*, published in the Wall St. J., Nov. 2, 2002; (2) an Antitrust Division Philadelphia Field Office request to open an investigation, including but not limited to, a preliminary request memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and (3) any documents memorializing actions taken by the Antitrust Division in opening any such investigation.

ATFY 05-088

Any and all materials relating to presentations or communications by, or involving, officials of the Antitrust Division to the International Competition Network ("ICN") regarding any investigation of STNG including, but not limited to, the following: (1) presentations, speeches and discussions made to the ICN by any Antitrust Division officials or any other ICN member relating to any STNG investigation or to the STNG amnesty revocation; (2) any electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to any STNG investigation or to the STNG amnesty revocation; and (3) any documents in the possession of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to any STNG investigation or to the STNG amnesty revocation with ICN members.

ATFY 05-113

Any and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP relating to an antitrust investigation into the parcel tanker industry, particularly relating to the article written by Messrs. Walden and Dawes.

We are enclosing 277 pages of documents responsive to all five of your requests. Deleted portions of certain of these documents contain information which, if released, would constitute an unwarranted invasion of personal privacy, and, accordingly, are withheld from public disclosure pursuant to 5 U.S.C. § 552(b)(6). They also contain information protected by the attorney work-product and deliberative process privileges and are withheld from public disclosure pursuant to 5 U.S.C. § 552(b)(5).

Please be advised that additional documents responsive to your request relate to ongoing enforcement proceedings and their disclosure could reasonably be expected to interfere with such proceedings. Accordingly, such materials are exempt from public disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).

If you are dissatisfied with my action on your request, you may appeal within 60 days to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, DC 20530. Any appeal should be clearly identified as a "FOIA/PA

Appeal." 28 C.F.R. § 16.9. Judicial review is available thereafter in any of the following jurisdictions: (1) where you reside; (2) where you have your principal place of business (if any); (3) in the District of Columbia; or (4) where the records are located if they are not located in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

Sincerely yours,

Ann Lea Richards
Chief, FOIA/PA

Enclosures

3

**ATTACHMENT 2**



**U.S. Department of Justice**

Antitrust Division

_Liberty Place Building_
_325 Seventh Street NW_
_Washington, DC 20530_

September 29, 2005

Ruta Kalvaitis Skučas
White & Case, LLP
701 Thirteenth Street, NW
Washington, DC 20005

Re:   Freedom of Information Act Request No. ATFY05-131

Dear Ms. Skučas:

This letter responds to your September 20, 2005 Freedom of Information Act ("FOIA") request for all documents that reflect, memorialize, embody or contain communications to or from the following: (1) the press, including trade press; (2) bar associations; and (3) any other external communications with individuals not involved in litigation with Stolt-Nielsen Transportation Group Ltd., ("SNTG") or a purported investigation into the parcel tanker industry regarding SNTG. You request, in particular, the following: (1) communications to or from James Bandler of the Wall Street Journal; (2) communications to or from reporter(s) at the Tradewinds publication; and (3) internal Department circulation of press stories regarding SNTG or the purported investigation into the parcel tanker industry. Your request was assigned control number ATFY05-131.

Documents responsive to your request relate to ongoing enforcement proceedings and their disclosure could reasonably be expected to interfere with such proceedings. Accordingly, the information you seek is exempt from public disclosure pursuant to Exemption 7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A).

If you consider my response to be a denial of your request, you may appeal within 60 days to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, DC 20530. Any appeal should be clearly identified as a "FOIA/PA Appeal." 28 C.F.R. § 16.9. Judicial review is available thereafter in any of the following

jurisdictions: (1) where you reside; (2) where you have your principal place of business (if any); (3) in the District of Columbia; or (4) where the records are located if they are not located in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

Sincerely yours,

Ann Lea Richards
Chief, FOIA/PA

2

**ATTACHMENT 3**



**DEPARTMENT OF JUSTICE**
Antitrust Division

**R. HEWITT PATE**
Assistant Attorney General

Main Justice Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
(202) 514-2401 / (202) 616-2645 (Fax)
E-mail: antitrust@usdoj.gov
Web site: http://www.usdoj.gov/atr

April 12, 2004

James M. Griffin
Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Suite 3214
Washington, D.C. 20530-0001

Re: *Stolt–Nielsen S.A. and Stolt–Nielsen Transportation Group Ltd. v.
United States,* Civ. No. 04-CV-537 (E.D. Pa.) and *Wingfield v. United States,*
Civ. No. 04-CV-684 (E.D. Pa.)

Dear Mr. Griffin:

I authorize you, pursuant to 28 C.F.R. § 16.23(a), to testify on behalf of the Antitrust
Division in an *in camera* preliminary injunction hearing in *Stolt–Nielsen S.A. and Stolt–Nielsen
Transportation Group Ltd. v. United States,* Civ. No. 04-CV-537 (E.D. Pa.) and *Wingfield v.
United States,* Civ. No. 04-CV-684 (E.D. Pa.) to be held on Tuesday, April 13, 2004 regarding
your corporate amnesty negotiations with counsel for Stolt-Nielsen Transportation Group Ltd.
and the Division's corporate amnesty program. However, pursuant to 28 C.F.R. § 16.26(b), you
are not authorized to make any of the following disclosures:

(1)    disclosures that would violate a statute or a rule of procedure, such as the grand
jury secrecy rule, F.R.Cr.P. Rule 6(e);

(2)    disclosures that would violate a specific regulation;

(3)    disclosures that would reveal classified information, unless appropriately
declassified by the originating agency;

(4)    disclosures that would reveal a confidential source or informant, unless the
investigative agency and the source or informant have no objection;

(5)    disclosures that would reveal investigatory records compiled for law enforcement
purposes, and would interfere with enforcement proceedings or disclose
investigative techniques and procedures the effectiveness of which would thereby
be impaired; or



GOVERNMENT
EXHIBIT

(6)     disclosures that would improperly reveal trade secrets without the owner's consent.

Also, pursuant to 28 C.F.R. § 16.26(a)(2), you are not authorized to reveal information protected by privilege, such as the deliberative process privilege or work product privilege. Copies of 28 C.F.R. §§ 16.23 and 16.26 are attached.

Yours sincerely,

R. Hewitt Pate

Westlaw.

28 CFR § 16.23
28 C.F.R. § 16.23

C

**CODE OF FEDERAL REGULATIONS**
**TITLE 28--JUDICIAL ADMINISTRATION**
**CHAPTER I--DEPARTMENT OF JUSTICE**
**PART 16--PRODUCTION OR DISCLOSURE**
**OF MATERIAL OR INFORMATION**
**SUBPART B--PRODUCTION OR DISCLOSURE**
**IN FEDERAL AND STATE PROCEEDINGS**
Current through April 1, 2004; 69 FR 17282

§ 16.23 General disclosure authority in Federal and State proceedings in which the United States is a party.

(a) Every attorney in the Department of Justice in charge of any case or matter in which the United States is a party is authorized, after consultation with the "originating component" as defined in § 16.24(a) of this part, to reveal and furnish to any person, including an actual or prospective witness, a grand jury, counsel, or a court, either during or preparatory to a proceeding, such testimony, and relevant unclassified material, documents, or information secured by any attorney, or investigator of the Department of Justice, as such attorney shall deem necessary or desirable to the discharge of the attorney's official duties: Provided, Such an attorney shall consider, with respect to any disclosure, the factors set forth in § 16.26(a) of this part: And further provided, An attorney shall not reveal or furnish any material, documents, testimony or information when, in the attorney's judgment, any of the factors specified in § 16.26(b) exists, without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding, the Director of the Executive Office for United States Trustees (hereinafter referred to as "the EOUST"), or such persons' designees.

(b) An attorney may seek higher level review at any stage of a proceeding, including prior to the issuance of a court order, when the attorney determines that a factor specified in § 16.26(b) exists or foresees that higher level approval will be required before disclosure of the information or testimony in question. Upon referral of a matter under this subsection, the responsible Assistant Attorney General, the Director of EOUST, or their designees shall follow procedures set forth in § 16.24 of this part.

(c) If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

<General Materials (GM) - References, Annotations, or Tables>

28 C. F. R. § 16.23

28 CFR § 16.23

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

28 CFR § 16.26
28 C.F.R. § 16.26

C

### CODE OF FEDERAL REGULATIONS
### TITLE 28--JUDICIAL ADMINISTRATION
### CHAPTER I--DEPARTMENT OF JUSTICE
### PART 16--PRODUCTION OR DISCLOSURE
### OF MATERIAL OR INFORMATION
### SUBPART B--PRODUCTION OR DISCLOSURE
### IN FEDERAL AND STATE PROCEEDINGS
Current through April 1, 2004; 69 FR 17282

§ 16.26 Considerations in determining whether production or disclosure should be made pursuant to a demand.

(a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),

(2) Disclosure would violate a specific regulation,

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

(c) In all cases not involving considerations specified in paragraphs (b)(1)- (b)(6) of this section, the Deputy or Associate Attorney General will authorize disclosure unless, in that person's judgment, after considering paragraph (a) of this section, disclosure is unwarranted. The Deputy or Associate Attorney General will not approve disclosure if the circumstances specified in paragraphs (b)(1)-(b)(3) of this section exist. The Deputy or Associate Attorney General will not approve disclosure if any of the conditions in paragraphs (b)(4)-(b)(6) of this section exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:

(1) The seriousness of the violation or crime involved,

(2) The past history or criminal record of the violator or accused,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

(d) Assistant Attorneys General, United States attorneys, the Director of the EOUST, United States trustees, and their designees, are authorized to issue instructions to attorneys and to adopt supervisory practices, consistent with this subpart, in order to help foster consistent application of the foregoing standards and the requirements of this subpart.

<General Materials (GM) - References, Annotations, or Tables>

28 C. F. R. § 16.26

28 CFR § 16.26

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# ATTACHMENT 4

**Norman, Wendy**

| | |
|---|---|
| From: | Connolly, Robert |
| Sent: | Monday, January 31, 2005 11:12 AM |
| To: | ATR-PHI - Attorneys |
| Subject: | FW: Work in progress |

████████████████████████████████████████  (b)(5)

Robert E. Connolly
Chief
Philadelphia Office
Antitrust Division, USDOJ
(215) 597-7405
(215) 597-8838  (fax)


-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Monday, January 31, 2005 8:49 AM
To: Connolly, Robert
Subject: RE: Work in progress


Here is the finished product.

Best regards,

Jim Walden


-----Original Message-----
From: Robert.Connolly@usdoj.gov [mailto:Robert.Connolly@usdoj.gov]
Sent: Wednesday, January 26, 2005 9:38 AM
To: Scott.Hammond@usdoj.gov; Walden, James
Subject: RE: Work in progress

Jim:
    I would very much like a copy of your article.  When I, or a member
of the staff, tries to explain what the Judge did here, it sounds like
sour grapes from the loser.  So, we very much appreciate a third party's
view of the 'merits' of the Court's 'scholarly' opinion.
        Thanks!

Robert E. Connolly
Chief
Philadelphia Office
Antitrust Division, USDOJ
(215) 597-7405
(215) 597-8838  (fax)


-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Wednesday, January 26, 2005 9:28 AM
To: Hammond, Scott; Connolly, Robert
Subject: RE: Work in progress

1

Thank you very much.  Would you like a copy of my article when it is finished?  I am trying to get it published in the Antitrust Source in addition to distributing it at the White Collar conference.

Best,

Jim Walden

-----Original Message-----
From: Robert.Connolly@usdoj.gov [mailto:Robert.Connolly@usdoj.gov]
Sent: Wednesday, January 26, 2005 9:22 AM
To: Scott.Hammond@usdoj.gov
Cc: Walden, James
Subject: RE: Work in progress



(b)(5)

Robert E. Connolly
Chief
Philadelphia Office
Antitrust Division, USDOJ
(215) 597-7405
(215) 597-8838  (fax)


-----Original Message-----
From: Hammond, Scott
Sent: Tuesday, January 25, 2005 8:43 PM
To: Connolly, Robert
Subject: FW: Work in progress



-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 8:08 PM
To: Hammond, Scott
Subject: RE: Work in progress


Scott:

Thanks for all the helpful information, which was great.  We will cite a bunch of it in the article.  Is the termination letter you sent to SNSA part of the public record (dated 1/15/03)?  If so, we'd like to quote directly from letter concerning the Court's misstatement about the Division's position on SNSA's cooperation.

Best,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 6:30 PM
To: Walden, James
Subject: RE: Work in progress

2

I just sent you a fax with transcripts and exhibits from the public record which put into context the representations made by counsel for the applicant about Stolt's withdrawal from the conspiracy in March 02 as well as our statement that if the letters sent by Stolt to its competitors to effectuate the withdrawal were simply a "head fake" then the company would be out of the program. I'm around tonight or tomorrow if you want to discuss.

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 4:49 PM
To: Hammond, Scott
Subject: RE: Work in progress

███████████████████████████████ (b)(6)

Thanks,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 2:51 PM
To: Walden, James
Subject: RE: Work in progress

thanks, what is your fax?

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 1:04 PM
To: Hammond, Scott
Subject: RE: Work in progress

████████████████ (b)(6)

Thanks again for your input.

Best,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 10:09 AM
To: Walden, James
Subject: RE: Work in progress

Jim -- I need your phone number. Call me. I have some comments on what you have sent me so far.

Scott

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 12:02 AM
To: Hammond, Scott
Subject: Work in progress

Scott:

3

Attached is a very rough draft of the article. This first section is most complete, while the second and third (which will be shorter) are coming along. In light of the finding's of my research and the harsh view I take of the Stolt-Nielsen opinion, I thought it would be helpful to have your reactions early (if you have time).

Best,

Jim

<<ABAArticle.doc>>


Stolt-Nielsen
Article.doc

4

# ATTACHMENT 5

**Connolly, Robert**

| | |
|---|---|
| **From:** | Connolly, Robert |
| **Sent:** | Wednesday, January 26, 2005 9:21 AM |
| **To:** | Hammond, Scott |
| **Cc:** | 'Jwalden@OMM.com' |
| **Subject:** | RE: Work in progress |

[REDACTED]

(b)(5)

Robert E. Connolly
Chief
Philadelphia Office
Antitrust Division, USDOJ
(215) 597-7405
(215) 597-8838   (fax)


-----Original Message-----
From: Hammond, Scott
Sent: Tuesday, January 25, 2005 8:43 PM
To: Connolly, Robert
Subject: FW: Work in progress

[REDACTED]

(b)(5)
(b)(6)

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 8:08 PM
To: Hammond, Scott
Subject: RE: Work in progress


Scott:

Thanks for all the helpful information, which was great.  We will cite a
bunch of it in the article.  Is the termination letter you sent to SNSA
part of the public record (dated 1/15/03)?  If so, we'd like to quote
directly from letter concerning the Court's misstatement about the
Division's position on SNSA's cooperation.

Best,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 6:30 PM
To: Walden, James

1

Subject: RE: Work in progress

I just sent you a fax with transcripts and exhibits from the public
record which put into context the representations made by counsel for
the applicant about Stolt's withdrawal from the conspiracy in March 02
as well as our statement that if the letters sent by Stolt to its
competitors to effectuate the withdrawal were simply a "head fake" then
the company would be out of the program.  I'm around tonight or tomorrow
if you want to discuss.

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 4:49 PM
To: Hammond, Scott
Subject: RE: Work in progress

          While I am at it, my cell phone is       (b)(6)

Thanks,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 2:51 PM
To: Walden, James
Subject: RE: Work in progress

thanks, what is your fax?

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 1:04 PM
To: Hammond, Scott
Subject: RE: Work in progress

By the way, it is: ▇▇▇▇▇▇▇   (b)(6)

Thanks again for your input.

Best,

Jim

-----Original Message-----
From: Scott.Hammond@usdoj.gov [mailto:Scott.Hammond@usdoj.gov]
Sent: Tuesday, January 25, 2005 10:09 AM
To: Walden, James
Subject: RE: Work in progress

Jim -- I need your phone number.  Call me.  I have some comments on what
you have sent me so far.

Scott

-----Original Message-----
From: JWalden@OMM.com [mailto:JWalden@OMM.com]
Sent: Tuesday, January 25, 2005 12:02 AM
To: Hammond, Scott
Subject: Work in progress

Scott:

Attached is a very rough draft of the article.  This first section is
most complete, while the second and third (which will be shorter) are
coming along.  In light of the finding's of my research and the harsh
view I take of the Stolt-Nielsen opinion, I thought it would be helpful
to have your reactions early (if you have time).

Best,

Jim

 <<ABAArticle.doc>>

3

Exhibit 13



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                  *Washington, D.C. 20530*

OCT 1 3 2005


Ms. Ruta K. Skucas
White & Case LLP
701 Thirteenth Street NW.
Washington, DC 20005

     Re: Request No. 05-071

Dear Ms. Skucas:

     This is to advise you that your administrative appeal from the action of the Antitrust Division on your request for information from the files of the Department of Justice was received by this Office on October 5, 2005.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0062**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

              Sincerely,

              Priscilla Jones
              Chief, Administrative Staff