## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STOLT-NIELSEN TRANSPORTATION GROUP LTD. )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Civil Action No. 05-2217 (RJL) |

### ANSWER TO THE COMPLAINT

Defendant U.S. Department of Justice ("DOJ"), by its undersigned attorneys, hereby answers the complaint as follows:

### First Defense

The complaint fails to state a claim upon which relief can be granted.

### Second Defense

In response to the numbered paragraphs of the complaint, defendant admits, denies, or otherwise states as follows:

1.  Defendant admits that this is a civil action for declaratory and injunctive relief brought pursuant to the Freedom of Information Act ("FOIA"). Defendant denies the remainder of the allegations in ¶ 1.

2.  Defendant acknowledges the existence of the statutes referenced in ¶ 2 but denies that they necessarily confer subject matter jurisdiction over this action.

3.      Admit.

4-5.  Defendant lacks sufficient information with regard to the details of the business activities of Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") and Stolt-Nielsen S.A. ("SNSA") to admit or deny the allegations in ¶¶ 4-5.

6.  Defendant admits that the suit is styled *Stolt-Nielsen Transportation Group Ltd. v. United States of America*.  Defendant denies that the U.S. is a proper party.

**Factual Background**

I.      **The Amnesty Agreement**

7-20.  Defendant admits that Paul E. O'Brien, former General Counsel and Senior Vice-President, Projects, for Stolt-Nielsen filed suit in June 2002 against Stolt-Nielsen claiming he was constructively discharged from the company.  In November 2002, O'Brien amended his complaint and specified that his resignation was caused by,  among other things,  Stolt-Nielsen's failure to terminate its participation in an illegal price-fixing conspiracy when he complained about it to senior Stolt-Nielsen management.  On November 22, 2002, the WALL STREET JOURNAL published an article about O'Brien's suit and his allegation that Stolt-Nielsen had been engaged in "illegal antitrust activities" that violate U.S. and international law "against price-fixing and other illegal collusive conduct."

Also on November 22, 2002, based in part upon the information in the WALL STREET JOURNAL article published the same day, the Philadelphia Field Office of the Antitrust Division, Department of Justice, was authorized to investigate suspected collusion in the parcel tanker shipping industry.

The Antitrust Division has a Corporate Leniency Program under which a company can receive protection from prosecution if it meets certain conditions.  Among these conditions are that a company must have taken prompt and effective action to cease its illegal behavior upon discovery by its corporate

counsel and it must provide complete and truthful cooperation in the investigation.

After the news of Stolt-Nielsen's criminal activity became public, Stolt-Nielsen contacted the Antitrust Division to attempt to negotiate conditional leniency.

The Antitrust Division and Stolt-Nielsen had numerous phone calls and meetings to determine if Stolt-Nielsen was eligible for leniency in light of O'Brien's discovery of the crime and his allegation that it continued after he complained to senior management. Based on assurances from Stolt-Nielsen that it had taken prompt and effective action to end its participation in the criminal conspiracy, on January 15, 2003 the Division conditionally accepted Stolt-Nielsen into its Corporate Leniency Program. The written agreement was conditioned both on verification of Stolt-Nielsen's representation that it "took prompt and effective action to terminate its part in the anticompetitive activity being reported upon discovery of the activity" and on Stolt-Nielsen's agreement "to provide full, continuing and complete cooperation to the Antitrust Division."

On February 5, 2003, the Antitrust Division interviewed two senior Stolt-Nielsen executives, the only two Stolt-Nielsen witnesses it spoke to pursuant to the conditional leniency agreement. The first witness, Andrew Pickering, was not in Stolt-Nielsen's U.S. headquarters when O'Brien demanded that Stolt-Nielsen cease its illegal activity because he had been transferred to Stolt-Nielsen's Singapore office in 2001. The other witness, Bjorn Jansen, repeated what Stolt-Nielsen counsel had earlier told the government; that Stolt-Nielsen had stopped conspiring in March 2002.

Shortly thereafter, the Antitrust Division received credible evidence that Stolt-Nielsen's representation about terminating its participation in the illegal conspiracy upon O'Brien's discovery of it was false. On April 8, 2003, the Antitrust Division notified Stolt-Nielsen that it was no longer required to cooperate with the investigation since there was doubt that its conditional leniency would ever ripen into actual leniency due to its misrepresentations. Pursuant to the terms of the conditional leniency agreement, the Division proceeded to investigate the truthfulness of Stolt-Nielsen's representations.

The Antitrust Division received cooperation from two corporate subjects of the investigation, who began to cooperate before Stolt-Nielsen's requirement to cooperate was suspended. Odfjell Seachem AS (Odfjell) agreed to plead guilty and cooperate and was fined $42.5 million. Its Chairman, Bjorn Sjaastad, was sentenced to four months in prison and fined $250,000. Odfjell Vice-President Erik Nilsen was sentenced to three months in prison and fined $25,000. Jo Tankers BV, another subject, agreed to plead guilty and cooperate. Jo Tankers was fined $19.5 million. Jo Tanker's former Co-Managing Director, Hendrikus Van Westenbrugge, was sentenced to three months in prison and fined $75,000.

All of these defendants pleaded to conspiring to allocate customers, fix prices, and rig bids for parcel tanker shipping contracts until at least November 2002, nine months after Stolt-Nielsen allegedly had withdrawn from the conspiracy. Pursuant to the United States Sentencing Guidelines, each defendant received a reduced sentence for their cooperation, in part, because each defendant supplied detailed evidence of the conspiracy during the period March 2002 to November 2002 which had been withheld from the government by Stolt-Nielsen.

After Bjorn Jansen was given the opportunity to get a personal attorney, he recanted what he had told the government when interviewed on February 5, 2003 in the presence of counsel for Stolt-Nielsen. Jansen conceded that, in fact, the conspiracy continued after Stolt-Nielsen's former counsel, Paul O'Brien, reported the conspiracy to company management.

On June 24, 2003, Richard B. Wingfield, Executive Vice-President and Managing Director, Tanker Trading, of Stolt-Nielsen, was criminally charged with conspiring to allocate customers, fix prices, and rig bids for parcel tanker shipping of products to and from the United States and elsewhere.

On February 6, 2004, Stolt-Nielsen and its parent SNSA commenced a civil action in the United States District Court for the Eastern District of Pennsylvania seeking to enjoin the Antitrust Division from seeking their indictment. The Court placed the action under seal. On March 2, 2004, the Antitrust

-4-

Division rescinded Stolt-Nielsen's conditional leniency based on two grounds: (1) that Stolt-Nielsen had falsely represented in the agreement that it had taken prompt and effective action to terminate its anticompetitive activity upon discovering it; and (2) that Stolt-Nielsen had failed to cooperate fully by withholding material evidence regarding the conspiracy.

At a two day hearing on April 13-14, 2004, John Nannes, counsel for Stolt-Nielsen, and James Griffin, Deputy Assistant Attorney General for Criminal Enforcement for the Antitrust Division, testified about the conditional leniency negotiations. Neither side called any additional witnesses although the Antitrust Division submitted extensive grand jury material to the Court ex parte which detailed the continuation of the conspiracy until November 2002. At the hearing, counsel for Stolt-Nielsen conceded that, despite the obligation to provide complete and truthful cooperation, the company provided the government with no evidence of the conspiracy continuing past March 2002.

On January 14, 2005, the District Court entered final judgment in favor of Stolt-Nielsen and enjoined the Antitrust Division from seeking an indictment of Stolt-Nielsen, SNSA, or Richard Wingfield. The Court found that Stolt-Nielsen was not required to cease its illegal activity by March 2002 because the conditional leniency agreement did not specifically mention that date. The Court also found that the government received the benefit of its bargain under the conditional leniency agreement because "[Stolt-Nielsen's] partners in the conspiracy were prosecuted and convicted and the conspiracy has been terminated." Stolt-Nielsen S.A. v. U.S., 352 F. Supp. 2d 553, 562 (E.D. Pa. 2005). Under its interpretation of "benefit of the bargain" the Court did not reach whether Stolt-Nielsen had offered complete and truthful cooperation as required under the conditional leniency agreement. Nor did the Court determine whether Stolt-Nielsen's representation that it took prompt and effective action to end its anticompetitive activity upon discovery was true. The Court simultaneously granted the United States's motion to unseal the action, including the trial transcripts and exhibits.

The United States has appealed the District Court ruling on the grounds that: (1) the District

-5-

Court should not have enjoined the United States from seeking an indictment because such an injunction infringes the Constitutional authority granted the Executive Branch to determine whether to file a criminal case; (2) Stolt-Nielsen had an adequate remedy at law because it could assert the conditional leniency agreement as a defense if indicted, and under Supreme Court precedent, being indicted and forced to assert a defense is not irreparable injury; and (3) the District Court's finding that Stolt-Nielsen had not breached the conditional leniency agreement was wrong as a matter of law because the Court failed to address the key requirements under the agreement–whether Stolt-Nielsen terminated its participation in the conspiracy promptly and effectively upon discovering it and whether Stolt-Nielsen provided full and complete cooperation.  This appeal is currently pending before the United States Court of Appeals for the Third Circuit.

Defendant denies the remainder of the allegations in ¶¶ 7-16.

## II.    Comments about the Antitrust Division's Corporate Leniency Program.

17.  Defendant admits the current Antitrust Division Corporate Leniency Program was instituted in August 1993.  Since that time, by providing incentives for conspirators to "break ranks" and cooperate with the Division, the program has been enormously successful in exposing and prosecuting many regional, national and international price-fixing cartels.  In fact, the program is the Division's most effective generator of international cartel cases, and is the Justice Department's most successful leniency program.[1]  The program has resulted in over $2 billion in criminal fines and jail sentences for both U.S.

---

[1]    James M. Griffin, Status Report:  Corporate Leniency Program, Speech Before the ABA's Antitrust Law Section's Criminal Practice and Procedure Committee (March 28, 2001), *available at* http://www.usdoj.gov/atr/public/speeches/8063.htm; see also Scott Hammond, Detecting and Deterring Cartel Activity Through An Effective Leniency Program, Speech Before the International Workshop on Cartels (Nov. 21-22, 2000), *available at* http://www.usdoj.gov/atr/public/speeches/9928.htm ("Over the last five years, the United States' Corporate Leniency Program ('Amnesty Program') has been responsible for detecting and cracking more international cartels than all of our search warrants, secret audio or videotapes, and FBI interrogations combined.  It is, unquestionably, the single greatest investigative tool available to anti-cartel enforcers.").

and foreign executives who have cheated American consumers.[2]  Defendant admits that part of the success of the Corporate Leniency Program has been the Division's willingness through speeches and other guidance, to explain to the antitrust bar how the program works.  These speeches are relied on by the antitrust bar in giving counsel to their corporate clients.  In fact, in its civil suit seeking an injunction against being indicted, Stolt-Nielsen cited many speeches given by the Antitrust Division regarding the amnesty program.  According to Stolt-Nielsen's civil lawsuit, Stolt-Nielsen used speeches by Division officials and other public pronouncements about the leniency program in deciding whether to seek leniency.  The Division's public comments regarding Stolt-Nielsen are addressed further in ¶¶ 19-20 below.  Defendant denies the remaining allegations in ¶ 17.

18.  Defendant admits that Agent Sharp spoke to a major worldwide shipping publication but denies that the quotes attributed to him are accurate.  Defendant denies the remaining allegations in ¶ 18.

19 - 20.  Defendant admits that since 1993, in over 100 leniency cases, the Division had never revoked a conditional corporate leniency until it revoked Stolt-Nielsen's conditional leniency.  The revocation generated many questions from the antitrust bar as to the Division's future interpretation and application of the leniency program.  The facts which led to the only revocation in the history of the Corporate Leniency Program were of very high interest to the antitrust bar in advising their clients as to whether to seek leniency.  After the District Court opinion was publicly issued, and after the hearing record was unsealed and made public, the Division responded to such inquiries by discussing the revocation of Stolt-Nielsen's amnesty and answering questions about it in public fora, such as ABA panel discussions.  The Division believed such comments were necessary for the guidance of the antitrust bar in the continued use of the amnesty program.  Defendant denies the remaining allegations in ¶¶ 19-20.

---

[2]    Scott D. Hammond, An Update of the Antitrust Division's Criminal Enforcement Program, Speech before the ABA Antitrust Law Section (Nov. 16, 2005), *available at* http://www.usdoj.gov/atr/public/speeches/213247.htm.

21.  Defendant admits that because the Antitrust Division had never revoked a conditional leniency, and because the District Court opinion seemed to be contrary to well-established law, legal commentators have written about the decision.  See James Walden, *The Curious Case of Stolt-Nielsen S.A. v. United States*, ANTITRUST SOURCE, May 2005; Donald Baker, *True Confessions*, LEGAL TIMES, September 26, 2005.  Both Walden and Donald Baker contacted the Division regarding their articles and requested that the Division review the draft articles and alert them to any errors.  The Division reviewed the Walden and Baker articles for factual errors and referred the authors to the public record to correct factual errors.  Defendant denies the remaining allegations in ¶ 21.

22.  Defendant admits that Stolt-Nielsen filed a series of Freedom of Information Act (FOIA) requests with the Antitrust Division.  Defendant denies the remaining allegations in ¶ 22.

## III.  The FOIA Requests

23.  Defendant admits that plaintiff filed 6 FOIA requests.

### A.  First Request:  Meeting With John Nannes (ATFY05-071)

24.  Admit.

25.  Deny.  The acknowledgment letter was dated 7/14/2005.

26.  Admit.  Defendant released a document relating to the subject of plaintiff's request, but it is not directly responsive.

### B.  Second Request:  Speeches of Deputy Assistant Attorney General (DAAG) Scott Hammond (ATFY05-072)

27.  Defendant admits that plaintiff is correct that the second FOIA request lists, *inter alia*, 3 speeches it seeks as well as all other speeches by Mr. Hammond.

28.  Admit.

29.  Admit.

30.  Admit.

31.  Deny.  Defendant released documents responsive to plaintiff's request.

**C.  Third Request:  Opening of The Investigation (ATFY05-080)**

32.  Admit the first sentence of ¶ 32.  Defendant admits that Deputy Assistant Attorney General James Griffin gave limited testimony on April 13-14, 2004 about the opening of the parcel tanker investigation.

33.  Admit.

34.  Deny.  Defendant released documents responsive to plaintiff's request.

**D.  Fourth Request:  Antitrust Division Comments About Stolt-Nielsen at The International Competition Network (ATFY05-088)**

35.  Admit.

36.  Admit.

37.  Admit.  The document released pursuant to this request relates to the subject of the request but is not directly responsive.

**E.  Fifth Request:  Communications Between the Antitrust Division and The Authors Of *The Curious Case of Stolt-Nielsen (ATFY05-113)***

38.  Admit.

39.  Admit.

**F.  Sixth Request:  Antitrust Division Correspondence With The Press and Bar Associations About Stolt-Nielsen (ATFY05-131)**

40.  Admit.

41.  Admit.

42.  Admit the contents of the letter.  Defendant avers that some of the records released were responsive to this request.

**IV.  The Antitrust Division's Response to Stolt-Nielsen's FOIA Requests**

43.  Admit that defendant responded releasing 280 pages of documents.  Deny the remaining

allegations in ¶ 43.

**V.  The Administrative Appeal Filed by Stolt-Nielsen**

44.  Admit.

**A.    Allegation That The Division Failed to Demonstrate That It is Entitled to Withhold Any Documents**

45.  Admit first sentence of ¶ 45.  Admit that some of the information sought by plaintiff relates to communications with individuals uninvolved in the litigation with Stolt-Nielsen or the investigation into the parcel tanker industry.   Defendant denies the remaining allegations in ¶ 45.

46.  Admit first sentence of ¶ 46.  Admit that defendant inadvertently redacted information from an email from Robert Connolly of the Antitrust Division to Mr. Hammond, dated January 26, 2005, that had also been sent to James Walden, a private sector attorney and the author of *The Curious Case of Stolt-Nielsen S.A. v. United States*.   The information that was mistakenly withheld has been provided to plaintiff.  Defendant denies all remaining allegations in ¶ 46.

**B.    Allegation That The Division Failed to Create a Vaughan Index**

47.  Deny that the Antitrust Division had an obligation to create a Vaughan Index when responding to Stolt-Nielsen's FOIA requests.

**C.    Allegation That The Division Failed to Explain Whether Certain Categories of Document are Being Withheld Pursuant To A Statutory Exemption Or Are Not in Existence**

48.  Deny.

**VI.    The Department of Justice Acknowledges Stolt-Nielsen's Appeal, But Did Not Act On That Appeal**

49.  Defendant admits that the Office of Information and Privacy (OIP) corresponded with plaintiff on October 13, 2005, assigning appeal numbers 06-0062 through 06-0067 to the FOIA requests plaintiff appealed.  Defendant lacks sufficient information to know when plaintiff received the letter.

50.  Admit.

51.   Defendant admits that OIP did not provide a specific time frame in which it would respond. Defendant denies the remaining allegations in ¶ 51.

52.   Defendant acknowledges the existence of the statute referenced in ¶ 52.

53.   Admit.

54.   Defendant admits OIP did not have an opportunity to decide plaintiff's administrative appeal before it filed suit.  OIP closed plaintiff's appeal when plaintiff initiated this lawsuit.  Defendant denies the remaining allegations in ¶ 54.

55.   The allegations contained in ¶ 55 are conclusions of law to which no response is required.

### COUNT ONE
### (Failure to Provide Documents Responsive to FOIA Requests)

56.   Defendant incorporates its responses to ¶¶ 1 through 55 as though fully set forth herein.

57.   Defendant acknowledges the existence of the statute referenced in ¶ 57 but denies the remaining allegations in ¶ 57.

58.   Defendant admits that Stolt-Nielsen made FOIA requests for records but denies the remaining allegations in ¶ 58.

59.   Deny.

### COUNT TWO
### (Failure to Provide A Vaughan Index)

60.   Defendant incorporates its responses to paragraphs 1 through 59 as through fully set forth herein.

61.   Defendant acknowledges the existence of the case law referenced in ¶ 61 but denies that it had an obligation to provide a *Vaughan* index with its FOIA responses.

62.   Defendant admits that it has not provided a *Vaughan* index.  Defendant denies the remaining allegations in ¶ 62.

63.   Deny.

Further answering the complaint, defendant denies every allegation not expressly admitted or qualified.

Dated:  January 31, 2006                        Respectfully submitted,

_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney

_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-2332