UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States of America,

*Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv474 (RJL)

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") respectfully moves for summary judgment on Count One of its complaint in Civil Action No. 05cv2217 (RJL). Specifically, Stolt-Nielsen seeks an order of this Court directing the Antitrust Division of the United States Department of Justice to produce all agency records responsive to five of the six Freedom of Information Act ("FOIA") requests that are the subject of Civil Action No. 05cv2217: ATFY05-072 (speeches of Deputy Assistant Attorney General Scott Hammond); ATFY05-080 (opening of the investigation); ATFY05-088 (Antitrust Division comments about Stolt-Nielsen at the International Competition Network); ATFY05-113 (communications between the Antitrust Division and the authors of *The Curious Case of Stolt-Nielsen*); and ATFY05-131 (Antitrust Division correspondence with the press and bar associations about Stolt-Nielsen). Stolt-Nielsen is not moving for summary judgment on ATFY05-071 (meeting with John Nannes) and seeks no further relief concerning that request.

On May 13, 2006, Stolt-Nielsen moved for partial summary judgment on Count One of its complaint in Civil Action No. 06cv474 (RJL).  In that motion, Stolt-Nielsen moved for summary judgment concerning all of the FOIA requests that formed the basis of that lawsuit, except ATFY06-026 (communications between the Antitrust Division and the International Competition Network about Stolt-Nielsen).  Stolt-Nielsen now moves for summary judgment with respect to ATFY06-026 and seeks an order of this Court directing the Antitrust Division to produce all agency records responsive to this request.

The reasons supporting this motion are contained in the attached memorandum of points and authorities.

Pursuant to Local Civil Rule 7(f), Stolt-Nielsen respectfully requests an oral hearing on this motion, at the earliest date that is convenient to the Court.

Dated:  August 18, 2006                     Respectfully submitted,

                                            WHITE & CASE LLP

                                            By: _____
                                            J. Mark Gidley (D.C. Bar No. 417280)
                                            Christopher M. Curran (D.C. Bar. No. 408561)
                                            Lucius B. Lau (D.C. Bar No. 446088)
                                            701 Thirteenth St., N.W.
                                            Washington, D.C.  20005
                                            tel.: (202) 626-3600
                                            fax: (202) 639-9355

                                            *Counsel to Stolt-Nielsen Transportation
                                            Group Ltd.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., <br><br> *Plaintiff*, <br><br> v. <br><br> United States of America, <br><br> *Defendant*. | Consolidated Cases <br> Civil Action No. 05cv2217 (RJL) <br> Civil Action No. 06cv474 (RJL) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**WHITE & CASE** LLP

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar. No. 408561)
Lucius B. Lau (D.C. Bar. No. 446088)
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation
Group Ltd.*

August 18, 2006

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................... iii

**INTRODUCTION** ................................................................................... 1

**STATEMENT OF FACTS** ...................................................................... 2

I.     The Antitrust Division's Amnesty Program ........................................ 2

II.    The Amnesty Agreement And Stolt-Nielsen's Efforts To Preserve Its Amnesty .............. 4

III.   The Antitrust Division's Communications With The Public ............................ 6

       A.    Public Remarks About Stolt-Nielsen ......................................... 6

       B.    The Assistance Provided By The Antitrust Division To Private Authors ............. 8

       C.    The Antitrust Division's Communications With The International Competition Network ................ 8

       D.    The Antitrust Division's Public Testimony Regarding The Opening Of The Parcel Tanker Investigation ............ 9

**STANDARD OF REVIEW** .................................................................... 10

**ARGUMENT** ......................................................................................... 10

I.     The Motion For Partial Summary Judgment Filed By Stolt-Nielsen On May 12, 2006 .......... 10

II.    The FOIA Requests Made By Stolt-Nielsen At Issue In This Motion ........................ 11

       A.    Speeches Made By Antitrust Division Officials About Stolt-Nielsen ................ 11

             1.    Exemption (b)(5):  Inter-Agency Or Intra-Agency Memoranda Or Letters ............ 12

             2.    Exemption (b)(6):  Unwarranted Invasion Of Personal Privacy .............. 14

             3.    Exemption (7)(A):  Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Interfere With Enforcement Proceedings ............ 14

             4.    Exemption (7)(C):  Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Constitute An Unwarranted Invasion Of Personal Privacy ............ 15

B.    Opening Of The Parcel Tanker Industry Investigation In November 2002 .......... 16

    1.    Exemption (b)(3):  Matters That Are Specifically Exempted From Disclosure By Statute ................................................................ 17

    2.    Federal Rule Of Criminal Procedure 6(e)................................... 18

    3.    Exemption (7)(D):  Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Disclose The Identity Of A Confidential Source................................................ 19

C.    International Competition Network Documents About Stolt-Nielsen ................. 19

D.    Antitrust Division Documents Related To *The Curious Case Of Stolt-Nielsen* ................................................................................................ 20

E.    Communications To Or From The Press, Bar Associations, Or Other Entities Regarding Stolt-Nielsen Or The Investigation Into The Parcel Tanker Industry............................................................................. 21

III.    Adequacy Of Search In Response To Stolt-Nielsen's FOIA Requests ............................ 22

**CONCLUSION** ................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

PAGE

*Albuquerque Publ'g Co. v. U.S. Dep't of Justice*,
   726 F. Supp. 851 (D.D.C. 1989)................................................................................15

*Army Times Publ'g  Co. v. Dep't of Air Force*,
   998 F.2d 1067 (D.C. Cir. 1993)................................................................................13

*Brownstein Zeidman & Schomer v. Dep't of Air Force*,
   781 F. Supp. 31 (D.D.C. 1991)................................................................................12

*Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*,
   219 F. Supp. 2d 106 (D.D.C. 2002)........................................................................23

*CEI Washington Bureau Inc. v. U.S. Dep't of Justice*,
   404 F. Supp. 2d 172 (D.D.C. 2005)...................................................................10, 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................10

*Chilivis v. S.E.C.*,
   673 F.2d 1205 (11th Cir. 1982) ...............................................................................13

*Computer Prof'ls for Social Responsibility v. Secret Service*,
   72 F.3d 897 (D.C. Cir. 1996) ...................................................................................16

*Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agriculture*
   744 F. Supp. 314 (D.D.C. 1990)...............................................................................13

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
   331 F.3d 918 (D.C. Cir. 2003)..................................................................................18

*Davis v. U.S. Dep't of Justice*,
   968 F.2d 1276 (D.C. Cir. 1992).................................................................................16

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ...........................................................................................14, 15

*Friends of Blackwater v. U.S. Dep't of Interior*,
   391 F. Supp. 2d 115 (D.D.C. 2005).....................................................................22, 23

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*,
   656 F.2d 856 (D.C. Cir. 1981).................................................................................18

*Goland v. CIA,*
    707 F.2d 339 (D.C. Cir. 1978) ....................................................................... 18

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,*
    2006 WL 696053 (D.D.C. Mar. 20, 2006) .................................................. 12

*In re Sealed Case No. 99-3091,*
    192 F.3d 995 (D.C. Cir. 1999)...................................................................... 18

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
    337 F. Supp. 2d 146 (D.D.C. 2004)............................................................ 18

*King v. U.S. Dep't of Justice,*
    830 F.2d 210 (D.C. Cir. 1987)...................................................................... 15

*Mapother v. Dep't of Justice,*
    3 F.3d 1533 (D.C. Cir. 1993)........................................................................ 15

*Mead Data Ctr., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)...................................................................... 12

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986)...................................................................... 22

*Mokhiber v. U.S. Department of Treasury,*
    335 F. Supp. 2d 65 (D.D.C. 2004)............................................................... 13

*Nation Magazine, Washington Bureau v. U.S. Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995)........................................................................ 22

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................................................................... 12

*NYC Apparel FZE v. U.S. Customs & Border Protection,*
    2006 WL 167833 (D.D.C. January 23, 2006) ....................................... 22, 23

*Oglesby v. U.S. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990)........................................................................ 22

*Rockwell Int'l Corp v. U.S. Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001)...................................................................... 13

*Scheer v. U.S. Dep't of Justice,*
    35 F. Supp. 2d 9 (D.D.C. 1999).................................................................... 15

*SEC v. Dresser Indus., Inc.,*
   628 F.2d 1368 (D.C. Cir. 1980) ........................................................................ 18

*Stern v. Federal Bureau of Investigation,*
   737 F.2d 84 (D.C. Cir. 1984) .......................................................................... 15

*Stolt-Nielsen S.A. v. United States,*
   352 F. Supp. 2d 553 (E.D.Pa. 2005) ................................................................ 5

*Stolt-Nielsen S.A. v. United States,*
   442 F.3d 177 (3d Cir. 2006) ..................................................................... 4, 5, 6

*U.S. Dep't of Justice v. Landano,*
   508 U.S. 165 (1993) ........................................................................................ 19

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press,*
   489 U.S. 749 (1989) ................................................................................... 15, 23

*United States v. Metropolitan St. Louis Sewer Dist.,*
   952 F.2d 1040 (8th Cir. 1992) ........................................................................ 13

*Washington Post Co. v. U.S. Dep't of Health & Human Services,*
   690 F.2d 252 (D.C. Cir. 1982) ...................................................................... 14

*Washington Post Co. v. U.S. Dep't of Justice,*
   863 F.2d 96 (D.C. Cir. 1988) ......................................................................... 18

*Weisberg v. U.S. Dep't of Justice,*
   705 F.2d 1344 (D.C. Cir. 1983) .................................................................... 23

*Weisberg v. U.S. Dep't of Justice,*
   745 F.2d 1476 (D.C. Cir. 1984) .................................................................... 22

*Wilderness Soc'y v. U.S. Dep't of Interior,*
   344 F. Supp. 2d 1 (D.D.C. 2004) .................................................................. 22

*Williams v. Federal Bureau of Investigation,*
   69 F.3d 1155 (D.C. Cir. 1995) ...................................................................... 19

*Wilson v. Drug Enforcement Admin.,*
   414 F. Supp. 2d 5 (D.D.C. 2006) .................................................................. 19

## STATUTES

5 U.S.C. § 552 ..................................................................................*passim*

## OTHER

28 C.F.R. § 50.2 (2004) ...........................................................................1, 6

Fed. R. of Civ. P. 56(c)................................................................................10

Fed. R. of Crim. P. 6(e) ........................................................................*passim*

Jimmy Carter, *We Need Fewer Secrets*, The Washington Post,
    July 3, 2006 (2006 WLNR 11473697) ...................................................23

## INTRODUCTION

For the past three years, Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") and the Antitrust Division of the United States Department of Justice ("Antitrust Division") have had a dispute concerning promises made by the Antitrust Division in its 2003 Amnesty Agreement with Stolt-Nielsen. Stolt-Nielsen self-reported anticompetitive conduct in reliance on the Antitrust Division's public promises of a "complete pass" from criminal prosecution. Stolt-Nielsen approached the Antitrust Division to resolve the dispute about the Agreement amicably and, when that failed, obtained judicial relief in federal district court.

The Division responded by engaging in an unprecedented and improper public relations campaign against Stolt-Nielsen, involving numerous public speeches about the case, statements before informal international bodies, and working with private authors writing about Stolt-Nielsen. The Antitrust Division's public statements directly contravene 28 C.F.R. § 50.2, which bars most public statements about ongoing cases. All of the Division's correspondence and documents leading to public statements about Stolt-Nielsen are subject to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and must be disclosed to Stolt-Nielsen immediately.

Stolt-Nielsen commenced this FOIA action to obtain access to the papers underlying the Antitrust Division's publicity campaign against Stolt-Nielsen. Stolt-Nielsen's position is simple. By choosing to deviate from its regulatory and traditional bar on public communications about ongoing litigation, the Antitrust Division opened the door to providing these materials to Stolt-Nielsen and the public under FOIA. The federal government has an obligation to operate openly, especially with respect to its public speechmaking and pronouncements. This obligation applies with even greater force where, as here, the government publicly promotes its Amnesty Program to entice firms to self-report illegal conduct to the government and touts the Program's purported

"transparency." The need for sunshine is particularly acute where the government's public statements are at variance with the application of the Amnesty Program to Stolt-Nielsen.

For 13 years, the Antitrust Division has promised amnesty applicants a "complete pass" from criminal prosecution and equated amnesty with not indicting an amnesty applicant. Despite these public statements, the Division has reneged on that promise and taken the position in litigation before the Third Circuit that its Amnesty Program now only protects Stolt-Nielsen from "conviction" rather than "indictment." It is in the public interest to provide public access to the Division's press campaign about its Amnesty Program and other amnesty-related materials.

## STATEMENT OF FACTS

### I.    The Antitrust Division's Amnesty Program

Since 1993, the Antitrust Division has operated a Corporate Leniency Program whereby it offers a "complete pass" from criminal prosecution and criminal fines to the first company in an industry that reports conduct to the Division that constitutes a criminal violation of the Sherman Act. Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute ("SF") ¶ 1 (Corporate Leniency Policy); (Hammond Nov. 21, 2000 speech at 2 n.1) ("Under the U.S. program, corporate amnesty and corporate leniency are used interchangeably to mean a *complete pass* from criminal prosecution and zero dollars in fines for the anticompetitive conduct") (emphasis added).

From the 1993 inception of the modern antitrust Amnesty Program, the *sine qua non* of the promise of amnesty has been freedom from indictment. This promise is contained in the Amnesty Program announcement dated August 10, 1993, which still appears on the Division's web site, and in the contemporaneous speeches of Assistant Attorney General Anne Bingaman. SF ¶ 1 (Corporate Leniency Policy) ("'Leniency' means *not charging* such a firm criminally for the activity being reported") (emphasis added); (Bingaman Aug. 10, 1993 speech at 7)

(announcing adoption of current Corporate Amnesty Policy and equating amnesty to "*not seeking indictment of corporations*") (emphasis added); (Bingaman Oct. 21, 1993 speech at 13) (same). The Antitrust Division's *Grand Jury Manual* has equated amnesty with freedom from indictment continuously as well. SF ¶ 1 (Antitrust Division Grand Jury Manual at V-52) (corporate amnesty means "*not indicting such a firm*") (emphasis added).

In numerous public speeches, the Antitrust Division has also advertised the "transparency" of its amnesty program, both in its elements and as it is applied in operation. *See, e.g.,* Scott D. Hammond, "When Calculating The Costs And Benefits Of Applying For Corporate Amnesty, How Do You Put A Price Tag On An Individual's Freedom?" at 1 (March 8, 2001) ("we made the requirements for entering the program as transparent and attainable as possible"); Gary R. Spratling, "Transparency In Enforcement Maximizes Cooperation From Antitrust Offenders," at 2 (Oct. 15, 1999) ("transparency must include not only explicitly stated standards and policies, but also clear explanations of prosecutorial discretion in applying those standards and policies"); Scott D. Hammond, "Detecting And Deterring Cartel Activity Through An Effective Leniency Program," at 7 (Nov. 21, 2000) ("Our Amnesty Program by its nature is transparent because we have eliminated, to a great extent, the exercise of prosecutorial discretion in its application").

"In August 1993, the Division revised its Corporate Leniency Program to make it easier and *more attractive for companies to come forward* and cooperate with the Division." Scott D. Hammond, "An Update of the Antitrust Division's Criminal Enforcement Program," at 9 (Nov. 16, 2005) (emphasis added). "As a result of these changes, the Leniency Program is the Division's most effective generator of international cartel cases, and it is the Department's most successful leniency program." *Id.* at 9-10. More than 100 companies have responded to the

3

Antitrust Division's solicitation and thereby given the Division its largest criminal fines ever: "Since the Division revised its leniency program, cooperation from amnesty applications has resulted in scores of convictions and more than $2 billion in criminal fines." *Id.*

The Division acknowledges the public interest in the treatment of Stolt-Nielsen, because this is the first-ever purported revocation of amnesty by the Division. In its Answer, the Antitrust Division states that, "since 1993, *in over 100 leniency cases*, the Division had never revoked a conditional corporate leniency until it revoked Stolt-Nielsen's conditional leniency." Answer, Civil Action No. 05cv2217, at p. 7 (emphasis added).

## II.    The Amnesty Agreement And Stolt-Nielsen's Efforts To Preserve Its Amnesty

Induced by the Antitrust Division's speeches promising amnesty to companies that voluntarily report illegal conduct, Stolt-Nielsen approached the Antitrust Division in late 2002.

On January 15, 2003, the Antitrust Division entered into a written amnesty agreement ("Amnesty Agreement") with Stolt-Nielsen. This agreement was based on the model amnesty agreement disseminated publicly by the Antitrust Division. In the Amnesty Agreement, the Division promised "not to *bring* any criminal prosecution" against Stolt-Nielsen (or that company's directors, officers, and employees) in exchange for information provided by Stolt-Nielsen concerning possible collusive activity in the parcel tanker industry violative of the Sherman Act. SF ¶ 5 (emphasis added).

Stolt-Nielsen adhered to its part of the bargain by reporting to the Antitrust Division evidence of a hard-core, criminal antitrust conspiracy in the parcel tanker industry. "Using the information provided by Stolt-Nielsen and its executives (including Wingfield), the Government secured guilty pleas from Stolt-Nielsen's co-conspirators, resulting in prison sentences for individual executives at those companies and fines totaling $62 million." *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177, 180 (3d Cir. 2006).

On April 8, 2003, in contravention of its obligations under the Amnesty Agreement, the Antitrust Division abruptly "suspended" Stolt-Nielsen's cooperation requirements. SF ¶ 6. A few months later, on June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was criminally charged with violations of the Sherman Act. SF ¶ 7. This action was also in contravention of the Antitrust Division's promise in the Amnesty Agreement not to prosecute Stolt-Nielsen's directors, officers, and employees.

On February 6, 2004, Stolt-Nielsen and Stolt-Nielsen S.A. commenced a civil action in the United States District Court for the Eastern District of Pennsylvania to enforce their rights under the Amnesty Agreement. SF ¶ 8. On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program. SF ¶ 9. In April 2004, the district court held a trial on the merits. SF ¶ 10.

On January 14, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Mr. Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). In so doing, the district court concluded that: (a) Stolt-Nielsen did not make any misrepresentation to the Antitrust Division; (b) Stolt-Nielsen fulfilled its promise to deliver evidence of the antitrust conspiracy; and (c) the Antitrust Division received the benefit of its bargain by obtaining successful convictions of the other members of the conspiracy. The Antitrust Division then appealed from the district court's judgment to the United States Court of Appeals for the Third Circuit.

On March 23, 2006, the Third Circuit issued an opinion, reversing the judgment of the district court. *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). The Third Circuit reversed the district court on the narrow grounds that the district court did not possess the

"authority" to enjoin a federal criminal indictment. *Id.* at 187. The Third Circuit did not rule on the merits of the case; rather, that court specifically stated that Stolt-Nielsen was entitled to have this issue heard post-indictment in a pre-trial motion to dismiss. *Id.* at 187 n.7. Stolt-Nielsen has since filed a petition for writ of certiorari with the Supreme Court. That petition is still pending.

## III.    The Antitrust Division's Communications With The Public

### A.    Public Remarks About Stolt-Nielsen

Since April 2003, when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement, the Antitrust Division has made repeated remarks to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of ***not*** commenting upon ongoing criminal matters. 28 C.F.R. § 50.2.

After the arrest of Richard Wingfield in 2003, FBI Special Agent John Sharp was interviewed by the press. SF ¶ 17. The Antitrust Division admits that the interview took place. Answer at p.10. In his interview with *Lloyd's List*, Special Agent Sharp noted that the Bureau had a "strong case" against Mr. Wingfield and that he expected "several more arrests" in the coming months. SF ¶ 17.

Scott D. Hammond, Deputy Assistant Attorney General for Criminal Enforcement for the Antitrust Division, has also made numerous speeches about Stolt-Nielsen. One such speech was his March 3, 2005 speech at the 19th Annual National Institute on White Collar Crime 2005 in Las Vegas, Nevada, where he stated that "the removal, or the attempt to remove Stolt from the Corporate Leniency Program" was the number one "blockbuster development" in recent months. SF ¶ 20. In this speech, Mr. Hammond also said that, "if you look at the record in this case, you will find that this is a company that deserved to be removed from the Leniency Program" because "[i]t did everything wrong, every step of the way."

Far from denying that the Division has embarked on a publicity campaign against Stolt-Nielsen, the Division acknowledges that it has spoken about the Stolt-Nielsen case and rationalizes its conduct based on the public's need to understand the first-ever revocation of in the 13-year history of the Amnesty Program. In its Answer, the Antitrust Division admits that it utilizes speeches about Stolt-Nielsen "to explain to the antitrust bar how the program works." Answer, Civil Action No. 05cv2217 (RJL), at p. 7. In its Answer, the Antitrust Division also admits that, after the Eastern District of Pennsylvania issued its decision in January 2005, it responded to inquiries "by discussing the revocation of Stolt-Nielsen's amnesty and answering questions about it in public fora, such as ABA panel discussions." *Id.* at p.10. The Antitrust Division also admits that Mr. Hammond spoke on the occasions identified by Stolt-Nielsen in its Complaint. *Id.* at p.8.

Thus, in justifying its unprecedented discussion of the facts of an ongoing lawsuit, the Division has admitted the strong public interest in the Stolt-Nielsen amnesty revocation – and correspondingly – the materials sought here:

> Defendant admits that since 1993, in over 100 leniency cases, the Division had never revoked a conditional leniency until it revoked Stolt-Nielsen's conditional leniency. ***The revocation generated many questions*** from the antitrust bar as to the Division's future interpretation and application of the leniency program. ***The facts which led to the only revocation in the history of the Corporate Leniency Program were of very high interest to the antitrust bar in advising their clients as to whether to seek leniency.*** After the District Court opinion was publicly issued, and after the hearing record was unsealed and made public, the Division responded to such inquiries by discussing the revocation of Stolt-Nielsen's amnesty and answering questions about it in public for a, such as ABA panel discussions. The Division believed ***such comments were necessary for the guidance of the antitrust bar*** in the continued use of the amnesty program.

Answer, Civil Action No. 05cv2217 (RJL), at p.7 (emphasis added).

Through two separate FOIA requests (ATR05-072 and ATR06-019), Stolt-Nielsen has requested Antitrust Division speeches and speech-related material relating to Stolt-Nielsen

7

matters. The Antitrust Division has indicated that it is withholding 83 pages of responsive documents.

### B.    The Assistance Provided By The Antitrust Division To Private Authors

The Antitrust Division has on two occasions assisted private authors with writing articles critical of Stolt-Nielsen and the district court's decision.

The first article, Jim Walden, Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, The Antitrust Source (March 2005), benefited from direct assistance by the Deputy Assistant Attorney General. The author of the article thanked the Deputy Assistant Attorney General for all of the helpful information he supplied, stating "[w]e will cite a bunch of it in the article." SF ¶ 22.

The second article, Donald L. Baker, *True Confessions*, Legal Times (September 26, 2005), also benefited from assistance from the Antitrust Division. The Antitrust Division reviewed a draft of Mr. Baker's article and provided Mr. Baker with its comments prior to publication. SF ¶ 23.

In FOIA request ATR05-113, Stolt-Nielsen requested that the Antitrust Division produce communications with the authors of *The Curious Case of Stolt-Nielsen*. The Antitrust Division produced certain documents in their entirety and 51 pages of redacted documents.

### C.    The Antitrust Division's Communications With The International Competition Network

The International Competition Network ("ICN") describes itself as "a project-oriented, consensus based, informal network of antitrust agencies from developed and developing countries that will address antitrust enforcement and policy issues of common interest and formulate proposals for procedural and substantive convergence through a results-oriented agenda and structure." SF ¶ 32.

In FOIA request ATR05-088, Stolt-Nielsen requested that the Antitrust Division produce its speeches, presentations and other communications to the ICN that discuss Stolt-Nielsen. The Antitrust Division has indicated that it is withholding 222 pages of responsive documents.

**D.    The Antitrust Division's Public Testimony Regarding The Opening Of The Parcel Tanker Investigation**

During the April 2004 trial in the Eastern District of Pennsylvania, the Antitrust Division offered a single witness — then-Deputy Assistant Attorney General James A. Griffin. During the trial, Mr. Griffin testified that the Antitrust Division's investigation into the parcel tanker industry opened on November 22, 2002. SF ¶ 11.

The Division has repeated this contention to this Court in its Answer in this action: "on November 22, 2002, based in part upon the information in the Wall Street Journal article published the same day, the Philadelphia Field Office of the Antitrust Division, Department of Justice was authorized to investigate suspected collusion in the parcel tanker shipping industry." Answer, Civil Action No. 05cv2217 (RJL), at p.2.

Mr. Griffin also testified, however, that, in order for an Antitrust Division investigation to be formally opened, "the paperwork has to go through." SF ¶ 11.

The question is not a mere technicality, but an important one for the public and the bar. The Division's Amnesty Policy Statements guarantees Part A Amnesty (automatic leniency) to parties that approach the Division "before an investigation has begun" (SF ¶ 1).

The *Vaughn* index produced by the Antitrust Division contains several references to a November *26*, 2002 memorandum — apparently being the "paperwork" submitted — from Antitrust Division attorneys to Mr. Hammond to begin the investigation. SF ¶ 11. This memorandum was withheld for several reasons, including that it purportedly "relates to an ongoing investigation . . . ." SF ¶ 11.

In FOIA request ATR05-080, Stolt-Nielsen requested that the Antitrust Division produce agency records concerning the opening of the parcel tanker investigation. The Antitrust Division has indicated that it is withholding 1,872 pages of responsive documents.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In a FOIA case, it is the government's "burden to establish that any exemption from disclosure applies." *CEI Washington Bureau Inc. v. U.S. Dep't of Justice*, 404 F. Supp. 2d 172, 175 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(4)(B)).

## ARGUMENT

**I.    The Motion For Partial Summary Judgment Filed By Stolt-Nielsen On May 12, 2006**

On May 12, 2006, Stolt-Nielsen filed a motion for partial summary judgment in Civil Action No. 06cv474 (RJL). That motion pertained to the following FOIA requests: ATFY06-003 (communications to or from certain private attorneys); ATFY06-002 (amnesty agreements from August 1993 to the present); ATFY06-019 (speeches made by certain Antitrust Division officials); ATFY06-038 (speeches made by certain Antitrust Division officials); and ATFY06-040 (communications to or from certain private attorneys). On June 27, 2006, Civil Action No. 06cv474 (RJL) was consolidated with this action. On July 5, 2006, the Court entered a minute

order that directed the defendant to respond to Stolt-Nielsen's partial summary judgment motion in Civil Action No. 06cv474 (RJL) by September 26, 2006. As a result, Stolt-Nielsen will not repeat here the arguments made in support of its pending partial summary judgment motion filed on May 12, 2006. The instant summary judgment motion pertains to six additional requests for information: five from Civil Action No. 05cv2217 (RJL) and ATFY06-026 (concerning the ICN) from Civil Action No. 06cv474 (RJL).

## II.    The FOIA Requests Made By Stolt-Nielsen At Issue In This Motion

### A.    Speeches Made By Antitrust Division Officials About Stolt-Nielsen

In its Second FOIA Request (designated as request number ATFY05-072), Stolt-Nielsen requested that the Antitrust Division produce speeches and speech-related material relating to Stolt-Nielsen. The Antitrust Division responded to this request on September 13, 2005 and March 28, 2006. Certain documents were produced in their entirety; others were produced in redacted form; and 36 pages of documents were withheld in their entirety.

In its *Vaughn* index, the Antitrust Division attempted to justify its redactions and withheld material by reference to several FOIA exemptions: (b)(5) (inter-agency or intra-agency memoranda or letters); (b)(6) (personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy); (7)(A)(records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings); and (7)(C)(records compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy).

For all of these redactions and withheld documents, it is the Antitrust Division's burden to demonstrate that a FOIA exemption applies. *See CEI Washington Bureau Inc.*, 404 F. Supp. 2d at 175 (the government has the "burden to establish that any exemption from disclosure applies"). And a FOIA exemption, when applicable, pertains to information, not to documents

11

containing the information. Thus, even if a FOIA exemption permits part of a document to be redacted, the remainder of the document must be produced. *See Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 2006 WL 696053, at *18 (D.D.C. Mar. 20, 2006) ("'The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material'") (quoting *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). For each document it has withheld in its entirety, the Antitrust Division must now demonstrate that a FOIA exemption allows it to withhold the ***entire*** document in question.

Because this FOIA request focuses upon speeches given by the Antitrust Division, any exemptions claimed by that entity warrants close scrutiny by the Court. As explained below, the disclosure of otherwise privileged material to the public waives the privilege in question. Thus, to the extent that the Antitrust Division seeks to withhold material that its has already disclosed in a speech, such an attempt must fail.

### 1. Exemption (b)(5): Inter-Agency Or Intra-Agency Memoranda Or Letters

Exemption (b)(5) permits the government to withhold documents constituting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In general, this definition establishes that communications between agencies and outside parties are not protected under Exemption (b)(5). *See Brownstein Zeidman & Schomer v. U.S. Dep't of Air Force*, 781 F. Supp. 31, 35 (D.D.C. 1991) ("While FOIA exemption 5 does protect intragovernmental deliberations, it does not cover negotiations between the government and outside parties."). Exemption 5 may include documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Here, the

Antitrust Division seeks to utilize the deliberative process and work product privileges as bases to withhold documents pursuant to this exemption.

The deliberative process exemption does not apply to purely factual matters or to factual sections of deliberative memoranda, unless the facts are "inextricably intertwined" with deliberative material. *Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agriculture*, 744 F. Supp. 314, 319 (D.D.C. 1990) (citation and internal quotation marks omitted); *see also Mokhiber v. U.S. Department of Treasury*, 335 F. Supp. 2d 65, 70 (D.D.C. 2004) ("Even accepting defendant's assertion that the factual material is a 'relatively small proportion of the deliberative sections of the settlement agreement,' the fact that the amount of factual information is minimal does not relieve the agency from the obligation to attempt to parse out and disclose purely factual material") (citing *Army Times Publ'g Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)). The Antitrust Division "bears the burden of showing that *no such segregable information exists*." *Mokhiber*, 335 F. Supp. 2d at 70 (emphasis added). Thus, having withheld entire documents based upon the deliberative process privilege, the Antitrust Division must now demonstrate that the factual material contained in such documents cannot be segregated from the deliberative information.

Information that may be otherwise protected by the attorney work-product doctrine and the deliberative process privilege is subject to waiver by the government's disclosure to third parties. *See Rockwell Int'l Corp v. U.S. Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001) (attorney work-product doctrine subject to waiver); *Chilivis v. S.E.C.*, 673 F.2d 1205, 1212 (11th Cir. 1982) (waiver of FOIA exemptions under 5 U.S.C. § 552(b)(5) "can occur when communications are disclosed to private individuals or nonfederal agencies"); *see also United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1045 (8th Cir. 1992) ("When

documents are voluntarily released to third parties, 'the government's assertion that these communications [are] confidential [is] rendered substantially less credible'") (citation omitted). To the extent that the Antitrust Division has disclosed to third parties information that would otherwise be protected by the attorney work-product doctrine and/or the deliberative process privilege, the doctrine and privilege have been *waived* and such materials must be produced to Stolt-Nielsen.

### 2.    Exemption (b)(6):  Unwarranted Invasion Of Personal Privacy

Exemption (b)(6) permits a government agency to withhold documents containing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Disclosure of such information will constitute a clearly unwarranted invasion of personal privacy *only* when the privacy interest of the individual outweigh the public interest in disclosure.  *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  FOIA's requirement that disclosure be "clearly unwarranted" instructs the court to "tilt the balance (of disclosure interests against privacy interests) *in favor of disclosure*," recognizing that the presumption in favor of disclosure under exemption (b)(6) "is as strong as can be found anywhere in the Act."  *Washington Post Co. v. U.S. Dep't of Health & Human Services*, 690 F.2d 252, 261 (D.C. Cir. 1982) (citations and internal quotation marks omitted) (emphasis added).

### 3.    Exemption (7)(A):  Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Interfere With Enforcement Proceedings

Exemption (7)(A) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information  .  .  .  could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A).

For a government agency to withhold documents under FOIA Exemption (7)(A), the agency must demonstrate that the documents were compiled for law enforcement purposes and that their disclosure "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated*." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis in original).  In other words, the law enforcement proceeding must have been "a concrete, prospective law enforcement proceeding" at the time of the agency decision to withhold. *Scheer v. U.S. Dep't of Justice*, 35 F. Supp. 2d 9, 12 (D.D.C. 1999) (citation omitted).

> **4.    Exemption (7)(C):  Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Constitute An Unwarranted Invasion Of Personal Privacy**

Exemption (7)(C) protects investigatory records compiled for law enforcement purposes whose disclosure would "constitute an unwarranted invasion of personal privacy."  5 U.S.C. §552(b)(7)(C).  The rationale behind this exemption is that the purpose of FOIA — "to open agency action to the light of public scrutiny," *Rose*, 425 U.S. at 372 (citation omitted) — is not served by disclosing private information about individuals that has no bearing on the official conduct of an agency.  *Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 93 (D.C. Cir. 1984); *see also King v. U.S. Dep't of Justice*, 830 F.2d 210, 233 (D.C. Cir. 1987) (exemption applies to persons with a "cognizable interest in the privacy of their involvement in a law-enforcement investigation").

The privacy interest must be balanced against the public interest, if any, that would be served by disclosure.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776 (1989); *Albuquerque Publ'g Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989).  For example, law enforcement officers who work on criminal investigations, and individuals who provide information to the law enforcement authorities, have a privacy interest

15

and their names have traditionally been protected from disclosure under Exemption (7)(C). *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *Computer Prof'ls for Social Responsibility v. Secret Service*, 72 F.3d 897, 904 (D.C. Cir. 1996).

**B.      Opening Of The Parcel Tanker Industry Investigation In November 2002**

In its Third FOIA Request (designated as request number ATFY05-080), Stolt-Nielsen requested that the Antitrust Division produce all documents related to the opening of the parcel tanker industry investigation in November 2002. The Antitrust Division responded to this request on September 13, 2005 and March 28, 2006. Certain documents were produced in their entirety; others were produced in redacted form; and 1,872 pages of documents were withheld in their entirety.

In its *Vaughn* index, the Antitrust Division attempted to justify its redactions and withheld material by reference to numerous FOIA exemptions: (b)(5) (inter-agency or intra-agency memoranda or letters); (7)(A) (records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings); (7)(C) (records compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy); (7)(D) (records compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source); (b)(3) (specifically exempted from disclosure by statute); and Rule 6(e) of the Federal Rules of Criminal Procedure.

Ultimately, Stolt-Nielsen seeks simply documentary confirmation of the date upon which the parcel tanker investigation was formally opened. At trial, then-Deputy Assistant Attorney General Griffin testified (with the authority of the Antitrust Division, SF ¶ 11) that the investigation opened on November 22, 2002. SF ¶ 11. In its Answer in Civil Action No. 06cv474 (RJL), the government continues to adhere to this November 22, 2002 date as the opening of its investigation. Answer, Civil Action No. 06cv474 (RJL), at 2. But several

16

documents identified in the *Vaughn* index strongly suggest that the investigation opened on November 26, 2002 or later. SF ¶ 11.

At this point, the inception and existence of the parcel tanker investigation is not a secret. Based on Stolt-Nielsen's report, the co-conspirators have pleaded guilty. In fact, the Antitrust Division has made public statements concerning the existence of the Division's "criminal investigation into anticompetitive practices in the parcel tanker shipping industry." *See* SF ¶ 5 (April 19, 2004 Antitrust Division press release concerning Jo Tankers B.V.: "This case is a continuation of the Justice Department's ongoing criminal investigation into anticompetitive practices in the parcel tanker shipping industry").

The Antitrust Division has also taken affirmative steps to publicize the status of its investigation and the facts surrounding the opening of the investigation in the litigation before the Eastern District of Pennsylvania. The Division moved the Eastern District of Pennsylvania to unseal Stolt-Nielsen's civil case concerning the Amnesty Agreement. SF ¶ 12. Given all of the steps that the Antitrust Division has taken to publicize the parcel tanker investigation, it is too late for that agency to claim that the mere date of the opening of the investigation is somehow sacrosanct and should be sealed from public scrutiny.

Again, it is the government's burden to demonstrate that the claimed exemptions apply to each and every redaction or withheld document. The standards for Exemptions (b)(5), (7)(A), and (7)(C) have already been identified. With respect to the remaining exemptions, the government will have to demonstrate the following.

**1.    Exemption (b)(3): Matters That Are Specifically Exempted From Disclosure By Statute**

Exemption (b)(3) prevents disclosure of documents that are: "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld

from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of material to be withheld." 5 U.S.C. § 552(b)(3).

To determine whether Exemption (b)(3) applies, "[t]he sole issue . . . is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. C.I.A.,* 607 F.2d 339, 350 (D.C. Cir. 1978). Federal Rule of Criminal Procedure 6(e) qualifies as a statute under this exemption and "prohibits the release of grand jury transcripts, as well as the names or identities of actual or potential grand jury witnesses, or other information that would reveal the scope, focus, and direction of the grand jury." *Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 337 F. Supp. 2d 146, 167 (D.D.C. 2004) (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867, 869 (D.C. Cir. 1981) (holding that Federal Rule of Criminal Procedure 6(e) qualifies as an Exemption (b)(3) statute)).

## 2.    Federal Rule Of Criminal Procedure 6(e)

Federal Rule of Criminal Procedure 6(e) does not draw a "veil of secrecy" over all documents about activity investigated by the grand jury or even all documents revealed to the grand jury. *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 949 (D.C. Cir. 2003); *In re Sealed Case No. 99-3091,* 192 F.3d 995, 1001-02 (D.C. Cir. 1999); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc). "The relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation." *Washington Post Co. v. U.S. Dep't of Justice,* 863 F.2d 96, 100 (D.C. Cir. 1988) (citing *Fund for Constitutional Gov't,* 656 F.2d at 869-70 (D.C. Cir. 1981)).

3.    **Exemption (7)(D): Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Disclose The Identity Of A Confidential Source**

Exemption (7)(D) provides protection from disclosure for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. " 5 U.S.C. § 552(b)(7)(D).

Confidentiality does not automatically attach to an informant in a criminal investigation. *See Wilson v. Drug Enforcement Admin.*, 414 F. Supp. 2d 5, 14 (D.D.C. 2006) ("There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation . . . Rather, a source's confidentiality is determined on a case-by-case basis") (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179-81 (1993)). A source will only be treated as confidential within the meaning of Exemption (7)(D) "if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Id.* (quoting *Williams v. Federal Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks omitted)).

C.    **International Competition Network Documents About Stolt-Nielsen**

In its Fourth FOIA Request (designated as request number ATFY05-088), Stolt-Nielsen requested that the Antitrust Division produce all documents relating to the International Competition Network ("ICN") regarding any investigation of Stolt-Nielsen or the parcel tanker

industry. The Antitrust Division responded to this request on September 13, 2005 and March 28, 2006. Again, certain documents were produced in their entirety; others were produced in redacted form; and 222 pages of documents were withheld in their entirety.

In its *Vaughn* index, the Antitrust Division attempted to justify its redactions and withheld material by reference to numerous FOIA exemptions: (b)(3) (specifically exempted from disclosure by statute); (b)(5) (inter-agency or intra-agency memoranda or letters); (b)(6) (personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy); (7)(A) (records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings); (7)(C) (records compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy); (7)(D) (records compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source); and Rule 6(e) of the Federal Rules of Criminal Procedure.

We are aware of no case that extends a FOIA exemption to the ICN or, for that matter, a "consensus based, informal network" of foreign governmental agencies. Again, it is the government's burden to demonstrate that the claimed exemptions apply to each and every redaction or withheld document. The standards that the Antitrust Division must meet concerning these exemptions have already been identified above.

**D.**     **Antitrust Division Documents Related To *The Curious Case Of Stolt-Nielsen***

In its Fifth FOIA Request (designated as request number ATFY05-113), Stolt-Nielsen requested that the Antitrust Division produce all correspondence relating to an article entitled *The Curious Case of Stolt-Nielsen*. The Antitrust Division responded to this request on September 13, 2005, January 31, 2006, and March 28, 2006. Certain documents were produced in their entirety and 51 pages of documents were produced in redacted form.

In its *Vaughn* index, the Antitrust Division attempted to justify its redactions and withheld material by reference to numerous FOIA exemptions: (b)(5) (inter-agency or intra-agency memoranda or letters); and (b)(6) (personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy). The standards that the Antitrust Division must meet concerning these exemptions have already been identified above.

### E.    Communications To Or From The Press, Bar Associations, Or Other Entities Regarding Stolt-Nielsen Or The Investigation Into The Parcel Tanker Industry

In its Sixth FOIA Request (designated as request number ATFY05-131), Stolt-Nielsen requested that the Antitrust Division produce all communications to or from the press, bar associations, or other entities regarding Stolt-Nielsen or the investigation into the parcel tanker industry. The Antitrust Division responded to this request on September 29, 2005 and March 28, 2006. Certain documents were produced in their entirety; others were produced in redacted form; and 139 pages of documents were withheld in their entirety.

In its *Vaughn* index, the Antitrust Division attempted to justify its redactions and withheld material by reference to numerous FOIA exemptions: (b)(3) (specifically exempted from disclosure by statute); (b)(5) (inter-agency or intra-agency memoranda or letters); (b)(6) (personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy); (7)(A) (records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings); (7)(C) (records compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy); (7)(D) (records compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source); and

21

Rule 6(e) of the Federal Rules of Criminal Procedure. The standards that the Antitrust Division must meet concerning these exemptions have already been identified above.

## III.    Adequacy Of Search In Response To Stolt-Nielsen's FOIA Requests

In a FOIA lawsuit, the agency "must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation and internal quotation marks omitted); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (the government must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested"). The government has a duty to construe FOIA requests liberally, *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 20 (D.D.C. 2004) (citing *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and the adequacy of it search "is measured by the reasonableness of the effort in light of the specific request," *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

In response to a challenge to the adequacy of its search, the government must provide a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting *Oglesby*, 920 F.2d at 68). In other words, the government must demonstrate that it identified, and searched, each record system in which responsive documents are likely to be found. *NYC Apparel FZE v. U.S. Customs & Border Protection*, 2006 WL 167833, at *6 (D.D.C. January 23, 2006) (citing *Oglesby*, 920 F.2d at 68). FOIA requires the government "to show 'beyond material doubt' that it has conducted a search reasonably calculated to uncover all relevant

documents." *Id.* at *7 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

Based on the facts presented, the Court should then determine if the agency's search was reasonable. *Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F. Supp. 2d 106, 110 (D.D.C. 2002). "The Court will grant summary judgment to the government in a FOIA case only if the defendant agency can prove 'that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *NYC Apparel FZE*, 2006 WL 167833 at *3 (quoting *Friends of Blackwater*, 391 F. Supp. 2d at 119).

Based upon the foregoing, the Court should order the Antitrust Division to demonstrate that it conducted an adequate search for each and every one of Stolt-Nielsen's FOIA requests.

\* \* \*

Government operates best in the sunshine, a policy preference embodied in the Freedom of Information Act. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 774 (1989) ("the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny . . .") (emphasis in original). Although the Freedom of Information Act has now been in effect for 40 years, the principle of an informed citizenry that underlies that act has not been met. Referring to the FOIA, former President Carter recently stated as follows: "Our government leaders have become increasingly obsessed with secrecy. Obstructionist policies and deficient practices have ensured that many important public documents and official actions remain hidden from our view." Jimmy Carter, *We Need Fewer Secrets*, The Washington Post, July 3, 2006 (2006 WLNR 11473697).

The importance of full disclosure to the public is even stronger where the government itself makes representations to the public in order to advertise a program encouraging voluntary

approaches to prosecutors. The Antitrust Division has elected to speak publicly about the unprecedented revocation of Stolt-Nielsen from its Amnesty Program, and it defends its publicity campaign in its Answer due to the Stolt-Nielsen revocation having "generated many questions from the antitrust bar as to the Division's future interpretation and application of the leniency program." Answer, Civil Action No. 05cv2217 (RJL) at p.7. Having made such public pronouncements, the government is obliged to share documents embodying or underlying such pronouncements about its Amnesty Program with Stolt-Nielsen and the public.

## CONCLUSION

For these reasons, the Court should grant Stolt-Nielsen's motion for summary judgment and order the Antitrust Division to produce all agency records responsive to the following FOIA requests that are the subject of this lawsuit: ATFY05-072 (speeches of Deputy Assistant Attorney General Scott Hammond); ATFY05-080 (documents reflecting the opening date of the investigation); ATFY05-088 (Antitrust Division comments about Stolt-Nielsen at the International Competition Network); ATFY06-026 (communications between the Antitrust Division and the International Competition Network about Stolt-Nielsen); ATFY05-113 (communications between the Antitrust Division and the authors of *The Curious Case of Stolt-Nielsen*); and ATFY05-131 (Antitrust Division correspondence with the press and bar associations about Stolt-Nielsen).

Dated:  August 18, 2006                    Respectfully submitted,

WHITE & CASE LLP

By: _____
J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar. No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C.  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation Group Ltd.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States of America,

*Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv474 (RJL)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Civil Rule 56.1, plaintiff, Stolt-Nielsen Transportation Group Ltd., respectfully submits this statement of material facts as to which there is no genuine dispute.

1.      Since 1993, the Antitrust Division of the United States Department of Justice ("Antitrust Division") has had a Corporate Leniency Program whereby it offers a "complete pass" from criminal prosecution and criminal fines to the first company in an industry that reports conduct to the Division that constitutes a criminal violation of the Sherman Act. Declaration of Lucius B. Lau, dated August 18, 2006 ("Lau Decl.") at ¶¶ 2 (Corporate Leniency Policy) ("'Leniency' means *not charging* such a firm criminally for the activity being reported") (emphasis added), 7 (Hammond Nov. 21, 2000 speech at 2 n.1) ("Under the U.S. program, corporate amnesty and corporate leniency are used interchangeably to mean a *complete pass* from criminal prosecution and zero dollars in fines for the anticompetitive conduct") (emphasis added), 44 (Bingaman Aug. 10, 1993 speech at 7) (announcing adoption of current Corporate Amnesty Policy and equating amnesty to "*not seeking indictment of corporations*") (emphasis

added), 45 (Bingaman Oct. 21, 1993 speech at 13) (same); 46 (Antitrust Division Grand Jury Manual at V-52) (corporate amnesty means "*not indicting such a firm*") (emphasis added).

2.     The Antitrust Division has published its model amnesty agreement, which it uses in granting amnesty to corporations pursuant to the Corporate Leniency Policy.  Lau Decl. at ¶¶ 8 (Spratling 1999 speech), 36 (Spratling 1998 speech).

3.     Since revising its leniency policy in 1993, the Antitrust Division has granted corporate leniency in over 100 cases.  Answer, Civil Action No. 05cv2217 (RJL), at p.7; Lau Decl. at ¶ 21 (Antitrust Division Reply Brief filed in *Stolt-Nielsen S.A. v. United States*, No. 05-1480 (3d Cir.) at p. 16).

4.     In the past, the Antitrust Division has modified its model leniency letter based upon the specific facts and issues present concerning an amnesty applicant.  Lau Decl. at ¶ 35 (Christie's amnesty agreement, dated January 2000).

5.     On January 15, 2003, the Antitrust Division signed an amnesty agreement with Stolt-Nielsen ("Amnesty Agreement").  Lau Decl. at ¶ 11.  Using the information provided by Stolt-Nielsen, the Antitrust Division obtain convictions of co-conspirators and publicly announced the existence of the investigation.  *See* Lau Decl. at ¶¶ 41, 42 (Antitrust Division press release:  "This case is a continuation of the Justice Department's ongoing criminal investigation into anticompetitive practices in the parcel tanker shipping industry").

6.     On April 8, 2003, the Antitrust Division "suspended" Stolt-Nielsen's cooperation requirements.  Lau Decl. at ¶ 12.

7.     On June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was criminally charged with violations of the Sherman Act.  Answer at pp. 6-7.

8.    On February 6, 2004, Stolt-Nielsen and Stolt-Nielsen S.A. commenced a civil action in the United States District Court for the Eastern District of Pennsylvania to enforce their rights under the Amnesty Agreement. Lau Decl. at ¶ 13 (E.D.Pa. Complaint). The district court immediately granted Stolt-Nielsen's request to keep the entire action under seal. Lau Decl. at ¶ 14 (E.D.Pa. Order of February 13, 2004).

9.    On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program. Lau Decl. at ¶ 15 (Antitrust Division letter of March 2, 2004).

10.    In April 2004, the district court held a trial on the merits. Lau Decl. at ¶ 16 (trial transcripts).

11.    During the April 2004 trial, the Antitrust Division offered a single witness — then-Deputy Assistant Attorney General James A. Griffin — who was specifically authorized to testify by the Antitrust Division. Lau Decl. at ¶ 40. During the trial, Mr. Griffin testified that the Antitrust Division's investigation into the parcel tanker industry opened on November 22, 2002. Lau Decl. ¶ 37. Mr. Griffin testified that, in order for an investigation to be formally opened, "the paperwork has to go through." Lau Decl. ¶ 37. The *Vaughn* index produced by the Antitrust Division contains several references to a November *26*, 2002 memorandum from Antitrust Division attorneys to Mr. Hammond. Lau Decl. ¶ 38. This memorandum was withheld for several reasons, including that it purportedly "relates to an ongoing investigation . . . ." Lau Decl. ¶ 38.

12.    On May 15, 2004, the Antitrust Division moved the district court to unseal the action, including the trial transcript and exhibits. Lau Decl. at ¶ 17 (Antitrust Division motion to unseal).

13.    On January 14, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). Lau Decl. ¶ 18.

14.    Simultaneously, the district court also unsealed the trial testimony and exhibits. Lau Decl. at ¶ 19 (E.D.Pa. court order entered January 14, 2005).

15.    On March 23, 2006, the Third Circuit issued an opinion, reversing the judgment of the district court. *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). Lau Decl. at ¶ 23.

## I.    The Antitrust Division's Public Statements Concerning Stolt-Nielsen

16.    Since April 2003, when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement, the Antitrust Division has made repeated remarks to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of not commenting upon ongoing criminal matters, as detailed below.

### A.    An FBI Agent Speaks To The Press About Stolt-Nielsen

17.    After charges were brought against Stolt-Nielsen's employee, Mr. Wingfield, an FBI agent assisting the Division in the parcel tanker investigation spoke to a major worldwide shipping publication, Lloyd's List. Specifically, FBI Special Agent John Sharp was quoted by that publication as saying that the Bureau had a "strong case" against the accused and that he expects "several more arrests" in the coming months. Lau Decl. at ¶ 24.

18.    The *Lloyd's List* article continued: "Special agent John Sharp from the FBI's Philadelphia field office told Lloyd's List: 'No matter what happens with the case, [the arrest] will remain on Mr. Wingfield's record.'" Lau Decl. at ¶ 24.

19.    The *Lloyd's List* article attributed to the FBI agent additional statements about other Stolt-Nielsen executives:    "Mr. Sharp said the FBI had documents to prove that Stolt-Nielsen executives hatched a price-fixing conspiracy.  The existence of these documents and the executives' inability to contest their existence was itself tantamount to an admission of culpability, Mr. Sharp said."  Lau Decl. at ¶ 24.  The article goes on to quote the FBI agent that "he was not at liberty to divulge names of people other than Mr. Wingfield who would be arrested, but added: 'I know who they are.'"  Lau Decl. at ¶ 24.

**B.    Public Speeches By Antitrust Division Officials Concerning Stolt-Nielsen**

20.    The Antitrust Division has subsequently engaged in a public speaking campaign targeting Stolt-Nielsen.  Specifically, the Antitrust Division's Deputy Assistant Attorney General for Criminal Enforcement has spoken about Stolt-Nielsen at a number of public venues within the United States and abroad.  Among those speeches are:

a.    "Recent Developments In Antitrust Law," 19th Annual National Institute On White Collar Crime 2005, Las Vegas, Nevada, March 3, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.  During this speech, the Deputy Assistant Attorney General stated that "the removal or the attempt to remove Stolt from the corporate leniency" was the number one "blockbuster development" in criminal antitrust enforcement in recent months.  Lau Decl at ¶ 9 (transcript p. 11).  He also stated, "I submit to you that if you look at the record in this case, you will find that this is a company that deserved to be removed from the Leniency Program."  Lau Decl. at ¶ 9 (transcript pp. 14-15).  Finally, he stated in his speech that Stolt-Nielsen was "a company that did everything wrong from the beginning."  Lau Decl. at ¶ 9 (transcript p. 23).

    b.    Spring 2005 American Bar Association Antitrust Section Meeting, Washington, D.C., March 30, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.

    c.    Langdon Hall 2005 Competition Law Invitational Forum in Canada, May 6, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.

    d.    Executive Committee meeting, New York State Bar Association Antitrust Law Section, New York City, September 14, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.

    e.    American Bar Association's International Law Section Meeting in Brussels, Oct. 26, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.

    f.    National Press Club, Washington, D.C., November 16, 2005.  Answer, Civil Action No. 06cv474 (RJL), ¶ 25.

**C.**    **Articles About Stolt-Nielsen Reviewed By Antitrust Division Officials**

21.    The Antitrust Division has on two occasions assisted private authors with writing articles critical of Stolt-Nielsen and the district court's decision.  Answer, Civil Action No. 05cv2217 (RJL), at p. 8.

22.    The first article, Jim Walden, Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, The Antitrust Source (March 2005) (Lau Decl. at ¶ 25), benefited from direct assistance by the Deputy Assistant Attorney General.  Lau Decl. at ¶ 26 (e-mail from Jim Walden to Scott Hammond, dated January 25, 2005: "Thanks for all the helpful information, which was great.  We will cite a bunch of it in the article").

23.    The second article, Donald L. Baker, *True Confessions*, Legal Times (September 26, 2005) (Lau Decl. at ¶ 27), also benefited from assistance from the Antitrust Division.  The

Antitrust Division reviewed a draft of Mr. Baker's article and provided Mr. Baker with its comments. Answer, Civil Action No. 05cv2217 (RJL), at p. 8.

24.    The Antitrust Division presented both the Walden and Baker articles to the United States Court of Appeals for the Third Circuit as authority, without disclosing the fact that it had reviewed and commented upon drafts of the articles. Lau Decl. at ¶¶ 20 (Antitrust Division brief to the Third Circuit), 22 (Antitrust Division Rule 28(j) letter to the Third Circuit); Answer, Civil Action No. 06cv474 (RJL), at p. 11.

## II.    The FOIA Requests

25.    From June 2, 2005 to January 26, 2006, Stolt-Nielsen filed twelve separate FOIA requests with the Antitrust Division. Lau Decl. at ¶ 28 (summary chart). The first six requests form the basis of this action.

### A.    First Request: Meeting With John Nannes

26.    The first FOIA request, made on June 2, 2005, requested any and all internal memoranda or notes related to a December 4, 2002 meeting between Antitrust Division officials and John Nannes, relating to Stolt-Nielsen's application to, and participation in, the Antitrust Division's amnesty program ("First FOIA Request"). Lau Decl. ¶ 29.

### B.    Second Request: Speeches Of Deputy Assistant Attorney General Scott Hammond

27.    The second FOIA request, made on June 2, 2005, requested copies of, and notes related to, three specific speeches given by Mr. Hammond ("Second FOIA Request"). Lau Decl. ¶ 30.

28.    The three specific speeches are as follows: (a) in Las Vegas, Nevada during the 19th Annual National Institute on White Collar Crime 2005, on March 3-4 2005; (b) at the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 – April 1, 2005;

and (c) at the Langdon Hall 2005 Competition Law Invitational Forum in Canada on May 6, 2005. Lau Decl. ¶ 30.

29.    The Second FOIA Request also requested copies of, or notes related to, any other speeches in which Mr. Hammond discussed the Antitrust Division's pending action(s) against Stolt-Nielsen. Lau Decl. ¶ 30.

### C.    Third Request: Opening Of The Investigation

30.    The third FOIA request, made by Stolt-Nielsen on June 13, 2005, requested any and all documents related to the opening of the antitrust investigation of the parcel tanker industry in November 2002, including but not limited to (a) an article published in the Wall Street Journal on November 22, 2002 regarding the opening of such investigation, James Bandler & John McKinnon, *Stolt-Nielsen Is Probed For Traffic With Iran*, Wall St. J., Nov. 22, 2002, at A3; (b) the request to open an investigation by the Philadelphia Field Office of the Antitrust Division, including but not limited to the Preliminary Inquiry Request Memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and (c) any documents memorializing actions taken by the Antitrust Division in opening such investigation ("Third FOIA Request"). Lau Decl. ¶ 31.

### D.    Fourth Request: Antitrust Division Comments About Stolt-Nielsen At The International Competition Network

31.    Stolt-Nielsen made its fourth FOIA request on June 24, 2005, requesting any and all materials relating to presentations or communications by, or involving, officials of the Antitrust Division to the International Competition Network ("ICN") regarding any investigation of SNTG or the parcel tanker industry, or to the revocation of amnesty related to SNTG, including but not limited to:  (a) presentations, speeches, and discussions made to the ICN by any Antitrust Division officials or any other ICN member relating to any Stolt-Nielsen investigation

8

or the Stolt-Nielsen amnesty revocation; (b) electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to any Stolt-Nielsen investigation or the Stolt-Nielsen amnesty revocation; and (c) any documents in the possession of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to any Stolt-Nielsen investigation or the Stolt-Nielsen amnesty revocation with ICN members ("Fourth FOIA Request"). Lau Decl. ¶ 32.

32.    The ICN describes itself as "a project-oriented, consensus based, informal network of antitrust agencies from developed and developing countries that will address antitrust enforcement and policy issues of common interest and formulate proposals for procedural and substantive convergence through a results-oriented agenda and structure." Lau Decl. ¶ 39.

### E.    Fifth Request: Communications Between The Antitrust Division And The Authors Of *The Curious Case of Stolt-Nielsen*

33.    Stolt-Nielsen made its fifth FOIA request on August 23, 2005, requesting any and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP related to the antitrust investigation into the parcel tanker industry, particularly relating to the article by Mr. Walden and Mr. Dawes, *The Curious Case of Stolt-Nielsen, S.A. v. United States*, The Antitrust Source (March 2005) ("Fifth FOIA Request"). Lau Decl. ¶ 33.

### F.    Sixth Request: Antitrust Division Correspondence With The Press And Bar Associations About Stolt-Nielsen

34.    Stolt-Nielsen made its sixth FOIA request on September 20, 2005, requesting any and all documents that reflect, memorialize, embody or contain communications to or from (a) the press, including trade press, (b) bar associations, or (c) any other external communications with individuals uninvolved in the litigation with Stolt-Nielsen or the investigation into the parcel tanker industry, regarding Stolt-Nielsen or the investigation into the parcel tanker

industry.  In particular, Stolt-Nielsen requested (i) communications to or from James Bandler of

the Wall Street Journal, (ii) communications to or from reporter(s) at the Tradewinds publication,

and (iii) internal Antitrust Division circulation of press stories regarding Stolt-Nielsen or the

investigation into the parcel tanker industry ("Sixth FOIA Request").  Lau Decl. ¶ 34.


Dated:  August 18, 2006                           Respectfully submitted,


                                                  WHITE & CASE LLP

                                          By: _____
                                              J. Mark Gidley (D.C. Bar No. 417280)
                                              Christopher M. Curran (D.C. Bar. No. 408561)
                                              Lucius B. Lau (D.C. Bar No. 446088)
                                              701 Thirteenth St., N.W.
                                              Washington, D.C.  20005
                                              tel.: (202) 626-3600
                                              fax: (202) 639-9355

                                              *Counsel to Stolt-Nielsen Transportation
                                              Group Ltd.*


                                              10