# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2217 (RJL) |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| ————————————————————) | |
| ) | |
| Stolt-Nielsen Transportation Group Ltd. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-0474 (RJL) |
| ) | |
| United States Department of Justice, ) | |
| ) | |
| Defendant. ) | |
| ————————————————————) | |

## DECLARATION OF ANN LEA RICHARDS

CITY OF WASHINGTON   )
DISTRICT OF COLUMBIA  ) ss:

    I, ANN LEA RICHARDS, do hereby declare:

1.    I am the Chief of the Freedom of Information Act ("FOIA") Unit of the Antitrust Division of the United States Department of Justice (defendant or Division), having assumed that position in April 1995.[1] In my capacity as Chief, I am responsible for the processing of requests submitted to the defendant pursuant to the FOIA, 5 U.S.C. § 552. I am also responsible for

---

[1]    I had been, for the previous fifteen years, a Division staff attorney, investigating and litigating alleged criminal and civil violations of the antitrust laws.

GOVERNMENT EXHIBIT

A

making the final determination whether information requested should be released or is exempt from disclosure in whole or in part. The statements made herein are based upon my personal knowledge and information obtained during the course of my official duties.

2.     I make this Declaration in support of the defendant's position that information withheld from plaintiff Stolt-Nielsen Transportation Group Ltd. (Stolt-Nielsen) in response to its twelve FOIA requests that are the subjects of the above entitled action is properly exempt from disclosure under the FOIA.[2/] I provide information concerning:

> A.     The Division's Investigative Practices;
>
> B.     The Division's Corporate Leniency Program;
>
> C.     Background - Open Grand Jury Investigation and Litigation;
>
> D.     Plaintiff's Twelve FOIA Requests;
>
> E.     Records Processing;
>
> F.     *Vaughn* Indexes; and
>
> G.     Exemptions Applicable to Information Withheld in Full or Redacted.

A.     THE DIVISION'S INVESTIGATIVE PRACTICES

3.     The Division is responsible for enforcing the federal antitrust laws and serving as the Federal Government's principal analyst of, and advocate for, competition policy. Antitrust enforcement, which constitutes the principal function of the Division, involves investigating

_____

[2/]     In this declaration, I use "Stolt-Nielsen" to refer to the plaintiff Stolt-Nielsen Transportation Group Ltd. I use the term "SNTG" in reference to the conditional amnesty agreement, discussed *infra* in ¶6, that was entered into by the Antitrust Division and Stolt-Nielsen Transportation Group Ltd., its parents, subsidiaries and affiliates because the conditional amnesty agreement uses SNTG in reference to those entities. However, plaintiff used the term "SNTG" in its FOIA requests to refer to itself, and thus, the quotations in this declaration from the FOIA requests likewise use SNTG.

possible antitrust violations, conducting grand jury proceedings, preparing and trying antitrust cases, prosecuting appeals, and negotiating and enforcing final judgments. The antitrust laws are enforced by criminal prosecutions designed to punish violators and by civil suits for injunctive relief aimed at maintaining or restoring competitive conditions in the system of free enterprise which the antitrust laws protect.

4.     It is the Division's policy to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations.[3]/ If proved, such activities violate Section 1 of the Sherman Act, 15 U.S.C. § 1.[4]/ When allegations of such offenses are brought to the attention of the Division, which occurred with regard to plaintiff, a grand jury is convened. The on-going grand jury investigation of and litigation related to the plaintiff is described below in ¶¶ 6 and 7.

B.     THE DIVISION'S CORPORATE LENIENCY PROGRAM[5]/

5.     The Division has a Corporate Leniency Program, which is described in detail in the

---

[3]/     United States Department of Justice, Antitrust Division Manual, Chapter III, 16, *available at* http://www.usdoj.gov/atr/foia/divisionmanual/ch3.htm.

[4]/     Section 1 of the Sherman Act states: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding ten years, or by both said punishments, in the discretion of the court." (Eff. 6/22/04) For offenses committed during the period under investigation, the maximum Sherman Act corporate fine was $10,000,000, the maximum individual fine was $350,000 and the maximum jail term was three years. These maximum fines may be increased, pursuant to the alternative fine statute, to twice the gain derived by conspirators or twice the loss suffered by victims. 18 U.S.C. § 3571(d).

[5]/     Sometimes called the Corporate Amnesty Program.

Hammond declaration, pursuant to which a cartelist admits its participation in a criminal antitrust

violation, cooperates in the Division's investigation of its coconspirators and satisfies other

requirements, in return for protection from criminal conviction, fines, and jail terms for its

employees.[6]/ The leniency, or amnesty, program has been a key part of the success of the

Division's international anti-cartel enforcement program and is the Justice Department's most

successful voluntary disclosure program.[7]/ As noted in the Hammond declaration, confidentiality

is a key component of the amnesty program's success:

> The Division 'holds the identity of amnesty applicants in strict
> confidence, much like the treatment afforded to confidential
> informants [and] [t]herefore, . . . will not publicly disclose the
> identity of an amnesty applicant, absent prior disclosure by the
> applicant, unless required to do so by court order in connection
> with litigation.'[8]/ Moreover, amnesty negotiations are conducted
> with the express understanding that those negotiations and the
> information provided by the applicant will remain confidential,
> even after the investigation at issue is closed. Even after an
> investigation is closed, confidential informants pursuant to the
> leniency program maintain an interest in keeping their identities
> and the information they disclose confidential due to fear of
> retribution by former conspirators they implicated and damaged
> relations with customers. Moreover, with respect to amnesty
> applications for international conspiracies, given that some foreign
> governments do not have statutes of limitations for cartel offenses
> and thus the applicant's foreign exposure remains, this continued
> confidentiality is particularly important. Many leading members of
> the private antitrust bar who represent amnesty applicants have
> advised me that the Division's promise of confidentiality is a

---

[6]/    Hammond decl. ¶¶ 6-14.

[7]/    Hammond decl. ¶¶ 6-7.

[8]/    Gary R. Spratling, Deputy Ass't Att'y Gen., Antitrust Division, U.S. Dep't. of Justice, The
Corporate Leniency Policy: Answers to Recurring Questions, Speech Before ABA Antitrust
Section's 1998 Spring Meeting at 11 (Apr. 1, 1998), *available at*
http://www.usdoj.gov/atr/public/speeches/1626.htm.

> critical, and in some cases determinative, factor that companies
> rely upon in making a decision whether to self report pursuant to
> the Division's amnesty program.[9]

C.    BACKGROUND - OPEN GRAND JURY INVESTIGATION AND LITIGATION

6.    On November 22, 2002, the Wall Street Journal published an article containing allegations

that plaintiff had engaged in illegal antitrust activities. The Chief of the Division's Philadelphia

Field Office, Robert Connolly, was authorized to begin an investigation of a cartel in the parcel

tanker shipping industry that day. On January 15, 2003, the Division entered a conditional

leniency agreement with Stolt-Nielsen and its affiliates (collectively "SNTG") in the parcel tanker

shipping grand jury investigation. As noted in the Hammond declaration, such an agreement is

conditional and depends upon the verification of the amnesty applicant's representations and the

applicant's full, continuing and complete cooperation.[10] On March 2, 2004, the Division revoked

SNTG's conditional leniency, as allowed under the conditional leniency agreement, due to

SNTG's violations of the conditions of the agreement requiring prompt and effective termination

of its participation in the parcel tanker shipping cartel and the provision of full and truthful

cooperation.[11]

7.    Litigation between Stolt-Nielsen and the Division ensued in the United States District

Court for the Eastern District of Pennsylvania regarding the revocation, with Stolt-Nielsen seeking

an injunction against an indictment. The District Court entered judgment in favor of Stolt-Nielsen

---

[9]      Hammond decl. ¶ 9.

[10]     Hammond decl. ¶ 12.

[11]     Hammond decl. ¶ 13.

and its parent on January 15, 2005.[12]/ On appeal, based on Separation of Powers grounds, the

Third Circuit Court of Appeals reversed the District Court's opinion granting an injunction,

holding that "the District Court lacked the extraordinary remedy of enjoining the Government's

indictment[] of Stolt-Nielsen."[13]/ Currently the grand jury investigation of Stolt-Nielsen continues

and a petition for certiorari by Stolt-Nielsen is pending in the Supreme Court.[14]/

D.    THE TWELVE FOIA REQUESTS

8.    Between June 3, 2005 and January 26, 2006, while both the grand jury investigation of

plaintiff and the parcel tanker industry and the related leniency litigation continued, plaintiff

submitted the twelve FOIA requests at issue in this action to obtain documents for its leniency

litigation against the government.[15]/

9.    First Request, ATFY05-071. Defendant received plaintiff's first two FOIA requests on

June 3, 2005. The first, ATFY05-071 (Exhibit G)[16]/ sought:

---

[12]/    *Stolt-Nielsen, S.A. v. United States*, 352 F. Supp. 2d 553, 562 (E.D. Pa. 2005).

[13]/    *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 187 (3d Cir. 2006).

[14]/    *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006), *petition for cert. filed*, 2006 WL 2055474 (U.S. July 20, 2006) (No. 06-97). On August 21, 2006 the Supreme Court denied Stolt-Nielsen's application to recall and stay the Third Circuit's mandate for vacating the injunction previously issued by the district court. *Stolt-Nielsen, S.A., v. United States*, No. 06A79 (Aug. 21, 2006 order), *available at* http://www.supremecourtus.gov/orders/courtorders/082106pzr.pdf.

[15]/    Stolt-Nielsen averred in its Response to Defendant's Motion to Consolidate, *Stolt-Nielsen Transportation Group Ltd. v. United States*, Civil Action No. 05cv2217 (RJL) (filed May 25, 2006), that it "could be subject to indictment at almost any time. The information that Stolt-Nielsen has requested through its FOIA requests is necessary in order for the Company to present an effective motion to dismiss."

[16]/    All exhibit references in this declaration refer to exhibits to the Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment.

> [A]ny and all internal memoranda or notes related to a December 4, 2002
> meeting between Antitrust Division officials and John Nannes relating to
> SNTG's application to, and participation in, the Antitrust Division's
> Amnesty Program.

10.    Second Request, ATFY05-072.  Plaintiff's second request, also submitted on June 3,

2005, ATFY05-072 (Exhibit H) requested:

> [C]opies of, and notes related to, the following speeches given by
> Scott Hammond, Deputy Assistant Attorney General and [formerly
> the] Director of Criminal Enforcement [17]/: (1) In Las Vegas, Nevada
> during the 19th Annual National Institute on White Collar Crime
> 2005, on March 3-4, 2005; (2) At the Spring 2005 American Bar
> Association Antitrust Section Meeting, on March 30 - April 1,
> 2005; (3) At the Langdon Hall 2005 Competition Law and Policy
> Invitational Forum in Canada on May 6, 2005; and (4) Any other
> public speeches or presentations in which Mr. Hammond discussed
> the Antitrust Division's pending action(s) against SNTG. . . .

> [A]ny drafts of *The Curious Case of Stolt-Nielsen, S.A. v. United
> States** and any comments, notes or other documents relating to this
> article that were prepared by any Antitrust Division employees,
> whether located in Washington, D.C. or the Antitrust Division's
> Philadelphia Field Office.

> */    Jim Walden and Kristopher Dawes, *The Curious Case of
> Stolt Nielsen, S.A. v. United States*, The Antitrust Source (March
> 2005).

11.    Third Request, ATFY05-080.  On June 13, 2005 the Division received a third FOIA request,

ATFY05-080 (Exhibit I), in which plaintiff requested:

> [A]ny and all documents relating to the opening of the antitrust
> investigation of the parcel tanker industry in November 2002,
> including but not limited to documents and information specifically
> relating to the following: (1) The article, '*Stolt-Nielsen Is Probed For
> Traffic With Iran*,' published in the *Wall Street Journal***/; (2) The
> request to open an investigation by the Philadelphia Field Office of

---

[17]/    Mr. Hammond was appointed Deputy Ass't Att'y Gen. in charge of criminal litigation in
January 2005.

the Antitrust Division, including but not limited to the Preliminary
Inquiry Request Memorandum and any memoranda to the Federal
Bureau of Investigation requesting assistance; and (3) Any documents
memorializing actions taken by the Antitrust Division in opening such
investigation.

**/    James Bandler & John McKinnon, *Stolt-Nielsen Is Probed
For Traffic With Iran*, Wall St. J., Nov.22, 2002, at A3.

12.    Fourth Request, ATFY-088.    Two weeks later, on June 27, 2005, the plaintiff submitted
another FOIA request, ATFY05-088 (Exhibit J), which sought:

[A]ny and all materials relating to presentations or communications by,
or involving, officials of the Antitrust Division to the International
Competition Network ('ICN') regarding any investigation of SNTG or
the parcel tanker industry, or to the revocation of amnesty related to
SNTG, including but not limited to: 1. Presentations, speeches and
discussions made to the ICN by any Antitrust Division officials or any
other ICN member relating to any SNTG investigation or to the SNTG
amnesty revocation; 2. Electronic mail or facsimile communications
between Antitrust Division officials and ICN members relating to any
SNTG investigation or to the SNTG amnesty revocation; and 3. Any
documents in the possession of the Antitrust Division or its officials
memorializing communications, correspondence, presentations,
meeting minutes or agenda relating to any SNTG investigation or to
the SNTG amnesty revocation with ICN members.

13.    Fifth Request, ATFY05-113.    Two months later, on August 23, 2005, defendant received a
fifth FOIA request, ATFY05-113 (Exhibit K), seeking:

[A]ny and all correspondence between Antitrust Division officials and
Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP
related to the antitrust investigation into the parcel tanker industry,
particularly relating to the article by Mr. Walden and Mr. Dawes.***/

***/    Jim Walden and Kristopher Dawes, *The Curious Case of Stolt-
Nielsen v. United States*, The Antitrust Source (March 2005).

14.    Sixth Request, ATFY05-131.    The following month, on September 20, 2005, the plaintiff
submitted another FOIA request, ATFY05-131(Exhibit L), which sought:

[A]ny and all documents that reflect, memorialize, embody or contain

8

> communications to or from (1) the press, including trade press, (2) bar
> associations, or (3) any other external communications with individuals
> uninvolved in the litigation with SNTG or the investigation into the
> parcel tanker industry regarding SNTG or the investigation into the
> parcel tanker industry. In particular, SNTG requests (a)
> communications to or from James Bandler of the Wall Street Journal,
> (b) communications to or from reporter(s) at the Tradewinds
> publication, and (C) internal Department circulation of press stories
> regarding SNTG or the investigation into the parcel tanker industry.

15.   Seventh Request, ATFY06-003.  On October 14, 2005 the defendant received two more FOIA

requests. One request received that day, ATFY06-003 (Exhibit M), sought:

> [A]ny and all documents that reflect, memorialize, embody or contain
> communications regarding the investigation into the parcel tanker
> industry, to or from. (1) David S. Golub; (2) Jonathan M. Levine; (3)
> James M. Griffin, following his departure from the Antitrust Division in
> December 2004; and (4) Donald I. Baker, the author of a September 26,
> 2005 article in the *Legal Times* entitled *True Confessions*.

16.   Eighth Request, ATFY06-002.  The other request filed on October 14, 2005, ATFY06-002
(Exhibit N), sought:

> [A]ny and all amnesty agreements entered into by the Antitrust Division
> from August 1993 to the present.

17.   Ninth Request, ATFY06-019.  On November 9, 2005 the defendant received a ninth

request, ATFY06-019 (Exhibit O), seeking:

> [C]opies of speeches, speech outlines, audio or video recordings of
> speeches including audio tapes, video tapes, CD-ROM or DVDs,
> program materials announcing the speaking event, notes of any DOJ
> participant at a speech, emails relating to speeches, and any other
> documents related to any speeches (collectively "speeches and speech-
> related materials") by an Antitrust Division official, which discusses in
> any way SNTG, SNTG's status in the Division's Amnesty Program, the
> circumstances and rationale for the Division's attempted withdrawal of
> amnesty from SNTG, and/or the Antitrust Division's litigation with
> SNTG over SNTG's amnesty status in the Eastern District of
> Pennsylvania and the appeal to the Third Circuit and/or the
> investigation into SNTG (the "SNTG matters"). In particular, SNTG
> requests material related to: (1) Any speeches and speech-related

9

materials relating to speeches relating to the SNTG matters by Scott D. Hammond, Deputy Assistant Attorney General and Director of Criminal Enforcement, from June 2, 2005 (the date of SNTG's prior FOIA request, assigned control number ATFY05-072) to the present, including but not limited to the speeches given by Mr. Hammond (a) in New York City on September 14, 2005, and (b) in Brussels, Belgium on October 26, 2005; and (2) Any public speeches and speech-related materials relating to speeches given by any other Antitrust Division official concerning the SNTG matters, including but not limited to Lisa Phelan (currently Chief, National Crime Enforcement Division), from March 1, 2004 to the present.

18.     <u>Tenth Request, ATFY06-026.</u>  On December 7, 2005 the plaintiff submitted the following

FOIA request, ATFY06-026 (Exhibit P), seeking:

> [A]ny and all materials relating to communications, presentations or speeches by any Antitrust Division official, which discuss in any way SNTG, SNTG's status in the Division's Amnesty Program, the circumstances and rationale for the Division's attempted withdrawal of amnesty from SNTG, and/or the Antitrust Division's litigation with SNTG over SNTG's amnesty status in the Eastern District of Pennsylvania and the appeal to the U.S. Court of Appeals for the Third Circuit and/or the investigation into SNTG (the "SNTG matters") by officials of the Antitrust Division to the participants in the International Competition Network ("ICN"). The request includes, but is not limited to: 1. Presentations, speeches and discussions ("speeches"), including copies of speeches, PowerPoint slides, speech outlines, audio or video recordings of speeches including audio tapes, video tapes, CD-ROM or DVDs, notes of any DOJ participant at a presentation or speech, email communications, and any other documents related to any speeches (collectively "speeches and speech-related materials") made to the ICN by any Antitrust Division officials or any other ICN member relating to the SNTG matters; 2. Electronic mail or facsimile communications between Antitrust Division officials and ICN members relating to the SNTG matters; and 3. Any documents within the possession or control of the Antitrust Division or its officials memorializing communications, correspondence, presentations, meeting minutes or agenda relating to the SNTG matters with ICN members.

19.     <u>Eleventh Request, ATFY06-038.</u>  On January 24, 2006 the defendant received the following

10

request, ATFY06-038 (Exhibit Q), seeking:

> [C]opies of speeches, speech outlines, audio or video recordings of speeches including audio tapes, video tapes, CD-ROM or DVDs, program materials announcing the speaking event, notes of any DOJ participant at a speech, emails relating to speeches, and any other documents related to any speeches (collectively "speeches and speech-related materials") by any Antitrust Division official, which discusses in any way SNTG, SNTG's status in the Division's Amnesty Program, the circumstances and rationale for the Division's attempted withdrawal of amnesty from SNTG, and/or the Antitrust Division's litigation with SNTG over SNTG's amnesty status in the Eastern District of Pennsylvania and the appeal to the Third Circuit and/or the investigation into SNTG (the "SNTG matters"). In particular, SNTG requests material related to: (1) Any speeches and speech-related materials related to speeches relating to the SNTG matters by Scott D. Hammond, Deputy Assistant Attorney General and Director of Criminal Enforcement, from November 9, 2005 (the date of SNTG's prior FOIA request, assigned control number ATFY06-019) to the present, including but not limited to the speech given by Mr. Hammond at the National Press Club in Washington, D.C. on November 16, 2005; and (2) Any public speeches and speech-related materials relating to speeches given by any other Antitrust Division official concerning the SNTG matters, including but not limited to Lisa Phelan (currently Chief, National Crime Enforcement Division), from March 1, 2004 to the present.

20.     Twelfth Request, ATFY06-040. On January 26, 2006, plaintiff submitted its twelfth request,

ATFY06-040 (Exhibit R), seeking:

> [A]ny and all documents that reflect, memorialize, embody, or contain communications regarding the investigation into the parcel tanker industry, to or from: (1) Any attorney with St. Martin & Williams, including but not limited to Conrad S.P. "Duke" Williams III; and (2) Any attorney with Kasowitz, Benson, Torres & Friedman LLP, including but not limited to: (i) Hector Torres: (ii) Harold G. Levinson; or (iii) Gary W. Dunn.[18]/

E     RECORDS PROCESSING

---

[18]/     On March 24, 2006 and June 20, 2006, defendant received two additional FOIA requests from plaintiff which are not the subject of this action.

21.    As is done with all FOIA requests, plaintiff's requests were assigned to one of the paralegal specialists in the Unit. Wayne Foster is a paralegal specialist who has processed FOIA requests in the Division's FOIA Unit for nine years. All of the requests were assigned to him as they were received. He began his search for responsive documents by searching the Division's computerized records index which contains information about each matter currently or formerly under investigation. The system may be searched by the name of a company, the name of an individual, or an industry code. The index revealed an open investigation and litigation relating to the plaintiff that was assigned to the Philadelphia Field Office. Mr. Foster, accordingly, contacted that office, asking its Chief, Robert Connolly, to search for the records responsive to plaintiff's first two requests, ATFY05-071 and ATFY05-072. At approximately the same time, he contacted Mr. Hammond's office to obtain any responsive material. The Philadelphia Field Office and Mr. Hammond's office searched for the material requested, locating a small number of responsive documents. Each time the defendant received another request from plaintiff, Mr. Foster contacted Mr. Connolly's and Mr. Hammond's offices to have their offices search for documents responsive to the most recent request[s]. The Philadelphia Field Office conducted, in all, ten separate searches for responsive information, a time consuming task.[19]/ Mr. Hammond's office conducted a similar number of searches. Ultimately, the Division's Assistant Attorney General's and its Deputy Assistant Attorney General's offices, its Appellate and Foreign Commerce Sections and all Division criminal sections were contacted for responsive material and conducted searches.

22.    Upon receipt of records located in response to the requests, Mr. Foster reviewed carefully each

---

[19]/    Plaintiff submitted two requests on June 3, 2005, ATFY05-071 and ATFY05-072 and additional requests on October 14, 2005, ATFY06-002 and ATFY06-003.

document to determine whether it was responsive to one or more of the FOIA requests and set aside those that were not. That accomplished, he re-reviewed each page to determine its public availability under the FOIA. Documents exempt in their entirety were so marked. Exempt information in otherwise disclosable documents was bracketed for excision and the exemption supporting the non-disclosure was noted on the page next to the redaction.[20]/ Once the initial review was complete, the documents were forwarded to me for final review. After my review was complete, documents to be withheld were segregated and the information marked for redaction was excised using opaque tape. The redacted documents and documents to be released in full were copied and produced to plaintiff.

23.    In response to plaintiff's first five requests, (Exhibits G through K), on September 13, 2005, defendant released 280 pages of documents, some of which were redacted. Additional documents were withheld in full. See production letter dated Sept. 13, 2005 (Exhibit S).

24.    On January 31, 2006 defendant supplemented its September 13, 2005 response, producing, in full, one page of an e-mail responsive to ATFY05-072 (Exhibit H) and ATFY05-113 (Exhibit K) that inadvertently had been redacted. See production letter dated Jan.31, 2006 ( Exhibit T). On March 28, 2006 (Exhibit U), defendant again supplemented its September 13, 2005 response to plaintiff's requests that were submitted in fiscal year 2005, producing in response to ATFY05-072 (Exhibit H) two additional documents (22 pages) in full and withholding in full seven additional documents (36 pages.). Defendant also produced three pages of documents responsive to ATFY05-080 (Exhibit I). In addition, defendant produced in response to plaintiff's sixth request, AFTY05-131 (Exhibit L), 109 pages, some of which were redacted, and withheld 130 pages in their entirety. Upon further review of

---

[20]/    In some instances when a number of redactions were taken under the same exemption, only the first redaction was marked with the exemption.

the documents released in its September 13, 2005 response, defendant determined that 191 pages of

released documents, some of which were redacted, were also responsive to ATFY05-131 (Exhibit L).

25.    On April 27, 2006, defendant responded to all of plaintiff's fiscal year 2006 requests,

producing a total of 261 pages of documents, some of which were redacted, and withheld in full 1,232

pages. See production letters dated April 27, 2006 (Exhibits V - AA). Specifically, with respect to

plaintiff's seventh request, ATFY06-003 (Exhibit M), defendant produced to plaintiff 158 pages of

responsive documents, some of which were redacted, and withheld 151 pages in their entirety.   With

respect to plaintiff's eighth request, ATFY06-002 (Exhibit N), defendant produced to plaintiff 14

pages of responsive documents.  With respect to plaintiff's ninth request ATFY06-019 (Exhibit O),

defendant produced to plaintiff nine pages of responsive documents, some of which were redacted,

and withheld 33 pages in their entirety.  With respect to plaintiff's tenth request ATFY06-026

(Exhibit P), defendant produced to plaintiff 14 pages of responsive documents, some of which were

redacted, and withheld 154 pages in their entirety.   With respect to plaintiff's eleventh request

ATFY06-038 (Exhibit Q), defendant produced to plaintiff 20 pages of responsive documents.  With

respect to plaintiff's twelfth request ATFY06-040 (Exhibit R), defendant produced to plaintiff 46

pages of responsive documents, some of which were redacted, and withheld 526 pages in their

entirety.

26.    In processing the documents responsive to plaintiff's FOIA requests, the defendant complied

in full with the reasonable segregation requirement of the Act, 5 U.S.C. § 552 (final sentence), which

reads: "Any reasonably segregable portion of a record shall be provided to any person requesting

such record after deletion of the portions which are exempt under this subsection." As noted above in

¶ 22, Mr. Foster reviewed each page line by line to assure himself that he was withholding from

disclosure only information exempt pursuant to the Act. In my review of the responsive records, I

also adhered to the requirement to release all reasonably segregable information contained therein.

F.    THE *VAUGHN* INDEXES

27.    In preparing the two *Vaughn* indexes, the 2005 *Vaughn* index (Dk. # 16) and the 2006 *Vaughn*

index,[21]/ defendant Bates numbered each page of responsive records, those released in full, those

withheld in full, and those released in redacted form. Each document on the *Vaughn* indexes is

described by the following: Bates numbers, date, author(s), recipient(s), type or style of documents,

exemption(s) used, and the FOIA request(s) to which the document responds and a statement of

justification for the application of each exemption. The first index, the 2005 *Vaughn* index (Dk. # 16)

styled Civil Action No. 05cv2217 (RJL), describes the documents responsive to plaintiff's first six

FOIA requests: ATFY05-071; ATFY05-072; ATFY05-080; ATFY05-088; ATFY05-113; and

ATFY05-131 (Exhibits G through L). The second index, the 2006 *Vaughn* index, styled Civil Action

No. 06cv0474 (RJL), describes the documents responsive to plaintiff's FY 2006 FOIA requests:

ATFY06-002; ATFY06-003; ATFY06-019; ATFY06-026; ATFY06-038; and ATFY06-040 (Exhibits

---

[21]/    After filing the original 2006 *Vaughn* index (Dk. # 22) on July 7, 2006, defendant discovered
that 956 pages of documents responsive to the ATFY06 FOIA requests had been given the same
Bates numbers as documents responsive to the 2005 FOIA requests, the *Vaughn* index for which was
filed on June 2, 2006. Defendant corrected the misnumbered pages responsive to the 2006 FOIA
requests and substituted the newly numbered pages in the 2006 *Vaughn* index. In addition, in the
process of drafting the summary judgment memorandum, defendant corrected the following:
exemptions on two documents on the 2006 *Vaughn* that were inadvertently listed under the attorney-
client privilege instead of the attorney work product doctrine; added 5 U.S.C. § 552(b)(2)
exemptions to all withheld amnesty agreements on the 2006 *Vaughn* and to confidential investigative
consultations with foreign antitrust authorities on both the 2005 and 2006 *Vaughn*s; added the 5
U.S.C. § 552(b)(5) exemption for the efficient operations of government privilege to the
investigative consultations with foreign governments on both the 2005 and 2006 *Vaughn*s; and made
other harmonizing edits on the 2005 and 2006 *Vaughn*s. Defendant is filing the Amended 2005 and
2006 *Vaughn*s with defendant's Memorandum of Points and Authorities in Support of Defendant's
Motion for Summary Judgment.

M through R). The Bates numbers in the FY2005 *Vaughn* index are in numerical order (ATR-1 to 1561 and ATR-2377 to 3974).[22]/ Because a substantial number of records were responsive to both the 2005 and 2006 FOIA requests, the Bates numbers in the 2006 *Vaughn* index are not sequential. In order to account for these overlaps, defendant identified documents that were responsive to both the 2005 FOIA requests and the 2006 FOIA requests on each *Vaughn* index. For example, document ATR-647-650 is listed on pages 68-69 of the 2005 *Vaughn* and on pages 48-49 of the 2006 *Vaughn*. The documents listed in the Amended 2006 *Vaughn* are as follows, ATR-: 2012-2376, 84-91, 647-650, 663-667, 669-671, 864-870, 872-875, 1542-1561, 2377-2544 and 3995-4989. A list of all individuals whose names appear on the index, including their employer and title, is attached to each *Vaughn*.

G. **EXEMPTIONS APPLICABLE TO INFORMATION WITHHELD FROM DISCLOSURE IN FULL OR AS REDACTED**

<u>Exemption 2, 5 U.S.C. § 552(b)(2)</u>

28.    Exemption 2 provides for the non-disclosure of "matters that are related solely to the internal personnel rules and practices of an agency." The exemption consists of two parts: (1) "internal matters of a relatively trivial nature . . . and (2) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement."[23]/ DOJ file numbers redacted from the documents listed below are clearly trivial and have no genuine public interest. They are, accordingly, properly withheld from disclosure pursuant to Exemption 2 of the FOIA, 5 U.S.C. § 552(b)(2). Those

---

[22]/    ATR-2377-2544 are also responsive to a 2006 request and bear Bates numbers assigned in processing that request.

[23]/    Office of Information and Privacy, *U.S. Department of Justice, Freedom of Information Act Guide & Privacy Act Overview* 191 (2004).

records are: 4622 - 4649. The second category under Exemption 2 exempts from mandatory disclosure documents relating to more substantive internal matters, such as documents that would reveal techniques and procedures for law enforcement investigations or prosecutions, would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. Amnesty agreements are withheld under Exemption 2 because if disclosed, they would reveal information relating to the operation of the Division's amnesty program, would interfere with ongoing or prospective enforcement proceedings, and would discourage future amnesty applicants due to loss of confidentiality. Those records are: ATR-4622-4649, 4650-4965, 4966-4989. Hammond decl. ¶¶ 6-14 (Exhibit B). Likewise, the defendant withheld documents relating to confidential investigative consultations with foreign antitrust authorities about the investigation of Stolt-Nielsen or the parcel tanker industry under Exemption 2 because if disclosed, they would reveal information relating to the operation of the Division's international anti-cartel enforcement program, would interfere with ongoing or prospective enforcement proceedings, and would discourage such essential communications in the future due to loss of confidentiality. Hammond decl. ¶¶ 18-19 ( Exhibit B). Those records are:

Amended 05 *Vaughn*

ATR-632-634, 635-637, 638-639, 647-650, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428 and 2488.

Amended 06 *Vaughn*

ATR-647-650, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428 and 2488.

<u>Exemption 3, 5 U.S.C. § 552(b)(3)</u>

29.    FOIA Exemption 3 authorizes withholding information that is "specifically exempted from disclosure by statute (other than the Freedom of Information Act), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." Fed. R. Crim. P. 6(e) ("Rule 6(e)") qualifies as a so-called (b)(3) statute because, although it is a rule of criminal procedure, it was specially enacted by Congress, thereby attaining the status of a statute. Rule 6(e) prohibits an attorney for the government, and others, from disclosing "matters occurring before the grand jury." Grand jury secrecy is vital to the investigative function of the grand jury. Releasing information such as the identities of witnesses or jurors, the substance of testimony, or the strategy or direction of the investigation would breach grand jury secrecy, compromising the grand jury process because secrecy: (a) encourages witnesses to come forward and testify freely and honestly; (b) minimizes the risk that prospective defendants will flee or use corrupt means to thwart investigations; (c) safeguards the grand jurors and the proceedings from extraneous pressures and influences; and, (d) protects accused persons who are ultimately exonerated. Because the parcel tanker grand jury investigation is on-going, a substantial amount of information responsive to plaintiff's FOIA requests, in full or in part, is exempt pursuant to Rule 6(e)'s prohibition against disclosure of "matters occurring before the grand jury." Categories of information withheld in full or in redacted form are: staff memoranda to superiors recommending the filing of indictments,

informations, and/or plea agreements, the identity of witnesses before the grand jury;[24]/ documents

concerning grand jury testimony; pleadings concerning the grand jury filed under seal; the identity of

subjects of the grand jury; documents reflecting the direction of the grand jury; documents discussing

testamentary and/or document subpoenas; official foreign government notifications made pursuant to

limited Rule 6(e) orders, and grand jury exhibits from other investigations. The following documents

are withheld in full or in part pursuant to Exemption 3, 5 U.S.C. § 552(b)(3) and Fed. R. Crim. P.

6(e):

Amended 05 *Vaughn*

ATR-531, 550-551, 564-565 570-574, 592, 593, 597-598, 605-611, 613-619, 620-626, 627-631, 647-

650, 663-667, 669-671, 672-709, 710-723, 724-728, 729-732, 750-787, 788-825, 826-861, 862-863,

864-867, 868-870, 872-875, 879-911, 917-922, 923-927, 928-931, 949-963, 964-977, 978-1015,

1016-1028, 1043-1044, 1067-1080, 1107-1115, 1116-1117, 1118-1125, 1154-1163, 1171-1174,

1175-1181, 1182-1198, 1211-1222, 1223-1234, 1235-1247, 1248-1282, 1336-1344, 1542-1561,

2397, 2398, 2401-2402, 2403, 2404-2405, 2406, 2411, 2413-2414, 2431, 2432-2438, 2439-2441,

2442-2444, 2445-2447, 2448-2449, 2450-2452, 2456-2457, 2464-2465, 2466-2468, 2469-2471,

2472-2474, 2475-2476, 2477-2479, 2480-2481, 2497-2498, 2499-2500, 2501-2502, 2504-2505,

2506-2507, 2508-2509, 2510-2511, 2512-2513, 2514-2516, 2517-2519, 2520-2521, 2522-2524,

2525-2544, 2545-2595, 2596-2631, 2733-2756, 2757-3156 and 3157-3974.

Amended 06 *Vaughn*

ATR-2186, 2187, 2189, 2190, 2191, 2193, 2194, 2195-2196, 2197-2198, 2199-2200, 2201-2202,

_____

[24]/    The names of counsel for witnesses and/or subjects of the grand jury investigation are
withheld because disclosure of counsel's identity could reasonably be expected to identify the
attorneys' clients.

2203, 2204, 2205, 2206, 2207-2214, 2215-2223, 2224-2231, 2232, 2233-2235, 2236-2238, 2239-

2241, 2242-2245, 2249-2250, 2251, 2325-2327, 2328-2331, 2332-2334, 647-650, 663-667, 669-671,

864-867, 868-870, 872-875, 1542-1561, 2397, 2398, 2401-2402, 2403, 2404-2405, 2406, 2411, 2413-

2414, 2431, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2448-2449, 2450-2452, 2464-2465,

2466-2468, 2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2497-2498, 2499-2500,

2501-2502, 2504-2505, 2506-2507, 2508-2509, 2510-2511, 2512-2513, 2514-2516, 2517-2519,

2520-2521, 2522-2524, 2525-2544, 4065-4066, 4067, 4068, 4069-4070, 4071-4072, 4139-4140,

4141, 4166-4167, 4170, 4172, 4173, 4176-4183, 4184, 4185, 4191-4212, and 4966-4989.  In addition,

withheld documents ATR-2522-2524, 2525-2544, 2545-2595, and 2596-2631 represent pleadings

filed under seal to protect confidential information exempt from disclosure pursuant to Exemption 3,

5 U.S.C. § 552(b)(3) and Fed. R. Crim. P. 6(e).  Such documents are "not 'improperly' withheld" in

response to a FOIA request for the information.  *GTE Sylvania v. Consumers Union*, 445 U.S. 375,

387 (1980); 5 U.S.C. § 552(a)(4)(B).  An agency is "required to obey [an] injunction out of respect for

judicial process.  There is nothing in the legislative history [of the FOIA] to suggest that in adopting

the Freedom of Information Act . . . Congress intended to require an agency to commit contempt of

court in order to release documents."  *Id.*  Finally, information is also withheld in full or in part

pursuant to a statute that prohibits the disclosure of confidential information other than Rule 6(e).

That statute cannot be identified because to do so would disclose the very information sought to be

protected by the statute.  Documents from which the statutorily protected information is withheld are:

Amended 05 *Vaughn*

ATR-382-384, 578-579, 580-581, 582-583, 647-650, 652-657, 658-662, 663-667, 669-671 and 733-

736.

Amended 06 *Vaughn*

ATR-647-650, 663-667, 669-671, 4137, 4164, and 4166-4167.

<u>Exemption 5, 5 U.S.C. § 552(b)(5)</u>

30.    Exemption 5 authorizes the non-disclosure of "inter-agency memorandums or letters which

would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  The

exemption encompasses privileges commonly recognized at common law, including the attorney

work-product doctrine and the deliberative process privilege.  Exemption 5 also includes the efficient

operations of government privilege.  Each is discussed separately below.

<u>The Attorney Work-Product Privilege</u>

31.    The attorney work-product doctrine applies to memoranda and other documents created by an

attorney or his or her designee in anticipation of litigation and applies to grand jury proceedings.  It

covers the following:  trial and grand jury preparation material, including attorneys' selection of

important facts and evidence; memoranda to superiors; memoranda intended for circulation among

the staff; attorneys' notes related to actual or possible witnesses; memoranda to files reflecting the

author's thought processes; lists of grand jury witnesses, potential witnesses, deponents, individuals

interviewed, subpoena recipients and notes concerning the foregoing; litigation related analysis,

including summaries, evaluations, opinions and mental impressions concerning legal theories; drafts

of the foregoing documents as well as grand jury subpoenas, document schedules, draft and sealed

pleadings (including motions and proposed orders), internal memoranda not listed above, drafts of

speeches and press releases; and staff notes about, among other matters, meetings and telephone

conversations.  Documents properly withheld in full or in part pursuant to the attorney work product

doctrine prong of Exemption 5 are:

Amended 05 *Vaughn*

ATR-60, 61-63, 73-76, 79-80, 209-210, 211-213, 214-215, 281-284, 285-289, 290-299, 300-302, 303-305, 306-311, 312-320, 343-346, 348-357, 358-365, 366-374, 375-377, 378, 382-384, 385-406, 407-426, 429-440, 444-454, 455-457, 458-460, 462-463, 465-468, 485, 499-500, 518, 524-525, 526-527, 528, 538, 540-542, 552, 553, 554-555, 556, 564-565, 566-567, 568-569, 576-577, 578-579, 580-581, 582-583, 584-585, 586, 587, 588-589, 591, 592, 593, 594-596, 597-598, 599-600, 601-602, 603-604, 605-611, 612, 613-619, 620-626, 627-631, 632-634, 635-637, 638-639, 640-641, 642-644, 645-646, 647-650, 651, 652-657, 658-662, 663-667, 669-671, 672-709, 710-723, 724-728, 729-732, 733-736, 737-749, 750-787, 788-825, 826-861, 862-863, 864-867, 868-870, 871, 872-875, 876-878, 879-911, 912-915, 916, 917-922, 923-927, 928-931, 932-940, 941-948, 949-963, 964-977, 978-1015, 1016-1028, 1029-1042, 1043-1044, 1045-1053, 1054-1066, 1067-1080, 1081-1104, 1105-1106, 1107-1115, 1116-1117, 1118-1125, 1126-1133, 1134, 1135-1147, 1148-1153, 1154-1163, 1166-1169, 1170, 1171-1174, 1175-1181, 1182-1198, 1199-1204, 1205-1210, 1211-1222, 1223-1234, 1235-1247, 1248-1282, 1283-1284, 1285-1291, 1292-1335, 1336-1344, 1346-1349, 1352-1353, 1508-1526, 1527-1538, 1539-1541, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428, 2429-2430, 2431, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2448-2449, 2450-2452, 2453-2454, 2455, 2456-2457, 2458-2459, 2460-2461, 2462-2463, 2464-2465, 2466-2468, 2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2482, 2483, 2484, 2485-2486, 2488, 2489-2490, 2491-2492, 2493-2494, 2495-2496, 2497-2498, 2499-2500, 2501-2502, 2503, 2504-2505, 2506-2507, 2508-2509, 2510-2511, 2512-2513, 2514-2516, 2517-2519, 2520-2521, 2733-2756, 2757-3156 and 3157-3974.

Amended 06 *Vaughn*

ATR:  2036-2038, 2039-2040, 2041-2066, 2184, 2185, 2186, 2187, 2188, 2189, 2190, 2191, 2192,
2193, 2194, 2195-2196, 2197-2198, 2199-2200, 2201-2202, 2203, 2204, 2205, 2206, 2207-2214,
2215-2223, 2224-2231, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-
2380, 2381-2383, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2413-2414, 2415-
2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2431, 2432-2438, 2439-2441, 2442-2444,
2445-2447, 2448-2449, 2450-2452, 2453-2454, 2455, 2456-2457, 2458-2459, 2460-2461, 2462-
2463, 2464-2465, 2466-2468, 2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2482,
2483, 2484, 2485-2486, 2488, 2489-2490, 2491-2492, 2493-2494, 2495-2496, 2497-2498, 2499-
2500, 2501-2502, 2503, 2504-2505, 2506-2507, 2508-2509, 2510-2511, 2512-2513, 2514-2516,
2517-2519, 2520-2521, 4137, 4138, 4141, 4142-4158, 4160-4161, 4162-4163, 4164, 4165, 4166-
4167, 4168, 4170, 4171, 4172, 4173, 4174-4175, 4176-4183, 4184, 4185, 4186, 4188, and 4189.

## The Deliberative Process Privilege

32.    The deliberative process prong of Exemption 5 exempts from disclosure information that is
inter or intra-agency, predecisional and makes recommendations or expresses opinions on legal or
policy matters. Information subject to the privilege reflects the give and take of the consultative
process. The doctrine is designed to prevent injury to the quality of the agency decision making
process by chilling employees' willingness to express frank opinions and recommendations.

33.    Information withheld pursuant to the deliberative process privilege includes analysis and
conclusions of fact based upon that analysis and recommendations formulated therefrom, and staff
memoranda containing recommendations to superiors. Documents properly withheld in full or in part
pursuant to the deliberative process privilege prong of Exemption 5 are:

23

Amended 05 *Vaughn*

ATR-1-14, 19-20, 21-35, 36-38, 48-49, 52-54, 55-58, 59-60, 61-63, 73-76, 79-80, 209-210, 211-213, 214-215, 281-284, 285-289, 290-299, 300-302, 303-305, 306-311, 312-320, 343-346, 347, 348-357, 358-365, 366-374, 375-377, 378, 382-384, 385-406, 407-426, 429-440, 441-442, 443, 444-454, 455-457, 455-457, 461, 462-463, 464, 469-471, 472, 482-484, 485, 489-493, 499-500, 516-517, 518, 519-520, 521-522, 523, 524-525, 526-527, 528, 529-530, 531, 532-533, 534-535, 536-537, 539, 540-542, 543-544, 545-547, 548, 549, 550-551, 552, 557-558, 559, 560-561, 562-563, 564-565, 568-569, 575, 592, 593, 597-598, 599-600, 647-650, 651, 652-657, 658-662, 663-667, 669-671, 672-709, 710-723, 724-728, 729-732, 733-736, 737-749, 750-787, 788-825, 826-861, 864-867, 868-870, 872-875, 917-922, 923-927, 928-931, 949-963, 964-977, 978-1015, 1016-1028, 1029-1042, 1043-1044, 1045-1053, 1054-1066, 1067-1080, 1081-1104, 1105-1106, 1107-1115, 1116-1117, 1118-1125, 1126-1133, 1135-1147, 1148-1153, 1154-1163, 1166-1169, 1171-1174, 1175-1181, 1182-1198, 1199-1204, 1205-1210, 1235-1247, 1248-1282, 1283-1284, 1336-1344, 1346-13491350-1351, 1508-1526, 1527-1538, 1539, 1541, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2417-2418 and 2429-2430.

Amended 06 *Vaughn*

ATR-2184, 2185, 2186, 2188, 2189, 2193, 2194, 2195-2196, 2197-2198, 2199-2200, 2201-2202, 2203, 2204, 2205, 2207-2214, 2215-2223, 2224-2231, 2336-2338, 2339-2340, 2341-2342, 2343, 2344, 2345, 2346, 2352, 2353, 2354-2355, 2356, 2357-2359, 2360, 2361, 2362, 2363, 2364-2365, 2366-2367, 2368, 2369-2370, 2375, 2376, 647-650, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418,

2419-2420, 2427, 2428, 2429-2430, 2488, 4137, 4138, 4139-4140, 4159, 4160-4161, 4162-4163, 4166-4167, 4170, 4171, 4173, 4174-4175, 4176-4183, 4184, 4185, 4186, 4187, 4586-4597, 4598-4609 and 4610.

<u>The Efficient Governmental Operations Privilege</u>

34.    The efficient governmental operations privilege is a privilege included within the civil discovery privileges incorporated into Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  Like other (b)(5) privileges, it is intended to ensure frank and open discussion by protecting from disclosure information obtained under a promise of confidentiality when confidentiality is necessary to ensure and/or encourage frank disclosures.  The privilege exempts, for example, information provided to the government by companies seeking corporate amnesty who would not otherwise disclose their participation in a Sherman Act violation without an expectation of confidentiality.  It also exempts information provided in confidential investigative consultations with foreign government officials because Division and foreign officials rely on the confidentiality of those information exchanges to effectively communicate regarding investigative and prosecutorial issues.  It is for this reason that the privilege is recognized - without it the government would not be able to obtain such information.  As discussed above in ¶ 5 and in the Hammond declaration ¶¶ 6-11 (Exhibit B), the Division's leniency program is the cornerstone of its international anti-cartel enforcement program and  companies in both domestic and international investigations are willing to self-disclose their cartel offenses to obtain the benefits of amnesty so long as their cooperation remains confidential.  In addition, as noted in the Hammond declaration ¶¶ 5, 15-19 (Exhibit B), coordination with and assistance from foreign governments is critical in the investigation and prosecution of international cartels, and public disclosure of confidential investigative consultations with foreign governments would have a chilling

effect on the investigations at issue, the willingness of foreign governments to communicate with the Division in future investigations, and the Division's international anti-cartel enforcement program. Accordingly, as noted earlier, the privilege promotes the efficient operations of the Antitrust Division's Corporate Leniency program, a very important program that is instrumental in finding and prosecuting criminal violations of the antitrust law, and the efficient operations of the Division's international anti-cartel enforcement program. Information obtained from companies and individuals in proffers to obtain leniency and the resulting leniency agreements, as well as documents relating to confidential investigative consultations with foreign governments relating to the investigation of Stolt-Nielsen or the parcel tanker industry are covered by the privilege. The following documents have properly been withheld in full pursuant to the efficient operations of government privilege included in Exemption 5 are:

Amended 05 *Vaughn*

ATR-632-634, 635-637, 638-639, 647-650, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428 and 2488.

Amended 06 *Vaughn*

ATR-: 647-650, 663-667, 669-671, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428 and 2488.

Amnesty Agreements Amended 06 *Vaughn*

ATR-:  4622-4649, 4650-4965 and 4966-4989.

<u>Exemption 6, 5 U.S.C. § 552(b)(6)</u>

35.    Exemption 6 protects from disclosure "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The only

information redacted from the following documents pursuant to Exemption 6 is personal telephone

numbers and e-mail addresses:

<u>Amended 05 *Vaughn*</u>

ATR-: 15-17, 52-54, 55-58, 429-440, 441-442, 443, 444-454, 473-476, 477, 478-479, 481, 1542-1561,

2377-2378, 2379-2380 and 2381-2383.

<u>Amended 06 *Vaughn*</u>

ATR-:  1542-1561, 2377-2378, 2379-2380 and 2381-2383.

<u>Exemption 7, 5 U.S.C. § 552(b)(7)</u>

36.    "[R]ecords or information [that were] compiled for law enforcement purposes" may be withheld

pursuant to Exemption 7 of the FOIA.  In this case, such information falls into the following categories:

information generated or obtained during the ongoing parcel tanker grand jury investigation of plaintiff

and other companies and individuals; indictments and informations arising from or proposed in that

investigation; the ongoing litigation concerning plaintiff's grant of conditional leniency and its

subsequent removal; and other grand jury investigations involving amnesty recipients.  As noted above

in ¶ 21, the records were located in many Division offices,  primarily in the investigative and litigative

files of the Philadelphia Field Office and the Office of the Deputy Assistant Attorney General.  A small

number of responsive documents were located in the files of other Division criminal sections and the

Division's Appellate and Foreign Commerce Sections.  Exemption 7 subparts (A), (C) and (D) apply to

records and information withheld in full or redacted from documents responsive to plaintiff's FOIA

requests.  Each is discussed separately below.

<u>Exemption 7(A), 5 U.S.C. § 552(b)(7)(A)</u>

37.    Exemption 7(A) permits withholding records or information compiled for law enforcement

purposes "to the extent that the production of such law enforcement records or information (A) could

reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  As stated

previously, the parcel tank grand jury investigation and related litigation are ongoing.  For the reasons

discussed herein, release of information not already in the public domain is likely to harm the

Division's current investigation and related litigation and interfere with current and prospective

enforcement proceedings.  Exemption 7(A) protects against such interference by the harm likely to

result from the premature production of law enforcement records.  In addition to the general prejudice

to the government's parcel tanker investigation and related litigation that almost certainly will result

from the premature release of these records, the following additional potential sources of harm are

evident:

(a)    Destruction or alteration of evidence that remains to be discovered.  Each of the

categories of records described above in ¶ 36 contains information, such as allegations of illegal

conduct, the direction and scope of the investigation, and the statements of witnesses, that, if disclosed

prior to the appropriate point in the litigation process in a subsequent enforcement proceeding, may

result in potential defendants taking steps to alter or destroy evidence.

(b)    Witness Intimidation.  Each of the categories of documents described above in ¶ 36

contains information concerning the identification of individuals and potential witnesses who possess information relevant to the investigation. Premature release of this information could lead to the possible intimidation of, or retaliation against, those individuals.

(c)    Scope and Direction of the Investigation. Each of the categories of documents described above in ¶ 36 contains information that, if released prematurely, could damage any case the government might bring based on the current investigation by giving potential defendants insights into the government's strategy and the strength of its position.

(d)    Chilling of Cooperation. The release of documents described above in ¶ 16 could interfere with continuing cooperation from amnesty applicants in ongoing investigations of cartels by disclosing confidential information provided by the applicants and the applicants' status as confidential informants. Public disclosure could also discourage future amnesty applications by causing amnesty applicants to perceive that the amnesty process is no longer confidential. The release of documents described above in paragraph 28 relating to investigative consultations with specific foreign enforcers could have a chilling effect on the instant investigation and the willingness of foreign authorities to communicate with the Division regarding other specific investigations.

38.    The following documents are properly withheld in full or released as redacted pursuant to Exemption 7(A):

Amended 05 *Vaughn*

ATR-: 281-284, 285-289, 290-299, 300-302, 303-305, 306-311, 312-320, 343-346, 347, 348-357, 358-365, 366-374, 375-377, 378, 382-384, 462-463, 516-517, 518, 519-520, 521-522, 523, 524-525, 526-527, 528, 529-530, 531, 532-533, 534-535, 536-537, 539, 543-544, 545-547, 548, 549, 550-551, 552, 554-555, 557-558, 559, 560-561, 562-563, 564-565, 566-567, 568-569, 575, 576-577, 578-579, 580-

581, 582-583, 584-585, 586, 587, 588-589, 590, 591, 592, 593, 594-596, 597-598, 599-600, 601-602,

603-604, 605-611, 613-619, 620-626, 627-631, 632-634, 635-637, 638-639, 640-641, 642-644, 645-

646, 647-650, 651, 652-657, 658-662, 663-667, 669-671, 672-709, 710-723, 724-728, 729-732, 733-

736, 737-749, 750-787, 788-825, 826-861, 862-863, 864-867, 868-870, 871, 872-875, 876-878, 879-

911, 912-915, 916, 917-922, 923-927, 928-931, 932-940, 941-948, 949-963, 964-977, 978-1015, 1016-

1028, 1029-1042, 1043-1044, 1045-1053, 1054-1066, 1067-1080, 1081-1104, 1105-1106, 1107-1115,

1116-1117, 1118-1125, 1126-1133, 1134, 1135-1147, 1148-1153, 1154-1163, 1166-1169, 1170, 1171-

1174, 1175-1181, 1182-1198, 1199-1204, 1205-1210, 1211-1222, 1223-1234, 1235-1247, 1248-1282,

1283-1284, 1285-1291, 1292-1335, 1336-1344, 1346-1349, 1508-1526, 1527-1538, 1539-1541, 1542-

1561, 2377-2378, 2379-2380, 2398, 2391-2396, 2397, 2399-2400, 2401-2402, 2403, 2404-2405, 2406,

2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-

2426, 2427, 2428, 2429-2430, 2431, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2448-2449, 2450-

2452, 2453-2454, 2455, 2456-2457, 2458-2459, 2460-2461, 2462-2463, 2464-2465, 2466-2468, 2469-

2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2482, 2483, 2484, 2485-2486, 2488, 2489-2490,

2491-2492, 2493-2494, 2495-2496, 2497-2498, 2499-2500, 2501-2502, 2503, 2504-2505, 2506-2507,

2508-2509, 2510-2511, 2512-2513, 2514-2516, 2517-2519, 2520-2521, 2522-2524, 2525-2544, 2545-

2595, 2596-2631, 2733-2756, 2757-3156 and 3157-3974.

Amended 06 *Vaughn*

ATR-: 2184, 2185, 2186, 2187, 2188, 2189, 2190, 2191, 2192, 2193, 2194, 2195-2196, 2197-2198,

2199-2200, 2201-2202, 2203, 2204, 2205, 2206, 2207-2214, 2215-2223, 2224-2231, 2232, 2233-2235,

2236-2238, 2239-2241, 2242-2245, 2246-2247, 2249-2250, 2251, 2252, 2253-2275, 2276-2324, 2328-

2331, 2343, 2345, 2346, 2352, 2353, 2354-2355, 2356, 2357-2359, 2360, 2361, 2362, 2364-2365,

2366-2367, 2368, 2369-2370, 2375, 2376, 647-650, 663-667, 669-671, 864-867, 868-870, 872-875,

1542-1561, 2377-2378, 2379-2380, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405,

2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423,

2424-2426, 2427, 2428, 2429-2430, 2431, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2448-2449,

2450-2452, 2453-2454, 2455, 2456-2457, 2458-2459, 2460-2461, 2462-2463, 2464-2465, 2466-2468,

2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2482, 2483, 2484, 2485-2486, 2488, 2489-

2490, 2491-2492, 2493-2494, 2495-2496, 2497-2498, 2499-2500, 2501-2502, 2503, 2504-2505, 2506-

2507, 2508-2509, 2510-2511, 2512-2513, 2514-2516, 2517-2519, 2520-2521, 2522-2524, 2525-2544,

4065-4066, 4067, 4068, 4071-4072, 4077-4132, 4133-4134, 4135-4136, 4137, 4138, 4139-4140, 4141,

4159, 4160-4161, 4162-4163, 4164, 4166-4167, 4168, 4169, 4170, 4171, 4172, 4173, 4174-4175,

4176-4183, 4184, 4185, 4186, 4187, 4188, 4189, 4190, 4191-4212, 4213-4279, 4280-4345, 4346-4431,

4432-4585, 4622-4649, 4650-4965 and 4966-4989.

### Exemption 7(C), 5 U.S.C. § 552 (b)(7)(C)

39.    Exemption 7(C) protects from disclosure "matters that . . . are records or information compiled

for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of

personal privacy." Exemption 7(C)'s privacy protection is particularly applicable in investigations by

criminal law enforcement agencies, which the Division is, when, as here, it is investigating or has

investigated activities that are charged as criminal violations of the Sherman Act. Accordingly,

defendant has withheld in full the names of persons mentioned in records of this and other

investigations, including subjects and others of investigatory interest, for example, persons who are

mentioned in a recommendation to file indictments or informations; home addresses of individuals; the

31

identity of persons who were interviewed in the course of the investigation; and information from which such names could be determined.. There is no public interest that would be served by the release of such information; and information from which such names could be determined. The following documents are properly withheld in full or released as redacted pursuant to Exemption 7(C):

Amended 05 *Vaughn*

ATR-: 209-210, 211-213, 214-215, 281-284, 285-289, 290-299, 300-302, 303-305, 306-311, 312-320, 343-346, 348-357, 358-365, 366-374, 382-384, 458-460, 469-471, 494-498, 529-530, 532-533, 534-535, 536-537, 539, 543-544, 550-551, 552, 556, 564-565, 566-567, 568-569, 570-574, 575, 590, 591, 592, 593, 597-598, 599-600, 601-602, 603-604, 605-611, 612, 613-619, 620-626, 627-631, 632-634, 635-637, 638-639, 640-641, 642-644, 645-646, 652-657, 658-662, 663-667, 672-709, 710-723, 724-728, 729-732, 733-736, 750-787, 788-825, 826-861, 862-863, 864-867, 868-870, 872-875, 876-878, 879-911, 917-922, 923-927, 928-931, 932-940, 941-948, 949-963, 964-977, 978-1015, 1016-1028, 1029-1042, 1043-1044, 1045-1053, 1054-1066, 1067-1080, 1081-1104, 1107-1115, 1116-1117, 1118-1125, 1154-1163, 1171-1174, 1175-1181, 1182-1198, 1199-1204, 1205-1210, 1211-1222, 1223-1234, 1235-1247, 1248-1282, 1285-1291, 1292-1335, 1336-1344, 1346-1349, 1508-1526, 1527-1538, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2450-2452, 2458-2459, 2466-2468, 2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2488, 2497-2498, 2499-2500, 2501-2502,  2512-2513, 2514-2516, 2517-2519, 2545-2595, 2596-2631 and 3157-3974.

Amended 06 *Vaughn*

ATR-2184, 2185, 2186, 2187, 2188, 2189, 2190, 2191, 2192, 2193, 2194, 2195-2196, 2197-2198,

2199-2200, 2201-2202, 2203, 2204, 2205, 2206, 2207-2214, 2215-2223, 2224-2231, 2232, 2233-2235, 2236-2238, 2239-2241, 2242-2245, 2246-2247, 2249-2250, 2251, 2252, 2253-2275, 2276-2324, 2325-2327, 2328-2331, 2332-2334, 663-667, 864-867, 868-870, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2413-2414, 2415-2416, 2417-2418, 2419-2420, 2421-2423, 2424-2426, 2427, 2428, 2432-2438, 2439-2441, 2442-2444, 2445-2447, 2450-2452, 2466-2468, 2469-2471, 2472-2474, 2475-2476, 2477-2479, 2480-2481, 2488, 2497-2498, 2499-2500, 2501-2502, 2514-2516, 2517-2519, 4015-4035, 4036-4059, 4062-4064, 4065-4066, 4067, 4068, 4069-4070, 4071-4072, 4073-4076, 4077-4132, 4133-4134, 4135-4136, 4137, 4138, 4139-4140, 4141, 4159, 4160-4161, 4162-4163, 4164, 4165, 4166-4167, 4168, 4169, 4170, 4171, 4172, 4173, 4174-4175, 4176-4183, 4184, 4185, 4186, 4187, 4188, 4189, 4190, 4191-4212, 4213-4279, 4280-4345, 4346-4431, 4432-4585, 4622-4649, 4650-4965 and 4966-4989.

### Exemption 7(D), 5 U.S.C. § 552(b)(7)(D)

40.    Exemption 7(D) protects from disclosure "matters that . . . are records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record of information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." As noted in ¶¶ 3 and 4 above, the Antitrust Division is a criminal law enforcement component of the U.S. Department of Justice and compiled the information at issue in this action to investigate the parcel tanker industry and in other grand jury investigations as is discussed

33

above. Conviction of a criminal violation of the Sherman Act brings with it serious financial consequences.[25]/ Many persons who provide information to the Division about conspirators engaged in criminal violations engendering such sentences are concerned that their identity and the information they provide not be revealed; companies are concerned that they will loose favor in their industry, becoming subject to retaliation by customers, competitors and others with whom they deal, while individuals are concerned that they will be subject to harassment, loss of employability and/or social stigma. Thus, many seek explicit assurances of confidentiality before sharing any information. Others assume from the circumstances that their identity and any information they impart will be held in confidence. Defendant has withheld the identity of persons and information provided by such persons under both circumstances. Such information as may exist in the documents responsive to plaintiff's requests that would identify a confidential source and information provided by the source is exempt in full from disclosure pursuant to Exemption 7(D) of the FOIA. The documents listed below are properly withheld in full or released as redacted pursuant to Exemption7(D):

Amended 05 *Vaughn*

ATR-382-384, 539, 570-574, 575, 590, 591, 592, 593, 597-598, 612, 632-634, 635-637, 638-639, 640-641, 652-657, 658-662, 663-667, 672-709, 710-723, 724-728, 729-732, 733-736, 750-787, 788-825, 826-861, 864-867, 872-875, 876-878, 879-911, 917-922, 923-927, 928-931, 949-963, 964-977, 978-1015, 1016-1028, 1029-1042, 1067-1080, 1171-1174, 1199-1204, 1205-1210, 1211-1222, 1223-1234, 1235-1247, 1248-1282, 1336-1344, 1346-1349, 1508-1526, 1539-1541, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408,

---

[25]/    A fine of not more than $10,000,000 if a corporation and not more than $350,000 if a person or twice the gain or loss for offenses committed during the period under investigation. The statute also provides for imprisonment not exceeding three years for offenses committed during the period under investigation. 5 U.S.C. § 1, 18 U.S.C. § 357(d). See n. 3, *supra*.

34

2409, 2410, 2411, 2412, 2419-2420, 2421-2423, 2424-2426, 2427, 2428, 2488, 2545-2595, 2596-2631 and 3157-3974.

Amended 06 *Vaughn*

ATR-2184, 2185, 2186, 2187, 2188, 2189, 2190, 2191, 2192, 2193, 2194, 2195-2196, 2197-2198, 2199-2200, 2201-2202, 2203, 2204, 2205, 2206, 2207-2214, 2215-2223, 2224-2231, 2232, 2233-2235, 2236-2238, 2239-2241, 2242-2245, 2246-2247, 2249-2250, 2251, 2252, 2253-2275, 2276-2324, 2325-2327, 2328-2331, 2332-2334, 663-667, 864-867, 872-875, 1542-1561, 2377-2378, 2379-2380, 2381-2383, 2391-2396, 2397, 2398, 2399-2400, 2401-2402, 2403, 2404-2405, 2406, 2407, 2408, 2409, 2410, 2411, 2412, 2419-2420, 2421-2423, 2424-2426, 2427, 2428, 2488, 4015-4035, 4036-4059, 4062-4064, 4065-4066, 4067, 4071-4072, 4077-4132, 4133-4134, 4135-4136, 4137, 4138, 4139-4140, 4141, 4159, 4164, 4165, 4166-4167, 4168, 4169, 4170, 4171, 4172, 4173, 4174-4175, 4176-4183, 4184, 4185, 4186, 4187, 4188, 4189, 4190, 4191-4212, 4213-4279, 4280-4345, 4346-4431, 4432-4585, 4622-4649, 4650-4965, 4966-4989.

## Conclusion

41.     The foregoing is a complete and accurate description of the processing of the plaintiffs' FOIA request as it pertains to the files maintained by the Antitrust Division and the justification for withholding responsive documents.

        I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Ann Lea Richards
Chief, Freedom of Information and Privacy Act Unit

Executed on August 22, 2006 at Washington, D.C.