UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

    *Plaintiff,*

        v.

United States of America,

    *Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv474 (RJL)

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**WHITE & CASE LLP**

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar. No. 408561)
Lucius B. Lau (D.C. Bar. No. 446088)
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation
Group Ltd.*

September 27, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 3

I.    The Court Should Order The Antitrust Division To Produce All Amnesty
      Agreements From 1993 To The Present ................................................................ 3

      A.    The Amnesty Agreements Can Be Disclosed Without Compromising The
            Identity Of The Amnesty Applicants .......................................................... 4

            1.    At Least Twenty Amnesty Applicants Have Publicly Revealed
                  Their Own Identities ....................................................................... 4

            2.    The Remaining Agreements Can Be Redacted ......................................... 10

      B.    None Of The FOIA Exemptions Apply To The Amnesty Agreements ................ 11

            1.    Exemption (b)(2):  Internal Personnel Rules And Practices ..................... 13

            2.    Exemption (b)(5):  Inter-Agency Or Intra-Agency Memoranda Or
                  Letters ...................................................................................... 14

            3.    Exemption 7A:  Law Enforcement ..................................................... 16

            4.    Exemption 7C:  Personal Privacy ...................................................... 17

            5.    Exemption 7D:  Confidential Source Identity ....................................... 18

II.   The Antitrust Division Has Failed To Establish The Existence Of "Confidential"
      Informants ........................................................................................................ 19

      A.    Unsubstantiated Reliance on Exemption 7D for Private Damages
            Plaintiff's Counsel ............................................................................. 19

      B.    The Antitrust Division's Communications with Private Litigants ..................... 22

            1.    David Golub – Attorney for Paul O'Brien in Employment
                  Litigation .................................................................................... 22

            2.    Hector Torres – Attorney For Private Damages Claimants ......................... 23

III.  The Antitrust Division Has Not Justified Its Failure To Produce The Date Of The
      Opening Of The Parcel Tanker Industry Investigation In November 2002 ..................... 24

IV.    The Antitrust Division Has Failed To Segregate Exempted Material From Non-Exempted Material .................................................................................................. 27

V.    The Antitrust Division Has Provided Insufficient Justification For Withholding Numerous Documents .................................................................................................. 29

VI.    The Antitrust Division's Statement Of Material Facts Not In Dispute Fails To Follow The Local Rules .................................................................................................. 32

**CONCLUSION** .................................................................................................. 33

## TABLE OF AUTHORITIES

CASES

*Billington v. U.S. Dep't of Justice,*
    233 F.3d 581 (D.C. Cir. 2000) ........................................................................31

*Burke v. Gould,*
    286 F.3d 513 (D.C. Cir. 2002) ........................................................................32

*Campbell v. U.S. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1999) ..........................................................................31

*CEI Washington Bureau Inc. v. United States,*
    404 F. Supp. 2d 172 (D.D.C. 2005) ................................................................26

*Chilivis v. S.E.C.,*
    673 F.2d 1205 (11th Cir. 1982) ......................................................................26

*Church of Scientology of Cal. v. Dep't of State,*
    493 F. Supp. 418 (D.D.C. 1980) .....................................................................28

*Church of Scientology Int'l v. U.S. Dep't of Justice,*
    30 F.3d 224 (1st Cir. 1994) .....................................................................10, 18

*Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agric.,*
    744 F. Supp. 314 (D.D.C. 1990) .....................................................................25

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
    670 F.2d 1051 (D.C. Cir. 1981) ................................................................13, 14

*Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative,*
    237 F. Supp. 2d 17 (D.D.C. 2002) ..................................................................14

*Delaney, Migdail & Young, Chartered v. IRS,*
    826 F.2d 124 (D.C. Cir. 1987) ........................................................................30

*Dep't of the Air Force v. Rose,*
    425 U.S. 352 (1976) .......................................................................................13

*Dep't of Interior v. Klamath Water Users Protective Ass'n.,*
    532 U.S. 1 (2001) ...............................................................................14, 15, 16

*Dipietro v. Executive Office for United States Attorneys,*
    357 F. Supp. 2d 177 (D.D.C. 2004) ..........................................................21, 22

*EPA v. Mink*,
    410 U.S. 73 (1973) ................................................................................31

*Gardels v. Cent. Intelligence Agency*,
    637 F.2d 770 (D.C. Cir. 1980) ..............................................................32

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
    101 F.3d 145 (D.C. Cir. 1996) ..............................................................32

*Jaffe v. Cent. Intelligence Agency*,
    573 F. Supp. 377 (D.D.C. 1983) ...........................................................12

*Jordan v. U.S. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) ..............................................................30

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    337 F. Supp. 2d 146 (D.D.C. 2004) ................................................11, 29

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
    432 F.3d 366 (D.C. Cir. 2005) ..............................................................26

*Kimberlin v. U.S. Dep't of Justice*,
    139 F.3d 944 (D.C. Cir. 1998) ..............................................................18

*King v. U.S. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ..............................................................30

*Larson v. Dep't of State*,
    2005 WL 3276303 (D.D.C. Aug. 10, 2005) .........................................31

*Mapother v. U.S. Dep't of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) ................................................................16

*Mays v. Drug Enforcement Admin.*,
    234 F.3d 1324 (D.C. Cir. 2000) ............................................................20

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ...................................................... *passim*

*Miller v. Dep't of Navy*,
    383 F. Supp. 2d 5 (D.D.C. 2005) ..........................................................11

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ..............................................................................17

*O'Brien v. Stolt-Nielsen Trans. Group, Ltd.*,
    2004 WL 2591952 (Conn. Super. Ct. Oct. 7, 2004) ........................................22

*O'Brien v. Stolt-Nielsen Trans. Group, Ltd.*,
    2004 WL 870839 (Conn. Super. Ct. Apr. 2, 2004) ........................................22

*Odfjell ASA v. Celanese AG*,
    380 F. Supp. 2d 297 (S.D.N.Y. 2005) ........................................23

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ........................................31

*PHE Inc. v. U.S.Dep't of Justice*,
    983 F. 2d 248 (D.C. Cir. 1993) ........................................30

*Prows v. U.S. Dep't of Justice*,
    1996 WL 228463 (D.D.C. Apr. 25, 1996) ........................................18

*Raulerson v. Ashcroft*,
    271 F. Supp. 2d 17 (D.D.C. 2002) ........................................32

*Ripskis v. Dep't of Hous. & Urban Dev.*,
    746 F.2d 1 (D.C. Cir. 1984) ........................................11

*Robertson v. Am. Airlines*,
    239 F. Supp. 2d 5 (D.D.C. 2002) ........................................32

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*,
    235 F.3d 598 (D.C. Cir. 2001) ........................................26

*Safecard Services Inc. v. S.E.C.*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................30

*Scheer v. U.S. Dep't of Justice*,
    35 F. Supp. 2d 9 (D.D.C. 1999) ........................................17

*Schwaner v. Dep't of the Air Force*,
    898 F.2d 793 (D.C. Cir. 1990) ........................................13

*Stolt-Nielsen SA v. Celanese AG*,
    430 F.3d 567 (2d Cir. 2005) ........................................23

*Stolt-Nielsen v. United States*,
    Civil Action No. 04-CV-537 (E.D. Pa.) ........................................26

v

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*,
   177 F.3d 1022 (D.C. Cir. 1999) ...................................................................11

*United States v. Scrushy*,
   366 F. Supp. 2d 1134 (N.D. Ala. 2005) .................................................23, 28

*U. S. Dep't of Justice v. Landano*,
   508 U.S. 165 (1993) ......................................................................20, 21, 31

*U. S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ...............................................................................24

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ...................................................................11

*Voinche v. Federal Bureau of Investigation*,
   46 F. Supp. 2d 26 (D.D.C. 1999) ..............................................................22

*Williams v. Federal Bureau of Investigation*,
   69 F.3d 1155 (D.C. Cir. 1995) ..................................................................20

## STATUTES

5 U.S.C. § 552 ............................................................................... *passim*

18 U.S.C. § 3282 .....................................................................................17

## OTHER

28 C.F.R. § 50.2 (2004) ..............................................................................1

Local Rule 56.1 .......................................................................................32

## INTRODUCTION

The Antitrust Division of the United States Department of Justice has engaged in an unprecedented publicity campaign concerning the revocation of Stolt-Nielsen's amnesty from the Division's Corporate Amnesty Program. The Antitrust Division's extraordinary campaign has included making numerous speeches about an ongoing criminal probe, an FBI agent making public comments about the future direction of the criminal probe, and coordination between the Division and private authors writing about the case. Despite the clear and well-established legal restrictions on such publicity efforts and the pending trial of Stolt-Nielsen, this campaign has continued, with the Deputy Assistant Attorney General of the Division recently giving a speech that detailed how a second firm in the ongoing parcel tanker grand jury investigation approached the Antitrust Division seeking amnesty.

When confronted by the express terms of 28 C.F.R. § 50.2 — which restricts the Division's ability to comment on pending criminal and civil cases — the Division's response to this Court is that the revocation of Stolt-Nielsen from its Amnesty Program has engendered so much controversy that it has had to speak out on a pending case. Especially where there has been an indictment and trial is imminent, there is no "controversial" case exception to the relevant regulations.

Despite the ongoing Division-generated publicity, the Division is withholding hundreds of pages of documents for which there is no FOIA protection. The Division *continues* to withhold nearly 100 amnesty agreements on the ostensible ground that the identity of the amnesty applicant must be protected. The Division's practice, however, is to give public speeches about amnesty applicants that publicize their entry into the Amnesty Program. The Division's memoranda in support of its summary judgment motion fails to point out that

Antitrust Division personnel, including Deputy Assistant Attorney Generals James Griffin and Scott Hammond, have given speeches identifying several amnesty applicants. Putting aside the five amnesty agreements produced by the Division, Stolt-Nielsen's research has located at least twenty other companies that have publicly announced their entry into the Amnesty Program. The Division should produce these twenty agreements to Stolt-Nielsen without redaction and without further ado.

For the remainder, simple redaction of firm name and industry would alleviate any conceivable basis for withholding the texts of those agreements. The public has a keen interest in knowing how faithful the Division is to its publicized boilerplate text.

The Antitrust Division is also withholding documents on how Stolt-Nielsen entered the Amnesty Program, despite having already moved to publicly release the testimony about Stolt-Nielsen's entry into the Amnesty Program (including testimony by the Division's top criminal antitrust official) and despite the Division's proclaimed need to discuss publicly the circumstances of its revocation of Stolt-Nielsen's amnesty. Having ignored the Department's regulations by commenting on the case, the Division cannot be surprised that the unprecedented and unwarranted expulsion of Stolt-Nielsen from the Amnesty Program has spawned intense public interest. *See, e.g.*, Sue Reisinger, *Promise Breakers*, Corporate Counsel, Sept. 2006 (Declaration of Lucius B. Lau, dated September 27, 2006 ("Lau Decl."), Ex. 1); Michael Peel and Patti Waldmeir, *Business Wants More Power For US Courts To Enforce Amnesty Deals*, Financial Times, Sept. 25, 2006 (Lau Decl. Ex. 2). Additionally, nine *amici* have filed papers in the Supreme Court of the United States supporting Stolt-Nielsen's petition for certiorari, which seeks to restore the company's amnesty. Plainly, the public has a great interest in the documents that are the subject of Stolt-Nielsen's FOIA requests.

As explained in this opposition, there are five separate reasons why the government's motion for summary judgment should be denied. Specifically, the Antitrust Division (1) is improperly withholding amnesty agreements; (2) has failed to establish the existence of "confidential" informants concerning its communications with private attorneys; (3) has not justified its failure to produce the date of the opening of the parcel tanker investigation in November 2002; (4) has failed to segregate exempted material from non-exempted material; and (5) has provided insufficient justification for withholding numerous documents. The Division's assertion that it has released all segregable responsive documents except for records properly withheld under the FOIA exemptions (Gov't Motion at 1-2) is simply incorrect. Thus, the government's motion should be denied.

## ARGUMENT

I.    **The Court Should Order The Antitrust Division To Produce All Amnesty Agreements From 1993 To The Present**

Asserting its rights under FOIA, Stolt-Nielsen has requested that the Antitrust Division produce any and all amnesty agreements entered into by that agency from August 1993 (the modern amnesty program's inception) to the present. Although the Antitrust Division has entered into approximately 100 of these agreements since 1993, the Division has produced only five of these agreements to Stolt-Nielsen. The Antitrust Division has not justified its failure to produce the remaining agreements. The Division's concerns about the identity of the applicants is baseless for the 20 or more firms that have publicized their entry into these agreements (with the Division mentioning several in their own public speeches); for the remainder, simple redaction of the name and industry will protect the identity of any firm.

A.    **The Amnesty Agreements Can Be Disclosed Without Compromising The Identity Of The Amnesty Applicants**

    1.    **At Least Twenty Amnesty Applicants Have Publicly Revealed Their Own Identities**

The Antitrust Division's primary justification for withholding the remaining 100 or so amnesty agreements is the purported need to maintain the confidentiality of its amnesty applicants. *See generally* Declaration of Scott D. Hammond, dated August 11, 2006 ("Hammond Decl.") at ¶ 9 ("the Division concluded long ago that confidential treatment of amnesty applications is crucial"). This proposition does not suffice to meet the Division's burden under FOIA where redacting names will meet any such concern. And this proposition is entirely baseless when applied to the 20 firms that have made their entry into these agreements public — often with the Division then giving *public speeches* about the identity of these firms.

First, there are no fewer than twenty firms whose participation in the amnesty program is publicly known through those firms' own public press releases, court filings and securities filings:

- Aventis SA – June 2002 – Lau Decl. Ex. 3

- Bayer AG – March 2005 – Lau Decl. Ex. 4

- The Carbide/Graphite Group of Pittsburgh – April 1998 – Lau Decl. Ex. 5

- ChemTrade Logistics (U.S.) Inc. – June 2005 – Lau Decl. Ex. 6

- Citizens Gas and Coke Utility – December 2003 – Lau Decl. Ex. 7

- Crompton Corporation

  - EPDM Industry – December 2002 – Lau Decl. Ex. 8

  - Heat Stabilizers Industry – February 2003 – Lau Decl. Exs. 9-10

  - Nitrile Rubber Industry – December 2003 – Lau Decl. Ex. 11

- o Urethanes and Urethane Chemicals Industry – March 2004 – Lau Decl. Ex. 12

- Deutsche Lufthansa AG – September 2006 – Lau Decl. Ex. 13a-13b

- DuPont – April 2004 – Lau Decl. Ex. 14

- Flexsys – 2005 – Lau Decl. Ex. 15

- Great Lakes Chemical Corporation – July 1999 – Lau Decl. Exs. 16-17

- Indiana University – Purdue University at Indianapolis – May 2003 – Lau Decl. Ex. 18

- Marsulex, Inc. – June 2005 – Lau Decl. Ex. 6

- Micron Technology Inc. – November 2004 – Lau Decl. Ex. 19

- Mitsui & Co. – May 2006 – Lau Decl. Ex. 20

- Parkdale America, LLC – January 2005 – Lau Decl. Ex. 21a-21b

- Rhone-Poulenc S.A. – September 2000 – Lau Decl. Ex. 22

- Shelby Materials – March 2006 – Lau Decl. Exs. 23-24

- Tier Technologies Inc. – May 2005 – Lau Decl. Ex. 25

- Unifi, Inc. – June 2004 – Lau Decl. Ex. 26

- UPM-Kymmene Oyj – April 2006 – Lau Decl. Ex. 27

For example, an article from AP Online titled "Electrode Price Fixing" and dated April 7, 1998, stated:

> A third company in the conspiracy, The Carbide/Graphite Group of Pittsburgh, has been given amnesty in the case by qualifying for the antitrust division's corporate leniency program. . . .*The Carbide/Graphite Group "came in very early and gave us significant help," said one Justice official, who requested anonymity.*

(emphasis added) (Lau Decl. Ex. 5). On December 12, 2003, Citizens Gas & Coke Utility issued a press release that stated, in relevant part:

> Citizens Gas & Coke Utility is cooperating with the Antitrust
> Division of the United States Department of Justice (DOJ) in its
> investigation into possible anti-competitive practices by producers
> of foundry coke. . . . ***Citizens Gas promptly reported the findings
> of its internal investigation to the DOJ, and has been granted
> conditional amnesty*** under the Department's corporate leniency
> program.

(emphasis added) (Lau Decl. Ex. 7).  In its 2005 Annual Report, Akzo Nobel, a joint venture

partner with Solutia, Inc. of Flexsys, Akzo Nobel stated:

> With regard to Flexsys, a 50/50 joint venture for rubber chemicals
> with Solutia, Inc., authorities in the United States, Canada and
> Europe are investigating alleged antitrust violations in the rubber
> chemicals industry.   We have been informed by Flexsys
> management that it is cooperating with the authorities and will
> continue to do so and ***pursuant to this cooperation has been
> granted conditional amnesty by the US DOJ, the Canadian BOC
> and the EU Commission.***

(emphasis added) (Lau Decl. Ex. 15).  In its 10-K filing with the Securities and Exchange

Commission ("SEC") filed for the fiscal year ended December 31, 2003, Great Lakes Chemical

Corporation stated:

> The company cooperated with the United States Department of
> Justice (DOJ) and the European Commission in their respective
> investigations of the bromine and brominated products industry.
> Both investigations were initiated after the Company self-reported
> to those agencies certain business practices that raised questions
> under antitrust laws.  ***As a result of the Company's cooperation,
> the Company and its current directors and employees were
> accepted into the DOJ's amnesty program.***

(emphasis added) (Lau Decl. Ex. 17).  In October 2004, an attorney for Rhone-Poulenc SA gave

an interview to Metropolitan Corporate Counsel in which he boasted:

> We advised *Rhone-Poulenc S.A.* as it addressed conduct relating to
> sales of vitamins throughout the world.  While ***the company was
> able to obtain complete or partial amnesty in multiple
> jurisdictions,*** the rest of the industry was hit with criminal and
> civil fines that totaled well over a billion dollars.

(emphasis added) (Lau. Decl. Ex. 22).  In Tier Technologies Inc.'s Form 10-Q, filed with the

SEC on May 6, 2005, the company stated:

> In June 2003, we received a subpoena from a grand jury in the Southern District of New York to produce certain documents pursuant to an investigation by the Antitrust Division of the Department of Justice (*"DOJ"*) involving the child support payment processing industry.  We have fully cooperated, and intend to continue to cooperate fully, with the subpoena and with the DOJ's investigation. ***On November 20, 2003, the DOJ granted us conditional amnesty pursuant to the Antitrust Division's Corporate Leniency Policy.***  Consequently, the DOJ will not bring any criminal charges against us and our officers, directors and employees, as long as we continue to comply with the Corporate Leniency Policy, which requires, among other things, our full cooperation in the investigation and restitution payments if it is determined that parties were injured as a result of impermissible anticompetitive conduct.

(emphasis added) (Lau Decl. Ex. 25).  And finally, in Unifi, Inc.'s Form 10-K/A filed with the

SEC for the fiscal year ended June 27, 2004, the company stated:

> In late 2003, the Company disclosed to the United States Department of Justice ("DOJ") that it participated in certain anticompetitive activities that may have resulted in violation of antitrust laws.  Subject to the Company's continuing and complete cooperation with the Antitrust Division of the DOJ, ***the Division agreed to provide protection for the Company and the Company's directors, officers, and employees from criminal prosecution related to the reported anticompetitive activity.***

(emphasis added) (Lau Decl. Ex. 26).  The amnesty status of these companies has been placed in

the public domain either in press releases, SEC filings, Antitrust Division speeches, or other

media.  Yet, the Antitrust Division has produced none of these amnesty agreements to Stolt-

Nielsen.  According to the Division, it cannot produce amnesty agreements due to the "negative

effect on the perception of the amnesty program," the "chilling effect on amnesty applications,"

and "interfere[nce] with the Division's anti-cartel enforcement program."  Hammond Decl. at ¶

11.    Such concerns, however, simply do not apply to the publicly-announced amnesty agreements of these twenty companies.

The Antitrust Division is well aware that it is withholding Amnesty Agreements of applicants whose identity is public.  The Antitrust Division has speeches on its web site with the identity of several of the firms mentioned above.  *See* Lau Decl., Exs. 29, 31-34.  For example, the Antitrust Division has given public speeches about the following amnesty applicants:

- The Carbide/Graphite Group of Pittsburgh:

  o  March 8, 2001 Hammond speech – Lau. Decl. Ex. 29

  o  October 2002 issue of "The Status Report – News from the Atlanta Office of the Antitrust Division" – Lau Decl. Ex. 30

- Crompton Corporation – March 29, 2006 Hammond speech – Lau Decl. Ex. 31

- Rhone-Poulenc SA

  o  September 12, 2000 Hammond speech – Lau Decl. Ex. 32

  o  November 21-22, 2000 Hammond speech – Lau Decl. Ex. 33

  o  March 8, 2001 Hammond speech – Lau Decl. Ex. 29

  o  November 23-24, 2004 Hammond speech – Lau Decl. Ex. 34

For example, on March 8, 2001, Scott D. Hammond gave a speech entitled "When Calculating the Costs and Benefits of Applying for Corporate Amnesty, How Do You Put a Price Tag on an Individual's Freedom?" at the Fifteenth Annual National Institute on White Collar Crime in San Francisco, California.  In that speech Mr. Hammond went so far as to discuss the scope of one applicant's amnesty agreement, stating:

> The Carbide/Graphite Group, Inc. obtained corporate amnesty, and so *all* of its officers, directors, and employees received full non-prosecution protection for any crimes committed in connection with the antitrust conspiracy.

8

Lau Decl. Ex. 29 (emphasis in original).   On March 29, 2006, only a few months before executing his declaration in this case, Scott D. Hammond gave a speech entitled "Measuring the Value of Second-In Cooperation in Corporate Plea Negotiations" at the 54th Annual American Bar Association Section of Antitrust Law Spring Meeting in Washington, D.C.   In that speech he stated:

> The paper focuses on the benefits earned by Crompton Corporation for being second-in-the-door in the Division's rubber chemicals investigation and provides information that was not public at the time the company was sentenced.

Lau Decl. Ex. 31.   Also, on or around November 23-24, 2004, Scott D. Hammond gave a speech entitled "Cornerstones of an Effective Leniency Program" before the ICN Workshop on Leniency Programs in Sydney, Australia.   In that speech he stated, in relevant part:

> It has been widely acknowledged that one of the keys to the Division's success in cracking the worldwide vitamin cartel was the cooperation provided by Rhône-Poulenc SA pursuant to its amnesty application.

Lau Decl. Ex. 34.   The Antitrust Division has even released this information to other courts.   In 2004, the Antitrust Division submitted an amicus brief in *F. Hoffman-LaRoche Ltd. v. Empagran, S.A.*, 542 U.S. 155 (2004) (No. 03-724).   On pages 1-2, the Division states:

> In 1998, one of the petitioners, Rhone-Poulenc SA, applied for admission to the government's amnesty program for Rhone-Poulenc's role in global price-fixing and market-allocation conspiracies among domestic and foreign manufacturers and distributors of bulk vitamins.   In exchange for amnesty, the company exposed the cartel, which had sold billions of dollars of vitamins in the United States and other countries around the world.

Lau Decl. Ex. 35.   Regrettably, in his submission to this Court, Mr. Hammond does not disclose that he has spoken publicly about many of these companies and their participation in the amnesty program.

9

In this litigation, the Division has stubbornly refused to produce any of the twenty amnesty agreements listed above, all of which have either been publicly announced by the companies themselves or publicly discussed by the Antitrust Division. In light of the Division's clear disregard for this Court and this Circuit's rules regarding FOIA productions, the Division should be ordered to search its speeches for additional applicants and produce any and all agreements found therein in unredacted form.

### 2.    The Remaining Agreements Can Be Redacted

For the remaining 80 or so amnesty agreements, the Antitrust Division can protect the identity of its amnesty applicants by simply redacting the applicant's name and other identifying information such as the industry at issue. Indeed, this is a proposal that Stolt-Nielsen made to the Division in its FOIA request concerning these agreements. *See* Lau Decl. at Ex. 37 (letter from Stolt-Nielsen to the Antitrust Division, dated October 14, 2005: "In an effort to expedite response to this matter and protect any arguably confidential information regarding the identity of the companies or individuals, SNTG will accept such documents with the names and identities of the relevant companies or individuals redacted").

Because the Antitrust Division has already published its form agreement (Lau Decl. Ex. 36), the remaining portions of the agreements can be readily disclosed. To illustrate the ease with which the Antitrust Division may redact the names and other identifying information from an amnesty agreement, Stolt-Nielsen has prepared a sample redacted amnesty agreement (*i.e.*, its own amnesty agreement with the Division). Lau Decl. Ex. 38; *see also Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 232 (1st Cir. 1994) (rejecting argument identical to Division's conclusion here that personal information cannot be redacted).

The Antitrust Division's claim that releasing the amnesty agreements will disclose information provided by confidential sources is incorrect. Once the company and industry

names are redacted, the amnesty agreements will not include *any* information provided to the DOJ by these alleged confidential sources. The Antitrust Division has an affirmative duty to segregate non-exemptible material from exemptible material. *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) ("It has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). Clearly, the Antitrust Division has not complied with this directive.

**B.     None Of The FOIA Exemptions Apply To The Amnesty Agreements**

In a FOIA action, the burden is on the government to demonstrate that requested documents are exempt from disclosure. *Miller v. Dep't of Navy*, 383 F. Supp. 2d 5, 13 (D.D.C. 2005). The government's burden "may be satisfied by submission of a 'Vaughn Index' *and* supporting declarations, which are intended to provide a court with an adequate description of documents that are being withheld from production pursuant to a specified FOIA exemption and justification for the applicability of the exemption invoked." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 161 (D.D.C. 2004) (emphasis added).

As is always the case in FOIA actions, the government bears the ultimate burden of demonstrating the applicability of the exemptions. *Ripskis v. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984). Exemptions are not proper if based merely on "conclusory and generalized allegations." *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). Finally, the exceptions are to be construed narrowly in order to tip the scales in favor of public disclosure. *Ripskis*, 746 F.2d at 3.

The Antitrust Division's *Vaughn* index and the declarations accompanying its summary judgment motion do not satisfy the Antitrust Division's burden. Both versions of the *Vaughn* index are merely a collection of cut-and-pasted conclusory assertions. For many of the entries,

11

the language appearing in the "justification for the exemption used" column is clearly copied straight from the previous entry. *See, e.g.*, Entries for ATR-4622-4649 and ATR-4650-4965. Moreover, there is no explanation as to how each alleged exemption applies to specific documents or specific categories of information.

For example, in the entries for ATR-4622-4649 and ATR-4650-4965 in the amended 2006 *Vaughn* index, the Antitrust Division claims that the amnesty agreements are withheld in full under five separate exemptions, yet fails to provide any specific justifications for how each document satisfies each exemption. Such blanket assertions are improper. *See Jaffe v. Cent. Intelligence Agency*, 573 F. Supp. 377, 381 (D.D.C. 1983) ("Rather than permitting a mere blanket assertion of withholding authority by an agency, that burden requires a showing that withheld material clearly falls within the parameters of one of the seven FOIA exemptions codified at 5 U.S.C. § 552(b).").

The declarations submitted with the government's motion provide little additional information. By her declaration, Ms. Richards declares that she is "responsible for making the final determination whether information requested should be released or is exempt from disclosure in whole or in part." Declaration of Ann Lea Richards, dated August 22, 2006, ("Richards Decl.") at ¶ 1. Yet, her declaration simply recites paragraphs of alleged "justifications" under each named exemption and then lists the thousands of pages of documents those "justifications" apply to, without any specific information as to how information in ***each document*** is exempted under each justification. For the amnesty agreements, neither the amended 2006 *Vaughn* index nor the declarations even provide Stolt-Nielsen with the number of documents withheld. As stated above, the blanket assertions found in each of the declarations do not satisfy the Antitrust Division's burden for withholding documents under FOIA.

Because the Antitrust Division has failed to provide specific details as to why these exemptions apply, it cannot meet the standard for summary judgment.   Therefore, the government's motion should be denied and the Antitrust Division should be ordered to produce all of the exempted documents in their unredacted form.

### 1.    Exemption (b)(2):  Internal Personnel Rules And Practices

The Antitrust Division cannot withhold the amnesty agreements utilizing Exemption (b)(2).  This exemption permits the government to withhold documents "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  This exemption applies to two categories of material:  (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest"; and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976).  As elaborated by the Court of Appeals in *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981), "if a document for which disclosure is sought meets the test of 'predominant internality,' and if disclosure significantly risks circumvention of agency regulations or statutes, then Exemption 2 exempts the material from mandatory disclosure."

The first hurdle to clear is that of "predominant internality."  The Antitrust Division presents no evidence for this prong of the test. *See generally* Gov't Br. at 18.  Because amnesty agreements are neither internal rules and practices of the Antitrust Division nor relate to those rules and practices, they cannot be withheld under this exemption.  Because the Antitrust Division has failed to satisfy this prong of the test, the Court need not even address the second prong. *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 798 (D.C. Cir. 1990).  In order to satisfy the second part of the test, the Antitrust Division must show that "disclosure *significantly risks* circumvention of agency regulations or statutes." *Crooker*, 670 F.2d at 1074 (emphasis

added).  This requirement has been interpreted to mean that disclosure will "aid some individuals in evading the law."  *Id.* at 1066.

According to the Antitrust Division, disclosure of the texts of the Amnesty Agreements would "impede the effectiveness of [the amnesty] program," "interfere with ongoing or prospective enforcement proceedings," and "discourage future amnesty applicants."  Gov't Br. at 18-19.  None of these alleged consequences could ever conceivably "aid some individuals in evading the law," particularly if all identifying information is redacted from the amnesty agreements.  Furthermore, the age of many of these agreements makes it highly unlikely that their public disclosure will interfere in any way with ongoing or prospective enforcement proceedings.

## 2.     Exemption (b)(5):  Inter-Agency Or Intra-Agency Memoranda Or Letters

Because the amnesty agreements are, by definition, agreements between the Antitrust Division and an outside party, the "inter-agency" exemption is obviously inapplicable. Exemption (b)(5) only permits the government to withhold documents constituting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

For purposes of the inter-agency requirement, the Supreme Court has noted that the term "'agency' means 'each authority of the Government of the United States,' . . . and 'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency.'"  *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9 (2001).  The *Klamath Water Users* definition establishes that communications between an agency and an outside party are not protected under Exemption 5.  *See Ctr. for Int'l*

14

*Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002) ("While FOIA exemption 5 does protect intragovernmental deliberations, *it does not cover negotiations between the government and outside parties*.") (emphasis added) (citation omitted); *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 257-58 (D.C. Cir. 1977) (policy objectives of Exemption 5 are not applicable to negotiations between agency and outside party).

There is a very narrow exception to this rule. When an outside consultant takes the place of an agency in its deliberative process, records exchanged between the agency and the consultant may be withheld under Exemption (b)(5). The Court in *Klamath Water Users* discussed this "consultant corollary" to Exemption (b)(5). 532 U.S. at 2-3. That case involved an attempt by a non-profit organization to obtain through a FOIA request documents submitted to the government by Indian tribes. *Id.* at 1. The Court began its analysis by stating that "[t]o qualify under Exemption 5's express terms, a document must satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds the document." *Id.* at 2. The Court recognized that "some Courts of Appeals have held that a document prepared for a Government agency by an outside consultant qualifies as an 'intra-agency' memorandum. In such cases, the records submitted by outside consultants played essentially the same part in an agency's deliberative process as documents prepared by agency personnel. The fact about the consultant that is constant in the cases is that *the consultant does not represent its own interest*, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in

those respects it functions just as an employee would be expected to do." *Id.* at 2-3 (emphasis added).

The Antitrust Division's attempt to shoehorn the amnesty agreements into this consultant corollary (Gov't Br. at 27) falls short. Here, the companies communicating with the Antitrust Division regarding the amnesty agreements are not functioning "just as an employee would be expected to do." Instead, they are representing their own interests. These agreements are between the Antitrust Division and admitted law-breakers, who are taking advantage of the Corporate Leniency Program for their own self-interest. This type of communication is one that can hardly be described as "inter-agency or intra-agency," and thus is not protected by Exemption 5. The Antitrust Division cites no case — nor can Stolt-Nielsen find a case — in which an immunity agreement has been protected by such a privilege.

It stands logic on its head to conclude that amnesty applicants like Crompton Corporation and Rhone-Poulenc SA are "outside consultants" to the Antitrust Division. Thus, the Division's arguments to the contrary should be summarily rejected.

### 3.     Exemption 7A: Law Enforcement

Exemption 7A authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). For a government agency to withhold documents under Exemption 7A, the agency must demonstrate that the documents were compiled for law enforcement purposes and that their disclosure "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated*." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis in original). In other words, the law enforcement proceeding must have been "a concrete, prospective law enforcement

proceeding" at the time of the agency decision to withhold. *Scheer v. U.S. Dep't of Justice*, 35 F. Supp. 2d 9, 12 (D.D.C. 1999) (citation omitted). The purpose of the exemption is to "prevent harm [to] the Government's case in court . . . by not allowing litigants 'early or greater access' to agency investigatory files than they would otherwise have." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224-25 (1978) (citations omitted). There are two reasons why this exemption does not apply to the amnesty agreements at issue.

*First*, once all identifying information is redacted from the amnesty agreements, the disclosure of such agreements will not in any way interfere with law enforcement proceedings. The remaining language will either track the form amnesty agreement *verbatim* or contain deviations from that boilerplate that would be of great interest to the antitrust bar as a whole.

*Second*, even if the confidential information were not redacted, the Antitrust Division has not met its burden to withhold such documents. Both in the *Vaughn* indices and in Mr. Hammond's declaration, the Antitrust Division parrots the language from *Mapother* that release of the agreements "could reasonably be expected to interfere with ongoing or prospective enforcement proceedings." The Division, however, offers no details or proof for each agreement as to any "concrete, prospective law enforcement proceeding." *Scheer*, 35 F. Supp. 2d at 12. Indeed, because Stolt-Nielsen's request dates back to 1993, many of the agreements at issue pertain to investigations that have run their course. The antitrust laws are subject to a five-year statute of limitations. 18 U.S.C. § 3282. The Division cannot credibly claim that the release of an amnesty agreement executed thirteen years ago could interfere with concrete, ongoing or prospective proceedings.

### 4.     Exemption 7C: Personal Privacy

Exemption 7C protects investigatory records compiled for law enforcement purposes whose disclosure would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(7)(C).   Exemption 7C cannot justify the Antitrust Division's refusal to disclose the amnesty agreements because (1) at least 20 firms have already disclosed their entry into the amnesty program; and (2) Stolt-Nielsen is agreeable to redactions for the remainder.  *See Church of Scientology Int'l*, 30 F.3d at 232 (rejecting the government's argument that privacy concerns warrant withholding an entire document and stating that the government must provide more than unsupported conclusions to justify withholding entire documents based on this exemption); *see also Prows v. U.S. Dep't of Justice*, 1996 WL 228463, at *3 (D.D.C. Apr. 25, 1996) (ordering government to redact personal information from documents).

**5.    Exemption 7D:  Confidential Source Identity**

Exemption 7D provides protection from disclosure for "records or information compiled for law enforcement purposes, ***but only to the extent*** that the production of such law enforcement records or information . . . could reasonably be expected to disclose the ***identity of a confidential source***, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D) (emphasis added).

Again, this exemption does not justify the Antitrust Division's refusal to disclose the remaining amnesty agreements.   At least twenty of the applicants are already public.  Stolt-Nielsen has already agreed that the Division may redact the name of the amnesty applicant and all other information that would disclose the identity of the applicant.  *See Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (holding that FOIA's focus "is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.") (quoting *Mead Data Cent.*, 566 F.2d at 260).

18

II.    **The Antitrust Division Has Failed To Establish The Existence Of "Confidential" Informants**

   A.    **Unsubstantiated Reliance on Exemption 7D for Private Damages Plaintiff's Counsel**

Aside from amnesty agreements, the Antitrust Division relies upon Exemption 7D to withhold numerous documents on the basis that such documents would disclose the identity of confidential sources. For example, the Division is withholding documents concerning its communications with attorneys who are private damages plaintiffs' lawyers on the basis that these attorneys are confidential sources.

The Division has done nothing to meet its burden. The Division has failed to provide evidence that the sources in question provided information based upon express assurances of confidentiality. Nor has the Division demonstrated that an implied assurance of confidentiality should apply to these sources of information. Oddly, the Hammond declaration and the Richards declaration are both silent on the Division's obvious communications with plaintiffs' attorneys. Thus, the Court should order the Division to promptly disclose the sources in question as well as the information provided by that those sources.

Again, Exemption 7D applies to records or information compiled for law enforcement purposes, "but only to the extent" that the production of such law enforcement records or information "could reasonably be expected to disclose the identity of a confidential source . . . ." The fact that these attorneys represent various private claimants is a fact of public record. *See* Lau Decl. Exs. 42 (Mr. Torres represents Celanese AG), 43 (Kasowitz, Benson, Torres & Friedman LLP represents Celanese AG), 44 (Mr. Golub represents Paul O'Brien).

In the past, the government has argued that Exemption 7D entitles it to a presumption of confidentiality whenever a source provides it with information during the course of a criminal investigation. This argument was soundly rejected by the Supreme Court in *United States Dep't*

*of Justice v. Landano*, 508 U.S. 165 (1993), where the Court noted that "a source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Id.* at 172 (quoting S. Rep. No. 93-1200, at 13, *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291). The Court went on to list some examples that would warrant an inference of confidentiality, including: (1) individuals who provided information about a subject's possible Communist sympathies, criminal activity, and murder; (2) sources concerning the murder of American churchwomen in El Salvador; and (3) prison officials who provided information about an alleged attack on an inmate. *Id.* at 179-80.

Since *Landano*, the United States Court of Appeals for the District of Columbia has identified additional circumstances that warrant an inference of confidentiality: (1) crimes of "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government" (*Williams v. FBI*, 69 F.3d 1155, 1159-60 (D.C. Cir. 1995)); and (2) "a conspiracy to distribute crack and powder cocaine" (*Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000)).

In this case, the Antitrust Division asserts that "many" companies and individuals who have provided information "seek explicit assurances of confidentiality before sharing any information." Richards Decl. at ¶ 40. But the Division makes no attempt to tie this assertion of an explicit-assurance-of-confidentiality to any particular document — thus, it appears that this argument is merely boilerplate in nature without any basis in fact.

The Antitrust Division also asserts that "other" companies and individuals "assume from the circumstances that their identity and any information they impart will be held in confidence." Richards Decl. at ¶ 40. The Division recites a litany of reasons that purportedly support this

reasoning: the serious financial consequences of a Sherman Act violation; persons who provide information to the Division about conspirators are concerned that their identity not be revealed; companies are concerned that they will lose favor in the industry, becoming subject to retaliation by customers; and individuals would be concerned about harassment, loss of employability and/or social stigma. *Id.*

Concerning the other sources at issue, the Antitrust Division has simply not made any persuasive showing that the information was provided under circumstances that would warrant an inference of confidentiality. Concerns of harassment, loss of employability, and social stigma are garden-variety consequences that could occur with respect to any individual who provides information to the government in connection with a criminal investigation. Yet, the Supreme Court has already rejected the government's argument that it is entitled to a presumption that every source is confidential. *See Landano*, 508 U.S. at 175 ("we cannot say that the Government's sweeping presumption comports with commons sense and probability") (citations and internal quotation marks omitted).

This Court has already considered — and readily rejected — efforts by the government to invoke Exemption 7D by merely reciting the legal criteria. In *Dipietro v. Executive Office for United States Attorneys*, 357 F. Supp. 2d 177, 186 (D.D.C. 2004) (Leon, J.), this Court reviewed a declaration in support of a claimed Exemption 7D that "merely asserts that the information withheld 'was provided with an express assurance of confidentiality to one or more confidential informants . . . as well as information from which the assurance of confidentiality could be reasonably inferred from the fact that these individuals were witnesses to narcotics transactions'" (citation omitted). The Court rejected this argument for several reasons, including the fact that the "basis of the declarant's knowledge of any such assurance of confidentiality is unknown."

21

*Id.* In this case, the Antitrust Division proffers the declaration of Ann Lea Richards in support of its claim for Exemption 7D. However, there is no indication from that declaration that Ms. Richards actually possesses any personal knowledge with respect to the sources of the purportedly "confidential" information that the Division seeks to protect. Indeed, given that Ms. Richards is the Chief of the Antitrust Division's Freedom of Information and Privacy Act Unit, it is unlikely that she has any personal knowledge of this issue. Just as the Court rejected the government's conclusory assertion of Exemption 7D in *DiPietro*, so too should it reject the Antitrust Division's conclusory assertion of that exemption here. *See also Voinche v. Federal Bureau of Investigation*, 46 F. Supp. 2d 26, 34 (D.D.C. 1999) ("To properly invoke Exemption 7(D), however, the FBI must present more than the conclusory statement of an agent that is not familiar with the informant.").

**B.    The Antitrust Division's Communications with Private Litigants**

**1.    David Golub – Attorney for Paul O'Brien in Employment Litigation**

The Antitrust Division's efforts to invoke Exemption 7D are particularly troubling with respect to David Golub, a subject of one of Stolt-Nielsen's FOIA requests (ATFY06-003) and attorney for Stolt-Nielsen's former General Counsel, Paul O'Brien. Paul O'Brien has brought a private employment damages suit against Stolt-Nielsen. Various court proceedings have already occurred in the case. *See, e.g., O'Brien v. Stolt-Nielsen Trans. Group, Ltd.*, 2004 WL 2591952, at *1 (Conn. Super. Ct. Oct. 7, 2004) (Lau Decl. Ex. 44); *O'Brien v. Stolt-Nielsen Trans. Group, Ltd.*, 2004 WL 870839, *1 (Conn. Super. Ct. Apr. 2, 2004) (Lau Decl. Ex. 45).

As former General Counsel to Stolt-Nielsen, Mr. O'Brien is required to protect his former client's privileged and confidential information. As for the Antitrust Division, it is well-aware of its own obligations not to intrude upon the attorney-client privilege that exists between Stolt-Nielsen and Mr. O'Brien. Nonetheless, the Antitrust Division seeks to withhold e-mails

22

and letters that appear to be either to or from David Golub. *See* Control No. 352[1] (ATR-2236-2238) ("E-mail communications between staff and attorney for confidential source, the disclosure of which could impede the ongoing grand jury investigation"); Control No. 359 (ATR-2252) ("Letter to confidential source's attorney regarding information relevant to the ongoing investigation").

The collection of such "confidential" information is starkly at odds with the rule that government is not to use a civil discovery mechanism in connection with criminal proceedings. *See United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) (motion to suppress deposition taken by Securities and Exchange Commission granted in light of participation of U.S. Attorney's Office in tailoring the examination). Exhibit 1 to this memorandum lists all of the documents pertaining to Mr. Golub and request ATFY06-003 for which the Antitrust Division has not demonstrated the existence of "confidential" information under FOIA.

### 2. Hector Torres – Attorney For Private Damages Claimants

The Antitrust Division also appears to be withholding documents concerning Hector Torres and his firm, Kasowitz, Benson, Torres & Friedman LLP (a subject of FOIA request ATFY06-040). Mr. Torres is an attorney who has represented various private claimants against SNTG and other parcel tanker firms. This is a matter of public record. *See, e.g.*, *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 569 (2d Cir. 2005) (listing Mr. Torres as counsel for Appellees) (Lau Decl. Ex. 42); *Odfjell ASA v. Celanese AG*, 380 F. Supp. 2d 297, 298 (S.D.N.Y. 2005) (listing Kasowitz, Benson, Torres & Friedman LLP as counsel for Defendants/Claimants) (Lau Decl. Ex. 43).

---

[1] A control number was assigned by Stolt-Nielsen to all documents in the *Vaughn* index. Additionally, the *Vaughn* index has been manually inputted into an electronic format by Stolt-Nielsen so that it can be sorted by date and by category.

As part of an arbitration proceeding, during October 2004 and December 2005, Mr. Torres sought to take the testimony of Paul O'Brien, former General Counsel for Stolt-Nielsen. The amended *Vaughn* index contains a reference to a withheld e-mail dated November 19, 2004 "reflecting a conversation with and the identity of a confidential source of information provided by the source." Control No. 490 (ATR-4141). The Antitrust Division has not demonstrated that any of the withheld information that is the subject of ATFY06-040 was given with either an express assurance of confidentiality or under circumstances in which confidentiality could be implied.

It would be a strange result indeed if the government were to obtain information from private attorneys and then claim that all such information should be considered "confidential" for purposes of FOIA. Such a result would be at odds with the purpose of FOIA, which is to ensure that the government's activities are "opened to the sharp eye of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 774 (1989). Exhibit 2 to this memorandum lists all of the documents pertaining to Mr. Torres and request ATFY06-040 for which the Antitrust Division has not demonstrated the existence of "confidential" information under FOIA.

III.    **The Antitrust Division Has Not Justified Its Failure To Produce The Date Of The Opening Of The Parcel Tanker Industry Investigation In November 2002**

Through a separate FOIA request (designated as request number ATFY05-080), Stolt-Nielsen requested that the Antitrust Division produce all documents related to the opening of the parcel tanker industry investigation in November 2002. Concerning this request, Stolt-Nielsen seeks simply documentary confirmation of the date upon which the parcel tanker investigation was formally opened. Former Deputy Assistant Attorney General Griffin, appearing as a witness

on behalf of the Division, has testified that the investigation opened on November 22, 2002. *See* Lau Decl. Ex. 39.

In its Answer in Civil Action No. 06cv474 (RJL), the government continues to adhere to this November 22, 2002 date as the opening of its investigation. Answer, Civil Action No. 06cv474 (RJL), at 2. But several documents identified in the *Vaughn* index strongly suggest that the investigation officially opened on November 26, 2002 or later. Specifically, the Division is withholding the November 26, 2002 memo from the Philadelphia Field Office to the Washington Headquarters of the Antitrust Division, as discussed below. The timing strongly suggests that this is the case opening memorandum. And tellingly, in his sworn submission, Mr. Hammond is silent on the investigation opening date. This and other documents concerning the opening of the investigation are identified in Exhibit 3 to this memorandum.

The Antitrust Division relies upon a host of exemptions to withhold these documents from Stolt-Nielsen. None of these exemptions, however, justify its refusal to disclose the ***date*** of the opening of the investigation. For example, one of the documents that the Antitrust Division seeks to withhold is a November 26, 2002 memorandum (which appears to reflect the opening of the investigation). *See* Control Number 50 (ATR-382-384). According to the *Vaughn* index, this document is protected from disclosure pursuant to the deliberative process privilege. The deliberative process exemption, however, does not apply to purely factual materials or to factual sections of deliberative memoranda, unless the facts are "inextricably intertwined" with deliberative material. *Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agric.*, 744 F. Supp. 314, 319 (D.D.C. 1990). Information concerning the date of the opening of the investigation is certainly factual material that can be excised from deliberative portions of that memorandum.

The Antitrust Division also seeks to withhold the November 26, 2002 memorandum on the grounds of the attorney work-product doctrine.  Although segregability is not required for documents that are fully protected by the attorney work-product doctrine, *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005), information that would otherwise be protected by the attorney work-product doctrine is subject to waiver by disclosure to third parties.  *See Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001) (attorney work-product doctrine subject to waiver); *Chilivis v. S.E.C.*, 673 F.2d 1205, 1212 (11th Cir. 1982) (waiver of FOIA exemptions under 5 U.S.C. § 552(b)(5) "can occur when communications are disclosed to private individuals or nonfederal agencies").  Here, the Antitrust Division has waived the protections afforded by the work-product doctrine through former Deputy Assistant Attorney General Griffin, who testified about the date of the opening of the investigation in *Stolt-Nielsen v. United States*, Civil Action No. 04-CV-537 (E.D.Pa.).  *See* Lau Decl. Ex. 39 (trial testimony of Mr. Griffin).

There are other reasons why the Division seeks to shield the November 26, 2002 memorandum, but none would exempt material concerning the initiation of the investigation. Names of third-parties who would be potential witnesses and confidential sources of information can simply be redacted (to the extent that the Division can establish exemptions for this material).  The date of initiation will not interfere with any ongoing investigation, particularly given the fact that Mr. Griffin has already testified about this topic.  Finally, the Antitrust Division makes an oblique reference to the protections afforded to this document "by another statute."  But in light of the fact that it is the government's burden to demonstrate the existence of a FOIA exemption, *CEI Washington Bureau Inc. v. United States*, 404 F. Supp. 2d 172, 175

(D.D.C. 2005), the Division cannot use this vague reference to justify withholding *any* of the material contained in the November 26, 2002 memorandum.

Disclosure of the investigation's opening date may prove embarrassing to the Antitrust Division, particularly in light of its representation to this Court (and other courts) that the investigation opened on November 22, 2002. Gov't Br. at 4. But FOIA contains no exemption for the disclosure of embarrassing information. Just as the Division says that the public is clamoring to know about Stolt-Nielsen's dismissal from the Program (*see* Gov't Br. n.13 ("[T]he US DOJ, in a move that attracted the attention of other enforcers and defense counsel around the world, revoked the conditional leniency of a Luxembourg shipping company, Stolt-Nielsen")), there is just as much interest in knowing whether the Division treated Stolt-Nielsen fairly with regards to the type of amnesty that Stolt-Nielsen received.[2]

## IV.    The Antitrust Division Has Failed To Segregate Exempted Material From Non-Exempted Material

The statute provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The Antitrust Division has failed to meet this standard with respect to numerous documents.

"The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."

---

[2] Under the Division's Corporate Leniency Policy, a company can qualify for amnesty under either Part A or Part B. *See* Lau Decl. Ex. 41. Part A amnesty applies to applicants who report illegal activity to the Division *before* an official investigation into that activity has begun. *Id.* Under Part A, amnesty is automatic as long as the applicant satisfies the six requirements listed in the policy.

Part B amnesty applies to applicants who report illegal activity to the Division *after* an official investigation into that activity has begun. Under Part B, amnesty is conditional. That is, "the Division determines that granting leniency would not be unfair to others, considering the nature of the illegal activity, the confessing corporation's role in it, and when the corporation comes forward." *Id.*

Because of the proximity of Stolt-Nielsen's phone call to the Division to when the Division claims an investigation was opened, it is not at all clear whether Stolt-Nielsen was disqualified from Part A amnesty.

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) (citing *Mead*, 566 F.2d at 260). "The segregation requirement exists so that information which would be disclosed but for its nexus with exempt information is provided to the FOIA Plaintiff." *Church of Scientology of Cal. v. Dep't of State*, 493 F. Supp. 418, 422 (D.D.C. 1980).

In her declaration, Ms. Richards describes the efforts taken by the Antitrust Division to segregate exempted from non-exempted material as follows. All of Stolt-Nielsen's requests were assigned to Wayne Foster, a paralegal with the Antitrust Division. Richards Decl. at ¶ 21. After searching for documents responsive to Stolt-Nielsen's requests, Mr. Foster reviewed each page to determine its public availability under FOIA. "Documents exempt in their entirety were so marked." *Id.*; *see also* Richards Decl. at ¶ 26 ("Mr. Foster reviewed each page line by line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act"). After Mr. Foster's review, the documents were forwarded to Ms. Richards for final review. Richards Decl. at ¶ 23. Ms. Richards states that she "also adhered to the requirement to release all reasonably segregable information contained therein." *Id.* at ¶ 26. Ms. Richards provides no further explanation of the efforts taken by the Antitrust Division to segregate exempted from non-exempted material. As such, the Antitrust Division has failed to satisfy the requirements contained in 5 U.S.C. § 552(b).

In *Mead Data*, 566 F.2d 242, the Court of Appeals examined whether the Department of the Air Force complied with the segregability requirements of section 552(b) where the Air Force's affiant merely stated that there "were no factual portions . . . which could be reasonably

segregated." *Id.* at 260.   Because "[n]o supporting justification was offered for this conclusion," the Court held that the Air Force had not demonstrated that it properly segregated exempt from non-exempt material.   The Court stated that the Air Force "must provide a more detailed justification than the conclusory statements it has offered to date." *Id.* at 261.   "In addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* "Armed with such a description, both litigants and judges will be better positioned to test the validity of the agency's claim that the non-exempt material is not segregable." *Id.*

In this case, Ms. Richards merely states that she "adhered to the requirement to release all reasonably segregable information contained therein."   Richards Decl. at ¶ 26.   As such, it is impossible for Stolt-Nielsen and the Court to even attempt to test the Antitrust Division's assertion that non-exempt material is not segregable.   Thus, the Court should direct the Antitrust Division to either (1) segregate the exempted from non-exempted material for each document at issue; or (2) explain why such segregation is not feasible, including a description of what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.   This analysis should be done for each document that the Antitrust Division has withheld in its entirety (*i.e.*, 389 documents).   Exhibit 4 to this memorandum lists all such documents.

## V.     The Antitrust Division Has Provided Insufficient Justification For Withholding Numerous Documents

In order to withhold documents pursuant to FOIA, an agency must show that the withheld documents are covered by one of the statutory FOIA exemptions.   "To satisfy its burden, an agency may submit affidavits and declarations describing the documents withheld and the statutory basis for the withholdings." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F.

29

Supp. 2d 146, 161 (D.D.C. 2004) (citations omitted).  Exemptions "are not proper if based merely on 'conclusory and generalized allegations.'"  *Id.* (quoting *Vaughn*, 484 F.2d at 826). "Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

In this instance, the Antitrust Division has filed a deficient *Vaughn* index and supporting declarations.  For numerous documents, the Antitrust Division has not complied with this Circuit's directive that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data*, 566 F.2d at 251; *see also PHE Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) ("an affidavit that contains merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'") (quoting *King*, 830 F.2d at 224).

For example, for nearly every entry in which the Antitrust Division attempts to assert Exemption 5, the Division fails to provide facts sufficient to show either (1) that the information withheld was pre-decisional, deliberative and antecedent to the adoption of agency policy (for the deliberate process privilege (*see Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)); or (2) that the information withheld was prepared in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party.  *See Safecard Services Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991); *see also Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987) (ruling that the attorney work product doctrine does not protect "neutral, objective analyses of agency regulations.").

For many entries, the Division operates under the mistaken impression that merely labeling a document a "draft" protects the entire document under Exemption 5. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 (D.C. Cir. 1992) (holding that a draft is only "pre-decisional" if it reflects "an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter."). Moreover, even though the Division seeks to withhold scores of entire documents under this exemption, Exemption 5 pertains only to the formulation or exercise of policy, and is wholly inapplicable to factual matters. *Larson v. Dep't of State*, 2005 WL 3276303, at *23-24 (D.D.C. Aug. 10, 2005).

The Antitrust Division provides nothing more than conclusory recitations of legal standards for the vast majority of *Vaughn* index entries. This is inadequate. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1999) (concluding agency's affidavit "will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if [it is] too vague or sweeping").

For many other entries claiming several different exemptions, the Division fails to explain why non-exemptible factual information contained in the documents was not produced to Stolt-Nielsen. *See EPA v. Mink*, 410 U.S. 73, 87-88 (1973) (collecting cases and concluding that Exemption 5 does not apply to "purely factual, investigative matters").

For many entries claiming protection pursuant to Exemption 7D, the Antitrust Division makes no showing that the information was collected from a confidential source who "spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993); *see also Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) ("[a] bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient."); *Raulerson v.*

31

*Ashcroft*, 271 F. Supp. 2d 17, 27 (D.D.C. 2002) ("boilerplate reasons lack the specificity necessary for this Court to make an adequate determination of whether implied confidentiality actually exists.").

To aid the Court, Stolt-Nielsen has itemized these deficiencies — document by document — in Exhibit 5 to this memorandum. The Court should order the Antitrust Division to either (1) supplement its *Vaughn* index concerning these entries; or (2) disclose the documents in question.

## VI.    The Antitrust Division's Statement Of Material Facts Not In Dispute Fails To Follow The Local Rules

The Antitrust Division's summary judgment motion should also be denied because its statement of material facts not in dispute does not comply with Local Rule 56.1.

Local Rule 56.1 supplements Rule 56 of the Federal Rules of Civil Procedure by setting forth specific procedures for the parties to follow in moving for or opposing summary judgment. The procedure "isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002). The rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996). As the Court of Appeals has stated, the purposes of the rule "clearly are not served when one party, particularly the moving party, fails in his statement to specify the material facts upon which he relies." *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980). Significantly, "repeatedly blending factual assertions with legal argument" does not satisfy the purposes of a Rule 56.1 statement. *Jackson*, 239 F.3d at 153; *see also Robertson v. Am. Airlines*, 239 F. Supp. 2d 5 (D.D.C. 2002) (striking defendant's motion for summary judgment for noncompliance with Local Rule 7 and 56.1

32

because the "statement of material facts not in genuine dispute" included no citations to the record and improperly mixed factual allegations with argument).

Blending factual assertions with legal argument is precisely what the Antitrust Division does in its fact statement. Paragraphs 39 and 41 through 53 are simply recitations of legal standards, sometimes even citing specific statutes, followed (sometimes) by allegedly material facts. For instance, paragraph 45 lists the alleged legal basis for the deliberative process prong of Exemption 5. This is hardly a "material fact not in dispute" – it is a legal standard. Listing these standards does nothing to assist this Court in crystallizing the issues before it. Because the Division's statement of facts clearly fails to comply with Local Rule 56.1, this Court should deny the Division's summary judgment motion.

**CONCLUSION**

For these reasons, the Court should deny the government's motion for summary judgment.


Dated:  September 27, 2006                    Respectfully submitted,

                                             **WHITE & CASE** LLP

                                             By: _____
                                             J. Mark Gidley (D.C. Bar No. 417280)
                                             Christopher M. Curran (D.C. Bar No. 408561)
                                             Lucius B. Lau (D.C. Bar No. 446088)
                                             701 Thirteenth St., N.W.
                                             Washington, D.C.  20005
                                             tel.: (202) 626-3600
                                             fax: (202) 639-9355

                                             *Counsel to Stolt-Nielsen Transportation Group Ltd.*