UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States of America,

*Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv474 (RJL)

## DECLARATION OF LUCIUS B. LAU

I, Lucius B. Lau, declare as follows:

1.      I am a Counsel with White & Case LLP in Washington, D.C.  I am a member of the bar of this Court as well as the Virginia State Bar and the District of Columbia Bar.  I make this declaration based upon my personal knowledge.

**I.      Public Interest In Stolt-Nielsen's Participation In The Amnesty Program**

2.      Attached as Exhibit 1 is a true and correct copy of a news article from Corporate Counsel entitled "Promise Breakers" and dated September 2006.

3.      Attached as Exhibit 2 is a true and correct copy of a news article from the Financial Times entitled "Business wants more power for US courts to enforce amnesty deals" and dated September 25, 2006.

**II.     Amnesty Applicants**

**A.      Aventis S.A.**

4.      Attached as Exhibit 3 is a true and correct copy of a news article from Reuters entitled "Chemical firms face EU fines next week-source" and dated June 26, 2002.  That article states, in relevant part:

> Aventis has avoided fines in other price-fixing cases by taking advantage of an amnesty provided by both Brussels and Washington to the first firm to report a cartel, which may also happen in this case.

**B.    Bayer Corporation**

5.    Attached as Exhibit 4 is a true and correct copy of select pages from Bayer Corporation's Form 20-F, filed with the Securities and Exchange Commission on March 15, 2005.  On pages 125-126 of the document, it states:

> To settle charges related to allegations that its NBR business unit engaged in anti-competitive activities between May 2002 and December 2002, Bayer AG agreed with the DOJ to plead guilty and pay a fine of U.S.$4.7 million.  The sentencing court approved the agreement on December 8, 2004.  Bayer AG has paid both the rubber chemicals fine and the NBR fine.  The two agreements resolve all criminal charges against Bayer in the United States for activities related to its rubber chemicals and NBR business, provided Bayer continues to cooperate with the DOJ's ongoing investigations.  Bayer AG is currently cooperating with the DOJ and the CCB with respect to their investigations of possible anti-competitive behavior involving a further product attributable to the former rubber-related lines of business.  The DOJ and the CCB have granted conditional amnesty from the imposition of criminal liability in connection with these proceedings.  Conditional amnesty requires continued cooperation by Bayer.

This information is repeated on page F-100 of the document.

**C.    The Carbide/Graphite Group of Pittsburgh**

6.    Attached as Exhibit 5 is a true and correct copy of an article from AP Online titled "Electrode-Price Fixing" and dated April 7, 1998.  That document states, in relevant part:

> A third company in the conspiracy, The Carbide/Graphite Group of Pittsburgh, has been given amnesty in the case by qualifying for the antitrust division's corporate leniency program.  Companies can avoid prosecution by turning themselves in for antitrust crimes which the government was unaware of, or by becoming the first conspirator to cooperate before prosecutors have enough evidence to win a court case.  *The Carbide/Graphite Group "came in very early and gave us significant help," said one Justice official, who requested anonymity*.

**D.    ChemTrade Logistics (U.S.) Inc.**

7.    Attached as Exhibit 6 is a true and correct copy of Marsulex, Inc. and Chemtrade Logistics (U.S.), Inc.'s Memorandum of Law in Support of Their Agreed Motion for a Finding of "Satisfactory Cooperation" and Limitation of Damages Pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, filed in *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 3746773 (N.D. Ill. June 30, 2005).  Page 1 of that pleading states, in relevant part:

Defendants Marsulex, Inc. ("Marsulex") and ChemTrade Logistics (U.S.), Inc. ("Chem Trade"), recipients of criminal amnesty from the Department of Justice for their role in cooperating with the Antitrust Division's investigation into an alleged price-fixing conspiracy in the sulfuric acid industry . . . .

**E.     Citizens Gas & Coke Utility**

8.     Attached as Exhibit 7 is a true and correct copy of a press release from Citizens Gas & Coke Utility entitled "Citizens Gas Cooperating with Justice Department Investigation" and dated December 12, 2003. That document states, in relevant part:

> Citizens Gas & Coke Utility is cooperating with the Antitrust Division of the United States Department of Justice (DOJ) in its investigation into possible anti-competitive practices by producers of foundry coke. . . . Citizens Gas promptly reported the findings of its internal investigation to the DOJ, and has been granted conditional amnesty under the Department's corporate leniency program.

**F.     Crompton Corporation**

9.     Attached as Exhibit 8 is a true and correct copy of a press release issued by the Crompton Corporation on Business Wire titled "Crompton Granted Conditional Amnesty in EPDM Investigation" and dated December 12, 2002. That document states, in relevant part:

> Crompton Corporation (NYSE:CK) today announced that it is cooperating with competition authorities in the U.S., Canada and the European Union that have opened an investigation into possible collusive behavior by manufacturers of a form of synthetic rubber known as ethylene propylene diene monomer or EPDM. . . . As a result, in each of the three jurisdictions, Crompton Corporation and its relevant affiliates have been conditionally granted amnesty with regard to criminal prosecution and fines with respect to EPDM.

10.     Attached as Exhibit 9 is a true and correct copy of a press release issued by Crompton Corporation on Business Wire titled "Crompton Granted Conditional Amnesty in Heat Stabilizers Investigation" and dated February 14, 2003. That document states, in relevant part:

> Crompton Corporation (NYSE:CK) today announced that it is cooperating with competition authorities in the United States, Canada and the European Union that are investigating possible collusive behavior with respect to heat stabilizers for plastics. Crompton Corporation and its relevant affiliates have been granted conditional amnesty with regard to criminal prosecution and fines

3

in the United States and Canada and expect to be granted conditional amnesty in the European Union in the near future.

11.    Attached as Exhibit 10 is a true and correct copy of a news article from Chemical & Engineering News titled "Plastics Additives Inquiry Launched" and dated February 24, 2003.  That document states, in relevant part:

> Crompton adds that it has received conditional amnesty from criminal prosecution in the U.S. and Canadian heat-stabilizer investigations and expects similar treatment by European Commission officials.

12.    Attached as Exhibit 11 is a true and correct copy of a press release issued by Crompton Corporation through Business Wire titled "Crompton Granted Conditional Amnesty in Nitrile Rubber Investigation" and dated December 19, 2003.  That document states, in relevant part:

> Crompton Corporation (NYSE:CK) today announced that it is cooperating with competition authorities in the U.S., Canada and the European Union that are investigating possible anticompetitive activities by manufacturers of nitrile rubber.    Crompton Corporation and its relevant affiliates have received assurances of conditional amnesty from each of these authorities with regard to criminal prosecution and fines with respect to nitrile rubber.

13.    Attached as Exhibit 12 is a true and correct copy of a press release issued by Crompton Corporation through Business Wire titled "Crompton Announces Agreements in U.S. and Canadian Rubber Chemicals Investigation; Granted Conditional Amnesty in Urethanes Investigation; Completes Internal Investigation" and dated March 15, 2004.  That document states, in relevant part:

> The company announced that it is cooperating with competition authorities in the U.S., Canada and the European Union that have opened an investigation into possible collusive behavior by manufacturers of urethanes and urethane chemicals.  Crompton is cooperating fully with authorities and has received assurances of conditional amnesty in the U.S., Canada and the European Union regarding fines and criminal prosecution with respect to urethanes and urethane chemicals.

**G.    Deutsche Lufthansa AG**

14.    Attached as Exhibit 13a is a true and correct copy of an article from Competition Law 360 entitled "Lufthansa Settles Air Cargo Suits for $85M" and dated September 11, 2006.  That article states, in relevant part:

> The carrier also said that it had applied for leniency with the U.S. Department of Justice and the European Commission, and that it

had been granted conditional immunity in exchange for its continued cooperation with the investigation.

15. Attached as Exhibit 13b is a true and correct copy of a press release issued by Deutsche Lufthansa AG through their website titled "Lufthansa settles class action civil suits in the US" and dated September 11, 2006. The document states, in relevant part: "Lufthansa has applied for leniency to the US Department of Justice, the EU Commission and other cartel authorities in other countries and received conditional immunity."

### H.    DuPont

16. Attached as Exhibit 14 is a true and correct copy of the Second Amended Complaint filed in *Avondale Mills, Inc. v. Nan Ya Plastics Corp., America*, No. 3:03 CV 296, 2004 WL 2623479 (W.D.N.C. Apr. 2, 2004). Paragraph 43 of that pleading states:

> In 2001, DuPont admitted to the DOJ the participation of DuPont and its subsidiaries, agents, and affiliates in the [polyester staple fiber industry] Conspiracy. In exchange, the DOJ granted amnesty from criminal charges under its Corporate Leniency Program.

### I.    Flexsys

17. Attached as Exhibit 15 is a true and correct copy of select pages from the 2005 Annual Report of Akzo Nobel filed with the United States Securities and Exchange Commission. On page 135 of that report, it states, in relevant part:

> With regard to Flexsys, a 50/50 joint venture for rubber chemicals with Solutia, Inc., authorities in the United States, Canada and Europe are investigating alleged antitrust violations in the rubber chemicals industry. We have been informed by Flexsys management that it is cooperating with the authorities and will continue to do so and pursuant to this cooperation has been granted conditional amnesty by the US DOJ, the Canadian BOC and the EU Commission.

### J.    Great Lakes Chemical Corporation

18. Attached as Exhibit 16 is a true and correct copy of a press release from Business Wire entitled "Reinhardt & Anderson Files Antitrust Class Action Against Great Lakes Chemical Corporation" and dated July 1, 1999. That document states, in relevant part,

> Defendant Great Lakes recently announced that it had been cooperating with the antitrust division of the United States Department of Justice's ("DOJ") investigation of the bromine industry. Great Lakes also announced that it had been accepted into the DOJ's corporate amnesty program which will immunize it from criminal prosecution.

19.   Attached as Exhibit 17 is a true and correct copy of select pages from Great Lakes
      Chemical Corporation's Form 10-K, filed with the Securities and Exchange Commission
      for the fiscal year ended December 31, 2003.  On page 8 of the document, it states:

>      The company cooperated with the United States Department of
>      Justice (DOJ) and the European Commission in their respective
>      investigations of the bromine and brominated products industry.
>      Both investigations were initiated after the Company self-reported
>      to those agencies certain business practices that raised questions
>      under antitrust laws.  As a result of the Company's cooperation,
>      the Company and its current directors and employees were
>      accepted into the DOJ's amnesty program.

**K.     Indiana University-Purdue University Indianapolis**

20.   Attached as Exhibit 18 is a true and correct copy of an article from the Indianapolis Star
      entitled "IUPUI cuts deal in feds' probe" and dated May 23, 2003.  That document states,
      in relevant part:

>      The Justice Department's Antitrust Division is investigating
>      alleged price fixing between IUPUI's bookstores and an
>      unidentified bookstore over an 18-month period that ended in
>      December, administrators and an attorney for IUPUI revealed
>      Thursday. . . . The department granted IUPUI conditional amnesty
>      under a "corporate leniency program" available to businesses and
>      organizations that report antitrust activity and cooperate with the
>      government's investigation, Rivas said.  In return, IUPUI will not
>      be prosecuted or fined.

**L.     Marsulex, Inc.**

21.   Attached as Exhibit 6 is a true and correct copy of Marsulex, Inc. and Chemtrade
      Logistics (U.S.), Inc.'s Memorandum of Law in Support of Their Agreed Motion for a
      Finding of "Satisfactory Cooperation" and Limitation of Damages Pursuant to the
      Antitrust Criminal Penalty Enhancement and Reform Act of 2004, filed in *In re Sulfuric
      Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 3746773 (N.D. Ill. June 30, 2005).  Page 1
      of that pleading states, in relevant part:

>      Defendants Marsulex, Inc. ("Marsulex") and ChemTrade Logistics
>      (U.S.), Inc. ("Chem Trade"), recipients of criminal amnesty from
>      the Department of Justice for their role in cooperating with the
>      Antitrust Division's investigation into an alleged price-fixing
>      conspiracy in the sulfuric acid industry . . . .

**M.    Micron Technology Inc.**

22.    Attached as Exhibit 19 is a true and correct copy of an article from Electronic News entitled "Micron Maintains Cooperation with DOJ" and dated November 12, 2004. That document states, in relevant part:

> In a statement made late Thursday, Micron insisted it has cooperated "fully and actively" with the DOJ since the beginning on the [DRAM industry] investigation. . . . if Micron fully complies with the Corporate Leniency Policy, Micron will not be subject to criminal sanctions or fines. . . .

**N.    Mitsui & Co.**

23.    Attached as Exhibit 20 is a true and correct copy of comments from the American Chamber of Commerce to the European Union entitled "Comments on the Commission's Green Paper on damages actions for breach of the EC antitrust rules" dated May 8, 2006. On page 12 of that document, it states "Mitsui, for example, was held liable for $147 million in a private suit for an antitrust violation after its subsidiary made an amnesty application to the United States government."

**O.    Parkdale America, LLC**

24.    Attached as Exhibit 21a is a true and correct copy of the Consolidated and Amended Class Action Complaint filed in *In re: Cotton Yarn Antitrust Litig.*, No. 1:04MD1622, 2005 WL 3732740 (M.D.N.C. Jan. 7, 2005). Paragraph 44 of that pleading states that "Parkdale America, LLC, has been granted conditional amnesty from prosecution and fines from the Department of Justice with respect to its activities related to the fixing of prices for Cotton Yarn."

25.    Attached as Exhibit 21b is a true and correct copy of a press release issued by Unifi, Inc. titled "Equity Affiliate Informs Unifi of Pending Investigation" and dated February 11, 2004. That document states, in relevant part:

> Parkdale informed Unifi that it voluntarily disclosed the activities to the U.S. Department of Justice Antitrust Division (the "DOJ"), and that the DOJ has launched an investigation of the activities. Parkdale informed Unifi that it is cooperating fully with the DOJ. If Parkdale violated U.S. antitrust laws, Parkdale could face civil liability, including treble damages.

**P.    Rhone-Poulenc SA**

26.    Attached as Exhibit 22 is a true and correct copy of a news article from the Metropolitan Corporate Counsel entitled "Changes In Competition Enforcement On The Global Stage" and dated October 2004. In this article, an antitrust litigation partner from Jones Day, the firm that represented *Rhone-Poulenc*, stated:

> We advised *Rhone-Poulenc S.A.* as it addressed conduct relating to
> sales of vitamins throughout the world. While the company was
> able to obtain complete or partial amnesty in multiple jurisdictions,
> the rest of the industry was hit with criminal and civil fines that
> totaled well over a billion dollars.

**Q.    Shelby Materials**

27.    Attached as Exhibit 23 is a true and correct copy of a news article from the Indianapolis
       Star titled "Concrete firm adds amnesty to the mix" and dated March 10, 2006. That
       article states, in relevant part:

> Although executives at Shelby Materials participated in a cartel
> that prosecutors say illegally raised the cost of concrete throughout
> Central Indiana for years, they will not face criminal charges and
> fines. That's because the executives took part in a federal program
> designed to break up price-fixing rings by granting immunity to the
> first conspirator to testify against the others. ... Shelby Materials
> reveals in civil court documents filed in Indianapolis that the
> Justice Department has agreed to give it amnesty from criminal
> fines and jail terms.

28.    Attached as Exhibit 24 is a true and correct copy of a news article from the Indianapolis
       Star titled "Judge fines firm $4M in concrete price fixing" and dated June 20, 2006. This
       article details some of the money collected by the Justice Department from other firms
       involved in the concrete price fixing scheme noted in Exhibit 23.

**R    Tier Technologies Inc.**

29.    Attached as Exhibit 25 is a true and correct copy of select pages from Tier Technologies
       Inc.'s Form 10-Q, filed with the Securities and Exchange Commission on May 6, 2005.
       On page 22 of the document, it states:

> In June 2003, we received a subpoena from a grand jury in the
> Southern District of New York to produce certain documents
> pursuant to an investigation by the Antitrust Division of the
> Department of Justice ("*DOJ*") involving the child support
> payment processing industry. We have fully cooperated, and
> intend to continue to cooperate fully, with the subpoena and with
> the DOJ's investigation. On November 20, 2003, the DOJ granted
> us conditional amnesty pursuant to the Antitrust Division's
> Corporate Leniency Policy. Consequently, the DOJ will not bring
> any criminal charges against us and our officers, directors and
> employees, as long as we continue to comply with the Corporate
> Leniency Policy, which requires, among other things, our full
> cooperation in the investigation and restitution payments if it is

determined that parties were injured as a result of impermissible anticompetitive conduct.

**S.     Unifi, Inc.**

30.     Attached as Exhibit 26 is a true and correct copy of select pages from Unifi, Inc.'s Form 10-K/A, filed with the Securities and Exchange Commission for fiscal year ended June 27, 2004.  On page 22 of that document, it states, in relevant part:

> In late 2003, the Company disclosed to the United States Department of Justice ("DOJ") that it participated in certain anticompetitive activities that may have resulted in violation of antitrust laws.  Subject to the Company's continuing and complete cooperation with the Antitrust Division of the DOJ, the Division agreed to provide protection for the Company and the Company's directors, officers, and employees from criminal prosecution related to the reported anticompetitive activity.

**T.     UPM-Kymmene Corporation**

31.     Attached as Exhibit 27 is a true and correct copy of select pages from UPM-Kymmene Corporation's Form 20-F, filed with the Securities and Exchange Commission on April 4, 2006.  On page 7 of the document, it states, in relevant part:

> [T]he Antitrust Division of the U.S. Department of Justice has granted UPM conditional full immunity and accordingly it will not pursue any criminal prosecution against UPM in connection with possible price fixing in the magazine paper industry.

**III.     The Antitrust Division's Public Comments About Amnesty Applicants**

**A.     Aventis S.A.**

32.     Attached as Exhibit 28 is a true and correct copy of a speech given by Scott D. Hammond entitled "A Review Of Recent Cases And Developments In The Antitrust Division's Criminal Enforcement Program" on March 7, 2002 in New York, NY.  Page 13 of that speech states, in relevant part:

> Aventis, which has previously announced its acceptance into the Division's leniency program, likely avoided hundreds of millions of dollars in fines in the U.S. and Europe as a result of its decision to come forward and seek leniency.

**B.     The Carbide/Graphite Group Inc.**

33.     Attached as Exhibit 29 is a true and correct copy of a speech given by Scott D. Hammond entitled "When Calculating the Costs and Benefits of Applying for Corporate Amnesty, How Do You Put a Price Tag on an Individual's Freedom?" on March 8, 2001 at the

Fifteenth Annual National Institute on White Collar Crime in San Francisco, California. On page 12 it states, in relevant part:

> The Carbide/Graphite Group, Inc. obtained corporate amnesty, and so *all* of its officers, directors, and employees received full non-prosecution protection for any crimes committed in connection with the antitrust conspiracy.

34. Attached as Exhibit 30 is a true and correct copy of titled "The Status Report," subtitled "News from the Atlanta Field Office of the Antitrust Division," dated October 2002. Pages 6 through 8 contain a story entitled "Graphite Electrodes Cartel: A Case Study." On page 8, that story states, in relevant part:

> In the graphite electrodes investigation, the staff had contact with a smaller U.S. manufacturer, the Carbide/Graphite Group (C/G), before serving subpoenas on the other manufacturer with U.S. facilities, and C/G decided to seek amnesty and cooperate. C/G was on the fringes of the conspiracy, but its cooperation provided valuable evidence supporting probable cause for search warrants without immunizing a more culpable conspirator.

**C.    Crompton Corporation**

35. Attached as Exhibit 31 is a true and correct copy of a speech given by Scott D. Hammond entitled "Measuring the Value of Second-In Cooperation in Corporate Plea Negotiations" on March 29, 2006 at the 54th Annual American Bar Association Section of Antitrust Law Spring Meeting in Washington, D.C. On page 2 it states, in relevant part:

> The paper focuses on the benefits earned by Crompton Corporation for being second-in-the-door in the Division's rubber chemicals investigation and provides information that was not public at the time the company was sentenced.

**D.    Rhone Poulenc S.A.**

36. Attached as Exhibit 32 is a true and correct copy of a speech given by Scott D. Hammond entitled "Lessons Common to Detecting and Deterring Cartel Activity," on September 12, 2000 at the 3rd Nordic Competition Policy Conference in Stockholm, Sweden. On page 7 it states, in relevant part:

> For example, the worldwide vitamin cartel was cracked by the cooperation provided by French-based Rhône-Poulenc SA.

> This sentence is footnoted with the following information:

> The Division has a policy of treating the identity of amnesty applicants as a confidential matter, much like the treatment afforded to confidential informants. However, confidentiality is

not required in this case with respect to Rhône-Poulenc's amnesty status, because the company has already issued a press release announcing its acceptance into the Amnesty Program.

37.   Attached as Exhibit 33 is a true and correct copy of a speech given by Scott D. Hammond entitled "Detecting And Deterring Cartel Activity Through An Effective Leniency Program," on November 21-22, 2000 at the International Workshop on Cartels in Brighton, England. On page 4 it states, in relevant part:

> For example, the worldwide vitamin cartel was cracked by the cooperation provided by French-based Rhône-Poulenc SA.

> This sentence is footnoted with the following information:

> The Division has a policy of treating the identity of amnesty applicants as a confidential matter, much like the treatment afforded to confidential informants. However, confidentiality is not required in this case, with respect to Rhône-Poulenc's amnesty status, because the company has already issued a press release announcing its acceptance into the Amnesty Program.

38.   Attached as Exhibit 29 is a true and correct copy of a speech given by Scott D. Hammond entitled "When Calculating the Costs and Benefits of Applying for Corporate Amnesty, How Do You Put A Price Tag On An Individual's Freedom?" on March 8, 2001 at the Fifteenth Annual National Institute on White Collar Crime in San Francisco, California. On page 4 it states, in relevant part:

> It has been widely acknowledged that one of the keys to the Division's success in cracking the worldwide vitamin cartel was the cooperation provided by Rhône-Poulenc SA pursuant to its amnesty application.

> On page 13 of the same speech it states, in relevant part:

> Rhône-Poulenc obtained corporate amnesty, and *all* of its officers, directors, and employees in the United States and abroad received full non-prosecution protection for any crimes committed in connection with the antitrust conspiracy.

39.   Attached as Exhibit 34 is a true and correct copy of a speech given by Scott D. Hammond entitled "Cornerstones of an Effective Leniency Program" on November 23-24, 2004 before the ICN Workshop on Leniency Programs in Sydney, Australia. On page 15 it states, in relevant part:

> It has been widely acknowledged that one of the keys to the Division's success in cracking the worldwide vitamin cartel was the cooperation provided by Rhône-Poulenc SA pursuant to its amnesty application.

40.  Attached as Exhibit 35 is a true and correct copy of the Brief for United States of America as Amici Curiae Supporting Petitioners, *F. Hoffman-LaRoche Ltd. v. Empagran, S.A.*, 542 U.S. 155 (2004) (No. 03-724).  On pages 1-2, that document states, in relevant part:

> In 1999, one of the petitioners, Rhone-Poulenc SA, applied for admission to the government's amnesty program for Rhone-Poulenc's role in global price-fixing and market-allocation conspiracies among domestic and foreign manufacturers and distributors of bulk vitamins.  In exchange for amnesty, the company exposed the cartel, which had sold billions of dollars of vitamins in the United States and other countries around the world.

## IV.    The Antitrust Division's Public Statements Regarding The "Model Amnesty Letter"

41.  Attached as Exhibit 36 is a true and correct copy of a speech given by Gary R. Spratling entitled "Making Companies An Offer They Shouldn't Refuse" on February 16, 1999 before the Bar Association of the District of Columbia's 35th Annual Symposium on Associations and Antitrust in Washington, D.C.  On page 7 it states, in relevant part:

> In the April 1998 paper, the Division attached its model letter for use in granting amnesty to corporations pursuant to the Corporate Leniency Policy.  The model letter remains the same and is attached hereto.

## V.    Stolt-Nielsen Letters

42.  Attached as Exhibit 37 is a true and correct copy of the FOIA request letter from Ruta Skučas, attorney for Stolt-Nielsen, to the FOIA/PA Officer for the Antitrust Division, dated October 14, 2005.

43.  Attached as Exhibit 38 is true and correct copy of a redacted version of Stolt-Nielsen amnesty agreement between Stolt-Nielsen and the Antitrust Division, dated January 15, 2003.

44.  Exhibit 39 is a true and correct copy of select pages from the transcript of the testimony of Jim Griffin in *Stolt-Nielsen v. United States*, No. 04-537 (E.D. Pa.)

## VI.    The Antitrust Division's "Confidentiality" Policy

45.  Attached as Exhibit 40 is a true and correct copy of a speech given by Scott D. Hammond entitled "A Summary Overview of the Antitrust Division's Criminal Enforcement Program" on January 23, 2003 at the New York State Bar Association Annual Meeting.  On page 7 it states, in relevant part:

> The Division's policy is to treat as confidential the identity of amnesty applicants and any information obtained from the applicant.  Thus, the Division will not disclose an amnesty

applicant's identity, absent prior disclosure by or agreement with the applicant, unless authorized by court order . . . . In addition, amnesty applicants may issue press releases or, in the case of publicly-traded companies, submit public filings announcing their conditional acceptance into the corporate amnesty program thereby obviating the need to maintain their anonymity.

**VII.    The Antitrust Division's Corporate Leniency Policy**

46.    Attached as Exhibit 41 is a true and correct copy of the Department of Justice Antitrust Division's Corporate Leniency Policy, obtained from http://www.usdoj.gov/atr/public/guidelines/lencorp.htm

**VIII.   Kasowitz, Benson, Torres & Friedman, LLP's Representation Of Private Litigants Against SNTG And Other Parcel Tanker Firms**

47.    Attached as Exhibit 42 is a true and correct copy of the Second Circuit's decision in *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 569 (2d Cir. 2005) ("Hector Torres, Kasowitz, Benson, Torres & Friedman, LLP, New York, NY for Appellees.")

48.    Attached as Exhibit 43 is a true and correct copy of the Southern District of New York's decision in *Odfjell ASA v. Celanese AG*, 380 F. Supp. 2d 297, 298 (S.D.N.Y. 2005) ("Gary William Dunn, Kasowitz, Benson, Torres & Friedman, LLP New York, NY for Defendants/Claimants.")

**IX.    Silver Golub & Teitell's Representation Of Paul O'Brien In Litigation Against SNTG**

49.    Attached as Exhibit 44 is a true and correct copy of the Superior Court of Connecticut's decision in *O'Brien v. Stolt-Nielsen Transportation Group Ltd.*, No. X08CV020190051, 2004 WL 2591952 (Conn. Super. Ct. Oct. 7, 2004) ("Silver Golub & Teitell, Stamford, for Paul O'Brien.")

50.    Attached as Exhibit 45 is a true and correct copy of the Superior Court of Connecticut's decision in *O'Brien v. Stolt Nielson [sic] Transportation Group Ltd.*, No. X08CV020190051, 2004 WL 870839 (Conn. Super. Ct. Apr. 2, 2004) ("Silver Golub & Teitell, Stamford, for Paul O'Brien.")

**X.    Miscellaneous**

51.    Attached as Exhibit 46 is a true and correct copy of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, § 213, 118 Stat. 665, 666-67 (codified as amended at 15 U.S.C. § 1 (2004)).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  September 27, 2006                    _____
Washington, D.C.                                          Lucius B. Lau