# Exhibit 1

**CORPORATE Counsel**

The Business Magazine For The Chief Legal Officer

corpcounsel.com • September 2006

ALM

# Promise Breakers

**IN THE NEWS**

**M**OST COMPANIES assume that they've successfully dodged a bullet when they sign a nonprosecution agreement with the government. That's certainly what shipping giant Stolt-Nielsen S.A. thought when its subsidiary struck a deal three years ago to avoid federal criminal charges for antitrust violations.

But shortly after the deal was concluded, the government said it would indict Stolt-Nielsen anyway because the company had broken the pact. Stolt-Nielsen maintains that the government is the one who isn't living up to the deal, and in July asked the U.S. Supreme Court to block the indictment.

U.S. Department of Justice spokeswoman Gina Talamona says the Stolt-Nielsen case is the first time that lawyers in the agency's antitrust division have tried to revoke a nonprosecution deal (also called an amnesty agreement). Talamona says Justice doesn't keep such statistics outside the antitrust division, but other observers say they don't know of any other instance in which the government has tried to rescind a deal with a corporate defendant.

The government's allegations focus on Stolt-Nielsen Transportation Group Ltd., the Dutch subsidiary of the London-based parent company. Justice says the subsidiary colluded with other shippers in 2002 to fix prices and share customers. After Stolt-Nielsen began cooperating with the government, Justice won guilty pleas from the other shippers, which have been hit with $62 million in fines and seen several of their executives go to jail. Stolt-Nielsen and its executives escaped fines and prosecution when the company signed its nonprosecution agreement with Justice in January 2003.

Six months later, the government filed a criminal complaint against Stolt-Nielsen executive Richard Wingfield, adding that it would indict the company. Justice lawyers separately told Stolt-Nielsen that they were revoking the nonprosecution agreement because the company had lied about when it had stopped its wrongdoing.

**Stolt-Nielsen responded** by asking a federal district court judge in Philadelphia to block the indictment. In January 2005 Judge Timothy Savage sided with the company, saying that the government couldn't rescind the agreement prior to a judicial ruling that Stolt-Nielsen had breached it. Plus, Savage added, there was no breach because the company had ceased its wrongdoing by the time it signed the agreement—and no other date is mentioned in the agreement.

But this past March, the U.S. Court of Appeals for the Third Circuit reversed Savage's ruling. The appellate panel found that a valid nonprosecution agreement can bar the government only from prosecuting a company, not from indicting it. The circuit court said that Judge Savage did not have the authority, under the Constitution's separation of powers provision, to stop Justice from indicting. "Simply being indicted and forced to stand trial is not generally an injury for constitutional purposes," the Third Circuit judges said.

That's simply wrong, Stolt-Nielsen argues in its petition to the Supreme Court. The company says that an indictment "would have a catastrophic and incurable impact" by letting creditors claim an adverse change, throwing the company into

> *The feds trash a deal with Stolt-Nielsen and try to indict the shipping company.*



HAL MAYFORTH

default, accelerating repayment obligations, and possibly prejudicing Stolt-Nielsen's ability to refinance maturing debt or to sell assets.

Susan Hackett, GC of the Association of Corporate Counsel, says that her group plans to file an amicus brief with the Supreme Court on Stolt-Nielsen's behalf. According to Hackett, the government's attempt to renege on its deal with the company has caused in-house counsel to question whether nonprosecution agreements can still deliver their main benefit—freedom from indictment.

"If that benefit is now in doubt or undermined," Hackett says, "it will impact the advice that corporate counsel provide. And it will chill the likelihood that clients will be as interested in self-reporting or early resolution of complex cases."

—SUE REISINGER

This article is reprinted with permission from the September 2006 edition of CORPORATE COUNSEL. © 2006 ALM Properties, Inc. All rights reserved. Further duplication without permission is prohibited. For information, contact ALM Reprint Department at 800-888-8300 x6111 or visit www.almreprints.com. #016-08-06-0005