# Exhibit 4

As filed with the Securities and Exchange Commission on March 15, 2005

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# Form 20-F

(Mark One)

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2004.

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Commission file number 001-16829

# BAYER AKTIENGESELLSCHAFT
(Exact name of Registrant as specified in its charter)

# BAYER CORPORATION*
(Translation of Registrant's name into English)

**Federal Republic of Germany**
(Jurisdiction of incorporation or organization)

**Bayerwerk, Gebäude W11
Kaiser-Wilhelm-Allee
51368 Leverkusen, GERMANY**
(Address of principal executive offices)

Securities registered or to be registered pursuant to Section 12(b) of the Act.

| Title of Each Class: | Name of Each Exchange on Which Registered: |
|---|---|
| American Depositary Shares representing Bayer AG ordinary shares of no par value | New York Stock Exchange |
| Bayer AG ordinary shares of no par value | New York Stock Exchange** |

Securities registered or to be registered pursuant to Section 12(g) of the Act.
None
(Title of class)

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act.
None
(Title of class)

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report.

As of December 31, 2004, 730,341,920 ordinary shares, of no par value, of Bayer AG were outstanding.

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☑    No ☐    Not applicable.

Indicate by check mark which financial statement item the registrant has elected to follow:

Item 17 ☐    Item 18 ☑

\*  Bayer Corporation is also the name of a wholly-owned subsidiary of the registrant in the United States.
\** Not for trading, but only in connection with the registration of American Depositary Shares.

In a parallel proceeding, Limagrain in France has sued Bayer CropScience SA, as successor in interest to Rhone Poulenc Agrochimie SA, for recovery of the judgment amount it is obligated to pay Midwest Oilseeds. The suit arises in part pursuant to a warranty provision in a shareholders agreement between Rhone Poulenc Agrochimie SA and a related Limagrain entity. Rhone Poulenc sold its shares held pursuant to the shareholders agreement in 2001. Bayer believes it has meritorious defenses and intends to defend these actions vigorously. Due to the considerable uncertainty associated with these proceedings, it is currently not possible to estimate potential liability.

*Average wholesale price manipulation proceedings*

Twenty-three pending lawsuits allege that a number of pharmaceutical companies, including Bayer Corporation, manipulated the average wholesale price ("AWP") and/or Medicaid best price of their products resulting in overcharges to Medicare beneficiaries. Medicaid recipients, state governmental health programs, private health plans and privately insured patients. These suits generally seek damages, treble damages, disgorgement of profits, restitution and attorney's fees. A number of these actions are private class actions alleging injury to patients or payors. Some of these actions are brought by government entities.

Seventeen of the suits are pending in federal court and six are pending in various state courts. All of the suits in federal court have been or are expected to be transferred to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings. Two of the suits filed in federal courts and one of the state suits name Bayer AG together with Bayer Corporation as defendants.

Bayer, along with other defendants, moved to dismiss the Amended Master Consolidated Complaint filed in June 2003 governing most of the private party class actions. In February 2004, the court granted the defendants' motion in part and denied it in part. Discovery is proceeding.

Bayer believes prior settlements between Bayer and certain U.S. states may preclude recovery by those states in pending cases that relate to similar claims. One state voluntarily dismissed Bayer from its suit in January 2005 in reliance on the settlement. Two other states have had their claims dismissed in part based on the settlement.

In February 2005, a state court in Pennsylvania dismissed that state's suit against all defendants. The court allowed leave for the state to submit an amended complaint within 30 days.

We believe that we have meritorious defenses in these actions and intend to defend them vigorously. Due to the considerable uncertainty associated with these proceedings, it is not possible to accurately estimate potential liability. Depending on the progress of the proceedings, we will continue to reconsider the need to establish provisions, which may have a negative effect on the results of our operations, financial position and cash flows.

*Rubber-related actions-Polyester polyols investigation/Urethane-related products actions*

Bayer AG and certain of its subsidiaries are the subjects of criminal and civil investigations being conducted by the Antitrust Division of the U.S. Department of Justice ("DOJ"), the Directorate General for Competition of the European Commission ("EC"), and the Canadian Competition Bureau ("CCB") (collectively, the "Competition Authorities"). The Competition Authorities are investigating potential violations of their respective antitrust or competition laws involving certain of Bayer's rubber-related lines of business.

Since September 2002, the DOJ has undertaken criminal grand jury investigations of potential antitrust violations involving Bayer's rubber chemicals, ethylene propylene diene monomer ("EPDM") synthetic rubber, and acrylonitrile butadiene rubber ("NBR") synthetic rubber lines of business. To settle charges related to allegations that its rubber chemicals business unit engaged in anti-competitive activities between 1995 and 2001, Bayer AG agreed with the DOJ to plead guilty and pay a fine of U.S.$66 million. The sentencing court approved the agreement on December 9, 2004. To settle charges related to allegations that its NBR business unit engaged in anti-competitive activities between May 2002 and December 2002, Bayer AG agreed with the DOJ to plead guilty and pay a fine of U.S.$4.7 million. The sentencing court approved the agreement on December 8, 2004. Bayer AG has paid both the rubber chemicals fine and the NBR fine. The two agreements resolve all criminal charges against Bayer in the United States for activities related to its rubber chemicals and NBR business,

125

provided Bayer continues to cooperate with the DOJ's ongoing investigations. Bayer AG is currently cooperating with the DOJ and the CCB with respect to their investigations of possible anti-competitive behavior involving a further product attributable to the former rubber-related lines of business. The DOJ and the CCB have granted conditional amnesty from the imposition of criminal liability in connection with these proceedings. Conditional amnesty requires continued cooperation by Bayer. The EC is conducting civil investigations of potential violations of European competition laws involving Bayer's rubber chemicals, EPDM and NBR lines of business. Provisions in the amount of €50 million were established in 2003 with respect to the EC investigations, although a reliable estimate cannot yet be made as to the actual amount of any fines. Bayer AG and certain of its subsidiaries are currently cooperating with the EC and the antitrust authorities of several member states of the EU with respect to their investigations of possible anti-competitive behavior involving several additional products attributable to the former rubber-related lines of business. The EC and the member state authorities have granted conditional amnesty from the imposition of fines in connection with these proceedings. Conditional amnesty requires continued cooperation by Bayer.

The CCB is conducting criminal investigations of potential violations of Canadian competition laws involving Bayer's rubber chemicals, EPDM and NBR lines of business. Bayer AG is in the process of negotiating a settlement agreement with the CCB that would resolve all charges in Canada related to allegations that its rubber chemicals business unit engaged in anti-competitive activities between 1995 and 2001.

Bayer AG and certain of its subsidiaries have been named, among others, as defendants in multiple putative class action lawsuits in various state courts in the United States and as defendants in lawsuits including putative class actions pending before various federal courts in the United States, involving rubber chemicals, EPDM, NBR and polychloroprene rubber. In each state court action, the plaintiffs have alleged violations based on the defendants' alleged participation in a conspiracy to fix prices. The state court plaintiffs seek damages as indirect purchasers of the allegedly affected products. In the federal court actions, the plaintiffs allege the defendants' participation in a conspiracy to fix the prices and/or to allocate markets and customers for the sale of the allegedly affected products and seek damages as direct purchasers of those products. These proceedings are at various preliminary stages.

Bayer AG and certain of its subsidiaries also have been named, among others, as defendants in multiple putative class action lawsuits in three Canadian courts. The actions involve rubber chemicals, EPDM, NBR and polychloroprene rubber. In the Canadian actions, the plaintiffs have alleged violations based on the defendants' alleged participation in a conspiracy to fix prices, and the Canadian plaintiffs seek damages as direct and indirect purchasers of the allegedly affected products. These proceedings are at various preliminary stages.

Bayer's U.S. subsidiary, Bayer Corporation, has been the subject of a criminal antitrust investigation by the DOJ involving adipic-based polyester polyols. On September 30, 2004, Bayer Corporation announced that it had reached agreement with the DOJ to settle charges related to the allegations that Bayer Corporation engaged in anti-competitive activities from February 1998 through December 2002 involving these products. Under the terms of the agreement, Bayer Corporation agreed to plead guilty and to pay a fine of U.S.$33 million. The company established a provision in respect of this settlement in the third quarter of 2004. The agreement, which is subject to court approval, is expected to resolve all criminal charges against Bayer for activities related to its adipic-based polyester polyols business. Adipic-based polyester polyols are a distinct type of a polyol raw material supplied to customers who produce polyurethanes. Adipic-based polyester polyols are not urethanes.

Bayer Corporation also has been named as a defendant in a putative class action lawsuit in Quebec, Canada, involving polyester polyols. In this Canadian action, the plaintiff has alleged violations based on Bayer Corporation's alleged participation in a conspiracy to fix the price of polyester polyols. The Canadian plaintiff seeks damages on behalf of a class of direct and indirect purchasers of the allegedly affected products.

The financial risk associated with all of the above litigation as well as the claims regarding polyester polyols discussed below (with the exception of those criminal proceedings in which fines have already been imposed), including the financial risk of private claims for damages, is currently not quantifiable, due to the considerable uncertainty associated with these proceedings, so no provisions have been taken in this regard. The company expects that, in the course of the regulatory proceedings and civil damages suits, significant expenses will become necessary that may have a material adverse effect on our results of operations, financial position and cash flows.

### Notes to the Consolidated Financial Statements of the Bayer Group — (Continued)

Seventeen of the suits are pending in federal court and six are pending in various state courts. All of the suits in federal court have been or are expected to be transferred to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings. Two of the suits filed in federal courts and one of the state suits name Bayer AG together with Bayer Corporation as defendants.

Bayer, along with other defendants, moved to dismiss the Amended Master Consolidated Complaint filed in June 2003 governing most of the private party class actions. In February 2004, the court granted the defendants' motion in part and denied it in part. Discovery is proceeding.

Bayer believes prior settlements between Bayer and certain U.S. states may preclude recovery by those states in pending cases that relate to similar claims. One state voluntarily dismissed Bayer from its suit in January 2005 in reliance on the settlement. Two other states have had their claims dismissed in part based on the settlement.

We believe that we have meritorious defenses in these actions and intend to defend them vigorously. Due to the considerable uncertainty associated with these proceedings, it is not possible to accurately estimate potential liability. Depending on the progress of the proceedings, we will continue to reconsider the need to establish provisions, which may have a negative effect on the results of our operations, financial position and cash flows.

*Rubber-related actions-Polyester polyols investigation/Urethane-related products actions*

Bayer AG and certain of its subsidiaries are the subjects of criminal and civil investigations being conducted by the Antitrust Division of the U.S. Department of Justice ("DOJ"), the Directorate General for Competition of the European Commission ("EC"), and the Canadian Competition Bureau ("CCB") (collectively, the "Competition Authorities"). The Competition Authorities are investigating potential violations of their respective antitrust or competition laws involving certain of Bayer's rubber-related lines of business.

Since September 2002, the DOJ has undertaken criminal grand jury investigations of potential antitrust violations involving Bayer's rubber chemicals, ethylene propylene diene monomer ("EPDM") synthetic rubber, and acrylonitrile butadiene rubber ("NBR") synthetic rubber lines of business. To settle charges related to allegations that its rubber chemicals business unit engaged in anti-competitive activities between 1995 and 2001, Bayer AG agreed with the DOJ to plead guilty and pay a fine of U.S.$66 million. The sentencing court approved the agreement on December 9, 2004. To settle charges related to allegations that its NBR business unit engaged in anti-competitive activities between May 2002 and December 2002, Bayer AG agreed with the DOJ to plead guilty and pay a fine of U.S.$4.7 million. The sentencing court approved the agreement on December 8, 2004. Bayer AG has paid both the rubber chemicals fine and the NBR fine. The two agreements resolve all criminal charges against Bayer in the United States for activities related to its rubber chemicals and NBR business, provided Bayer continues to cooperate with the DOJ's ongoing investigations. Bayer AG is currently cooperating with the DOJ and the CCB with respect to their investigations of possible anti-competitive behavior involving a further product attributable to the former rubber-related lines of business. The DOJ and the CCB have granted conditional amnesty from the imposition of criminal liability in connection with these proceedings. Conditional amnesty requires continued cooperation by Bayer. The EC is conducting civil investigations of potential violations of European competition laws involving Bayer's rubber chemicals, EPDM and NBR lines of business. Provisions in the amount of €50 million were established in 2003 with respect to the EC investigations, although a reliable estimate cannot yet be made as to the actual amount of any fines. Bayer AG and certain of its subsidiaries are currently cooperating with the EC and the antitrust authorities of several member states of the EU with respect to their investigations of possible anti-competitive behavior involving several additional products attributable to the former rubber-related lines of business. The EC and the member state authorities have granted conditional amnesty from the imposition of fines in connection with these proceedings. Conditional amnesty requires continued cooperation by Bayer.

The CCB is conducting criminal investigations of potential violations of Canadian competition laws involving Bayer's rubber chemicals, EPDM and NBR lines of business. Bayer AG is in the process of negotiating