# Exhibit 14

For docket see 3:03cv00296

**Motions, Pleadings and Filings**

United States District Court, W.D. North Carolina.
AVONDALE MILLS, INC., Plaintiff,
v.
NAN YA PLASTICS CORPORATION, AMERICA; Robert Bradley Dutton; Wellman, Inc.; David Whitley; John Hobson; Arteva Specialties, S.A.R.L.; Arteva Services, S.A.R.L.; Troy F. Stanley, Sr.; Eduardo Rocha; Tom Nixon; Frank H. Trammell, Jr.; Kenneth Lynn Hardin; Koch Industries Inc.; Hoechst Celanese Corporation; Hoechst Aktiengesellschaft; Celanese Aktiengesellschaft; and Celanese Americas Corporation. Defendants.
Civil Action No. 3:03 CV 296.
April 2, 2004.

MDL Docket No. 3:03 CV 1516

Jury Trial Demanded

Second Amended Complaint

Plaintiff, Avondale Mills, Inc. (hereinafter, "Plaintiff," "Avondale," or "Plaintiff Avondale"), brings this action for treble damages, attorneys' fees, costs of suit, and injunctive relief against the above-named defendants under both federal and state antitrust and consumer protection laws. Avondale alleges:

NATURE OF THE ACTION

1. This case arises from a long-running conspiracy in violation of federal and state antitrust laws (the "Conspiracy") among all the defendants to eliminate competition among themselves and to control prices in the U.S. market for polyester staple fiber (hereinafter, "PSF"), an essential raw material for many kinds of textiles. The Antitrust Division of the U.S. Department of Justice (the "DOJ") is currently investigating violations of the antitrust laws by PSF manufacturers. The DOJ has subpoenaed documents and procured the testimony of witnesses before a Grand Jury.

2. During the period beginning at least as early as 1995 and extending until or after the date of the first issuance of subpoenas pursuant to the DOJ's investigation of the Conspiracy (hereinafter, the "Conspiracy Period"), defendants, through the Conspiracy, have artificially fixed, raised, maintained, or stabilized PSF prices and have allocated portions of the PSF market and specific PSF customers among themselves. Defendants' actions, as further alleged herein, constitute per se violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, state antitrust laws, and state common law.

3. During the relevant period, Plaintiff Avondale manufactured textiles and used PSF in the production of its products. Avondale purchased PSF directly from certain of the defendants during the Conspiracy Period. Avondale also purchased products

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

containing PSF from third parties during the Conspiracy Period. As a result of the illegal conduct of defendants and their co-conspirators, Avondale paid artificially inflated prices for PSF and products containing PSF.

JURISDICTION AND VENUE

4. This Second Amended Complaint is filed and these proceedings are instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § § 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by Avondale by reason of defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; Article 1 of Chapter 75 of the North Carolina General Statutes.

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. § § 15 and 26. This Court has supplemental jurisdiction over Avondale's state law claims pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over each of the defendants because each transacts substantial business in North Carolina. As set forth below, each defendant joined in the Conspiracy, which was directed at and intended to cause injury to Avondale and other persons doing business in or residing in North Carolina. Each defendant does business in North Carolina, as each defendant sold and shipped PSF directly to purchasers in North Carolina. Defendants Wellman, Inc. and Arteva Specialties, S.a.r.l. have filed pleadings in related litigation stating that more than 55% of their PSF sales by volume were to customers in the Carolinas. Moreover, almost all of the defendants made PSF sales from offices in the Western District of North Carolina. During the Conspiracy Period, the primary PSF sales offices of many of the corporate defendants, including Wellman, Inc., Arteva Specialties, S.a.r.l., and Arteva Services S.a.r.l., were located in Charlotte, North Carolina. Defendants Troy F. Stanley, Sr. and Robert Bradley Dutton are residents of North Carolina.

7. Venue is proper in this judicial district pursuant to 15 U.S.C. § § 15, 22, and 26 because defendants are found in, are inhabitants of, or transact business in, this district. Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred and a substantial portion of the affected interstate trade and commerce described herein was carried out in this judicial district. Each defendant or its subsidiary, agent, or affiliate sold and shipped PSF directly to customers within this judicial district. Moreover, defendants Arteva Specialties, S.a.r.l. and Arteva Services, S.a.r.l. are found in this judicial district because each has its principal place of business in the Western District of North Carolina.

PARTIES

Plaintiff

8. Plaintiff Avondale Mills, Inc. is an Alabama corporation with its principal place of business in Sylacauga, Alabama. Avondale is a leading manufacturer of woven fabrics for use in apparel and other textile items. Avondale purchases PSF for use as a raw material in the production of Avondale's textile products. During the Conspiracy Period, Avondale purchased PSF directly from some or all of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants for use as a raw material in the production of its woven fabrics, including for use in its production facilities in North Carolina, South Carolina, and Alabama. During that period, Avondale also purchased from third parties yar and fabric that incorporated PSF manufactured by one or more of the defendants. While Avondale does not currently seek damages for those indirect purchases under federal law, it does seek damages for the same under North Carolina state law.

Nan Ya Defendants

9. Defendant Nan Ya Plastics Corporation, America ("Nan Ya") is a Delaware corporation with its principal place of business in Livingston, New Jersey. Nan Ya does business under the trade names "Nan Ya Plastics Corporation, America" and "Nan Ya Plastics Corporation, America South Carolina." During the Conspiracy Period, Nan Ya conspired to fix prices for PSF with some or all of the other named defendants.

10. Defendant Robert Bradley Dutton ("Dutton") is a United States citizen and a resident of Wilmington, North Carolina, Dutton was formerly a sales manager for Nan Ya whose responsibilities included the sale of PSF in North Carolina and throughout the United States during the Conspiracy Period.

Wellman Defendants

11. a. Defendant Wellman, Inc. ("Wellman") is a Delaware corporation with its principal place of business in Shrewsbury, New Jersey. During the Conspiracy Period, Wellman's PSF sales headquarters was in Charlotte, North Carolina.

b. During the Conspiracy Period, Wellman manufactured PSF and sold PSF to Avondale.

c. During the Conspiracy Period, Wellman conspired with some or all of the named defendants to fix prices.

12. Defendant David Whitley ("Whitley") is a United States citizen. During the Conspiracy Period, Whitley was the business manager for PSF sales at Wellman. Testimony at Defendant Dutton's criminal trial revealed that Whitley conspired with the other defendants to fix the prices of PSF sold in North Carolina and nationwide during the Conspiracy Period, including PSF sold to Avondale, Whitley is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

13. Defendant John Hobson ("Hobson") is a United States citizen. During the Conspiracy Period, Hobson was a Vice-President of Wellman Fibers. Testimony at Defendant Dutton's criminal trial revealed that Hobson conspired with the other defendants to fix the prices of PSF sold in North Carolina and nationwide during the Conspiracy Period, including PSF sold to Avondale. Hobson is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

KoSa Defendants

14. a. Defendant Arteva Specialties, S.a.r.l. ("Arteva Specialties") is a Luxembourg corporation with its principal place of business in Charlotte, North Carolina. Arteva Specialties operates under the trade name "KoSa" in the United

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

States. Arteva Specialties has filed a certificate of authority with the North Carolina Secretary of State to transact business under the name "Arteva Specialties, LLC."

b. Arteva Specialties acquired the Hoechst Celanese PSF business in 1998.

c. During the Conspiracy Period, Defendant Troy F. Stanley, Sr. was the Business Director of Textile Staple and Director of Textile Strategy for Arteva Specialties.

d. Arteva Specialties, both by its own actions and through its affiliate and agent Arteva Services S.a.r.l, manufactured PSF and sold PSF in North Carolina and nationwide during the Conspiracy Period.

e. On or about December 18, 2002, in the United States District Court for the Western District of North Carolina, Charlotte Division, Arteva Specialties pleaded guilty to taking part in the Conspiracy.

15. a. Defendant Arteva Services S.a.r.l ("Arteva Services") is a Luxembourg corporation with its principal place of business in Charlotte, North Carolina. Arteva Services operates under the trade name "KoSa" in the United States. Arteva Services has filed a certificate of authority with the North Carolina Secretary of State to transact business under the name "Arteva Services LLC."

b. Arteva Services acquired at least part of the Hoechst Celanese PSF business in 1998.

c. During the Conspiracy Period, Defendant Troy F. Stanley, Sr. was the Business Director of Textile Staple and Director of Textile Strategy for Arteva Services.

d. Arteva Services, both by its own actions and through its affiliate and agent Arteva Specialties, manufactured PSF and sold PSF in North Carolina and nationwide during the Conspiracy Period.

16. a. Defendant Troy F. Stanley, Sr. ("Stanley") is a United States citizen and resident of Forest City, North Carolina.

b. Stanley was the Business Director of Textile Staple and Director of Textile Strategy for Arteva Specialties.

c. Stanley was the Business Director of Textile Staple and Director of Textile Strategy for Arteva Services.

d. On October 31, 2002, in the United States District Court for the Western District of North Carolina, Charlotte Division, Stanley pleaded guilty to taking part in the Conspiracy.

17. Defendant Eduardo Rocha ("Rocha") is, upon information and belief, a citizen of Mexico. During some or all of the Conspiracy Period, Rocha worked for one or more of the KoSa defendants and had supervisory responsibility over Stanley. Rocha was aware of, and participated in, the Conspiracy. Rocha is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

18. Defendant Tom Nixon ("Nixon") is, upon information and belief, a United States

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

citizen. During some or all of the Conspiracy Period, Nixon worked for one or more of the KoSa defendants and had supervisory responsibility over Stanley. Nixon was aware of, and participated in, the Conspiracy. In fact, Stanley has admitted that he and Nixon were part of an "unholy alliance" with respect to the Conspiracy. Nixon is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

19. Defendant Frank H. Trammell, Jr. ("Trammell") is, upon information and belief, a United States citizen. During some or all of the Conspiracy Period, Trammell worked for one or more of the KoSa defendants as a Senior Account Executive in the sale of fine denier PSF. Trammell was aware of, and participated in, the Conspiracy. Trammell is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

20. Defendant Kenneth Lynn Hardin ("Hardin") is, upon information and belief, a United States citizen. During some or all of the Conspiracy Period, Hardin worked for one or more of the KoSa defendants and had supervisory responsibility over Stanley. Hardin was aware of, and participated in, the Conspiracy. Hardin is hereby added as one of the "Unnamed Co-Conspirators" referenced in Avondale's First Amended Complaint.

Koch Defendant

21. Defendant Koch Industries, Inc. ("Koch") is a Kansas corporation with its headquarters in Wichita, Kansas.

a. Koch is a major petrochemical company with worldwide business operations, and it is one of the largest privately held companies in the U.S.

b. In 1998, Koch acquired, in a joint venture with IMASAB S.A. de C.V., certain polyester assets of Defendant Hoechst Celanese, which joint venture did business as KoSa.

c. When it bought out the joint venture interests of IMASAB S.A. de C.V., Koch, through KoSa, manufactured and sold PSF in the Carolinas and otherwise does business in North Carolina.

d. KoSa has pleaded guilty to participating in this illegal conspiracy.

e. Upon information and belief, Koch participated in the illegal conspiracy alleged herein.

Hoechst Celanese Defendants

22. Defendant Hoechst Celanese Corporation ("Hoechst Celanese") is a Delaware corporation with its principal place of business in New Jersey.

a. Defendant Hoechst Celanese was created after the acquisition by Defendant Hoechst AG of Celanese Corporation in 1987.

b. Defendant Hoechst Celanese sold PSF from facilities in Charlotte, North Carolina, and Salisbury, North Carolina from before 1995 through 1998.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

c. Defendant Troy Stanley was a PSF sales manager for Hoechst Celanese.

e. Upon information and belief, Defendant Hoechst Celanese participated in the illegal conspiracy alleged herein.

23. Defendant Hoechst Aktiengesellschaft ("Hoechst AG") is a German corporation and has its headquarters in Germany.

a. In 1987, Hoechst AG acquired Celanese Corporation and formed Hoechst Celanese Corporation in the U.S.

b. Defendant Hoechst AG manufactured and sold PSF through its subsidiary, Defendant Hoechst Celanese, from facilities in Charlotte, North Carolina, and Salisbury, North Carolina from before 1995 and through 1998.

c. Hoechst AG is now an intermediate holding company that operates as an affiliate of Aventis under the Aventis logo.

d. Aventis S.A., a French corporation, is the product of the December 1999 merger of the life science business of Hoechst AG and Rhone-Poulenc S.A.

e. Upon information and belief, Hoechst AG participated in the illegal conspiracy alleged herein.

24. Defendant Celanese Americas Corporation f/k/a Hoechst Corporation ("Hoechst Corp.") is a Delaware corporation with its principal place of business in Sumit, New Jersey. Hoechst Corp. is a holding company that has controlled and been the sole shareholder of Hoechst Celanese since at least 1987. Hoechst Corp., both by its actions and the actions of its agent and subsidiary Hoechst Celanese, manufactured PSF and sold PSF in North Carolina and nationwide during the Conspiracy Period. Hoechst Corp. is hereby added as one of the "Unnamed Co-Conspirators" named in Avondale's First Amended Complaint.

25. Defendant Celanese Aktiengesellschaft ("Celanese AG") is a corporation organized under the laws of Germany, with its principal place of business in Hochtaunuskreis, Germany. Celanese AG has been the direct or indirect 100% shareholder of Hoechst Corp., and the ultimate parent of Hoechst Celanese, since at least 1999. Celanese AG, both by its actions and the actions of its agents and subsidiaries, manufactured PSF and sold PSF in North Carolina and nationwide during the Conspiracy Period. Celanese AG has also assumed certain liabilities of Hoechst AG relating to Hoechst AG's PSF business. Celanese AG is hereby added as one of the "Unnamed Co-Conspirators" named in Avondale's First Amended Complaint.

26. On November 3, 2003, Arteva Specialties and Arteva Services filed suit against Hoechst Celanese, Hoechst AG, Hoechst Corp., and Celanese AG in the United States District Court for the Southern District of New York. In their complaint, Arteva Specialties and Arteva Services admitted that some or all of the KoSa defendants conspired to fix the prices of PSF, to allocate PSF customers, and to participate "in additional illicit competitive practices" with respect to the sales of PSF from 1995 until at least January 2001.

Unnamed Co-Conspirators

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27. Other corporations, legal entities, and individuals, presently unknown to Avondale and not yet named as defendants in this complaint, participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof.

INTERSTATE TRADE AND COMMERCE

28. The activities of defendants and their co-conspirators, as described in this complaint, were within the flow of and substantially affected interstate commerce.

29. During the Conspiracy Period, defendants sold and distributed PSF throughout the United States, including in North Carolina.

30. During the Conspiracy Period, defendants manufactured PSF and sold and shipped substantial quantities of PSF, in a continuous and uninterrupted flow of interstate commerce, to customers located in states other than the states in which defendants manufactured, imported or produced PSF.

31. During the Conspiracy Period, defendants used the United States mail, interstate and foreign travel, and interstate and foreign telephone and electronic communications to effectuate the Conspiracy.

32. During the Conspiracy Period, the conduct alleged herein had a direct, substantial, and reasonably foreseeable effect on United States domestic commerce.

MATERIAL FACTS

PSF

33. Polyester staple fiber is a manufactured, petroleum-based fiber used to make textiles, clothing, home furnishings, and other products in many different industries.

34. PSF is produced by forcing a melted polymer resin (usually polyethylene terephthalate, formed by reactions between a crude oil refining byproduct and other chemicals) through the tiny holes of a device called a spinneret, producing continuous filaments of semisolid polymer. These filaments are spun and stretched to produce PSF.

35. There are several types of PSF, with different physical characteristics such as denier (thickness), color, crimp level, solid or hollow fiber cross-section, finish, heat setting, slickness, and durability. Although different types of PSF are manufactured in different ways, they are ultimately used for many of the same purposes and are marketed and sold in the same channels of distribution.

36. In a market that has not been rigged, different manufacturers of PSF would compete on the basis of price, especially since PSF of the same denier is substitutable.

37. During the Conspiracy Period, Avondale purchased millions of pounds of PSF directly from some or all of the defendant conspirators.

38. During the Conspiracy Period, Avondale also purchased from third parties

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fabric and yam containing fixed percentages of PSF manufactured and sold by defendants or their agents, subsidiaries, predecessors, or controlled affiliates.

Recent Price Patterns in the PSF Market

39. Defendants' U.S. PSF prices fell sharply and continuously from 1995 to 1999, but in 1999 those prices abruptly stabilized, then began to increase.

40. From at least 1999 through 2001, defendants increased their U.S. PSF prices by the same or nearly the same amounts. Defendants on multiple occasions announced and implemented, in close proximity to those of their ostensible competitors, price increases to PSF purchasers in nearly identical amounts. Upon information and belief, such price increases were illegally coordinated and were undertaken pursuant to the Conspiracy.

41. According to the testimony of Defendant Stanley at Defendant Dutton's criminal trial, the Conspiracy to fix PSF prices has been in effect since at least 1995.

42. Defendants' U.S. PSF prices have exceeded the price of PSF feedstock materials by roughly the same margin since the fall of 1999. This margin is substantially greater than the margin that existed beforehand.

Criminal Proceedings

43. In 2001, DuPont admitted to the DOJ the participation of DuPont and its subsidiaries, agents, and affiliates in the Conspiracy. In exchange, the DOJ granted amnesty from criminal charges under its Corporate Leniency Program.

44. The September 13, 2002 indictment of defendant Dutton charged that Dutton, along with unnamed individual and corporate co-conspirators, participated in the Conspiracy and violated the Sherman Act by, among other things, fixing, maintaining, and increasing PSF prices; rigging contract bids made to PSF buyers; and allocating among the conspirators customers for PSF.

45. On the day of the Dutton indictment, September 13, 2002, the DOJ released a statement to the press which stated, in relevant part:

FORMER NAN YA EXECUTIVE INDICTED ON PRICE-FIXING CHARGE FOR POLYESTER STAPLE

WASHINGTON, D.C.-A federal grand jury in Charlotte, N.C. today indicted Robert Bradley Dutton, a former sales manager for Nan Ya Plastics Corporation, for conspiring to fix prices and allocate customers in the polyester staple industry, the Department of Justice announced. Polyester staple is a petroleum-derived fiber used to make products such as clothing, table linens and upholsteries.

Today's indictment, filed in U.S. District Court in Charlotte, charges Dutton, a resident of Wilmington, N.C., with conspiring with others to fix the prices of, and allocating customers for, the sale of polyester staple throughout the United States from as early as September 1999 to at least January 2001.

"This case reflects the Antitrust Division's resolve to proceed aggressively against cartels that harm American businesses and consumers," said Charles A. James, Assistant Attorney General in charge of the Department's Antitrust Division.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In the first case brought as a result of this investigation, Dutton and unnamed co-conspirators are charged with carrying out the conspiracy by participating in meetings and conversations where prices and customers were discussed and agreements reached; selling polyester staple at the agreed-upon prices and to the agreed-upon customers; monitoring and enforcing adherence to the agreements; and issuing price announcements and quotations in accordance with their agreements.

Dutton is charged with violating Section One of the Sherman Act which carries a maximum penalty of three years in prison and a fine of $350,000 for individuals. The maximum fine may be increased to twice the pecuniary gain derived from the crime or twice the pecuniary loss suffered by the victims of the crime, if either of those amounts exceeds the statutory maximum fine.

The ongoing investigation is being conducted by the Antitrust Division's Dallas Field Office with the assistance of the Federal Bureau of Investigation's Dallas Office.

46. On October 31, 2002, in the United States District Court for the Western District of North Carolina, Charlotte Division, defendant Arteva Specialties and defendant Troy F. Stanley, Sr., the former Business Director of Textile Staple and Director of Textile Strategy for Arteva Specialties, were criminally charged with conspiracy to restrain trade. The charges against Arteva Specialties and Stanley alleged that other unnamed individual and corporate co-conspirators participated in the Conspiracy.

47. On or before October 31, 2002, Arteva Specialties and Stanley agreed to plead guilty to having violated the federal antitrust laws.

48. On or about December 18, 2002, in a sentencing hearing in the United States District Court for the Western District of North Carolina, Charlotte Division, Arteva Specialties pleaded guilty to violations of the antitrust laws. The representative of Arteva Specialties, Steven Duffy ("Duffy"), admitted that Arteva Specialties had participated in the Conspiracy.

49. At the December 18, 2002 sentencing hearing, Arteva Specialties, through Duffy, admitted that it formed with its co-conspirators, then implemented, a plan "to fix the price of and allocate customers for first quality polyester staple fiber sold in North America." Through Duffy, Arteva Specialties admitted that it and its co-conspirators announced price increases on agreed dates and in agreed amounts and coordinated the prices quoted to customers.

50. On or about January 31, 2003, judgment was entered against Arteva Specialties and a $28,500,000 criminal fine was assessed against Arteva Specialties.

51. The fine against Arteva Specialties is one of the twenty largest fines ever collected by the DOJ for violations of the antitrust laws.

52. Stanley has agreed to pay a $20,000 criminal fine and serve eight months in jail, subject to court approval.

53. On the day of the Arteva Specialties charge, October 31, 2002, the DOJ released a statement to the press which stated, in relevant part:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

COMPANY AGREES TO PLEAD GUILTY AND PAY $28.5 MILLION FINE FOR PARTICIPATING IN POLYESTER STAPLE CARTEL

Former U.S. Executive Also Agrees To Plead Guilty and Serve Jail Time

Washington, D.C.--A Luxembourg-based manufacturer of polyester staple and its former U.S. director of textile staples today agreed to plead guilty for participating in a conspiracy to fix prices and allocate customers in the polyester staple industry, the Department of Justice announced. Polyester staple is a petroleum-derived fiber used to make products such as clothing, table linens, and upholsteries.

According to separate charges filed today in U.S. District Court in Charlotte, Arteva Specialties, S.a.r.l., d/b/a KoSa, a Luxembourg company with its principal place of business in Charlotte, and its former director of textile staples, Troy F. Stanley, Sr., a U.S. citizen and resident of Forest City, North Carolina, conspired with unnamed co-conspirators to suppress and eliminate competition in the North American polyester staple industry from at least September 1999 through January 2001.

Pursuant to their plea agreements, KoSa has agreed to plead guilty and to pay a $28.5 million criminal fine, while Stanley also has agreed to plead guilty, to pay a $20,000 criminal fine, and to serve eight months jail time, all subject to court approval.

"Today's cases reflect the Antitrust Division's resolve to prosecute companies and executives engaged in cartels that harm American consumers," said Charles A. James, Assistant Attorney General in charge of the Department's Antitrust Division.

KoSa and Stanley carried out the conspiracy with unnamed co-conspirators by participating in meetings and conversations where prices and customers were discussed and agreements reached; selling polyester staple at the agreed-upon prices and to the agreed-upon customers; monitoring and enforcing adherence to the agreements; and issuing price announcements and quotations in accordance with their agreements.

Today's cases are the second and third to be brought in the polyester staple industry. On September 13, 2002, Robert Bradley Dutton formerly of Nan Ya Plastics Corporation was indicted for conspiring to fix prices and allocate customers in the polyester staple industry. He is awaiting trial.

KoSa and Stanley are charged with violating Section One of the Sherman Act, which carries a maximum penalty of a $10 million fine for corporations and a maximum penalty of three years in prison and a fine of $350,000 for individuals. The maximum fines may be increased to twice the gain derived from the crime or twice the loss suffered by the victims of the crime, if either of those amounts exceeds the statutory maximum fine. At sentencing, the court will determine the appropriate sentence to be imposed under the U.S. Sentencing Guidelines and whether to accept the plea agreements.

The ongoing investigation is being conducted by the Antitrust Division's Dallas Field Office and the Federal Bureau of Investigation in Dallas.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

54. The DOJ continues to investigate conduct of defendants beginning in 1995 affecting the U.S. PSF market.

55. Dutton did all the acts charged in the September 13, 2002 indictment against him.

56. Arteva Specialties did all the acts charged in the October 31, 2002 charge against it.

57. Arteva Specialties did all the acts admitted by Duffy at the December 18, 2002 sentencing hearing.

58. Stanley did all the acts charged in the October 31, 2002 charge against him.

59. Each defendant in this lawsuit is among the unnamed co-conspirators indicated in the Dutton indictment and in the charges against Arteva Specialties and Stanley.

60. On November 3, 2003, Defendants Arteva Specialties and Arteva Services filed a complaint against Defendants Hoechst Celanese, Hoechst Corp., Hoechst AG, and Celanese AG in the United States District Court for the Southern District of New York. The complaint alleges that when Defendants Arteva Specialties and Arteva Services purchased the PSF business of Defendants Hoechst Celanese, Hoechst Corp., Hoechst AG, and Celanese AG in 1998, the latter did not disclose that their business was dominated by "a pattern and practice of illicit competitive practices," which "may have violated various laws." The complaint further alleges that the Hoechst employees retained by Defendants Arteva Specialties and Arteva Services, including Defendant Stanley, still "participated in additional illicit competitive practices" after they purchased this PSF business.

Fraudulent Concealment

61. In order to effectuate the Conspiracy, defendants necessarily had to affirmatively conceal their conduct from purchasers such as Avondale. Purchasers of PSF, including Avondale, were unaware that the prices of PSF were agreed upon and fixed. Avondale had no knowledge of the antitrust violations alleged herein until recently.

62. Defendants fraudulently concealed their conspiratorial conduct from Avondale and other purchasers of PSF. To conceal their illegal acts, Defendants took numerous affirmative acts, including the following:

a. Defendants always provided a false but seemingly justified explanation for price increases. Defendants often claimed, for example, that price increases were necessary to offset the rising price of raw materials.

b. Defendants timed their issuance of PSF price announcements in order to create the illusion of competitive pricing.

c. Defendants submitted false bids.

d. Defendants convened secret meetings.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

e. Defendants confined the Conspiracy plan to a small group of key officials at each company and instructed Conspiracy members not to divulge the existence of the Conspiracy to nonparticipants.

f. Defendants used codes to conceal the identity of their co-conspirators.

g. Defendants avoided creating documents which referred to or revealed their antitrust violations.

h. Defendants destroyed documents which referred to or revealed their antitrust violations.

i. Defendants provided false information to law enforcement authorities.

63. Avondale did not discover, and could not discover through the exercise of reasonable diligence, the existence of the claims here sued upon until recently, because defendants and their co-conspirators actively, intentionally, and fraudulently concealed the existence of the Conspiracy.

Injunctive Relief Is Necessary

64. The illegal Conspiracy alleged herein is continuing and will continue to injure Plaintiff and other PSF buyers unless the relief prayed for herein is granted.

65. Permanent injunctive relief is necessary to eradicate the illegal Conspiracy and its after-effects. Over the course of the Conspiracy, defendants have developed relationships among themselves and learned that by illegally cooperating, they can abuse their collective market power to artificially inflate prices. Money damages alone will not prevent defendants from continuing to abuse their market power, and money damages alone will not prevent defendants from recouping their losses in this suit through future overcharges.

COUNT I

Violations of Sherman Act

66. Avondale repeats and realleges the preceding paragraphs as though set forth herein.

67. In formulating and effectuating the Conspiracy, each of the defendants and their co-conspirators have engaged during the Conspiracy Period in continuing agreements, understandings, combinations, and conspiracies in restraint of trade to artificially fix, maintain, stabilize, and increase prices for PSF; submit rigged, complementary, noncompetitive contract bids and price quotations to PSF buyers; and allocate PSF customers and markets to particular conspirators, all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1,

68. In formulating and effectuating the Conspiracy, defendants and their coconspirators have mutually engaged in various anticompetitive activities, as alleged herein, including but not limited to the following:

a. Participating in meetings and conversations in which defendants and their co-

conspirators discussed the prices of PSF sold in the United States, including the prices charged to Plaintiff Avondale;

b. Agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to fix, maintain, stabilize, and increase prices of PSF sold to Avondale and other customers in the United States;

c. Agreeing, during those meetings and conversations, to allocate among the conspirators markets and customers, including Avondale, that purchase PSF in the Untied States;

d. Agreeing, during those meetings and conversations, to refrain from bidding or quoting or to submit intentionally high, complementary, and noncompetitive bids or price quotations for particular contracts to supply PSF to Avondale and other customers throughout the United States;

e. Issuing price announcements, price quotations, and general price increases to Avondale and other customers throughout the United States in accordance with the pricing and customer and market allocation agreements reached;

f. Selling to Avondale and other customers throughout the United States PSF at the agreed-upon rigged and noncompetitive prices and in accordance with the agreed-upon customer and market allocations;

g. Submitting to Avondale and other customers throughout the United States the agreed-upon high, complementary, and noncompetitive bids and price quotations, or refraining, as agreed upon, to submit bids and price quotations;

h. Exchanging sales and customer information for the purpose of monitoring and enforcing adherence to the agreements reached; and

i. Facilitating, effectuating, implementing, monitoring, and concealing the Conspiracy to raise and inflate the prices of PSF.

69. These anticompetitive activities violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

70. The acts charged in this Second Amended Complaint as having been done by each defendant were authorized, ordered, and condoned by that defendant's parent company and were authorized, ordered, and done by that defendant's officers, directors, agents, employees, or representatives while actively engaged in the management, direction, control, or transaction of that defendant's business affairs.

71. Throughout the Conspiracy Period, Avondale has directly purchased PSF from some or all of the defendants or their agents, subsidiaries, predecessors, or controlled affiliates.

72. The Conspiracy has had the following effects, among others:

a. Avondale has paid to defendants and their co-conspirators PSF prices that were fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

b. Avondale has been deprived of the benefit of free and open competition; and

c. Price competition between and among defendants and their co-conspirators in the sale of PSF to Avondale has been unreasonably restrained, suppressed, or eliminated.

73. As a direct and proximate result of the Conspiracy, Avondale has been injured and damaged in its business and property, in that it has paid more for PSF than it would have paid in the absence of the Conspiracy. Avondale thus has suffered antitrust injury and damages proximately caused by the Conspiracy in an amount yet undetermined.

COUNT II

Violations of N.C. Gen. Stat. § § 75-1 and 75-1.1

74. Avondale repeats and realleges the preceding paragraphs as though set forth herein.

75. Defendants are in the business of manufacturing, distributing, or selling PSF.

76. As alleged above, defendants have mutually engaged in a Conspiracy to, among other things, artificially fix, maintain, stabilize, and increase prices for PSF; submit rigged, complementary, and noncompetitive contract bids and price quotations to PSF buyers; and allocate PSF markets and customers to particular conspirators.

77. Defendants' conduct thus violates North Carolina's antitrust and consumer protection laws, Article 1 of Chapter 75 of the North Carolina General Statutes, in at least the following ways:

a. Defendants have entered into contracts, combinations or conspiracies in restraint of trade or commerce, in violation of N.C. Gen. Stat. § 75-1.

b. Defendants have engaged in unfair methods of competition in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1.

c. Defendants have engaged in unfair or deceptive acts or practices in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1.

78. Defendants' unlawful conduct emanated from North Carolina to the detriment of Avondale and PSF purchasers throughout the United States. Most of the defendants had PSF sales offices in Charlotte, North Carolina. Defendants' unlawful conduct had a direct and foreseeable effect upon North Carolina.

79. As alleged above, throughout the Conspiracy Period, Avondale directly purchased PSF from defendants or their agents, subsidiaries, predecessors, or controlled affiliates.

80. Avondale also purchased from third parties fabric and yarn containing fixed percentages of PSF manufactured and sold by defendants or their agents, subsidiaries, predecessors, or controlled affiliates, and thereby, Avondale indirectly purchased PSF from defendants.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

81. Defendants intended to violate North Carolina's antitrust laws, and defendants knew and intended that their actions, as alleged herein, would result in Avondale paying more for fabric and yarn incorporating PSF manufactured by defendants and purchased by Avondale from third parties than it otherwise would have paid in the absence of the conspiracy.

82. Avondale has been damaged as a proximate result of defendants' continuing illegal actions, in that Avondale has paid more for yarn and fabric containing PSF manufactured by defendants that it purchased from third parties than it would have in the absence of the Conspiracy.

83. Pursuant to N.C. Gen Stat. § 75-16, Avondale is entitled to treble damages.

84. Defendants willfully engaged in acts and practices that violate N.C. Gen. State § 75-5-1. Pursuant to N.C. Gen. Stat. § 17-16.1, Avondale is entitled to an award equal to a reasonable attorney's fee.

PRAYER FOR RELIEF

WHEREFORE, plaintiff Avondale prays:

a. That the Conspiracy alleged herein be adjudged and decreed to be a per se unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

b. That the Conspiracy alleged herein be adjudged and decreed to be a contract, combination or conspiracy in restraint of trade or commerce in violation of N.C. Gen. Stat. § 75-1; unfair methods of competition in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1; and unfair or deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1;

c. That the Conspiracy alleged herein be adjudged and decreed to be unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce;

d. That Avondale recover three-fold the damages, as provided by law, determined to have been sustained by Avondale, and that joint and several judgments in favor of Plaintiff Avondale be entered against each of defendants;

e. That Avondale recover its costs of this suit, including reasonable attorneys' fees, as provided by law;

f. That Avondale recover pre-judgment and post-judgment interest upon its damages, as permitted by law;

g. That defendants, their co-conspirators, successors, assigns, parents, subsidiaries, affiliates, and transferees, and their respective officers, directors, agents, and employees, and all other persons acting or claiming to act on behalf of defendants or in concert with them, be permanently enjoined and restrained from, in any manner, continuing or renewing the Conspiracy alleged herein or adopting any practice or plan having a similar purpose or effect in restraining competition;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

h. That this matter be tried by a jury; and

i. That Avondale be granted such further and other relief as the nature of the case may require and as this Court deems just and appropriate.

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2649527 (Trial Pleading) Answer and Affirmative Defenses of Frank H. Trammell, Jr. to Plaintiff Avondale Mills, Inc.'s Second Amended Complaint (Aug. 9, 2005)Original Image of this Document (PDF)

• 2004 WL 2623484 (Trial Pleading) Answer of Defendant Arteva Specialties S.%22A.R.L. and Defendant Arteva Services S.%22A.R.L. to Plaintiff Avondale Mills, Inc.'s Second Amended Complaint (Sep. 17, 2004)Original Image of this Document (PDF)

• 2004 WL 2623489 (Trial Pleading) Answer of Defendant Koch Industries, Inc. to Plaintiff Avondale Mills, Inc.'s Second Amended Complaint (Sep. 17, 2004)Original Image of this Document (PDF)

• 2003 WL 23874569 (Trial Pleading) Answer of Defendants Nan Ya Plastics Corporation, America and Robert Bradley Dutton to First Amended Complaint (Sep. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 23874574 (Trial Pleading) Answer (Sep. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 23874580 (Trial Pleading) Answer of Defendant Troy F. Stanley, Sr. to Plaintiff's First Amended Complaint (Sep. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 23874585 (Trial Pleading) Answer of Defendant Arteva Specialties S.%22A.R.L. and Defendant Arteva Services S.%22A.R.L. to Plaintiff Avondale Mills, Inc.'s First Amended Complaint (Sep. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 23874598 (Trial Pleading) Answer and Affirmative Defenses of Hoechst Celanese Corporation to First Amended Complaint (Sep. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 23737260 (Trial Pleading) Complaint (Jun. 05, 2003)

• 2003 WL 23874552 (Trial Pleading) Complaint (Jun. 5, 2003)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.