# Exhibit 17

Case 1:05-cv-02217-RJL   Document 37-19   Filed 09/27/2006   Page 1 of 4

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D. C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2003

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the Transition Period From _____ to _____

Commission file number 1-6450

# GREAT LAKES CHEMICAL CORPORATION
(Exact name of registrant as specified in its charter)

| **DELAWARE** | **95-1765035** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**9025 NORTH RIVER ROAD, SUITE 400**
**INDIANAPOLIS, INDIANA 46240**
(Address of principal executive offices)   (Zip Code)

Registrant's telephone number, including area code **317-715-3000**

**Securities registered pursuant to Section 12(b) of the Act:**

| **Title of each class** | **Name of each exchange on which registered** |
|---|---|
| Common stock, $1.00 par value | New York Stock Exchange |
| | Pacific Stock Exchange |

Securities registered pursuant to Section 12 (g) of the Act: None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months, and (2) has been subject to the filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act).   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

As of June 30, 2003, the aggregate market value of the voting stock held by non-affiliates of the registrant was $1,031,184,178 based on the last reported sales price on the New York Stock Exchange.

As of February 27, 2004, 50,667,679 shares of the registrant's stock were outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE**

Portions of the Proxy Statement for the Registrant's Annual Meeting of Shareholders to be held on May 6, 2004 are incorporated by reference into Part III.

agreements. The Company maintains good employee relations, and while the Company has successfully completed its past labor negotiations without a work stoppage, it cannot predict the outcome of any future contract negotiations.

**AVAILABLE INFORMATION**

The Company's Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K, proxy statements and amendments to those reports, are available free of charge on the Company's Internet website at http://www.greatlakes.com as soon as reasonably practicable after such reports are filed with the Securities and Exchange Commission.

**ITEM 2.  Properties**

The Company leases its principal executive offices in Indianapolis, Indiana. The Company operates 20 production facilities in 9 countries. The Company has distribution facilities at all of its manufacturing sites. Listed under "Item I. Business" above in the table captioned "Products and Services" are the production facilities by business unit. The Company's principal research facilities are in West Lafayette, Indiana, and Decatur, Georgia. Most principal locations are owned.

In addition, the Company owns or leases warehouses, distribution centers and office space for administrative and sales activities throughout the world. All of the Company's facilities are in good repair, suitable for the Company's businesses, and have sufficient capacity to meet present market demands at an efficient operating level.

**ITEM 3.  Legal Proceedings**

The Company cooperated with the United States Department of Justice (DOJ) and the European Commission in their respective investigations of the bromine and brominated products industry. Both investigations were initiated after the Company self-reported to those agencies certain business practices that raised questions under antitrust laws. As a result of the Company's cooperation, the Company and its current directors and employees were accepted into the DOJ's amnesty program. In addition, the Company sought favorable treatment under a program in the European Union that also rewards self-reporting and cooperation. On May 26, 2003, the Company received a letter from the EC Competition Directorate General officially notifying the Company of the Commission's decision not to pursue any proceedings.

The Company believes it has fully complied with all applicable conditions to date and has continued to cooperate with the DOJ in connection with certain follow-up matters arising out of the investigation, all of which are covered by the Company's acceptance into the amnesty program. Although, to the Company's knowledge, there have been no additional matters that have arisen in connection with the investigations, the Company intends to continue to be in full compliance with the DOJ and European Union programs.

There were 10 federal purported class action lawsuits and five California purported class actions naming the Company, each claiming treble damages arising out of an alleged conspiracy concerning the pricing of bromine and brominated products. The federal lawsuits were consolidated in the District Court for the Southern District of Indiana, which, over the Company's opposition, certified a class of direct purchasers of certain brominated products.

On September 10, 2002, the Company agreed to settle all of the federal class actions. The settlement agreement affects direct purchasers from the Company of brominated diphenyl oxides (decabromodiphenyl oxide, octabromodiphenyl oxide and pentabromodiphenyl oxide) and their blends, tetrabromobisphenol-A and its derivatives and all methyl bromide products and their derivatives in the United States between January 1, 1995 and April 30, 1998. The Company agreed

to a $4.1 million cash payment and $2.6 million in vouchers for the future purchase of decabromodiphenyl oxide and/or tetrabromobisphenol-A, to be distributed to class members. The cash settlement was reflected in the fourth quarter of 2002 as a reduction to litigation reserves previously recorded in prior periods.

Pursuant to the settlement agreement, the Company remitted the cash portion to an escrow account on November 8, 2002, subject to final approval of the settlement agreement by the federal court. After notice to class members, the federal court gave final approval to the settlement in January 2003. In addition, the plaintiffs submitted a plan of distribution for court approval. The plan included a form of voucher agreed to by the Company. As of the end of the fourth quarter of 2003, no vouchers have been issued.

The California cases pending in the Superior Court for San Francisco County claim alleged violations of California competition laws and were stayed pending resolution of the federal cases. The cases are not impacted by the federal settlement. The Company has denied that the cases were legitimately filed as class actions, denies all liability and intends to defend the cases vigorously.

OSCA, the interest in which the Company divested to BJ Services Company as of May 31, 2002, is a party to certain pending litigation regarding a blowout of a well in the Gulf of Mexico operated by Newfield Exploration Company. In the lawsuit, the plaintiffs claimed that OSCA and the other defendants breached their contracts to perform work-over operations on the well and were negligent in performing those operations. On April 4, 2002, a jury reached a verdict on those claims, finding OSCA and the other defendants responsible for those claims and determining OSCA's share of the damages. In connection with the lawsuit, the Company asserted claims against its insurers and insurance brokers in support of insurance coverage for this incident. A related trial on these insurance coverage claims was conducted by the submission of legal briefs. Thereafter, the court issued its final judgments on the underlying liability claims and the insurance coverage claims, entering judgment against OSCA for a net amount of approximately $13.3 million plus interest, and finding that such amount was only partially covered by insurance. Pursuant to an indemnification agreement between the Company and BJ Services entered into at the time of the sale of OSCA (see Note 4 to the Consolidated Financial Statements), Great Lakes has agreed to pay BJ Services a certain percentage of any uninsured cash damages in excess of an amount paid by OSCA upon settlement or final determination of this pending litigation. As of December 31, 2003, the Company has a $9.4 million reserve in discontinued operations for this indemnification liability. Great Lakes and BJ have appealed the liability and insurance coverage decisions.

On May 28, 2002, Albemarle Corporation filed two complaints against the Company in the United States District Court for the Middle District of Louisiana, one alleging that the Company infringed on three process patents held by Albemarle Corporation relating to bromine vacuum tower technology, and the other alleging that the Company had infringed or contributed or induced the infringement of a patent relating to the use of decabromodiphenyl ethane as a flame retardant in thermoplastics. On a motion by the Company and over Albemarle's objection, the cases were consolidated. In addition, the Company has filed a counterclaim with the District Court in the flame retardant cases, alleging, among other things, that the Albemarle patent is invalid or was obtained as a result of inequitable conduct in the United States Patent and Trademark Office. On August 28, 2003, Albemarle moved to amend its complaints seeking to add additional counts of patent infringement and trade secret violations. The Company has opposed that motion.

With respect to the Albemarle case, the Company believes that the allegations of the original complaints, as well as the allegations in the additional counts which are the subject of the pending motion, are without basis factually or legally, and intends to defend the cases vigorously.

During the second quarter of 2003, the Company favorably resolved a dispute arising out of a customer's breach of a supply contract in the amount of $3.1 million, related to its Fluorine business.