# Exhibit 20



AMCHAM EU

AMERICAN CHAMBER OF COMMERCE
TO THE EUROPEAN UNION

May 8th 2006

## Comments on the Commission's Green Paper on damages actions for breach of the EC antitrust rules

**Introduction**

The American Chamber of Commerce to the European Union (AmCham EU) is the key organisation in Europe representing the views of European companies of American parentage. Its member companies are drawn from a broad cross-section of the European business community and typically are present in most Member States of the European Union. As such, it represents some of the earliest and most committed business supporters of the European ideal and, in particular, of the single market concept.

AmCham EU welcomes the Commission's initiative that puts various solutions forward for discussion, addressing the key issues which concern the conditions for bringing **private** actions for damages in EU courts for the breach of EC antitrust rules.

AmCham EU supports changes that will ensure that the victims of breaches of competition laws can take actions to recover their losses in a fair and efficient manner. However, AmCham EU believes that the system must be fair and efficient for both claimants and defendants.

Some of the options considered in the Green Paper would tilt the balance in favour of the claimant. In particular, double damages, no-fault liability, reduction of the evidential burden of proof on the claimant, the possibility of avoiding costs in the event of an unsuccessful claim and the standing of both direct and indirect purchasers, while excluding the passing-on defence, are all options that would weigh heavily in favour of the claimant. Such changes would create special incentives for private claims that carry the risk of facilitating unmeritorious and ill-founded claims. While AmCham EU supports changes to compensate the victims for losses from breaches of competition law, it does not support the introduction of measures that would incite private parties to bring claims in a manner which could lead to vexatious litigation and unfairly prejudice defendants.

Sweeping legislative and/or procedural changes are not necessary in this area. While some changes may be beneficial, as discussed under the options below, the Commission should also take into account the need to increase and improve the expertise of competition law and economics among the judiciary. Damage claims for breaches of competition laws frequently involve complex economic analysis, which warrant further resources to ensure that national courts are properly prepared to handle private antitrust litigation. This in itself would likely lead to wider use of existing procedures to bring private actions. Therefore, it is an essential element that needs to be addressed if the Commission wants to introduce measures to facilitate such damage claims.

AmCham EU shares the Commission's concerns that whatever action is taken in this area, the EU must be careful to avoid the excesses of the US system. The Commission needs to ensure that any action in the area of private enforcement should be designed to facilitate, rather than incite, claims. As the Commission itself emphasises, the objective is to encourage a competition – and not a litigation – culture through a fair and efficient processes.

**AMCHAM EU**
AMERICAN CHAMBER OF COMMERCE
TO THE EUROPEAN UNION

May 8th 2006
Damages Actions

| Question A: | Should there be special rules on disclosure of documentary evidence in civil proceedings for damages under Articles 81 and 82 of the EC Treaty? If so, which form should such disclosure take? |
|---|---|
| Option 1: | Disclosure should be available once a party has set out in detail the relevant facts of the case and has presented reasonably available evidence in support of its allegations (fact pleading). Disclosure should be limited to relevant and reasonably identified individual documents and should be ordered by a court. |
| Option 2: | Subject to fact pleading, mandatory disclosure of classes of documents between the parties, ordered by a court, should be possible. |
| Option 3: | Subject to fact pleading, there should be an obligation on each party to provide the other parties to the litigation with a list of relevant documents in its possession, which are accessible to them. |
| Option 4: | Introduction of sanctions for the destruction of evidence to allow the disclosure described in options 1 to 3. |
| Option 5: | Obligation to preserve relevant evidence. Under this rule, before a civil action actually begins, a court could order that evidence which is relevant for that subsequent action be preserved. The party asking for such an order should, however, present reasonably available evidence to support a prima facie infringement case. |

AmCham EU acknowledges that one of the major challenges for parties who wish to bring damages claims in competition cases is to obtain access to documentary evidence. However, this is true for all damages cases and not exclusively in the competition area. Indeed the finding of the Study to which the Commission's Staff working paper, i.e. that "the powers of national courts to order production of documents are very limited", has general validity and applies to all damages cases.

Special rules for competition violations would therefore only be justified if there were compelling reasons to come to different conclusions in this area.

AmCham EU is of the opinion that at the moment there are no compelling reasons to create special rules for discovery by private parties in competition cases which diverge from the rules which apply to damages cases in general . This does not exclude, however, that option A 5 could be further examined.

| Question B: | Are special rules regarding access to documents held by a competition authority helpful for antitrust damages claims? How could such access be organised? |
|---|---|
| Option 6: | Obligation on any party to proceedings before a competition authority to turn over to a litigant in civil proceedings all documents which have been submitted to the authority, with the exception of leniency applications. Issues relating to disclosure of business secrets and other confidential information as well as rights of the defence would be addressed under the law of the forum (i.e. the law of the court having jurisdiction). |
| Option 7: | Access for national courts to documents held by the Commission. In this context, the Commission would welcome feedback on (a) how national courts consider they are able to guarantee the confidentiality of business secrets or other confidential information, and (b) on the situations in which national |

2



May 8th 2006
Damages Actions

> courts would ask the Commission for information that parties could also provide.

AmCham EU acknowledges the Commission's reference to the rules concerning procedural openness and the principle of transparency in connection with access to documents held by the Commission or by National Competition Authorities. The Commission, for example, refers to Regulation 1049/2001. However, AmCham EU would like to point out that the principle of transparency has exceptions aimed at protecting public interest, privacy, commercial interests (including business secrets and intellectual property), legal advice privilege, as well as the decision-making process of the institutions. Moreover, third party documents are not disclosed without prior consultation with the third parties concerned. These exceptions are set out in article 4 of Regulation 1049/2001 as follows:

*Article 4*
*Exceptions*
*1. The institutions shall refuse access to a document where disclosure would undermine the protection of:*
*(a) the public interest as regards:*
*- public security,*
*- defence and military matters,*
*- international relations,*
*- the financial, monetary or economic policy of the Community or a Member State;*
*(b) privacy and the integrity of the individual, in particular in accordance with Community legislation regarding the protection of personal data.*
*2. The institutions shall refuse access to a document where disclosure would undermine the protection of:*
*- commercial interests of a natural or legal person, including intellectual property,*
*- court proceedings and legal advice,*
*- the purpose of inspections, investigations and audits,*
*unless there is an overriding public interest in disclosure.*
*3. Access to a document, drawn up by an institution for internal use or received by an institution, which relates to a matter where the decision has not been taken by the institution, shall be refused if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.*
*Access to a document containing opinions for internal use as part of deliberations and preliminary consultations within the institution concerned shall be refused even after the decision has been taken if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.*
*4. As regards third-party documents, the institution shall consult the third party with a view to assessing whether an exception in paragraph 1 or 2 is applicable, unless it is clear that the document shall or shall not be disclosed.*
*5. A Member State may request the institution not to disclose a document originating from that Member State without its prior agreement.*
*6. If only parts of the requested document are covered by any of the exceptions, the remaining parts of the document shall be released.*
*7. The exceptions as laid down in paragraphs 1 to 3 shall only apply for the period during which protection is justified on the basis of the content of the document. The exceptions may apply for a maximum period of 30 years. In the case of documents covered by the exceptions relating to privacy or commercial interests and in the case of sensitive documents, the exceptions may, if necessary, continue to apply after this period.*

3



May 8th 2006
Damages Actions

AmCham EU supports the adoption of these exceptions and proposes that the Commission should encourage the adoption of similar exceptions (to the extent necessary) in relation to documents held by National Competition Authorities. Moreover, a potential specific right for private litigants to obtain information directly from the other parties in private litigation,[1] should not be automatic and without limits, but subject to the same set of exceptions to protect:
- privacy,
- confidentiality of business secrets,
- legal advice privilege,
- the effectiveness of the decision-making system of the National Competition Authorities, which could be jeopardised if there is a system of access to all documents without exceptions; and
- the right of third parties to be consulted prior to disclosure and to submit their views on the applicability of any exceptions.

Furthermore, in order to guarantee the confidentiality of business secrets by national courts, the Commission should ensure that there is a Community-wide standard to enable the same level of protection in all national courts, rather than simply relying on the law of the forum.

| Question C: | Should the claimant's burden of proving the antitrust infringement in damages actions be alleviated and, if so, how? |
|---|---|
| Option 8: | Infringement decisions by competition authorities of the EU Member States to be made binding on civil courts or, alternatively, reversal of the burden of proof where such an infringement decision exists. |
| Option 9: | Shifting or lowering the burden of proof in cases of information asymmetry between the claimant and defendant with the aim of redressing that asymmetry. Such rules could, to a certain extent, make up for the non-existent or weak disclosure rules available to the claimant. |
| Option 10: | Unjustified refusal by a party to turn over evidence could have an influence on the burden of proof, varying between a rebuttable presumption or an irrebuttable presumption of proof and the mere possibility for the court to take that refusal into account when assessing whether the relevant fact has been proven |

▸ Decisions of NCAs

As the Ashurst report revealed, for liability in damages, all Member States require proof of infringement, proof of damage and a causal link. Article 2 of Regulation 1/2003 clearly states that in proceedings under Article 81(1) and 82 of the EC Treaty, the burden of proof is on the party alleging the infringement.

However, the goal of increasing private action would be greatly helped if a claimant could rely on a decision of a NCA or of the Commission to prove an antitrust infringement. In some Member States a public decision finding an infringement relieves the claimant from having to prove it in a follow-on action for damages. In others, there is a rebuttable presumption that a decision from a NCA or the Commission is proof of the infringement, or such a decision is of persuasive value.

---

[1] As suggested in paragraph 74 of the Commission's Staff Working Paper Annex to the Green Paper on Damages actions for breach of the EC antitrust rules.

4



It is clear that the situation regarding the effect of a decision by a NCA on the burden of proof varies enormously across the Member States. It must also be remembered that in some Member States, e.g. the Netherlands, making a decision of an administrative authority binding upon a Court, without any possibility for the latter to review the legality of that decision may be inconsistent with constitutional law.

It should be noted that in many cases, a defendant may choose not to challenge an infringement decision by an NCA, as commercially it may be preferable to negotiate the payment of the fine, instead of incurring further legal costs. However, in the event that the decision of a NCA were to be binding in a court, such companies would have a greater incentive to challenge the decision of the NCA as to let it stand would leave them more vulnerable to damages actions. We submit that it would not be good policy to encourage companies to challenge decisions of NCAs for the mere sake of avoiding successful damage actions, as this would be costly, both in time and money, for all parties concerned.

We therefore believe that infringement decisions by competition authorities of the EU Member States should not be made binding on civil courts but rather support a reversal of the burden of proof where such an infringement decision exists. This provides a balance between efficient use of public resources (the Court's time and costs incurred by the NCA) and the rights of the defendant.

The claimant would still need to show a causal link between the infringement and the damages it alleges to have suffered.

› Information Asymmetry

It is not clear that the special nature of competition law justifies the introduction of special rules on burden of proof and a departure from the rules which normally apply in civil litigation in each Member State. However, it is true that asymmetry of information is a real obstacle for stand-alone cases in civil systems which do not allow discovery.

The Court has held in *Aalborg Portland* that although for infringement actions under Article 81 or 82, the burden of proof is on the party alleging the infringement, "the factual evidence on which a party relies may be of such a kind as to require the other party to provide an explanation or justification, failing which it is permissible to conclude that the burden of proof has been discharged".

We are concerned about the Staff Working Paper suggestion that "information on-price and commercial strategy" could be characterised as such factual evidence which should lead to the burden of proof being discharged if the defendant did not provide an explanation or justification. It is unclear what precisely is meant by "information on prices and commercial strategy" and what it needs to consist of, and/or how detailed it should be. The risk with such an evidentiary rule is that defendants would be burdened with an impossible or at least very difficult task, namely the burden of proving a negative. Hence, this rule would, in an unjustified manner, weigh too heavily in favour of the claimant.

› Unjustified refusal to turn over evidence

In this situation, we believe that a rebuttable presumption or an irrebuttable presumption of proof would weigh too heavily in favour of the claimant. However, the possibility for the court to take such a refusal into account when assessing whether the relevant fact has been proven is acceptable.

5



May 8th 2006
Damages Actions

| Question D: | Should there be a fault requirement for antitrust-related damages actions? |
|---|---|
| Option 11: | Proof of the infringement should be sufficient (analogous to strict liability). |
| Option 12: | Proof of the infringement should be sufficient only in relation to the most serious antitrust law infringements. |
| Option 13: | There should be a possibility for the defendant to show that he excusably erred in law or in fact. In those circumstances, the infringement would not lead to liability for damages (defence of excusable error). |

'Proof of anticompetitive fault, and 'causation' should be requirements for antitrust-related damages actions. These two requirements are needed to ensure that private antitrust actions fairly balance the goals of private enforcement of antitrust laws: compensating parties that have been damaged by infringements of the antitrust laws while encouraging active competition among firms.

The goal of competition law is to protect the competitive process, not competitors. In the course of the competitive process some firms will gain business, while others will lose. The firms that lose business will feel that they have suffered 'damage'. However, competition law is not intended to protect firms from this 'damage'. On the contrary, competition law seeks to foster the process that creates it.

Only activities that are entered into deliberately or negligently to injure the competitive process itself should be the basis for an award of damages.. 'Fault', that is, deliberate or negligent action to harm the competitive process, must be a required element of an antitrust claim to ensure that the litigation process does not harm the competition it is meant to protect.

For example, a dominant firm may release a new, improved product and impose a loyalty rebate which infringes the antitrust law. A competitor claiming damages should be required to prove that it lost business because of the rebate and not the attractiveness of the new product. Similarly, the claimant should be required to prove that it did not lose the business for inefficiencies in its supply chain (for example, quality problems, backorders, late deliveries, etc.)

In conclusion on this point, private antitrust actions must fairly balance the goals of private enforcement of competition law: compensating parties that have been damaged by infringements while encouraging active competition among firms. In order to ensure that competition law is relied on to protect the competitive process, rather than competitors, claimants should therefore be required to prove 'fault' and 'causation'. Without these elements, the threat of litigation itself will have the perverse consequence of limiting the competition that the EC antitrust rules are intended to encourage.

| Question E: | How should damages be defined? |
|---|---|
| Option 14: | Definition of damages to be awarded with reference to the loss suffered by the claimant as a result of the infringing behaviour of the defendant (compensatory damages). |
| Option 15: | Definition of damages to be awarded with reference to the illegal gain made by the infringer (recovery of illegal gain). |
| Option 16: | Double damages for horizontal cartels. Such awards could be automatic, conditional or at the discretion of the court. |

6



| Option 17: | Prejudgment interest from the date of the infringement or date of the injury. |

▸ **Definition of Damages**

As the Ashurst report revealed, in almost all Member States it is the level of injury sustained that is the basis for the damages claim, under the principle of restitution. We do not believe that the particular nature of competition law justifies a departure from this principle which normally applies in civil litigation in the EU.

We would therefore support a definition of damages based on the loss suffered by the claimant, i.e. compensatory damages.

▸ **Double Damages**

Most Member States prohibit punitive or exemplary damages as being contrary to public policy, with the exception of the UK, Ireland and Cyprus. Taking the example of the UK, exemplary damages may be available where the defendant calculated that profit from unlawful conduct may outweigh the damages likely to be awarded. As the Ashurst report revealed, however, instances of such punitive or exemplary damages actually being awarded in these Member States are rare.

For the reasons explained below, we agree with the Opinion of Advocate General Geelhoed expressed in Case C-295 to 298/04 *Vincenzo Manfredi v Lloyd Adriatico Assicurazioni SpA*, of 26 January 2006, where he stated that as a matter of Community law, punitive damages are not necessary to give the EU competition rules proper effect.

We believe therefore that under the principle of subsidiarity, as defined in Article 5 ECT, the Commission should refrain from attempting to impose double damages in private enforcement actions for two reasons: First, it is against the public policy of most Member States and, second, it is not necessary to achieve the objective of increasing the effectiveness of competition law.

The policy rationale for double damages would be deterrence. However, this rationale is less convincing when widespread public enforcement is taken into consideration. According to the Court's judgment in *Crehan*, there is a right to claim damages for loss suffered as a result of an infringement of competition law and this right is necessary to make Community competition law fully effective by discouraging infringements. Private damages actions should be complementary to public enforcement. An individual should have the right to recover the losses caused by the illegal conduct but the punitive element can be achieved through public enforcement, i.e., fines and, in an increasing number of Member States, criminal sanctions. Even in the case of a stand-alone action, where there has been no public enforcement, we do not believe that, under the principle of restitution, double damages are justified.

Double damages would be an added incentive for claimants to bring private actions. However, there is a danger that the availability of double damages would lead to unmeritorious and vexatious litigation. We do not share the Commission's optimism that national judges would be able to use the rules of their own national legal systems to avoid unmeritorious litigation and abuse of process. Hence, we believe that the disadvantages of double damages would not be outweighed by the benefits brought about the added incentives for claimants to bring private actions.



May 8th 2006
Damages Actions

The practical effect of doubling damages would be to tilt the process in the claimant's favour by inflating the defendant's cost of losing and claimant's value of a victory. Indeed the threat of double damages would put added pressure on the defendant to settle even in cases where there is no clear breach of antitrust rules.[2] Furthermore, there is a risk that double damages could distort judicial decision making on substantive and procedural questions because it would result in judges being more reluctant to impose liability in close cases and more willing to erect narrower standing rules.[3]

A further argument is that the award of double damages may itself distort competition if the damages were awarded to a competitor of the infringing party. The result would be essentially the unjust enrichment of the claimant who would benefit from the illegal gain of the defendant. This goes beyond the principle of restitution and the resultant competitive distortions would outweigh any benefit of such a deterrence. Furthermore, it does nothing to help consumers.

Finally we would indicate that double damages can act as a deterrent to leniency applications in so far as the applicant would not merely face the threat of litigation but also the possibility of having double damages awarded against them. It is possible that provision could be made for a leniency applicant to be liable only for single damages, with no joint and several liability, but given the diverse nature of Member States' law, it is unlikely that the necessary degree of legal certainty could not be achieved.

As the Court has held in *Crehan*, private enforcement actions have an important role to play in the enforcement of competition law. It is clear that a number of obstacles are preventing many valid actions from being taken. However, these obstacles can be tackled without the need for a double damages incentive.

▸ Interest on Damages Awarded

As the Ashurst report revealed, the date of imposition of interest varies among the Member States. Most allow for some flexibility which may result in different options being available.

We do not see a compelling case for seeking to harmonise the rules in this regard and consider it best left to judicial discretion. However, if the Commission wants to advocate a harmonized approach, we would support prejudgment interest from the date of the injury. This is consistent with the principle of awards making the claimant whole rather than providing a bonus to a claimant for bringing a damages action.

| Question F: | Which method should be used for calculating the quantum of damages? |
|---|---|
| Option 18: | What is the added value for damages actions of use of complex economic models for the quantification of damages over simpler methods? Should the court have the power to assess quantum on the basis of an equitable approach? |
| Option 19: | Should the Commission publish guidelines on the quantification of damages? |
| Option 20: | Introduction of split proceedings - between the liability of the infringer and the quantum of damages to be awarded - to simplify litigation. |

---

[2] As is often the case in the U.S., as a result of treble damage actions.
[3] See article by D. Baker, "Revisiting history – what have we learned about private antitrust enforcement that we would recommend to others", Loyola Consumer Law Review, 2004, Vol. 16: 4, at p. 384

8

**AMCHAM EU**
AMERICAN CHAMBER OF COMMERCE
TO THE EUROPEAN UNION

May 8th 2006
Damages Actions

The issue is essentially whether it is better to employ more accurate but also more time consuming and costly methods of calculating loss or to use cruder methods whose cost may act as less of a deterrent.

As the Ashurst report revealed, the calculation of damages in many EU Member States is a complex procedure which itself acts as a deterrent for potential claimants. In all Member States, the level of injury is the basis for the damages claim. Some Member States allow for the profits made by the defendant to act as a yardstick when assessing the level of injury. We believe that this flexibility is a useful way to facilitate private enforcement, however, it must be applied with caution.

In principle we support complex economic models for the quantification of damages, together with the introduction of split proceedings (see below).

We do not believe that the Commission is better placed than national Courts to give guidance on the assessment of quantum, as opposed to assessing breach. Pursuant to the principle of subsidiarity, this matter should be left to national Courts.

We support the introduction of split proceedings, first, to facilitate claims, and second to encourage settlement after the finding of liability which would save time and money, both for the parties and for the Court.

| Question G: | Should there be rules on the admissibility and operation of the passing-on defence? If so, which form should such rules take? Should the indirect purchaser have standing? |
|---|---|
| Option 21: | The passing-on defence is allowed and both direct and indirect purchasers can sue the infringer. This option would entail the risk that the direct purchaser will be unsuccessful in claiming damages as the infringer will be able to use the passing-on defence and that indirect purchasers will not be successful either because they will be unable to show if and to what extent the damages are passed on along the supply chain. Special consideration should be given in this respect to the burden of proof. |
| Option 22: | The passing-on defence is excluded and only direct purchasers can sue the infringer. Under this option direct purchasers will be in a better position as the difficulties associated with the passing-on defence will not burden the proceedings. |
| Option 23: | The passing-on defence is excluded and both direct and indirect purchasers can sue the infringer. While the exclusion of the passing-on defence renders these actions less burdensome for the claimants, this option entails the possibility of the defendant being ordered to pay multiple damages as both the indirect and direct purchasers can claim. |
| Option 24: | A two-step procedure, in which the passing-on defence is excluded, the infringer can be sued by any victim and, in a second step, the overcharge is distributed between all the parties who have suffered a loss. This option is technically difficult but has the advantage of providing fair compensation for all victims. |

The passing-on defence and the standing of indirect purchasers are very controversial issues in any system of private enforcement. AmCham EU welcomes the acknowledgement in the Green Paper that the existence of the passing on defence is related to the prevention of the unjust enrichment of the claimant, as set out in the caselaw of the Community Courts. In turn, the

9



May 8th 2006
Damages Actions

availability of the passing-on defence is linked to the question of standing of indirect purchasers.

This is a very complex area of Community law, where the policy choice of how to provide a remedy for all those who have suffered antitrust injury needs to be balanced with the overall effectiveness of the system. If the passing-on defence is prohibited (as suggested in Options 22 and 23), there is a significant risk of multiple recovery that would run against the principle of unjust enrichment and would effectively amount to punitive damages. If the passing-on defence is allowed, the calculation of the overcharge can be highly costly and complex. If indirect purchasers' claims are allowed, it is difficult to assess damages at the lower level of the distribution chain and it is not proven that the benefits justify the considerable costs and efforts of handling small claims brought by multiple actions by indirect purchasers. Indirect purchasers' actions can create considerable inefficiency and waste resources in cases where claims are launched without assessment of actual loss and/or little damages are actually awarded.

In light of all these difficulties, we support the Commission's main objective to consider all policy options in this area in light of the objective "to ensure an effective enforcement system rather than insisting on the absolute protection of all private rights" (paragraph 180).

Each of the options set out in the Green Paper raises difficult issues that risk undermining the overall effectiveness of the system in this complex area. AmCham EU shares the concerns highlighted by the Commission in the Green Paper. Option 21 raises the difficult question of calculating the apportionment of damages. Options 22 and 23 would lead to over-recovery. Option 24 does not provide a solution for the difficulties of consolidating multiple claims in one proceeding. Therefore, in assessing the pros and cons of each option, we believe that the Commission's policy choice should be based on the following key principles:

- There should be a careful consideration and a balancing exercise undertaken between deterrence and compensation, which assesses whether the benefits of each option outweigh the overall costs and possible inefficiencies of the private enforcement system;
- Damages should account for plaintiff's actual loss, be restitutory in nature and not overcompensate;
- The private enforcement system should not lead to double recovery, which would be magnified if any punitive element (such as double damages) is introduced;
- The private enforcement system should not result in overdeterrence and unpredictable and erratic liability;
- The Commission should clarify who is a direct purchaser and who is indirect;
- If <u>all</u> purchasers are given the right to sue, there should be systems in place that minimise procedural complexities and allows the consolidation of multiple claims. Clear guidance should be given to national courts on the assessment and apportionment of damages, which should be based on lost profits for intermediaries and overcharges for consumers. This approach would eliminate the need to determine how much was passed on, while retaining the benefit of providing the larger entity with the right to sue and thereby encouraging enforcement.

| Question H: | Should special procedures be available for bringing collective actions and protecting consumer interests? If so, how could such procedures be framed? |
|---|---|



May 8th 2006
Damages Actions

| Option 25: | A cause of action for consumer associations without depriving individual consumers of bringing an action. Consideration should be given to issues such as standing (a possible registration or authorisation system), the distribution of damages (whether damages go to the association itself or to its members), and the quantification of damages (damages awarded to the association could be calculated on the basis of the illegal gain of the defendant, whereas damages awarded to the members are calculated on the basis of the individual damage suffered). |
|---|---|
| Option 26: | A special provision for collective action by groups of purchasers other than final consumers. |

AmCham EU notes that there is a tendency in all Member States as well as in EU law to allow class actions in an increasing number of cases. However, the suggestion made in this question does not relate to such class actions but rather to the rights of associations to bring actions in their own right. In addition individual consumers could still bring their own claims.

AmCham EU is not opposed to giving consumers a choice between bringing their damages claims individually or as a group. However, the group should then sue only for the damages incurred by its members, who would moreover not have an additional right to bring individual claims. We do not exclude that consumer organisations put together class actions for some or all of their members, but these should be seen as fundamentally different from the type of actions which are the subject of this particular question.

AmCham EU is therefore opposed to the suggestions made in this question to allow associations to bring claims for damages which they have not incurred themselves.

| Question I: | Should special rules be introduced to reduce the cost risk for the claimant? If so, what kind of rules? |
|---|---|
| Option 27: | Establish a rule that unsuccessful claimants will have to pay costs only if they acted in a manifestly unreasonable manner by bringing the case. Consideration could also be given to giving the court the discretionary power to order at the beginning of a trial that the claimant not be exposed to any cost recovery even if the action were to be unsuccessful. |

Claims for damages are governed by private law which is based on the principle of equality of parties. Any special rules which give rights to one party but deny them to the other infringe upon this important principle. AmCham EU is of the opinion that such special rules should only be introduced if there is an overriding principle involved. In this particular case the objective of the suggested rule does not seem to be to ensure that wrongs are righted – an objective AmCham EU fully supports - but to increase the incentive to bring damages claims, even when these turn out to be unjustified.

The high costs and risks involved in competition actions, as well as the length of proceedings, do not only apply to claimants but also to defendants. Although a system which allows courts to condemn unsuccessful parties to pay part of the costs incurred by the other party can never compensate all of the costs which the successful party had to make, it is at least a disincentive against lightly brought claims, albeit a rather small one.

In this context AmCham EU points out that the indirect costs of damages cases for defendants, particularly in competition cases, are often very significant. Only in very exceptional cases can

11



May 8th 2006
Damages Actions

these costs be claimed from the unsuccessful claimant. Similar costs do not normally exist for the claimant which is another argument against tilting the balance further in the latter's favour.

| Question J: | How can optimum coordination of private and public enforcement be achieved? |
|---|---|
| Option 28: | Exclusion of discoverability of the leniency application, thus protecting the confidentiality of submissions made to the competition authority as part of leniency applications. |
| Option 29: | Conditional rebate on any damages claim against the leniency applicant; the claims against other infringers – who are jointly and severally liable for the entire damage - remain unchanged |
| Option 30: | Removal of joint liability from the leniency applicant, thus limiting the applicant's exposure to damages. One possible solution would be to limit the liability of the leniency applicant to the share of the damages corresponding to the applicant's share in the cartelised market. |

The potential for civil liability is a major factor in cost-benefit calculations that weighs against applying for leniency. A high potential for civil liability may make it a better risk to stay in the cartel than to apply for leniency. (Mitsui, for example, was held liable for $147 million in a private suit for an antitrust violation after its subsidiary made an amnesty application to the United States government). Canada and European countries have argued that exposure to treble damages in the United States weakens their leniency programs.

Documents and admissions obtained through leniency programs may be used by private actors in damage suits, creating a strong disincentive to apply for leniency and thus reducing the number of cartels detected. The European Commission itself, in its intervention in the *Intel* case in the US[4], raised concerns and voiced a clear desire to maintain control over the information-gathering process in relation to its antitrust investigations. In particular, the European Commission clearly expressed the concern that discovery in US Courts of documents filed with DG COMP would possibly result in strategic complaints and a weakening of its successful leniency program.[5]

Furthermore, if likely damages are increasing substantially in Europe, there is a risk that the incentives to apply for leniency may be lower. Therefore, AmCham EU welcomes options 28, 29 and 30 to ensure that leniency programmes continue to remain effective and are not discouraged by the prospect of damage claims. In order to preserve the effectiveness of public enforcement, we strongly encourage the Commission to adopt all options 28, 29 and 30 to make sure that:
   a) the leniency application and any supporting pre-existing documents submitted to the Competition Authority are not discoverable;
   b) the leniency applicant can claim a rebate on any damages claim in a follow-on-action; and
   c) any joint liability is removed for the leniency applicant.

| Question K: | Which substantive law should be applicable to antitrust damages claims? |
|---|---|

---

[4] *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 US, 124 S.Ct. 2466 (2004)
[5] European Commission Amicus Curiae at 14-15, Brief for The Commission of the European Communities as Amicus Curiae in Support of Petitioner at 6-8 (No. 02-572).



May 8th 2006
Damages Actions

| | |
|---|---|
| Option 31: | The applicable law should be determined by the general rule in Article 5 of the proposed Rome II Regulation, that is to say with reference to the place where the damage occurs. |
| Option 32: | There should be a specific rule for damages claims based on an infringement of antitrust law. This rule should clarify that for this type of claims, the general rule of Article 5 shall mean that the laws of the states on whose market the victim is affected by the anti-competitive practice could govern the claim. |
| Option 33: | The specific rule could be that the applicable law is always the law of the forum. |
| Option 34: | In cases in which the territory of more than one state is affected by the anti-competitive behaviour on which the claim is based and where the court has jurisdiction to rule on the entirety of the loss suffered by the claimant, it could be considered whether the claimant should be given the choice to determine the law applicable to the dispute. This choice could be limited to choose one single applicable law from those laws designated by the application of the principle of affected market. The choice could also be widened so as to allow for the choice of one single law, or of the law applicable to each loss separately or of the law of the forum. |

Although none of the options 31 to 34 provides a perfect solution to the problems that arise in relation the issue of the law applicable to antitrust damages cases, we have concluded that, especially in regard to pan-European cartels, option 33 is the most attractive alternative. Given the complex nature of competition cases, the application of local law by the Court adjourned to decide such a case would, at least, avoid the additional complexities related to the court having to be educated in the basic rules of foreign legal systems. Furthermore, option 33 would combine any proceedings and decisions that would very often have to be undertaken in relation to jurisdiction and applicable law, thus saving costs, which can only be seen as an advantage by both claimant and defendant.

AmCham EU recognises that such a solution would enhance the risk of forum shopping. However, it must be noted that the risk of increased forum shopping is inherent in any proceedings resulting from a Europe-wide infringement of this nature and would exist in one form or another under all relevant options.

| | |
|---|---|
| **Question L:** | **Should an expert, whenever needed, be appointed by the court?** |
| Option 35: | Require the parties to agree on an expert to be appointed by the court rather than by themselves. |

While it must be possible for the court to appoint an expert whenever deemed necessary, the parties to the litigation must also be able to introduce their own expert evidence should they wish.

| | |
|---|---|
| **Question M:** | **Should limitation periods be suspended? If so, from when onwards?** |
| Option 36: | Suspension of the limitation period for damages claims from the date proceedings are instituted by the Commission or any of the national competition authorities. Alternatively, the limitation period could start running after a court of last instance has decided on the issue of infringement. |

There are several issues to consider in connection to limitation periods. Firstly, in order to assure legal certainty, it is necessary to ensure that there is a fixed limitation period for



May 8th 2006
Damages Actions

damages claims due to violations of EU competition rules which are the same regardless of where the damage takes place. In relation to violations of the EU competition rules a 10 year period from the moment the damages occurs would be appropriate.

A limitation period relating to the point in time when the claimant acquired knowledge of the damage is also appropriate, e.g. three years. However, knowledge should be presumed when there has been a decision by a competition authority or a court against the potential defendant. In such cases, an even more restricted limitation period, e.g., one year, may be justified.

As regards the suspension of the time period where there is a public investigation, this may make sense in order to avoid unnecessary costs resulting from the initiation of actions that would be avoided if the investigation absolves the defendant of any wrongdoing. It should be noted that, as a result of the Masterfoods case, national courts are obliged to stay national proceedings until the European Commission has decided.

**Question N:   Is clarification of the legal requirement of causation necessary to facilitate damages actions?**

AmCham EU refers to the response to Question D above which discusses the importance of both "fault" and "causation" in decisions on damages. Given the importance of these subjects and the crucial aspects involved here, in particular the important distinction between losses due to the normal competitive process, which should not entitle parties to damages, and loses which are due to violations of the competition rules, we consider that guidance from the Commission , formulated in close cooperation with interested parties. on the legal requirement of causation could be useful, particularly with practical examples of causation as the link between the infringement of competition law and the damage incurred.

AmCham EU stands ready to contribute fully to the formulation of such clarifications.


\*   \*   \*


*The American Chamber of Commerce to the European Union (AmCham EU) is the voice of companies of American parentage committed to Europe towards the institutions and governments of the European Union. It aims to ensure a growth oriented business and investment climate in the EU.AmCham EU facilitates the resolution of EU – US issues that impact business and plays a role in creating better understanding of EU and US positions on business matters. Total US investment in Europe amounts to $964 billion, and currently supports over 3.6 million jobs.*

\*   \*   \*

14