# Exhibit 21a

Westlaw.

2005 WL 3732740                                                                    Page 1
2005 WL 3732740 (M.D.N.C.)

For opinion see 2006-1 Trade Cases P 75176, 2006-1 Trade Cases P 75089, 406 F.Supp.2d 585

**Motions, Pleadings and Filings**

United States District Court, M.D. North Carolina,
Greensboro Division.
In re: COTTON YARN ANTITRUST LITIGATION.
This Document Relates to: All Actions.
MDL-1622.
Case No. 1:04MD1622.
January 7, 2005.

Jury Trial Demanded

Consolidated and Amended Class Action Complaint

Plaintiffs Atlantic Textiles, South Carolina Tees, Inc., Lisa Lesavoy, Armen Co., Inc., Mekfir International Corporation, Dell Cartier Associates, Inc., Perfect Fit Glove, Co., LLC, Ronald Little and Thomaston Mills, Inc., individually and on behalf of all others similarly situated, bring this action for treble damages and injunctive relief under the antitrust laws of the United States against Defendants Parkdale America, LLC, Parkdale Mills, Inc., Frontier Spinning Mills, Inc., Frontier Spinning Mills LLC, Frontier, Inc., Avondale Mills, Inc. and Avondale Incorporated. Plaintiffs demand a trial by jury, and complain and allege upon information and belief, except as to those paragraphs applicable to each named Plaintiff which are based on personal knowledge, as follows:

NATURE OF THE ACTION

1. This is a class action on behalf of all individuals and entities that purchased Cotton Yarn in the United States directly from the Defendants and/or their predecessors or controlled subsidiaries from approximately January 1, 1999 to February 11, 2004 (the ""Class Period''). Plaintiffs allege that during the Class Period, Defendants and their co-conspirators entered into and implemented a contract, combination and conspiracy to fix, raise, maintain or stabilize prices for cotton yarn sold in the United States. Because of Defendants' anti-competitive conduct, Plaintiffs and other class members paid artificially inflated prices for cotton yarn and, as a result, have suffered antitrust injury to their business and property. This action is also instituted to obtain injunctive relief against Defendants, their employees, agents, subsidiaries and affiliates, to prevent and restrain them from further and continued violations of Section 1 of the Sherman Act.

JURISDICTION AND VENUE

2. This Consolidated and Amended Class Action Complaint (""Complaint'') is filed, and these proceedings are instituted, under Sections 4 and 16 of the Clayton Act (15 U.S.C. § § 15 and 26), to obtain injunctive relief and to recover treble damages and the costs of suit, including reasonable attorneys' fees, against

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                          Page 2
2005 WL 3732740 (M.D.N.C.)

Defendants for the injuries sustained by Plaintiffs and the members of the Class which they represent, by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act (15 U.S.C. § 1).

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and § 1337 and by Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. § § 15(a) and 26.

4. Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. § § 15(a) and 22 and 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c), and (d).

5. Defendants maintain offices, have agents, transact business, or are found within this District. Plaintiffs' claims alleged in this Complaint arise in part within this District. The interstate trade and commerce described herein is and has been carried out in part within this District. Defendants have sent products in the stream of commerce that have reached this District.

                                 DEFINITIONS

6. ""Cotton Yarn'' includes, but is not limited to, open-end and air jet cotton and poly-cotton yarn, and means textured yarn utilized in connection with the manufacture of items such as home furnishings, apparel, industrial fabrics, automotive components, upholstery, hosiery and sewing thread. The yarn spinning process produces yarn that consists of staple fibers -- either cotton fibers or a blend of polyester and cotton fibers - that are usually held together by a twist.

7. ""Open-end cotton yarn'' means cotton yarn created by the open-end yarn spinning process. The open-end spinning process is a system of spinning yarns from sliver by introducing twist into the yarn without package rotation by rotating the yarn end at a gap or break in the flow of fibers between the delivery system and yarn package. The element that inserts the twist can be a rotor or other mechanical device, a friction device, or an air jet.

8. ""Air jet cotton yarn'' means cotton yarn created by the air jet spinning, also known as jet spinning, process. That process utilizes air to apply the twisting couple to the yarn during its formation.

9. ""Poly-cotton yarn'' means yarn created through the spinning process and composed of a combination of natural cotton fibers and polyester fibers.

10. ""Person'' means any individual, partnership, corporation, association or other business or legal entity.

                                  PLAINTIFFS

11. Plaintiff Atlantic Textiles (""Atlantic'') was at all relevant times a New Jersey corporation with its principal place of business located in Longport, New Jersey. During the period of time covered by this Complaint, Atlantic purchased Cotton Yarn directly from one or more Defendants. Atlantic paid artificially inflated prices for Cotton Yarn as a result of the conspiracy herein alleged, and was therefore injured in its business and property by reason of the antitrust violations alleged herein.

             ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                              Page 3
2005 WL 3732740 (M.D.N.C.)

   12. Plaintiff South Carolina Tees, Inc. (""SC Tees'') was at all relevant times a
South Carolina corporation with its principal place of business located in
Columbia, South Carolina. During the period of time covered by this Complaint, SC
Tees purchased Cotton Yarn directly from one or more Defendants. SC Tees paid
artificially inflated prices for Cotton Yarn as a result of the conspiracy herein
alleged, and was therefore injured in its business and property by reason of the
antitrust violations alleged herein.

   13. Plaintiff Lisa Lesavoy (""Lesavoy'') is the successor trustee of an inter
vivos Trust under an Agreement dated November 9, 1993 made for the benefit of Craig
Mennen Keefer, among others, and as such is the successor in interest to the assets
of 3-I, Inc., a now dissolved corporation which, prior to dissolution, was the
owner of all the shares of Apparel Sales & Printing, Inc. (""Apparel''), also a now
dissolved corporation, which, during the relevant time had its principal place of
business located in Greensboro, North Carolina. Lesavoy, as successor in interest
to the assets of Apparel and 3-I, Inc., is the real party in interest with respect
to the matters hereinafter described. During the period of time covered by this
Complaint, Apparel purchased Cotton Yarn directly from one or more Defendants.
Apparel paid artificially inflated prices for Cotton Yarn as a result of the
conspiracy herein alleged, and was therefore injured in its business and property
by reason of the antitrust violations alleged herein.

   14. Plaintiff Armen Co, Inc. (""Armen'') is a Florida corporation, having its
principal place of business in Miami, Florida. During the period of time covered by
this Complaint, Armen purchased Cotton Yarn from one or more Defendants. Armen paid
artificially inflated prices for Cotton Yarn as a result of the conspiracy herein
alleged, and was therefore injured in its business and property by reason of the
antitrust violations alleged herein.

   15. Plaintiff Mekfir International Corporation (""Mekfir'') is a Florida
Corporation having its principal place of business in Bay Harbor Islands, Florida.
During the period of time covered by this Complaint, Mekfir purchased Cotton Yarn
from one or more Defendants. Mekfir paid artificially inflated prices for Cotton
Yarn as a result of the conspiracy herein alleged, and was therefore injured in its
business and property by reason of the antitrust violations alleged herein.

   16. Plaintiff Dell Cartier Associates, Inc. (""Cartier'') is a New York
corporation having its principal place of business in New York, New York. During
the period of time covered by this Complaint, Cartier purchased Cotton Yarn from
one or more Defendants. Cartier paid artificially inflated prices for Cotton Yarn
as a result of the conspiracy herein alleged, and was therefore injured in its
business and property by reason of the antitrust violations alleged herein.

   17. Plaintiff Perfect Fit Glove Co., LLC (""Perfect Fit'') is a Delaware limited
liability company with its principal place of business in Cheektowaga, NY. During
the period of time covered by this Complaint, Perfect Fit and its affiliate, Schas
Industries, LLC (""Schas''), purchased Cotton Yarn from one or more Defendants.
Perfect Fit and Schas paid artificially inflated prices for Cotton Yarn as a result
of the conspiracy herein alleged, and were therefore injured in their business and
property by reason of the antitrust violations alleged herein. In December 2003,
through a merger, Perfect Fit acquired all claims of Schas for its purchases of
Cotton Yarn during the period of time covered by this Complaint, and asserts Schas'
claims as well as its own in this action.

                © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                              Page 4
2005 WL 3732740 (M.D.N.C.)

18. Ronald Little (""Little''), formerly doing business as Star Flight Hosiery, Inc., is an individual residing in Alabama. Star Flight Hosiery, Inc. (""Star Flight'') is a dissolved Alabama corporation. During the period of time covered by this Complaint, Star Flight was an active corporation and purchased Cotton Yarn from one or more Defendants. Star Flight paid artificially inflated prices for Cotton Yarn as a result of the conspiracy herein alleged, and was therefore injured in its business and property by reason of the antitrust violations alleged herein.

19. Plaintiff Thomaston Mills, Inc. (""Thomaston'') is incorporated under the laws of Georgia and has its principal headquarters in Thomaston, Georgia. Charles Crumley is the duly appointed Chapter 11 Trustee in Bankruptcy for Thomaston Mills, Inc., which is the debtor in the following case: In Re: Thomaston Mills, Inc., Debtor, Chapter 11 Case No. 0152544, United States Bankruptcy Court for the Middle District of Georgia, Macon Division. During the period of time covered by this Complaint, Thomaston purchased Cotton Yarn from one or more Defendants. Thomaston paid artificially inflated prices for Cotton Yarn as a result of the conspiracy herein alleged, and was therefore injured in its business and property by reason of the antitrust violations alleged herein.

                                   DEFENDANTS

20. Defendant Parkdale America, LLC (""Parkdale America'') is a privately held North Carolina limited liability company with its headquarters in Gastonia, North Carolina. Parkdale America was formed in 1997 as a joint venture between Unifi, Inc. (""Unifi'') and Defendant Parkdale Mills. Unifi holds a 34% interest in Parkdale America. Parkdale Mills holds the remaining interest in Parkdale America. During the Class Period, Parkdale America produced Cotton Yarn and sold it throughout the United States.

21. Defendant Parkdale Mills, Inc. (""Parkdale Mills'') is a privately held North Carolina corporation with its headquarters in Gastonia, North Carolina. Parkdale Mills holds approximately a 2/3 interest in Parkdale America. Parkdale Mills was founded in 1916 and is the world's largest independent producer of cotton and cotton-blend yarns. It maintains at least 31 plants and has over 2500 employees. In 1998, Parkdale Mills' annual sales were estimated at more than $1 billion. During the Class Period, Parkdale Mills produced Cotton Yarn and sold it throughout the United States.

22. Defendant Frontier Spinning Mills, Inc. (""Frontier Spinning'') is a North Carolina corporation with its headquarters in Sanford, North Carolina. Frontier Spinning is the successor of a company founded in 1996. Frontier Spinning was created in June of 2000, when an entity called Frontier Spinning Mills, L.L.C. merged into an entity called Frontier, Inc. Frontier, Inc. then changed its name to Frontier Spinning. In June 2000, Frontier Spinning completed a merger with Mayo Yarns to become, according to news reports, the second largest sales yarn spinner in the United States next to Parkdale Mills. According to news reports, the new company was expected to produce about 6 million pounds of yarn per week. Frontier Spinning currently operates seven manufacturing sites with a combined average production of approximately 10 million pounds of yarn per week. During the Class Period, Frontier Spinning produced Cotton Yarn and sold it throughout the United Sates.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                        Page 5
2005 WL 3732740 (M.D.N.C.)

23. Defendant Frontier Spinning Mills, L.L.C. was a North Carolina limited liability company formed in 1996 that in June of 2000 merged into an entity called Frontier, Inc. Frontier, Inc. subsequently changed its name to Frontier Spinning Mills, Inc. During the Class Period, Frontier Spinning Mills, L.L.C. produced Cotton Yarn and sold it throughout the United States.

24. Defendant Frontier Inc. was a North Carolina corporation formed in May of 2000. In June of 2000, after a merger with Frontier Spinning Mills, L.L.C., Frontier, Inc. changed its name to Frontier Spinning Mills. During the Class Period, Frontier, Inc. produced Cotton Yarn and sold it throughout the United States.

25. Defendant Avondale Mills, Inc. (""Avondale'') is an Alabama corporation with its headquarters in Monroe, Georgia. Avondale maintains a sales office in this district in Matthews, North Carolina. Avondale is the oldest textile manufacturing concern in the United States, with a corporate history dating back to 1845. According to its web site, Avondale has annual sales approaching $1 billion, operates 20 manufacturing facilities, and employs over 6,500 people. Avondale's web site states that it is one of the nation's top two producers of denim and sales yarn, and that it is one of the nation's largest consumers of raw cotton. During the Class Period, Avondale produced Cotton Yarn and sold it throughout the United States.

26. Defendant Avondale Incorporated is a privately held Georgia corporation formed in 1900 with its headquarters in Monroe, Georgia. Avondale Incorporated is a leading domestic manufacturer and marketer of cotton and cotton-blend fabrics and yarns used in the production of casual apparel and, to a lesser extent, home furnishings and industrial products. It is one of the largest U.S. consumers of raw cotton, the principal raw material used in the company's manufacturing processes. For its fiscal year ending August 29, 2003, the company reported net sales of approximately $591 million, and reported revenues from yarn sales of approximately $167.5 million. Avondale Incorporated is the parent company of its wholly owned subsidiary, Avondale. During the Class Period, Avondale Incorporated, through its subsidiaries, including Avondale, produced Cotton Yarn and sold it throughout the United States.

CO-CONSPIRATORS

27. Various individuals, partnerships, corporations and associations not named as Defendants in this Complaint, have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof.

28. The acts alleged herein to have been done by each of the co-conspirators were fully authorized, ordered, or done by duly authorized officers, agents, employees, or representatives of each co-conspirator while actively engaged in the management, direction, or control of its affairs.

INTERSTATE TRADE AND COMMERCE

29. The activities of the Defendants, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

30. During the Class Period, the Defendants sold, shipped and distributed Cotton

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Yarn in a continuous and uninterrupted flow of interstate commerce to customers located in states other than states in which the Defendants were located and produced Cotton Yarn. Defendants and their co-conspirators have used instrumentalities of interstate commerce to manufacture, market, sell and distribute Cotton Yarn in the United States. The conduct of Defendants and their co-conspirators as alleged herein has taken place in and affected the interstate and foreign trade and commerce of the United States, and has substantially and directly affected and restrained such trade and commerce.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

All persons (excluding governmental entities, Defendants, their parents, predecessors, subsidiaries and affiliates, and their coconspirators) who purchased Cotton Yarn in the United States directly from any of the Defendants or any of their predecessors, subsidiaries and/or affiliates at any time during the period January 1, 1999 to February 11, 2004.

32. Plaintiffs do not know the exact size of the Class because such information is in the exclusive control of the Defendants and their co-conspirators. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that Class members number at least in the hundreds and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members in this action is impracticable.

33. Plaintiffs are members of the Class whose claims are typical of the claims of the members of the Class. Plaintiffs and all Class members are direct purchasers of Cotton Yarn who paid artificially inflated prices for Cotton Yarn due to the acts alleged herein.

34. Plaintiffs will fairly and adequately protect the interests of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action and antitrust litigation.

35. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

36. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members. Defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

a. whether Defendants and their co-conspirators engaged in a contract, combination or conspiracy to raise, fix, stabilize, or maintain the prices of Cotton Yarn sold in the United States;

b. whether the alleged contract, combination or conspiracy violated Section 1 of the Sherman Act;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

  c. the commencement, duration and extent of the contract, combination or conspiracy alleged herein;

  d. the identity of participants in the contract, combination or conspiracy alleged herein;

  e. whether the Defendants' conduct caused injury to the business or property of Plaintiffs and the Class;

  f. the effect of Defendants' contract, combination or conspiracy on prices of Cotton Yarn and upon interstate commerce;

  g. the appropriate measure of damages sustained by Plaintiffs and the Class;

  h. whether Defendants and their co-conspirators fraudulently concealed the contract, combination or conspiracy alleged herein; and

  i. whether Plaintiffs and Class members are entitled to injunctive relief.

  37. A class action is superior to other methods for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily ascertainable from the Defendants' records.

  38. Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

                              VIOLATIONS ALLEGED

  39. Cotton Yarn is a commodity product that is fungible.

  40. The Cotton Yarn industry in the United States is concentrated, thus facilitating coordination of Cotton Yarn prices.

  41. Beginning at least as early as January 1, 1999, and continuing until February 11, 2004, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in restraint of interstate trade and commerce to artificially raise, fix, maintain or stabilize prices for Cotton Yarn in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

  42. In formulating and effectuating the alleged contract, combination or conspiracy, Defendants and their co-conspirators engaged in anti-competitive

               © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                           Page 8
2005 WL 3732740 (M.D.N.C.)

activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Cotton Yarn in the United States. These activities included the following:

  a. Defendants participated in meetings, communications and/or conversations to discuss the price of Cotton Yarn in the United States;

  b. Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to increase and/or maintain prices of Cotton Yarn sold in the United States;

  c. Defendants agreed during those meetings and conversations to fix the price of Cotton Yam;

  d. Defendants exchanged sales and customer information for the purpose of monitoring and enforcing adherence to the agreements reached;

  e. Defendants issued price announcements and price quotations in accordance with the agreements reached; and

  f. Defendants sold Cotton Yarn in the United States at noncompetitive prices.

 43. On February 11, 2004, Unifi issued a news release and also appended the news release to a United States Securities and Exchange Commission (""SEC'') Form 8-K that it filed with the SEC on February 11, 2004. In the news release, Unifi stated the following:

  Unifi, Inc. announced today that is has been informed by Parkdale America, LLC (""Parkdale''), a private company in which Unifi holds a 34% interest, that Parkdale participated in activities with competitors in the markets for open-end and air-jet cotton and polycotton yarns used in the manufacture of hosiery and other garments that may have resulted in violations of U.S. antitrust laws ...

  Parkdale informed Unifi that it voluntarily disclosed the activities to the U.S. Department of Justice Antitrust Division (the ""DOJ''), and that the DOJ has launched an investigation of the activities. Parkdale has informed Unifi that it is cooperating fully with the DOJ. If Parkdale violated U.S. antitrust laws, Parkdale could face civil liability, including treble damages.

 44. Parkdale America, LLC, has been granted conditional amnesty from prosecution and fines from the Department of Justice with respect to its activities related to the fixing of prices for Cotton Yam.

 45. According to Justice Department guidelines, such **conditional amnesty** could have been procured only by Parkdale's full confession of wrongdoing. In fact, acceptance into the criminal amnesty program requires admission of guilt, and testimony and other evidence as to the complicity of others in a conspiracy in violation of the antitrust laws. One of the requirements of the amnesty program is that the confession of wrongdoing is truly a corporate act, as opposed to isolated confessions of individual executives or officials.

 46. Avondale, in a filing with the SEC on April 8, 2004, stated that it ""received a grand jury subpoena... The subpoena concerns the production of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

documents and records in connection with an investigation being conducted by the Antitrust Division of the U.S. Department of Justice relating generally to the manufacture, sale, purchase and distribution of open-end spun yam.''

EFFECTS

47. As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their business and property in that they have paid more for Cotton Yarn than they would have paid in a competitive market.

48. The unlawful contract, conspiracy and/or combination has had the following effects, among others:

  a. price competition in the markets for Cotton Yarn has been artificially restrained;

  b. prices for Cotton Yarn sold by the Defendants have been raised, fixed, maintained, or stabilized at artificially high and noncompetitive levels;

  c. purchasers of Cotton Yarn from the Defendants have been deprived of the benefit of free and open competition in the markets for Cotton Yam.

49. As a direct and proximate result of the illegal contract, combination or conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their respective businesses and property, in that they paid more for Cotton Yarn than they would have paid in the absence of the illegal contract, combination or conspiracy. Plaintiffs and members of the Class thus have suffered damages in an amount presently undetermined.

CLAIM FOR RELIEF UNDER 15 U.S.C. § 15(a)

50. Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

51. From a date unknown, but at least beginning some time in and around January 1, 1999 and continuing through February 11, 2004, the Defendants and their co-conspirators have contracted, combined and/or conspired to restrain interstate trade in violation of 15 U.S.C. § 1.

52. In furtherance of the unlawful conspiracy, the Defendants, upon information and belief, have committed overt acts including, inter alia:

  a. Discussing prices to be charged for Cotton Yam;

  b. Agreeing to increase or maintain pricing at specified levels; and,

  c. Meeting in order to keep the existence of the Cotton Yarn price-fixing conspiracy and its activities unknown so as to foster the illegal anti-competitive conduct described herein.

53. As a direct and proximate result of the Cotton Yarn price-fixing conspiracy described herein, the Defendants and their co-conspirators have restrained competition in the sale of Cotton Yarn and injured Plaintiffs and each Class member

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in their businesses and property in that Plaintiffs and each Class member have each paid a higher price for Cotton Yarn than they would have paid absent the concerted unlawful activity.

54. The conduct of the Defendants and their co-conspirators constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

55. In the alternative, the conduct of the Defendants and their co-conspirators constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

INJURY TO PLAINTIFFS AND CLASS MEMBERS

56. During the period covered by this Complaint, Plaintiffs and members of the Class purchased substantial quantities of Cotton Yarn directly from Defendants.

57. As a direct result of the contract, combination or conspiracy of Defendants and their co-conspirators, Plaintiffs and members of the Class paid substantially more for Cotton Yarn than they would have paid in the absence of Defendants' illegal contract, combination or conspiracy.

58. By reason of the alleged violations of the antitrust laws, Plaintiffs and members of the Class have been injured in their business and property and have suffered damages in an amount presently undetermined.

59. The contract, combination or conspiracy complained of herein will continue (and to the extent temporarily and only partially abandoned, will resume) absent an injunction. Plaintiffs and members of the Class are likely to buy Cotton Yarn in the future and will be repeatedly injured unless the continuation of this contract, combination or conspiracy is enjoined.

FRAUDULENT CONCEALMENT

60. Throughout the Class Period, Defendants and their co-conspirators fraudulently concealed their unlawful conspiracy from Plaintiffs and Class members. Because Defendants and their co-conspirators kept their contract, combination or conspiracy secret, Plaintiffs were unaware of the anti-competitive agreement alleged in this Complaint. Plaintiffs and other Class members had no knowledge of the combination and conspiracy alleged in this Complaint, or any facts that might have led to the discovery thereof, in the exercise of reasonable diligence, until after February 11, 2004, when Unifi, Inc. issued a press release in which it acknowledged that Parkdale America had admitted engaging in anticompetitive activities with its competitors in connection with the sale of Cotton Yam.

61. In the exercise of reasonable diligence, Plaintiffs could not have uncovered the violations set forth in this Complaint at any earlier time because of Defendants' successful efforts to conceal the unlawful activity from detection. Moreover, while Plaintiffs have diligently sought to protect themselves from unlawful activity, Plaintiffs were unable to detect Defendants' secret activity, which by its nature is self-concealing, until it was disclosed publicly.

62. Defendants and their co-conspirators actively, intentionally and fraudulently concealed the existence of the conspiracy from Plaintiffs by one or more

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affirmative acts, including secret meetings and surreptitious communications, and including acts in furtherance of their conspiracy.

63. As a result of the fraudulent concealment of their conspiracy by Defendants and their co-conspirators, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the other members of the Class.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. That the Court determine that this action contained herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

2. That the unlawful contract, combination or conspiracy alleged herein be adjudged and decreed to be a per se restraint of trade or commerce in violation of Section 1 of the Sherman Act;

3. That Plaintiffs and the Class recover damages, as provided by law, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws;

4. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (a) continuing, maintaining, or renewing the contract, combination or conspiracy alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (b) communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of Cotton Yarn, information concerning prices or other terms or conditions of sale of any such products except to the extent necessary in connection with bona fide sale transactions between the parties to such communication;

5. That Plaintiffs and members of the Class be awarded pre- and postjudgment interest and that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

6. That Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law;

7. That Plaintiffs and members of the Class have such other, further, and additional relief as the case may require and the Court may deem just and proper under the circumstances.

JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury for all issues so triable.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3732740                                                          Page 12
2005 WL 3732740 (M.D.N.C.)

**Motions, Pleadings and Filings** (Back to top)

• 2005 WL 3732739  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Class Certification (Dec. 9, 2005)Original Image of this Document (PDF)

• 2005 WL 3732735  (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Reconsideration (Nov. 25, 2005)Original Image of this Document (PDF)

• 2005 WL 3732734  (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion to Strike Plaintiffs' Letter Brief or, in the Alternative, Motion to File a Response (Sep. 30, 2005)Original Image of this Document (PDF)

• 2005 WL 3732738  (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss the Complaint as to Certain Plaintiffs and Compel Arbitration, and to Stay the Case as to the Remaining Plaintiffs (Jun. 21, 2005)Original Image of this Document (PDF)

• 2005 WL 3732737  (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint As to Certain Plaintiffs and Compel Arbitration, and to Stay the Case As to the Remaining Plaintiffs (May 31, 2005)Original Image of this Document (PDF)

• 2005 WL 3732736  (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Dismiss the Complaint As to Certain Plaintiffs and Compel Arbitration, and to Stay the Case As to the Remaining Plaintiffs (Feb. 14, 2005)Original Image of this Document (PDF)

• 1:04md01622  (Docket) (Sep. 2, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.