# Exhibit 22

# The Metropolitan Corporate Counsel®

www.metrocorpcounsel.com

Volume 12, No. 10         © 2004 The Metropolitan Corporate Counsel, Inc.         October 2004

# Changes In Competition Enforcement On The Global Stage

*The Editor interviews **John M. Majoras**, an antitrust litigation partner in the Washington, DC office of Jones Day.*

**Editor: International prosecutions of price-fixing cartels seems to be the dominant theme of antitrust litigation lately. What explains this emphasis?**

**Majoras:** There are three primary reasons. First, price-fixing regulations are spreading rapidly throughout the world, especially in regions of advanced economic activity. As recently as seven or eight years ago, concern over cartel enforcement was limited to a handful of jurisdictions, with the U.S. being the greatest concern because of criminal sanctions and treble damage actions on the civil front. But we have recently seen jurisdictions throughout the world adopting stronger competition laws and actively enforcing them. Additionally, there is far greater cooperation among worldwide enforcement authorities, including a willingness to extradite individuals facing criminal charges to the United States.

Second, prosecutorial tools have become much more powerful. For example, the U.S. is no longer the only jurisdiction imposing criminal sanctions. Also, new competition laws are often accompanied by amnesty programs similar to the one administered by the U.S. Department of Justice. And jurisdictions such as the EU, which have already had amnesty programs in place, are now administering them in a more transparent way, where participation has obvious and clear benefits. The combination of renewed enforcement and the amnesty programs have created powerful incentives for companies and individuals to not only cease or abstain from cartel behavior but also to disclose past practices to avoid huge fines and criminal sanctions.

Finally, civil enforcement in the U.S. with its treble damages remedies has become far more aggressive. Whereas in the past, resolution through class action settlements was the typical end of most price-fixing litigation, there is now far more opt-out litigation as well as state indirect purchaser litigation that has largely vitiated *Illinois Brick*. We are also starting to see U.S.-style class action litigation taking place in large jurisdictions such as Canada, Australia and parts of Europe. This, combined with imaginative ways of trying to address foreign conduct in U.S. courts, has greatly expanded the risk of civil price-fixing litigation outside the U.S.

**Editor: Jones Day has been prominently involved in most of the significant cartel cases that have come to light over the last decade. How do you work with enforcement targets in addressing this changing landscape?**

**Majoras:** The critical element is recognizing that the landscape has changed and is continuing to evolve. Jones Day has a long history of advising clients faced with cartel investigations as well as civil price-fixing litigation. The real sea change occurred with the vitamins cartel. We advised Rhone-Poulenc S.A. as it addressed conduct relating to sales of vitamins throughout the world. While the company was able to obtain complete or partial amnesty in multiple jurisdictions, the rest of the industry was hit with criminal and civil fines that totaled well over a billion dollars. That result was a real wake-up call to many of the changes in competition enforcement that I've discussed.

That experience and our later representations in industries that have been under scrutiny have made us keenly aware of the need to address competition issues with a global view. Knowing the various enforcement regimes, as well as the enforcers themselves, and how they are evolving have enabled us to provide clients with the road maps to effective resolution of cartel issues.

Likewise, our experience in civil litigation gives clients the necessary background to understand the full ramifications of cartel conduct. Focusing on government enforcement without recognizing the impact of civil actions can create significant problems. Jones Day's geographic reach and our experience in dealing with expansive civil litigation in the U.S, and throughout the world provides a critical component in understanding the possible effects of cartel behavior.

**Editor: With all of this in mind, is there a critical factor that businesses must bear in mind if they are facing cartel charges?**

**Majoras:** Clearly the new worldwide enforcement landscape places great emphasis on reaching a timely decision on how to address investigations. Because the various amnesty programs create a "race" to obtain the greatest benefit, businesses must be prepared to move quickly to investigate allegations and make a fully reasoned judgement about how to proceed. That judgement must include assessments of prosecution risks in multiple jurisdictions, benefits of participating in amnesty programs, the potential impact of civil litigation, and the effects that the decision will have on the business's ongoing operations.

Jones Day's substantive knowledge of worldwide cartel enforcement and our experience in guiding companies through these complex and changing issues are very powerful tools available to our clients.

*Please email the interviewee at jmmajoras@jonesday.com with questions about this interview.*