# Exhibit 25

| **For the quarterly period ended March 31, 2005** |

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-Q

*(Mark One)*

☒  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended March 31, 2005

OR

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Commission file number 000-23195

# TIER TECHNOLOGIES, INC.
**(Exact name of Registrant as specified in its charter)**

| California | 94-3145844 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**10780 Parkridge Boulevard, Suite 400**
**Reston, Virginia 20191**
**(Address of principal executive offices)**

**Not applicable**
**(Former name, former address, and former fiscal year, if changed since last report)**

**(571) 382-1090**
**(Registrant's telephone number, including area code)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Exchange Act).   Yes ☒   No ☐

At May 4, 2005, there were 20,356,461 shares of the Registrant's Class B Common Stock outstanding.

**Table of Contents**

*Tier Technologies, Inc.*

Currently, we are performing the system and process evaluation and testing of our controls, which is required to comply with the Section 404 management assessment and auditor certification requirements, which initially will apply to us as of September 30, 2005. In the course of our ongoing Section 404 evaluation, we may identify significant deficiencies or material weaknesses in internal controls that we must remediate. If we are unable to remediate any identified weaknesses on a timely basis, our independent auditors may issue an adverse opinion on our internal controls. If this were to occur, investor confidence could be harmed and our stock price could decline.

**Compliance with new or changed laws and regulations may result in additional expenses and may impair our ability to provide services.**

Changing laws, regulations and standards relating to corporate governance and public disclosure, including the Sarbanes-Oxley Act of 2002, new SEC regulations and NASDAQ Stock Market rules, are creating uncertainty for companies. To maintain high standards of corporate governance and public disclosure, we intend to invest all reasonably necessary resources to comply with evolving standards. This investment may result in increased general and administrative expenses for outside services and a diversion of management time and attention from revenue-generating activities.

In addition, we are subject to numerous federal, state and local laws, regulations and rules in connection with our services. New laws, regulation or industry may be enacted, or existing ones changed, which could negatively impact services and revenues. Taxes or fees may be imposed, or we could be subject to addition requirements in regard to privacy, security, qualification and government compliance. For our processing services, we are also subject to the rules of the National Automated Clearing House Association and the applicable credit/debit card association rules. A change in these laws, regulations or rules could restrict or eliminate our ability to provide services, as well as increase costs, impair growth and make our services unprofitable.

**An investigation involving the child support payment processing industry could force us to incur unusual expenses and may negatively affect our business reputation.**

In June 2003, we received a subpoena from a grand jury in the Southern District of New York to produce certain documents pursuant to an investigation by the Antitrust Division of the Department of Justice (*"DOJ"*) involving the child support payment processing industry. We have fully cooperated, and intend to continue to cooperate fully, with the subpoena and with the DOJ's investigation. On November 20, 2003, the DOJ granted us conditional amnesty pursuant to the Antitrust Division's Corporate Leniency Policy. Consequently, the DOJ will not bring any criminal charges against us and our officers, directors and employees, as long as we continue to comply with the Corporate Leniency Policy, which requires, among other things, our full cooperation in the investigation and restitution payments if it is determined that parties were injured as a result of impermissible anticompetitive conduct. We anticipate that we will incur additional expenses as we continue to cooperate with the investigation. Such expenses, any restitution payments that we are required to make and any negative publicity in connection with the investigation could compromise our financial results and damage our reputation. Additionally, we cannot estimate what impact, if any, that our involvement in this investigation will have on our ability to compete and win new child support payment processing opportunities.

**Within our EPP segment, OPC's business model is continuing to evolve; it is difficult to evaluate OPC's business and its ability to maintain profitability.**

At the end of July 2002, we acquired OPC, which had a history of losses. Although OPC has cumulatively increased revenues since the acquisition has reduced certain operating expenses as we integrated this acquisition and is currently profitable, there can be no assurance that OPC will maintain profitability in the future.

The use of credit and debit cards and electronic checks to make payments to government agencies is still relatively new and evolving. To date, OPC's business has primarily provided credit and debit card payment options for the payment of federal and state personal income taxes, real estate and personal property taxes, business taxes and fines for traffic violations and parking citations. Payment by electronic check is an additional payment option that OPC has implemented for electronic transactions. OPC's business model is based on consumers' willingness to pay a convenience fee, in addition to their required government or other payment, for the use of OPC's credit or debit card and electronic check payment option. Our success with respect to OPC will depend on maintaining OPC's relationship with the IRS and on maintaining existing, and developing additional relationships with state and