# Exhibit 27

As filed with the Securities and Exchange Commission on April 4, 2006

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 20-F

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE FISCAL YEAR ENDED DECEMBER 31, 2005**

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Commission File Number: 1-14932

# UPM-Kymmene Corporation
**(Exact name of Registrant as specified in its charter)**

**The Republic of Finland**
**(Jurisdiction of incorporation or organization)**

**Eteläesplanadi 2**
**FIN-00130 Helsinki**
**Finland**
**(Address of principal executive offices)**

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class: | Name of each exchange on which registered: |
|---|---|
| Ordinary shares, with no nominal value, represented by American Depositary Shares | New York Stock Exchange, Inc. |

Securities registered or to be registered pursuant to Section 12(g) of the Act: **None**

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act: **None**

Number of ordinary shares outstanding on December 31, 2005: **523,255,130**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.    Yes ☒    No ☐

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.    Yes ☐    No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check One):

Large accelerated filer ☒    Accelerated filer ☐    Non-accelerated filer ☐

Indicate by check mark which financial statement item the registrant has elected to follow.    Item 17 ☐    Item 18 ☒

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    Yes ☐    No ☒

fillers and recovered paper from third-party suppliers. In the event of a significant interruption or limitation in the supply of these production inputs from our current suppliers, we would seek to obtain them from other sources. However, there can be no assurance that we would be able to do so without an adverse impact on our manufacturing operations, such as an interruption or downscaling of production or change in the product mix, or increased costs. This could, in turn, have a material adverse effect on our business, financial condition and results of operations.

*Our operations in emerging market countries where we operate could be adversely affected by unexpected political, economic or legal developments.*

We have manufacturing operations in certain emerging market countries, including, among other countries, China and Russia. The political, economic and legal systems in these countries may be less predictable than in countries with more established and sustained institutional structures. Political or economic upheaval and changes in laws may have a material adverse effect on our operations in these countries and, in turn, the amount of income from, and the value of, the investments we have made in relation to our operations in such countries. Our investments in these countries also may be subject to other risks and uncertainties such as unfavorable taxation treatment, exchange controls, inflation, currency fluctuations and nationalization.

*Our ability to implement our strategies depends on our ability to recruit and retain skilled employees.*

To meet the challenges of sustaining growth and retaining the effectiveness of our operations, we must continue to recruit and retain skilled employees. We are continuously evaluating our recruiting, compensation and career development policies and taking measures to attract and retain skilled personnel. However, we cannot give assurance that we will not encounter shortages of sufficient numbers of appropriately skilled personnel in the future.

*We are not certain that our existing product and geographical spread will enable us to achieve positive results in the future.*

We seek to generate profits through managing a balanced product portfolio and maintaining a diversified geographical presence. Although we believe that our product portfolio and geographic spread is appropriately balanced, demand for our main products in our major markets may change and we cannot give assurance that our current product portfolio and geographical diversification will be best-suited for successful business in the future.

*UPM-Kymmene Corporation and certain of its subsidiaries are the subjects of investigation by antitrust authorities in various parts of the world, and named as defendants in civil litigation in the United States concerning allegedly anti-competitive conduct.*

In 2003, UPM directed its outside counsel to conduct an internal investigation of UPM's and its subsidiaries' compliance with competition laws in the United States and other jurisdictions where the companies conduct business. Following this internal investigation, UPM decided to approach competition law authorities in the EU, the United States and Canada, and subsequently in other countries, to disclose any conduct that did not comport with applicable competition laws, and to strengthen its competition law compliance programs. UPM has created a European Union Competition Law Compliance Manual and has initiated a comprehensive competition law training program for all its employees. More than 2,000 executives and employees of the Company have participated in the competition law compliance training. Internal audits have been expanded to include competition law issues and a variety of other internal controls have been implemented.

The competition authorities are continuing investigations into alleged antitrust activities with respect to various products of UPM. Authorities of the EU, and authorities in several of its member states, Canada and certain other countries, have informed UPM that it has received conditional full immunity with respect to certain conduct disclosed to the authorities.

The Antitrust Division of the U.S. Department of Justice has informed UPM that it will not bring criminal charges against the company in connection with its criminal investigation of antitrust and related offenses in the U.S. labelstock industry. In addition, the Antitrust Division of the U.S. Department of Justice has granted UPM conditional full immunity and accordingly it will not pursue any criminal prosecution against UPM in connection with possible price fixing in the magazine paper industry. Both agreements are subject to UPM's full and continuing cooperation with the U.S. Department of Justice's investigations, and extend to the company's current and former employees, except for UPM's former President and CEO, Mr. Juha Niemelä. UPM continues to cooperate fully with the various authorities and their ongoing investigations, and may yet be subject to additional investigations in other parts of the world.