# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# REPLY TO PLAINTIFF'S OPPOSITION
# TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns nine document requests plaintiff made to defendant. Plaintiff seeks no further relief on three additional requests.[1] In this reply, defendant addresses the four specific FOIA requests that are the subject of plaintiff's Opposition (ATFY05-080, ATFY06-002, ATFY06-003 and ATFY06-040), as well as its arguments regarding segregability, sufficiency of defendant's justifications for

---

[1] ATFY05-071, pertaining to a meeting with John Nannes, and ATFY05-088 and ATFY06-026, both of which concern communications with foreign agencies that are International Competition Network members. *See* Plaintiff's Motion for Summary Judgment (Aug. 18, 2006) (Dk# 23-1) at 1; Exhibit 5 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("plaintiff's Opposition" or "Opp.") (Dk# 36) at 13, 32. Unless otherwise indicated, the docket numbers herein refer to the docket for Civil Action No. 05-2217 (RJL).

exemptions, and sufficiency of defendant's statement of facts.

**ARGUMENT**

When plaintiff made the FOIA requests at issue, it was the subject of a grand jury investigation and is now an indicted defendant. The Antitrust Division's parcel tanker grand jury investigation continues as to other subjects. Plaintiff has wrongly sought to use the FOIA as a discovery device in its grand jury investigation and now in its criminal case.[2]

Plaintiff wrongly insists that defendant has engaged in a "publicity campaign" against it, "coordinat[ed]" with private authors writing about plaintiff's leniency litigation, and "generated publicity." Opp. 1. The Division did not solicit any articles, interviews, or amici filings regarding plaintiff's leniency litigation. It responded to inquiries from the public after the leniency litigation was unsealed to provide requested guidance to the antitrust bar in the continued use of the Division's leniency program. *See* 28 C.F.R. § 50.2(a)(2) ("[T]here are valid reasons for making available to the public information about the administration of the law"). Also, in response to requests from two private authors, the Division reviewed articles the authors prepared for factual errors and referred the authors to the public record to correct such errors. *See* Answer to Compl., civ. action no. 1:06-cv-00474 (RJL), at 11, ¶¶ 27, 30 and Ex. 2 to Answer (Dk# 13).

Plaintiff's overly broad FOIA requests go far beyond public statements the Division made to offer guidance to the antitrust bar and call for confidential investigative materials from the parcel tanker grand jury investigation and agreements with confidential sources in numerous other grand jury investigations. Disclosure of such materials would give unprecedented access to investigative files, not provided for by the FOIA, to an indicted defendant in an ongoing grand jury investigation.

---

[2] Pl.'s Resp. to Def.'s Mot. to Consolidate at 2 (Civ. Action No. 05cv2217 (RJL)) (filed May 25, 2006) (Dk# 15-1) ("The information that Stolt-Nielsen has requested through its FOIA requests is necessary in order for the Company to present an effective motion to dismiss [an indictment].").

Defendant responds below to each of plaintiff's arguments.

## I.     Leniency Agreements (FOIA Request ATFY06-002)

Plaintiff has requested for use in its criminal case a copy of every leniency agreement entered by the Division since the 1993 creation of its modern Corporate Leniency Program, a request involving roughly 100 grand jury investigations and 100 leniency letters.  Disclosure of these agreements falls within various FOIA exemptions, and plaintiff's rights are not enlarged by its desire to use the agreements in its criminal case.  *See NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 144 (1975) (citations omitted) (The FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants"); *see also  NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (FOIA "'not intended . . . as a private discovery tool'" because plaintiffs can access information through "normal pre-trial discovery channels"); *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992); *Nishnic et al. v. U.S. Dep't of Justice*, 671 F. Supp. 776, 813 (D.D.C. 1987) ("FOIA is emphatically *not* designed . . . as a general discovery device for purposes of civil or criminal litigation").

## A.  Leniency Confidentiality Extends Beyond Applicant Identity

### 1.  Public Disclosure of Applicants' Identity Does Not Justify Disclosure of Agreements

Plaintiff alleges there is no need to maintain confidentiality of leniency agreements if the applicant has publicly announced its participation in the Division's leniency program.  Plaintiff claims the Division's "practice" is to give speeches about leniency applicants that have publicized their entry into the program, but cites only three applicants identified in Division speeches out of the roughly 100 at issue.  Opp. 1, 8-9.  Plaintiff falsely asserts "the Deputy Assistant Attorney General of the Division recently g[ave] a speech that detailed how a second firm in the ongoing parcel tanker grand jury investigation approached the Antitrust Division seeking amnesty," with no citation for the

alleged speech.  *Id.* at 1.  No such speech was given.

To quantify benefits received under the leniency program for future applicants, the Division has confirmed the identity of an extremely limited number of leniency applicants that had previously announced their leniency status.  As noted in the Hammond declaration, the Division "will not publicly disclose the identity of an amnesty applicant, *absent prior disclosure by the applicant,* unless required to do so by court order in connection with litigation."  Hammond decl. at 7, ¶ 9 (emphasis added).  The Division has only confirmed an applicant's status where the applicant previously announced its status and will not do so based on mere media reports.[3]  The Division has not, on the occasions when it has confirmed an applicant's status, published the specific applicant's leniency agreement.

The Division's standard practice is to treat not only the applicant's identity as confidential, but also to keep confidential the leniency negotiations and information provided by the applicant, even after the investigation at issue is closed.  Hammond decl. at 7-8, ¶ 9.  The Hammond declaration also explains if leniency letters were publicly disclosable pursuant to the FOIA, such disclosure would have a serious negative effect on the prosecution of criminal cartels because confidentiality is a key ingredient of the leniency program.  Hammond decl. at 9-10, ¶ 11; *see* also Section I.B.4 at 10-11 *infra* (discussing courts' reluctance to find confidentiality waiver).

## 2.  Remaining Leniency Agreements Cannot Be Redacted

Plaintiff requests production of the remaining leniency agreements with redaction of the leniency applicant's name and other identifying information, such as the industry.  However, information is not reasonably segregable when the only nonexempt information amounts to "little

---

[3] *Cf.* Lau decl. Ex. 3 (Reuters News report, company spokesperson declined comment);  Lau decl. Ex. 20 (American Chamber of Commerce Comments to EC, refers to unnamed subsidiary and industry not identified); Lau decl. Ex. 23 (news article, company attorney would not confirm or deny amnesty, and company president and co-owner would not return calls); *see also* Lau decl. Ex. 4 (company SEC filing, but specific product not revealed); Lau decl. Ex. 24 (no mention of leniency).

more than templates," such as text from the model leniency letter would be here. *Warren v. Soc. Sec. Admin.*, No. 98-0116E, 2000 WL 1209383, at *5 (W.D.N.Y. Aug. 22, 2000), *aff'd in pertinent part*, 10 F. App'x. 20 (2d Cir. 2001). The Division expressly considered the segregability of each agreement and concluded that no additional information could be released to plaintiff. Richards decl. at 12-13, 14-15, ¶¶ 22, 26-27; *see also infra* Section IV.

## B.  Division Justified Exemptions for Leniency Agreements

Plaintiff asserts that defendant's exemption justifications for the leniency agreements in the Amended 2006 *Vaughn* index and Hammond and Richards declarations are conclusory, repetitive, and do not address specific individual agreements. Due to the similar, discrete nature of the agreements, the Amended 2006 *Vaughn* index divides withheld leniency agreements into three categories based on exemptions asserted. *See* Amended 2006 *Vaughn* index at 155-160 (Dk#29, Civil Action No. 06-0474 (RJL)). "The degree of specificity of itemization, justification, and correlation required in a particular case . . . depend[s] upon the nature of the document at issue and the particular exemption asserted." *Info. Acquisition Corp. v. Dep't of Justice*, 444 F. Supp. 458, 462 (D.D.C. 1978); *see, e.g.  Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 n.4 (D.C. Cir. 1992) (precise matching of exemptions with specific items "may well be unnecessary" when generic claims have merit). Courts have permitted withholdings of discrete categories of documents which contain similar information. *See United States v. Landano*, 508 U.S. 172,179 (1993); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989); *Crooker v. ATF*, 789 F.2d 64, 66-67 (D.C. Cir. 1986). When a "FOIA exemption consists of a generic [exemption], dependent upon the category of records rather than the subject matter which each individual record contains," generic descriptions can satisfy an agency's *Vaughn* obligation. *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986); *see also Reporters Comm.*, 489 U.S. at 779-80.

*Crooker* distinguishes between blanket exemptions for *all records* in an investigatory file and permissible exemptions by document category.  789 F.2d at 66-67.  Courts may make "generic determinations that 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records . . . would generally 'interfere with enforcement proceedings.''"  *Id.* at 67 (citing *Robbins Tire & Rubber*, 437 U.S. at 236).  The Hammond declaration establishes how disclosure of leniency agreements would generally interfere with anti-cartel enforcement proceedings.  Hammond decl. at 4-10, ¶¶ 6-11.

### 1.  Exemption (b)(2):  Internal Personnel Rules and Practices

Plaintiff asserts that leniency agreements are not predominantly internal documents, and disclosure of them would not "significantly risk[] circumvention of agency regulations or statutes [by] aid[ing] some individuals in evading the law."  Opp. 13-14.  The Division asserts that the leniency agreements meet the test of "predominant internality" and that disclosure of the leniency agreements would significantly risk circumvention of the antitrust laws.  "The objective of the FOIA is to maximize dissemination of agency information without impeding 'efficient Government operations.'" *Thurner Heat Treating Corp. v. NLRB*, 839 F.2d 1256, 1257 (7th Cir. 1988); *see also  Richards v. United States,* 369 U.S. 1, 11 (1962*) (*goal is "to permit the effective operation of the government"); *National Treasury Employees Union v. U.S. Customs*, 802 F.2d 525, 528-29 (D.C. Cir. 1986)(plans used by Customs Service to evaluate qualifications of job applicants exempt from disclosure under Exemption 2 where "disclosure of the plans would undercut the personnel evaluation process they are designed to assist").  In *NTEU*, the Court noted that:

> [i]n a . . .  similar case, involving disclosure of a government agency's auditing procedures, the Court asked: "Why should an employee who seeks to embezzle money from a bank be given access to the examiner's special instructions for auditing his type of bank so that he can discover how to disguise his defalcations? ....To turn such manuals over to those who are the subject of regulatory supervision is to dig a den for the fox inside the chicken coop....it would be absurd to attribute to Congress

an intent to require such documents to be disclosed to those whose compliance with the law is being investigated.

*NTEU* at 531 n.19;  *see also O'Connor v. I.R.S.*, 698 F.Supp. 204, 206-207 (D. Nev. 1988).

In *Kaganove v. EPA*, 856 F.2d 884, 889-890 (7th Cir. 1988), the court found, consistently with *NTEU*, that Exemption 2 was applicable even if disclosure would not risk circumvention of the law. The *Kaganove* court held that a promotion rating plan, used by the EPA when interviewing job applicants, was exempt from disclosure because the documents were "effective only when kept confidential" and that "disclosure of the Rating Plan would frustrate the document's objective." *Kaganove,* 856 F.2d at 889.   The Court found the rating plan to be the sort of document that one would expect to be internal.  *Id*.  "Release of the Rating Plan would render it ineffectual because some job candidates, once informed in detail of the experiences that the EPA considered most valuable for a particular job, might amend the description of their prior employment."  *Id*.; *see also NTEU*, 802 F.2d at 530 (disclosure would render documents "obsolete for the purpose for which they were designed.")

Here the leniency agreements sought by Plaintiff were compiled for law enforcement purposes and were used by the Division as internal documents.  Although the agreements require input from and are signed by leniency applicants, the agreements are predominantly internal Division documents. The Division maintains the documents as confidential internal documents.  The Division does not disseminate an applicant's leniency agreement outside the Division except when necessary in trial proceedings involving the specific cartel at issue in the applicant's letter.

Disclosure of leniency letters could assist some individuals in evading the law.  Cartel members in ongoing investigations could escape prosecution because disclosure of leniency letters could reasonably be expected to chill cooperation from existing leniency applicants and discourage prospective leniency applicants from coming forward in investigations where leniency is still

available.

If the Division is directed to release redacted versions of the agreements, the chilling effect would still occur due to the blurring of the bright line of non-disclosure. The Division would no longer be able to provide express assurances of confidentiality to would-be informants, thus discouraging them from coming forward to provide information.

### 2. Exemption 7(A): Interference with Law Enforcement Proceedings

Plaintiff claims redacted agreements would not interfere with enforcement proceedings, asserting remaining language would either track the Division's model leniency agreement or contain deviations from the model that "would be of great interest to the antitrust bar as a whole." Opp. 17. Plaintiff cites no source for the bar's purported interest in specific past leniency agreements. As noted earlier, information is not reasonably segregable when the only nonexempt information amounts to "little more than templates," as text from the model leniency letter would be here. *Warren,* 2000 WL 1209383, at *5. Any possible deviations from the model letter would be redacted as information identifying or provided by a confidential source, withholdable under Exemption 7(D); information constituting an unwarranted invasion of personal privacy, withholdable under Exemption 7(C); information that could interfere with enforcement proceedings under Exemption 7(A); information that could reveal matters occurring before the grand jury, withholdable under Exemption (b)(3) and Fed. R. Crim. P. 6(e); or information withholdable under Exemption (b)(2) that would impede law enforcement activities or reveal trivial agency matters. *See* Amended 2006 *Vaughn* index at 155-160.

Plaintiff asserts that even if confidential information is not redacted, the Division has not shown how disclosure of each specific leniency agreement would interfere with a concrete, prospective law enforcement proceeding and that disclosure of agreements from closed investigations

could not interfere with concrete, ongoing or prospective proceedings. As noted above, justification of exemptions by category of documents, such as leniency agreements, is permissible. The Hammond declaration establishes how disclosure of leniency agreements could reasonably be expected to interfere with ongoing and prospective anti-cartel enforcement proceedings by creating a chilling effect on leniency applications. Mr. Hammond noted that the Division has over 60 ongoing grand jury investigations of international cartels alone. Hammond decl. at 3-10, ¶¶ 6-11; *see also* Richards decl. at 28-31, ¶ 37-38. Identifying the specific cartel investigation to which each leniency agreement relates would disclose exempted information. It is reasonable to expect that cooperation from current leniency applicants in ongoing cartel investigations could be chilled by disclosure of their leniency letters, that leniency applicants could be subject to witness intimidation and retaliation, and that subjects of these investigations could destroy evidence. Moreover, ongoing investigations in which leniency is still available to a prospective applicant could be expected to be interfered with by disclosure of leniency letters from other investigations, even closed investigations, by chilling prospective applicants from coming forward in these ongoing investigations. It defies logic to argue that the disclosure of identities of confidential informants in a FOIA action would not have a chilling effect on the likelihood of future informants coming forward. *See Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 929 (D.C. Cir. 2003) (names "could be of great use" in "intimidating witnesses"), *cert. denied,* 124 S. Ct. 1041 (2004); *Timken Co. v. U.S. Customs Serv.*, 531 F. Supp. 194, 199-201 (D.D.C. 1981) (disclosure of records would[4] interfere with the agency's ability "in the future to obtain this kind of information"); *see also Injex Indus. v. NLRB*, 699 F. Supp. 1417, 1419-20 (N.D. Cal. 1986) (disclosure of election ballots would interfere with the NLRB's statutory authority to conduct future election proceedings).

---

[4] Case decided under higher "would" standard before 1986 FOIA amendments lowered burden to "could reasonably be expected to" interfere with enforcement proceedings. Pub. L. No. 99-570, § 1802, 100 Stat. 3207, 3207-48.

### 3. Exemption 7(C):  Personal Privacy

Individuals' names were withheld under Exemption 7(C) because disclosure could invade their privacy, but defendant does not assert 7(C) for withholding the agreements in full. *See* 2006 Amended *Vaughn* at 155, 157, 159.  Defendant relies on Exemptions 7(A), (b)(5), (b)(2), and 7(D), and in some cases Fed. R. Crim. P. 6(e) for withholding the agreements in full.

### 4. Exemption 7(D):  Confidential Source Identity

Plaintiff claims Exemption 7(D) does not justify non-disclosure of leniency agreements if the applicant is "already public" or if the applicant's name and all other information identifying the applicant is redacted. Opp. 18.  Exemption 7(D) protects not only a confidential source's identity and information that would identify the source, but in a criminal investigation, all information furnished by a confidential source, such as agreements made in a leniency letter.  5 U.S.C. § 552 (b)(7)(D); *Irons v. FBI*, 880 F.2d 1446, 1448 (1st Cir. 1989); *Duffin v. Carlson*, 636 F.2d 709, 712-13 (D.C. Cir. 1980).

The fact that an applicant has announced its acceptance in the leniency program or that some other media report of a purported leniency exists is not an automatic waiver of confidentiality requiring disclosure of the leniency letter.  Courts are reluctant to find a waiver of Exemption 7(D) protections.[5]  A waiver should only be found upon "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"

---

[5] *Parker v. Dep't of Justice*, 934 F.2d 375, 378-79 (D.C. Cir. 1991), *overruled on other grounds, United States v. Landano*, 508 U.S. 165, 181 (1993); *Reiter v. DEA*, No. 96-0378, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997) ("[O]nce an informant's confidentiality has been established, almost nothing can eviscerate Exemption 7(D) protection."); *see also Jones v. FBI*, 41 F.3d 238, 249 (6th Cir. 1994) (Exemption 7(D) "focuses on the source's intent, not the world's knowledge"); *Irons*, 880 F.2d at 1452-53 (because Exemption 7(D) "mainly seeks to protect law enforcement agencies in their efforts to find future sources," acts of "'waiver' by 'sources' will not automatically prove sufficient to release the [source-provided] information"); *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980) (no waiver of confidentiality when confidential information finds its way into public domain); *Canning*, No. 01-2215, slip op. at 12 (D.D.C. Mar. 9, 2004) ("informant's later actions do not waive an agency's right to withhold information"); *Johnson v. U.S. Dep't of Justice*, 758 F. Supp. 2, 5 (D.D.C. 1991) (fact that someone made public statement about incident "not constitute a waiver . . . [because] press account may be erroneous or false or . . . incomplete").

*Parker*, 934 F.2d at 378 (quoting *Dow Jones & Co. v. U.S. Dep't of Justice*, 908 F.2d 1006, 1011

(D.C. Cir. 1990). The requester must demonstrate "'the exact information given to [law enforcement]

has already become public, and the fact that the informant gave the same information to [law

enforcement] is also public.'" *Id.* (quoting *Dow Jones*, 908 F.2d at 1011). Here, plaintiff has only

asserted that in some cases a leniency applicant's identity has been acknowledged by the applicant

or a media report purports that a firm is an applicant, not that specific leniency agreements have been

made public. In instances where a specific agreement has been made public at trial, defendant

produced those agreements. *See* Amended 2006 *Vaughn* index at 2-3, 153-154 (ATR-2012-2014,

2015-2018, 2019-2022, 2023-2025, 4611-4616, 4617-4621).

## II. Existence of Confidential Informants Established (ATFY 06-003 and 06-040)

Plaintiff challenges the withholding and redaction of documents reflecting communications

with private attorneys who provided information on behalf of, and as intermediaries for, their clients

during the course of the grand jury investigation. Plaintiff claims the Division has not established

that an "implied assurance of confidentiality should apply to these sources...." Opp. 19. The record

demonstrates a strong basis for inferring that the sources in question supplied information about the

crime with an expectation of privacy.[6]

"A source is confidential within . . . 7(D) if the source provided information under an express

assurance of confidentiality or in circumstances from which such an assurance could reasonably be

inferred." *Williams v. FBI*, 69 F. 3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-

174).[7] If an agency relies on an implied assurance of confidentiality, the Court must determine

---

[6] Since the documents in question were withheld on multiple bases, including under Fed. R. Crim. P. 6(e), even if Exemption 7(D) does not apply, summary judgment would still be warranted for the Government.

[7] An agency may withhold confidential information even if the requestor or the public knows the source's identity because exemption 7(D) looks to how the information was originally obtained. *Lesar v. U. S. Dep't of Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980). *See also* discussion *supra* pp. 10-11.

"whether the . . . source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172.  The nature of the crime investigated and an informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Dipietro v. Executive Office for U.S. Att'ys,* 357 F. Supp. 2d 177, 186-87 (D.D.C. 2004).

Multiple circumstances indicate the sources at issue provided information about the crime with an implied understanding of confidentiality.  As detailed in the Connolly declaration, Ex. A, the sources communicated with the Division on behalf of victims of plaintiff's cartel in order to provide information during the grand jury investigation.[8]  Connolly decl., Ex. A, at 2-1, ¶ 5.  A source's relation to the crime is of prime importance in determining whether an inference of confidentiality is reasonable.  *Dipietro*, 357 F. Supp. 2d at 186-87.  It is a reasonable inference that victims of the parcel tanker cartel will fear possible retaliation or be subject to harassment or stigma as a result of cooperating with the grand jury investigation.  Connolly decl. at 3, ¶ 6; Richards decl. at 33-35, ¶ 40. Moreover, Congress has explicitly expressed an interest in protecting the privacy of crime victims. Under 18 U.S.C. §3771(a), the rights of crime victims include "[t]he right to be reasonably protected from the accused[;] . . . [t]he reasonable right to confer with the attorney for the Government in the case[; and]. . . [t]he right to be treated . . . with respect for the victim's . . . privacy."[9]

The withheld documents relate to the parcel tanker grand jury investigation.  *See, e.g.,* ATR-2236-2238; ATR-2252, Amended 2006 *Vaughn* Index at 30, 33  ("Disclosure . . . could impede the grand jury investigation").  One function grand jury secrecy serves is encouraging witnesses to come forward and provide information freely and honestly.  *See Douglas Oil Co. v. Petrol Stops Northwest*,

---

[8]  With the exception of counsel for Paul O'Brien, plaintiff's former general counsel, the sources represent defrauded customers of plaintiff. O'Brien also sued plaintiff as a victim of its cartel activity, claiming he was "constructively discharged" because plaintiff refused to cease its cartel activity after he demanded it do so.  The fact that O'Brien has sued plaintiff also suggests that he expects his communication with defendant be treated confidentially.

[9]  These rights were codified at 42 U.S.C. § 10606(b) before the 2004 enactment of 18 U.S.C. § 3771.

441 U.S. 211, 219 (1979). During a grand jury investigation, victims who provide information reasonably expect they will enjoy confidentiality.

As detailed in the Connolly declaration, in addition to being victims of the alleged crime, the sources referenced in ATFY 06-003 and 06-040 with whom the Division had communications either were covered by the Division's confidentiality policy,[10] or expressed a desire for confidentiality in communications with the Division through statements in transmission documents.[11] Connolly decl. at 4-5, ¶9; 5-6, ¶12.

## III. Nonproduction of Opening Date of Investigation Justified (ATFY05-080)

Plaintiff claims that the exemptions asserted for withheld documents responsive to ATFY05-080 do not justify withholding the date of the formal opening of the parcel tanker investigation. Plaintiff acknowledges that "segregability is not required" for work-product material, Opp. 26, but asserts defendant has waived work-product protections though the testimony of former Division Deputy James Griffin in plaintiff's original April 2004 leniency litigation hearing. Plaintiff also falsely asserts that defendant is withholding the date because it "may prove embarrassing", implying that Part A leniency rather than Part B leniency was available to plaintiff. Plaintiff's suggestion that only Part B leniency is "conditional" and that Part A is not[12] is incorrect because both Part A and Part B leniency have requirements that have to be met before leniency is granted, *see* Antitrust Division, Corporate Leniency Policy, Lau decl. Ex. 41, and both are referred to as conditional in the Division's

---

[10] *See also Landano*, 508 U.S. at 174 ("A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes.").

[11] *Merserve v. US Dep't of Justice*, 2006 U.S. Dist. Lexis 56732 (D.D.C. 2006)(where a source expresses desire for confidentiality in a transmission document, source has an implied assurance of confidentiality).

[12] Opp. 27, n.2 ("Under Part A, amnesty is automatic as long as the applicant satisfies the six requirements listed in the policy. . . . Under Part B, amnesty is conditional.").

model leniency agreement. One requirement for both types of leniency, that plaintiff failed to meet, is that the applicant "upon its discovery of the illegal activity being reported, took prompt and effective action to terminate its part in the activity." Corporate Leniency Policy ¶¶ A.2., B.3., Lau decl. Ex. 41.

All documents in Opp. Ex. 3 concerning the investigation's opening are withholdable in full under the work-product privilege.[13] There was no waiver. In *Rockwell International Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 600, 604-607 (D.C. Cir. 2001), the court found no waiver of work product for withheld documents that were attached to a publicly released internal DOJ report, which referred to, cited, and quoted the attachments. The court noted the government's efforts to maintain the documents' confidentiality, including withholding the documents when publicly releasing the report. *Id.* at 605. Here, Mr. Griffin did not even refer to or make use of the documents at issue in his testimony. Interestingly, the Lau decl. Ex. 39 ends its selection of Mr. Griffin's trial testimony on page JA-557 shortly after Mr. Griffin was asked "When was the file opened in this matter, sir?" Immediately after this question, the court questioned the relevance of the question, with the court on the next page (which is not part of Lau decl. Ex. 39) stating "I don't understand the relevance of it as to the issue that is before me." Plaintiff's counsel responded, "I can move on, your Honor," which he did. *Stolt-Nielsen v. United States*, Civ. Action No. 04-CV-537 (E.D. Pa. 2004) at JA 558 (Ex. B).[14]

## IV.    Division Complied with FOIA's Segregation Requirements

Contrary to plaintiff's argument, Opp. 27-29, the Division fully complied—and demonstrated

---

[13] Note some of the entries on this chart do not use the words "work product" in the *Vaughn* indexes, but all are withheld pursuant to Exemption b(5). It is clear from the justifications and Richards declaration that work product is at least one of the (b)(5) privileges asserted. Richards decl. at 21-23, ¶ 31.

[14] See Defendant's Opp. to Mot. for Summ. J. at 10-11 regarding plaintiff's Exemption 7(A) argument.

its compliance—with FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Plaintiff's 267 page Exhibit 4 lists 388 *Vaughn* entries for which it wants the Division to segregate exempted from non-exempted material or provide a greater explanation why that is infeasible. Opp. 29. However, 309 of the exhibit's 388 entries, or 79.6%, are clearly irrelevant to plaintiff's segregability arguments. The exhibit includes documents solely responsive to requests withdrawn by plaintiff, documents filed under seal or work product documents withholdable in full, *see infra* p. 18, and documents listed as non-responsive upon further review. As detailed below and in the Amended 2005 and 2006 *Vaughn* indexes and the Richards and Hammond declarations, defendant met its segregability burden regarding the remaining 79 entries. Attached are Exhibit C, which marks Exhibit 4's irrelevant entries with strike-outs,[15] and Exhibit D, which lists the remaining documents by Bates number.

"[T]o demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." *Johnson v. Executive Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). The justification must be more than a conclusory statement that the requirement was met, but it should not "itself compromise the secret nature of potentially exempt information," *Mead*, 566 F.2d at 261, or "provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776.

To provide the requisite justification without compromising the secrecy of exempt information, defendant submitted detailed *Vaughn* indexes describing each document and, where

---

[15] Note plaintiff's Ex. 4 entry 1, ATR 366-374, incorrectly replicates defendant's corresponding *Vaughn* entry by deleting that the document is withheld pursuant to the work-product privilege as well as the deliberative process privilege. *See* Amended 2005 *Vaughn* index (Dk# 31-2) at 20.

available, its author[s], recipient[s], and date.  These indexes also listed the exemptions used to withhold in full or part each document and provided justifications for each exemption.  The Division submitted two declarations, including one by its FOIA Unit Chief, Ann Lea Richards.  Richards stated that Wayne Foster, a paralegal specialist with nine years' FOIA experience, "reviewed carefully each document to determine whether it was responsive to one or more of the FOIA requests and set aside those that were not."  Richards decl. at 12-13, ¶ 22.  He re-reviewed each page "to determine its public availability."  *Id.* at 13 ¶ 22.  Foster conducted this review "line by line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act."  *Id.* at 14-15, ¶ 26.  Specifically, he marked "[d]ocuments exempt in their entirety" as such and bracketed exempt information in otherwise disclosable documents for excision, noting the exemption supporting the non-disclosure next to the redaction.  *Id.* at 13,¶ 22.  Richards then completed another review of the documents.  *Id.*  She also "adhered to the requirement to release all reasonably segregable information contained therein."  *Id.* at 15, ¶ 26.  Only after these multiple reviews were the "documents to be withheld . . . segregated and the information marked for redaction . . . excised."  *Id.* at 13 ¶ 22.

This is the very kind of detailed justification found sufficient by this Court in *Gutman v. U.S. Dep't of Justice*, 238 F. Supp. 2d 284 (D.D.C. 2003), and by the D.C. Circuit in *Johnson.*  Gutman, as here, claimed that the defendant's supporting affidavit "contain[ed] insufficient conclusory statements."  The defendant had submitted a *Vaughn* index, detailing the "date, subject matter, authorship, the intended recipient, the exemption under which any pages are withheld, and an explanation as to why the exemption applies to the document," and two affidavits, stating that a reviewer "evaluated each page of every document for segregability and, after making the necessary deletions or excisions, released them accordingly," and that the agency "released all reasonably segregable, nonexempt information contained in the requested documents."  238 F. Supp. 2d at 296.

This Court concluded "the defendant's *Vaughn* index and supportive declarations are sufficient to fulfill the agency's obligation to provide 'detailed justification' as to why the agency cannot further segregate the documents" and was thus "satisfied that the defendant ha[d] disclosed all reasonably segregable material." *Id.* at 296-97 (citations omitted).  Similarly, the D.C. Circuit concluded that a segregability justification consisting of a detailed *Vaughn* index combined with affidavits like the ones submitted by the Division and in *Gutman* "satisfy the requirements of 5 U.S.C. § 552(b) and the precedent of this circuit." *Johnson*, 310 F.3d at 776.  The agency submitted "a comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld" and an affidavit that "explained that [the affiant] personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.'" *Id.*

The *Vaughn* indexes and declarations here, like similar indexes and affidavits in *Gutman* and *Johnson*, constitute a sufficiently "detailed justification" for the Division's segregability determinations.[16]  Plaintiff does not claim the Division did not conduct the multiple reviews and line-by-line analysis described in the Richards declaration, or that the Division did so in bad faith.  *See* Opp. 28.  Its claim is apparently that the Division offered "conclusory statements" like those found inadequate in *Mead.*  Opp. 29.  But this Court in *Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28, (D.D.C. 2004), distinguished between a justification deficient under *Mead* because it merely asserts the conclusion that "'all material that could be reasonably segregated from withheld material'" was segregated, 307 F. Supp. 2d at 40, and a satisfactory justification under *Johnson* and *Gutman* that

---

[16] To the extent the Richards declaration differs from the affidavits in *Gutman* and *Johnson* because it was not only a first-hand account of her own actions but also described what Foster did, this difference does not distinguish these precedents.  Objections to the "second-hand nature of" portions of this declaration are "not well taken in circumstances" where the declarant, as here, was "in charge of coordinating" the Division's search for and review of documents, and "is the most appropriate person to provide a comprehensive affidavit." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see* Richards decl. at 1-2, ¶ 1.

includes detailed *Vaughn* indexes and affidavits describing page-by-page and line-by-line reviews that determined all reasonably segregable non-exempt information was released, *id.* at 40-41. Unlike the justification in *Dorsett*, which was "similar to the one held to be insufficient in *Mead*," the Division's segregability explanation provides "the degree of detail as the *Johnson* and *Gutman* cases held to be sufficient." *Id* at 41.

Moreover, in *Judicial Watch, Inc., v. Dep't of Justice*, 432 F.3d 366, (D.C. Cir. 2005), the court stated "'any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.'" *Id*. at 371 (citation omitted). Thus, "factual material is itself privileged when it appears within documents that are attorney work product." *Id.* For the numerous documents withheld as work product, "segregability is not required." *Id.*

Similarly, documents ATR-2522-2524, 2525-2544, 2545-2595, and 2596-2631 are pleadings filed under seal pursuant to Fed. R. Crim. P. 6(e). Such documents are "not 'improperly' withheld" in response to a FOIA request for the information. *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 387 (1980). An agency is "required to obey [an] injunction[] out of respect for judicial process. There is nothing in the legislative history [of the FOIA] to suggest that in adopting the [FOIA] . . . Congress intended to require an agency to commit contempt of court in order to release documents." *GTE,* 445 U.S. at 387.

## V.    Division Justified Withholding Documents

Plaintiff also generally complains about the adequacy of the Division's justifications, Opp. 29-32, and it supplements that argument with a 39-page exhibit complaining specifically about sixty-five documents, Ex. 5 to Opp. Neither its general complaints, as explained below, nor its specific ones, have merit or provide a sound basis to deny summary judgment. And they do not justify an

order requiring disclosure of the documents, even if the justifications need greater detail or elaboration.

Plaintiff mainly complains that the *Vaughn* indexes and supporting affidavits are insufficiently detailed, Opp. 29-30, but "a *Vaughn* index is not a work of literature; agencies are not graded on the richness or evocativeness of their vocabularies." *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001). While the agency must "describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed," *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987), "the degree of specificity of itemization, justification, and correlation required in a particular case will . . . depend on the nature of the document at issue and the particular exemption [or exemptions] asserted." *Info. Acquisition Corp. v. Dep't of Justice*, 444 F. Supp. 458, 462 (D.D.C. 1978). The Division has provided sufficiently detailed justifications and demonstrated it only withheld exempt material.

Plaintiff's reliance on *King* to show the indexes were improperly categorical, Opp. 30, is misplaced because that decision "expressly turns on the unusual *Vaughn* index prepared by the FBI in that case," specifically "a 'coded' index which did not individually describe the requested documents but rather consisted of redacted copies of the withheld documents that were annotated by codes." *Fitzgibbon v. U.S. Secret Serv.*, 747 F. Supp. 51, 56 (D.D.C. 1990). In contrast, the Division, like the agency in *Fitzgibbon*, has "not only not provided a 'coded' *Vaughn* index, but [it] ha[s] supplied a description of, and justification for each document–which is exactly what the *King* decision indicated the FBI ought to do." *Id.* Moreover, it was completely appropriate for defendant (*see, e.g.,* Hammond decl. at 7-10, ¶¶ 9-11) to explain how release of categories of documents would generally interfere with enforcement proceedings and to use "generic determinations" for Exemption

7(A).  *See Robbins Tire*, 437 U.S. at 236; *Campbell v. HHS*, 682 F.2d 256, 265 (D.C. Cir. 1982).

Plaintiff also complains the Division's explanations for using the attorney work-product and deliberative process privileges are inadequate. Opp. 30-31.  As for work product, this complaint is based on its mistaken impression that to qualify as attorney work product, the information had to be "prepared in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party," Opp. 30 (citing *Safecard Servs. Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991)).  What is actually required is a showing that the material was prepared in anticipation of litigation or trial, *Safecard Servs.*, 926 F.2d at 1202, including criminal proceedings, *see, e.g., Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001); *see also Tax Analysts v. IRS*, 152 F. Supp.2d 1, 19 (D.D.C. 2001) (protecting document written to assess "whether a particular case should be designated for litigation"), *aff'd in part, rev'd in part on other grounds*, 294 F.3d 71 (D.C. Cir. 2002). While the "existence of an active investigation . . . is strong circumstantial evidence that the agency lawyer prepared the document with future 'litigation in mind,'" *Safecard Servs.*, 926 F.2d at 1202, it is not a prerequisite; *see also In re Sealed Case*, 146 F.3d 881, 885-887 (D.C. Cir. 1998) (existence of a specific claim not required for application of work-product privilege).

In this case, when each particular *Vaughn* entry is properly examined in the context of the accompanying affidavits, related index entries, and the plaintiff's own requests, *see id.* at 1203, the showing that the documents were prepared in anticipation of litigation is made.  As plaintiff knows and contextual examination shows, most of the work-product documents were prepared in the course of, or in anticipation of, the ongoing parcel tanker  investigation that it was a subject of, the Division's prosecutions of this cartel, and plaintiff's related leniency litigation.  Identifying the investigations to which the unrelated leniency agreements relate would disclose exempted

information.  Under these circumstances, plaintiff's intimation that the documents were somehow "'neutral, objective analyses of agency regulations,'" Opp. 30 (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)), is baseless.  *Cf.* 826 F.2d at 127 (memoranda advising IRS of anticipated legal challenges to proposed program, potential defenses, and likely outcome are different than neutral, objective analyses of agency regulations and are protected as attorney work product).

Plaintiff's complaints regarding the deliberative process privilege are uncompelling.  That privilege "protects the 'consultative functions' of government by maintaining the confidentiality of 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  The privilege covers documents that are "pre-decisional" and "deliberative," that is, actually related to the decision making process.  *Jordan*, 591 F.2d at 774.  Plaintiff's claim that documents were not pre-decisional because no decision or policy was subsequently made, *see, e.g.,* Ex. 5 at 3, 5, has been rejected by the Supreme Court,[17] and this Court.[18]  In addition, the privilege covers recommendations or opinions on legal, as well as policy, matters.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); *Greenberg v. Dep't of Treasury*, 10 F. Supp 2d. 3, 16-17 (D.D.C. 1998).

Likewise, plaintiff's complaint with the Division labeling documents drafts, Opp. 31, misses

---

[17] *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n. 18 (1975) ("Our emphasis on the need to protect *pre-decisional* documents does not mean that the existence of the privilege turns on the ability . . . to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and . . . should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.")

[18] *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (disclosing deliberative documents for lack of final decision would be "exalting semantics over substance"), *aff'd on other grounds*, 76 F.3d 1232 (D.C. Cir. 1996).

the point.  Recommendations, suggestions, and drafts of official speeches, pleadings, or other documents that "reflect the personal opinions of the writer rather than the policy of the agency" are covered by the exemption.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).[19]  The "key question" is "whether the disclosure of material would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Dudman Commc'ns Corp.*, 815 F.2d at 1568.  As the Division's *Vaughn* indexes and affidavits show, releasing the deliberative documents would do just that.

Lastly, citing *EPA v. Mink*, 410 U.S. 73, 87-88 (1973), and *Larson v. Dep't of State*, No. 02-01937, 2005 WL 3276303 (D.D.C. Aug. 10, 2005), plaintiff claims that Exemption 5 does not apply to purely factual, investigative matters and complains that the Division did not explain why it withheld factual information, Opp. 31.  This claim is plainly wrong.  *Mink* addressed only the deliberative process privilege[20] and "simply does not apply the fact/deliberative process distinction to *every* Exemption (b)(5) case."  *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1186 (D.C. Cir. 1987).  In *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 n. 17 (1984), the Supreme Court "explicitly rejected the notion that 'purely factual material can never qualify for protection under Exemption 5.'" 819 F.2d at 1186.  And this "circuit's case law is clear that '[t]he work-product doctrine simply does not distinguish between factual and deliberative material.'"  *Judicial Watch*, 432 F.3d at 371 (quoting *Martin*, 819 F.2d at 1187).  Moreover, the

---

[19]  *See also Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (holding preliminary drafts of official military histories exempt because disclosing editorial changes threatened to "stifle the creative thinking and candid exchange of ideas necessary to produce good historical work"); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982) (same); *Judicial Watch*, 880 F. Supp. at 13 (holding preliminary drafts of proposed response to congressional inquiry exempt because "information in draft form represents the personal opinion of the author, not yet adopted as the final position of the agency" and disclosure "would inappropriately reveal many editorial judgments made by the agency during the review process"); *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979).

[20]  *Larson*, too, involved the deliberative process privilege. 2005 WL 3276303 at *22-23.

deliberative process privilege protects some factual material from disclosure.  *See Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (factual material exempt where author's selection of facts reflects his deliberative process); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp.2d 1, 12 n. 10 (D.D.C. 2000) (disclosing facts selected by authors "would thus reveal the author's deliberative process");  *cf. Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (cautioning "against reflexive fact/opinion characterization as the way to decide . . . Exemption 5 cases.").[21]

Even if the court concludes that some justifications are inadequate, the appropriate remedy is to require more detailed justifications, not, as plaintiff suggests, Opp. 32, to order disclosure.  *See Campbell*, 682 F.2d at 265*; Madison Mech., Inc. v. NASA*, No. 99-2854, 2003 WL 1477014, at *4 (D.D.C. Mar. 20, 2003) (magistrate recommendation that court order production of a more detailed index and *in camera* review for some materials), *adopted* (D.D.C. Mar. 31, 2003).[22]  Another appropriate remedy is to order an *in camera* review.  *Cf. Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 30 (D.D.C. 2003) (*Vaughn* index description "slightly ambiguous" but *in camera* examination shows properly exempted).  In any case, ordering disclosure is a draconian remedy that would harm the Division's deliberative process and interfere with the ongoing investigation and prosecution of plaintiff and its affiliates and employees because of an alleged defect—insufficiently detailed justifications—that could be corrected by less severe means.  If, through inadvertence due to the volume of records at issue and corresponding length of the *Vaughn* indexes, some of

---

[21] Plaintiff's complaint that the Division made an inadequate showing regarding its confidential sources for Exemption 7(D), Opp. 31-32, has already been addressed, *see supra* pp. 11-13**.**

[22] *See also The Wilderness Soc'y v. Bureau of Land Mgmt.*, No. 01-2210, 2003 WL 255971, at *6-7 (D.D.C. Jan. 15, 2003) (requiring supplemental *Vaughn* index); *Hatcher v. U.S. Postal Serv.*, 556 F. Supp. 331, 332 (D.D.C. 1982) (submission of supplemental *Vaughn,* as ordered by court, found adequate); *Parker/Hunter, Inc. v. SEC*, 1981 WL 1675, at *2 (D.D.C. 1981) (submission of supplemental memoranda and affidavits stating more specifically how disclosure would cause harm category by category, as invited by court, found adequate).

defendant's justifications are incomplete, defendant is prepared to supplement the justifications.

**VI.    Division's Statement of Facts Complies with Local Rule 56.1**

Plaintiff's argument that defendant's Statement of the Facts does not comply with local rule 56.1, Opp. 32-33, does not justify denying defendant's summary judgment motion.  Under that rule, "a motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  The Division complied: it accompanied its summary judgment motion with a 28 page, 53 paragraph Statement of Material Facts Not in Dispute with over 70 record citations to support its factual statements.  Plaintiff complains that fourteen of these paragraphs include "recitations of legal standards" and "sometimes even cit[e] specific statutes." Opp. 33.  The rule does not proscribe references to legal standards and specific statutes, especially where, as here, they provide a logical framework for factual statements and record references.

"Local Rule 56.1 facilitates more precise identification of the record materials on which the parties rely," *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002), but its "'purposes are not served when one party, *particularly the moving party*, fails in his statement to specify the material facts upon which he relies,'" and thus "denies the nonmovant of 'an opportunity fairly to contest' the movant's case." *Id.* at 519 (quoting *Gardels v. CIA*, 637 F.2d 770, 773-74 (D.C. Cir. 1980)).  Unlike grossly deficient statements in the cases plaintiff cites,[23] the Division's statement specified the material facts and precisely identified the record materials on which it relies.  The Division's inclusion of legal standards on a few pages did not deprive plaintiff of an opportunity fairly to contest the Division's

---

[23] *See Robertson v. American Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (thirteen-sentence paragraph with no record citations); *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980) (one sentence purporting to adopt as statement affidavits and interrogatory answers); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 148 (D.C. Cir. 1996) (five sentences with no citations to record, depositions, or affidavits, which "failed . . . to dispute [movant's] . . . statement of undisputed material facts").

case.  Thus, the local rule provides no basis for denying defendant's summary judgment motion.

Lastly, even if the statement improperly blended factual assertions with legal argument in 14 of 53 paragraphs, denying summary judgment, as plaintiff requests, Opp. 33, is not the appropriate remedy.  Even when faced with an unsatisfactory statement of "one-thirteen sentence paragraph" with no record citations, this Court declined a request to strike the statement or deny summary judgment. *Robertson*, 239 F. Supp. 2d at 9.  Instead, it required the defendant to "refile a motion that complies with the letter and spirit of the rule and provides the plaintiff the opportunity to 'fairly contest' the defendants' case."  *Id.* (quoting *Burke*, 286 F.3d at 519).  Here, even that remedy is unnecessary because plaintiff could, and did, contest defendant's case.

### III.  CONCLUSION

For the reasons above, the Court should grant defendant's Motion for Summary Judgment under FED. R. CIV. P. 56 and deny plaintiff's Motions for Summary Judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney
_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar No. 434122
Assistant U.S. Attorney
_____/s/_____
CHARLOTTE A. ABEL, D.C. Bar No. 388582
Assistant U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332