# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United States of America, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 05-2217 (RJL) |
| Stolt-Nielsen Transportation Group Ltd., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United States Department of Justice, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 06-0474 (RJL) |

## **DECLARATION OF ROBERT E. CONNOLLY**

CITY OF PHILADELPHIA    )
                        )  ss:
COUNTY OF PHILADELPHIA  )

I, ROBERT E. CONNOLLY, do hereby declare:

1. I am the Chief of the Philadelphia Field Office of the Antitrust Division of the United States Department of Justice [hereinafter, the "Division"], having assumed this position

in September 1994. As Chief of the Philadelphia Field Office I report directly to the Division's Deputy Assistant Attorney General for Criminal Enforcement. I am responsible for, among other things, the supervision of all Division criminal investigations and prosecutions carried out by the Philadelphia Field Office.

2. On November 22, 2002, the Philadelphia Field Office began an investigation of possible criminal violations of the federal antitrust laws in the parcel tanker shipping industry. The investigation began as a result of a November 22, 2002 article in the Wall Street Journal which reported on a lawsuit filed by Paul O'Brien, the former general counsel of Stolt-Nielsen Transportation Group Ltd. [hereinafter "Stolt-Nielsen"], alleging he was constructively discharged because he could not support continuing illegal activity, including "illegal antitrust activities" that violate U.S. and international law against price-fixing and other illegal collusive conduct. Wall Street Journal November 22, 2002 A3.

**GRAND JURY SECRECY**

3. The parcel tanker price-fixing investigation became a grand jury investigation, and subpoenas were issued to numerous individuals and corporate entities.

4. The rules and procedures applicable in grand jury investigations facilitate the investigation and prosecution of white collar crime. For example, grand jury secrecy rules encourage witnesses to come forward by protecting from disclosure not only their identity but also the information they provide to the grand jury.

5. All of the private attorneys the Division labeled confidential sources in response to FOIA requests ATFY06-003 and ATFY06-040 communicated with the Division on behalf of, and as intermediaries for, victims of the plaintiff's cartel activities in order to provide

information during the grand jury investigation concerning this serious financial crime. Because these victims were represented parties, the communications with the Division occurred through their attorneys.

6. Grand jury witnesses are typically individuals working for a suspected conspirator company or individuals who have some business relationship with the alleged conspirator company, such as customers who were victimized by the conspiracy. Customer sources who might be victims of the conspiracy often have an ongoing, significant business relationship with the alleged conspirators. Cooperating victims fear that should their cooperation become known to the conspirator companies, they may suffer retaliation. Physical harm is not the concern, but stigma in the industry and fear of economic retaliation such as a refusal to deal, higher prices, slow shipments, slow payments, or other interference with the business relationship are common concerns of cooperating companies or individuals who have a business relationship with the alleged coconspirators. One function grand jury secrecy serves is to encourage witnesses to come forward and provide information freely and honestly. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979).

**OTHER CIRCUMSTANCES FROM WHICH CONFIDENTIALITY COULD REASONABLY COULD BE INFERRED**

7. Not every communication between a source and the Government during a grand jury investigation constitutes a "matter occurring before the grand jury" under Federal Rule of Crim. Procedure 6(e). But even with respect to information provided to the government outside the grand jury room, there are compelling circumstances present from which sources would reasonably infer their cooperation in the grand jury investigation would be treated as confidential.

8. In this case, the sources' relation to the crime strongly suggests the sources had a reasonable expectation of confidentiality when they cooperated in the grand jury investigation. Hector Torres and others lawyers from the Kasowitz, Benson, Torres & Freidman law firm represent victims of the alleged price-fixing cartel and, in fact, sued to collect damages from cartel members. David Golub and Jonathan Levine represent Paul O'Brien, who is also suing Stolt-Nielsen alleging he was a victim of Stolt-Nielsen's criminal behavior in that he was constructively discharged when the company refused to cease its illegal behavior. Conrad Williams represents ONE Shipping, another company suing Stolt-Nielsen, alleging that it was forced out of business as a result of a conspiracy among the parcel tanker cartel members. Thus, each of the sources at issue here not only claim to be victims of the illegal cartel but have, in fact, sued for damages. It is reasonable to expect alleged victims of Stolt-Nielsen's criminal activity who are suing to collect damages would expect confidentiality when providing information during the grand jury investigation of Stolt-Nielsen.

9. The Antitrust Division has a public policy promising confidential treatment to those who provide information about criminal antitrust conspiracies, such as the sources in this case:

> Confidentiality is a common concern among those who bring potential antitrust violations to our attention. We are experienced in handling this important concern and will use the information you provide only for legitimate law enforcement purposes. We protect the identity of complainants and the information provided to the full extent of the law.
> http://www.usdoj.gov/atr/contact/confppol.htm.

Each source at issue in this case was represented by an experienced attorney who would

reasonably expect the Antitrust Division to comply with its confidentiality policy.

10. Congress has explicitly expressed an interest in protecting the privacy of crime victims. Under 18 U.S.C. §3771(a), the rights of crime victims include "[t]he right to be reasonably protected from the accused[;] . . . [t]he reasonable right to confer with the attorney for the Government in the case[;]. . . [t]he right to be treated . . . with respect for the victim's . . . privacy."

11. The Antitrust Division incorporates this expectation of confidentiality into its written fax cover sheet which was used to communicate with confidential sources in the parcel tanker investigation. The document states, in part: "The information contained in this facsimile is government privileged and confidential information intended only for the use of the addressee(s) listed on this coversheet." *See e.g.* ATR 4072.

12. Sources in this case expressed their expectation of confidential treatment in communicating with the Antitrust Division. *See e.g.* ATR-4067, Amended 2006 *Vaughn* at 129, Email dated August 29, 2005 to Robert Connolly. ("This email and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized.") (The Amended 2006 *Vaughn* index lists Connolly as the author of the email, but the document contains both an email from Connolly to the source and an email from the source to Connolly. The email from the source contains the quoted confidentiality language;) ATR-2253, Amended 2006 *Vaughn* at 34, Communication dated November 21, 2003 to Robert Connolly. ("The information contained in this communication is legally privileged and/or confidential information which is intended only for use of the individual or entity named above.") These statements, from

the perspective of the source, create an implied assurance of confidentiality.

13. Plaintiff itself shared the same expectation of confidentiality when providing information to the Division during the course of this investigation:

> We understand that these documents are being sought in connection with an investigation being conducted in the Eastern District of Pennsylvania and will be treated under Federal Rule of Criminal Procedure 6(e) and will be subject to any other applicable Antitrust Division policies. In the event a third party seeks disclosure of any of these documents, we request that the Department act in accordance with its stated policy (see 28 CFR § 16.8) and assert all applicable exemptions from disclosure, including those set forth in 5 U.S.C. § 552.

Letter from John M. Nannes to Robert E. Connolly, June 12, 2003 (ATR-2181-2182). The circumstances from which an alleged perpetrator of a crime would infer an expectation of confidentiality certainly also create the same inferred expectation of confidentiality for victim sources who provided information about the crime.

14. Discovery is proceeding in the criminal case *United States v. Stolt-Nielsen, S.A. et al*, No. 06-cr-466 (E.D. Pa. 2006). Some of the documents which Stolt-Nielsen seeks to obtain pursuant to FOIA requests, have, or will, be produced as part of discovery in the criminal case. Such disclosure, however does not moot plaintiff's FOIA requests. In order to continue to protect sources' privacy interest and confidentiality, there is a protective order in the criminal case which limits the disclosure of the documents to individuals assisting in the preparation of the defense. If documents are produced pursuant to a FOIA request, no such limitation would apply.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on October 26, 2006:


_____
ROBERT E. CONNOLLY
CHIEF, PHILADELPHIA FIELD OFFICE
ANTITRUST DIVISION