UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States of America,

*Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv0474 (RJL)

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT (CIVIL ACTION NO. 05CV2217 (RJL))**

**WHITE & CASE** LLP

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C.  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation
Group Ltd.*

October 27, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................2

I.      The Antitrust Division's Arguments Are Unpersuasive.........................................2

        A.      The Opening Of The Parcel Tanker Industry Investigation  (Example:
                November 26, 2002 Memorandum) (Request No. ATFY05-080) ...........................2

        B.      Speeches Made By Antitrust Division Officials About Stolt-Nielsen
                (Request No. ATFY05-072).................................................................................9

        C.      Antitrust Division Documents Related To *The Curious Case of Stolt-Nielsen*
                (Request No. ATFY05-113) ................................................................................12

        D.      Communications To Or From The Press, Bar Associations, Or Other
                Individuals Regarding Stolt-Nielsen Or The Investigation Into The Parcel
                Tanker Industry (Request No. ATFY05-131) ........................................................12

II.     There Is A Strong Public Interest In This Information.........................................13

III.    The Division's Statement Of Genuine Disputed Issues In Response To Plaintiff's
        Statement Of Undisputed Facts Is Faulty ..........................................................16

CONCLUSION ................................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986) ..................................................................................17

*Bancoult v. McNamara,*
227 F. Supp. 2d 144 (D.D.C. 2002) .........................................................8, 10

*Black v. Tomlinson,*
425 F. Supp. 2d 101 (D.D.C. 2006) ............................................................16

*Campbell v. U.S. Dep't of Justice,*
164 F.3d 30 (D.C. Cir. 1999).......................................................................11

*Church of Scientology Int'l v. U.S. Dep't of Justice,*
30 F.3d 224 (1st Cir. 1994)..........................................................................11

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
670 F.2d 1051 (D.C. Cir. 1981) ..................................................................10

*Dep't of Justice v. Landano,*
508 U.S. 165 (1993) ......................................................................................6

*Gardels v. Cent. Intelligence Agency,*
637 F.2d 770 (D.C. Cir. 1980)......................................................................16

*Gordon v. FBI,*
388 F. Supp. 2d 1028 (N.D. Cal. 2005)..........................................................6

*Hayden v. Nat'l Sec. Agency,*
608 F.2d 1381 (D.C. Cir. 1979)......................................................................5

*Jordan v. U.S. Dep't of Justice,*
591 F.2d 753 (D.C. Cir. 1978)................................................................10, 12

*Kanter v. IRS,*
433 F. Supp. 812 (N.D. Ill. 1977)...............................................................5, 11

*Kissinger v. Reporters Comm. for Freedom of the Press,*
445 U.S. 136 (1980) ......................................................................................2

*Larson v. Dep't of State,*
No. 1:02CV01937, 2005 WL 3276303 (D.D.C. Aug. 10, 2005) ......................13

*Maydak v. U.S. Dep't of Justice,*
    254 F. Supp. 2d 23 (D.D.C. 2003)..................................................................5, 9

*Mays v. DEA,*
    234 F.3d 1324 (D.C. Cir. 2000)........................................................................11

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)............................................................................9

*Quiñon v. Fed. Bureau of Investigation,*
    86 F.3d 1222 (D.C. Cir. 1996)............................................................................4

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989)............................................................................................4

*Rosenfeld v. U.S. Dep't of Justice,*
    57 F.3d 803 (9th Cir. 1995)................................................................................6

*Safecard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir 1991)..................................................................10, 13

*Tarpley v. Greene,*
    684 F.2d 1 (D.C. Cir. 1982)..............................................................................17

*Voinche v. Fed. Bureau of Investigation,*
    46 F. Supp. 2d 26 (D.D.C. 1999)........................................................................6

## STATUTES

5 U.S.C. § 552 ....................................................................................*passim*

Fed. R. Civ. P. 56..................................................................................17

Fed. R. Crim. P. 6 ..................................................................................6

## OTHER

Local Rule 7(h)......................................................................................16

Local Rule 56.1......................................................................................16

## INTRODUCTION

Stolt-Nielsen filed its first FOIA request with the Antitrust Division almost 17 months ago. Yet, the Antitrust Division continues to wrongfully withhold information about the opening date of the parcel tanker industry investigation, despite public testimony by Antitrust Division representatives. In the 2004 trial held in the Eastern District of Pennsylvania (unsealed at the specific request of the Antitrust Division), then-Deputy Assistant Attorney General James Griffin testified that:

- The request to begin an investigation of possible collusion in the parcel tanker industry came from the Antitrust Division's Philadelphia Field Office on November 22, 2002. *See* Declaration of Lucius B. Lau, September 27, 2006 ("September Lau Decl.") Ex. 39 at JA398;

- "In November 2002, O'Brien amended his complaint . . . . On November 22, 2002, the WALL STREET JOURNAL published an article about O'Brien's suit and his allegation that Stolt-Nielsen has been engaged in 'illegal antitrust activities' that violate U.S. and international law 'against price-fixing and other illegal collusive conduct.'" Answer at 2.

- On November 22, 2002, Mr. Griffin authorized the Philadelphia Field Office to begin investigating the parcel tanker industry. *Id.* at JA399;

- On November 22, 2002, Mr. Griffin received a call from Stolt-Nielsen's counsel inquiring as to the Division's amnesty program. *Id.* at JA399-400;

- When counsel for Stolt-Nielsen called Mr. Griffin on November 22, 2002, the Antitrust Division's investigation of the parcel tanker industry had been open only for a couple of hours. *Id.* at JA555; and

- In order for a Division investigation to be "formally opened," some amount of "paperwork" must be completed. *Id.* at JA556-57.

Mr. Griffin's testimony, however, appears to be contradicted by a memorandum withheld by the Division dated November 26, 2002 (ATR-382-384). As demonstrated in this Reply, the Antitrust Division has not proven that it is permitted to withhold any part of this memorandum. Certainly, the Division has no basis to withhold that part of the memorandum that reflects the *date* upon which the parcel tanker industry investigation began.

The Antitrust Division's efforts to hide the true opening date of its investigation into the parcel tanker industry is but one of many deficiencies contained in its responses to Stolt-Nielsen's FOIA requests, its *Vaughn* index, and supporting declarations. This Reply summarizes those deficiencies. This Reply also explains why there is such a strong public interest in the FOIA requests that are the subject of this case. For example, Stolt-Nielsen's highly publicized petition for writ of certiorari is being considered this week by the U.S. Supreme Court. Finally, this Reply explains why the Court should deem as admitted all of the statements contained in Stolt-Nielsen's statement of undisputed facts.

## ARGUMENT

### I.     The Antitrust Division's Arguments Are Unpersuasive

The Antitrust Division has improperly withheld hundreds of pages of documents. Under FOIA, this Court is authorized "to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552 (a)(4)(B); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980). Because this information has been wrongfully withheld, this Court should order the Antitrust Division to produce these responsive documents immediately.

### A.     The Opening Of The Parcel Tanker Industry Investigation (Example: November 26, 2002 Memorandum) (Request No. ATFY05-080)

The Antitrust Division makes several arguments in support of its position that it need not disclose records related to the opening of the parcel tanker industry investigation, such as relevant portions of the November 26, 2002 memorandum. None are persuasive.

*First*, the government is wrong when it argues that Stolt-Nielsen seeks "unprecedented criminal discovery" with respect to the opening of the investigation. Def.'s Br. at 11. The opening date of the parcel tanker investigation has no conceivable bearing upon the Sherman Act

violation with which Stolt-Nielsen has been charged.  *See* Indictment (Declaration of Lucius B. Lau, October 27, 2006 ("October Lau Decl.") Ex. 21).   The Antitrust Division has already repeatedly told the world that its parcel tanker industry investigation was opened formally on November 22, 2002:

- Page two of the Antitrust Division's Answer in this action:  "Also on November 22, 2002, based in part upon the information in the WALL STREET JOURNAL Article published the same day, the Philadelphia Field Office of the Antitrust Division, Department of Justice, was authorized to investigate suspected collusion in the parcel tanker shipping industry";

- Mr. Griffin testified in the 2004 trial that the request to begin an investigation of possible collusion in the parcel tanker industry came from the Division's Philadelphia Field Office on November 22, 2002.  *See* September Lau Decl. Ex. 39 at JA398.  This testimony is unsealed and public;

- Mr. Griffin also testified that he authorized the Philadelphia Field Office to begin investigating the parcel tanker industry on November 22, 2002.  *Id.* at JA399; and

- "On November 22, 2002, the Division began investigating possible collusion in the parcel tanker shipping industry. . . ."  Brief for Appellant United States of America at 8, *Stolt-Nielsen v. United States*, No. 05-1480 (3d Cir. May 17, 2005) (October Lau Decl. Ex. 24).

The fact that Stolt-Nielsen approached the Antitrust Division on November 22, 2002 with a request for amnesty and received an Amnesty Letter on January 15, 2003 is also a matter of public record:

- In testimony unsealed at the Antitrust Division's request, Mr. Griffin testified that he received a call from Stolt-Nielsen's counsel inquiring as to the Division's amnesty program on November 22, 2002.  *See* September Lau Decl. Ex. 39 at JA399-400; and

- Page three of the Antitrust Division's Answer in this action:  "[O]n January 15, 2003 the Division conditionally accepted Stolt-Nielsen into its Corporate Leniency Program."

Thus, it is all public record that (1) there is a parcel tanker industry investigation; (2) the Antitrust Division claims it opened the investigation on November 22, 2002; (3) according to the Antitrust Division, the sources for the opening of the investigation include the *Wall Street*

*Journal* article and the Paul O'Brien civil suit; and (4) Stolt-Nielsen approached the Antitrust Division for amnesty on November 22, 2002.

Against this backdrop of Antitrust Division disclosure, there is no basis for withholding the November 26, 2002 memorandum. References in that memorandum to Stolt-Nielsen's application, to the *Wall Street Journal* article, and to the Paul O'Brien employment lawsuit are all now matters of public record due to the Division's own actions in giving speeches and moving to unseal the Eastern District of Pennsylvania action's court records. The Division cannot then complain that it must produce the November 26, 2002 memorandum so that the public can see "what its government is up to."

Moreover, withheld documents in the *Vaughn* index suggest that November 26, 2006, was the earliest date upon which the investigation could have commenced. As detailed later in this Reply, the issues surrounding Stolt-Nielsen's admission into—and subsequent ejection out of—the Antitrust Division's Corporate Leniency Program has generated enormous public interest. Under such circumstances, it is important that the Antitrust Division's activities "be opened to the sharp eye of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).

**Second**, the Antitrust Division is incorrect when it argues that the Amended 2005 *Vaughn* index "provides detailed justification for [] each document responsive to ATFY05-080 that was redacted or withheld pursuant to these exemptions." Def.'s Br. at 10. On the contrary, Exhibit 5 to Stolt-Nielsen's opposition to the government's summary judgment motion (the "Stolt-Nielsen Opposition") catalogues no fewer than twelve documents for which the government's *Vaughn* index entries are inadequate. *See* Stolt-Nielsen Opposition Ex. 5 at 7-13. The Antitrust Division's declarations are similarly insufficient. *See Quiñon v. Fed. Bureau of Investigation*, 86

F.3d 1222, 1227 (D.C. Cir. 1996) ("'The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" (quoting *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979))).

*Third*, the Antitrust Division lists several categories of documents in its possession responsive to Stolt-Nielsen's request, but it neither (1) provides the level of detail required to establish that specific exemptions apply; nor (2) explains why these documents cannot be redacted so that the government can produce the responsive, non-exemptible information sought by this request. *See* Def.'s Br. at 11. This request asks simply for information regarding the date the Antitrust Division opened the parcel tanker industry investigation. The government provides no proof why these admittedly-responsive documents cannot be redacted to produce that non-exemptible, public information. *See Kanter v. IRS*, 433 F. Supp. 812, 822 (N.D. Ill. 1977) ("The government must therefore review its documents to determine whether deletions, editing, or other methods of segregation can narrow the breadth of the claimed exemption. It must be able to persuade the court that it has reviewed the materials accordingly, and that it is not seeking to withhold more than is absolutely necessary to satisfy the purposes of the exemption."); *see also Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003) (holding that the general statement that "each document" was reviewed to determine segregability and "that no further release of meaningful information can be made" is insufficient).

*Fourth*, the Antitrust Division has not met its burden to show that this information is properly withheld under Exemption (b)(3) (matters specifically exempted from disclosure by another statute) or under Rule 6(e) of the Federal Rules of Criminal Procedure. *See* Stolt-Nielsen Opposition 26-27; Ex. 5 at 7-9. The Antitrust Division has never identified another statute – much less a statute that specifically protects its investigation-opening memorandum from

disclosure. Rule 6(e) of the Federal Rules of Criminal Procedure also provides no support for the Antitrust Division's position. That rule would only prohibit the disclosure of matters "occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). The case-opening memorandum (generated even before a grand jury had been impaneled) is most certainly not a matter occurring before the grand jury. And the Department of Justice has publicly discussed all of these events.

*Fifth*, Exemption 7(D) (information that could reasonably be expected to disclose the identity of a confidential source) is inapplicable to the specific information covered by Request ATFY05-080. To the extent such law enforcement records "could reasonably be expected to disclose the identity of a confidential source," that information could be redacted. 5 U.S.C. § 552(b)(7)(D).

The government makes no attempt to ever prove the bare elements of this exemption. It cannot, because its Answer ***admits*** that the investigation, according to them, was started due to a *Wall Street Journal* article. *See* Answer at 2. Although the government is correct that it must establish "a rational nexus" between enforcement of a federal law and the document for which this exemption is claimed (Def.'s Br. at 13), that is only the "threshold requirement" for all exemptions under 5 U.S.C. § 552(b)(7). *See Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995); *accord Gordon v. Fed. Bureau of Investigation*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005). Under Exemption 7(D), the government ***must also prove*** that the confidential source "spoke with an understanding that the communication would remain confidential." *Rosenfeld*, 57 F.3d at 814 (quoting *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). Nowhere in its pleadings, declarations or *Vaughn* indexes does the government explain under what circumstances this allegedly "confidential information" was shared in order to carry this burden. *See, e.g., Voinche v. Fed. Bureau of Investigation*, 46 F. Supp. 2d 26, 34 (D.D.C. 1999)

("To properly invoke Exemption 7(D), however, the FBI must present more than the conclusory statement of an agent that is not familiar with the informant.").

**Finally,** the Antitrust Division does not address Stolt-Nielsen's argument (Pl.'s Mot. Summ. J. 16, 17) that, due to the government's own testimony and motion to unseal the record, the opening date of the Division's parcel tanker industry investigation is no longer a secret. Far from being a secret, the Department of Justice keeps giving public speeches about the Stolt-Nielsen case and the course of the parcel tanker industry investigation even during the pendency of this FOIA litigation. *See, e.g.,* Answer at 10, *Stolt-Nielsen Transp. Group Ltd. v. United States,* No. 06cv0474 (D.D.C. May 3, 2006). Only five months before offering his pious remarks on confidentiality, Mr. Hammond gave a speech at the 54th Annual American Bar Association Section of Antitrust Law Spring Meeting in which he disclosed facts as to the Division's amnesty agreement with Odfjell Seachem AS, the "second in the door company" in the Division's parcel tanker industry investigation – in the Spring of 2003. *See* September Lau Decl. Ex. 31.[1] It is undisputed that Stolt-Nielsen called the Antitrust Division on November 22, 2002, to report activity to the Antitrust Division that would form the basis for an investigation (*see* September Lau Decl. Ex. 39 at JA555-556), and that the Antitrust Division moved to unseal this testimony.[2] *See* October Lau Decl. Ex. 5. Therefore, the Court should treat this argument as

---

[1] In his speech, Mr. Hammond stated: "For example, in the Division's parcel tanker investigation, Odfjell received a 30% discount off the bottom of its minimum Guidelines sentence. Odfjell contacted the Division to offer its cooperation the day after the investigation went overt. It made its key personnel available to the Division in a timely manner, and two of its top executives agreed to submit to U.S. jurisdiction, serve jail terms, and cooperate with our investigation. For its cooperation, Odfjell was rewarded with a 30% discount off its minimum Guidelines fine." September Lau Decl. Ex. 31 at 5, n.8.

[2] Under the Division's Corporate Leniency Policy, a company can qualify for amnesty under either Part A or Part B. *See* September Lau Decl. Ex. 41. Part A amnesty applies to applicants who report illegal activity to the Division **before** an official investigation into that activity has begun. *Id.* Under Part A, amnesty is automatic as long as the applicant satisfies the six requirements listed in the policy.

Part B amnesty applies to applicants who report illegal activity to the Division **after** an official investigation into that activity has begun. Under Part B, amnesty is conditional. That is, "the Division determines that granting

conceded. *See Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." (citations omitted)).

If the Antitrust Division had provided evidence that established that certain portions of the case-opening memorandum contain exempted material, then only those portions of the memorandum should have been withheld.    But the Antitrust Division cannot legitimately withhold the date of the opening of the investigation—the Division has never even attempted to explain why that date is exempted.    Nor can the Antitrust Division properly withhold information concerning the civil complaint filed by Paul O'Brien (the former General Counsel for Stolt-Nielsen who filed a lawsuit for constructive termination).    Because Mr. O'Brien's complaint is a public document, the Antitrust Division cannot shield references in the November 26, 2002 memorandum and similar documents to that complaint in its own memoranda.    For similar reasons, the Antitrust Division cannot withhold references to the *Wall Street Journal* (according to the Antitrust Division, it commenced its investigation as a result of a *Wall Street Journal* article published on November 22, 2002).    *See* September Lau Decl. Ex. 39 at JA398-399.    Nor can the Antitrust Division properly withhold information concerning Stolt-Nielsen's approach of the Antitrust Division seeking amnesty on November 22, 2002.    *See* September Lau Decl. Ex. 39 at JA399-400.    Given the Division's numerous speeches about the investigation, the public is entitled to know the truth about how that investigation began.

---

leniency would not be unfair to others, considering the nature of the illegal activity, the confessing corporation's role in it, and when the corporation comes forward." *Id.*

**B.    Speeches Made By Antitrust Division Officials About Stolt-Nielsen (Request No. ATFY05-072)**

Stolt-Nielsen answered the Antitrust Division's arguments regarding this request for speech materials in Exhibit 5 to the Stolt-Nielsen Opposition.  Stolt-Nielsen Opposition Ex. 5 at 1-6.  For instance, the Antitrust Division states that Stolt-Nielsen "does not identify any specific records that were improperly withheld under Exemption 5."  Def.'s Br. at 5.  In Stolt-Nielsen Opposition Exhibit 5, however, Stolt-Nielsen listed seven documents the Division inadequately redacted or improperly withheld under either the deliberative process privilege or the attorney work-product doctrine.  *See* Stolt-Nielsen Opposition Ex. 5 at 1-6.

The Antitrust Division's assertion that it met its burden to prove that no segregable information exists is wrong.  *See* Stolt-Nielsen Opposition 27-29; *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (holding that the Air Force "must provide a more detailed justification than the conclusory statements it has offered to date" and "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document").  Neither (1) the Amended 2005 *Vaughn* index; (2) its accompanying declarations; nor (3) the parroted language in the government's opposition provides more than conclusory statements of legal standards.  *See Maydak*, 254 F. Supp. 2d at 40 (holding that "the BOP should describe each document that has been withheld in its entirety and explain why the information contained therein could not be segregated and the non-exempt material released").  In fact, the Antitrust Division does not describe the extent to which factual material was "inextricably intertwined" with alleged privileged material.  *See* Pl.'s Mot. Summ. J. 13.  Therefore, this Court should require the government to prove it segregated all non-exemptible information.

The Antitrust Division states that it withheld "drafts of speeches and internal communications about what to include in Division speeches or how to respond to Walden" under the attorney work-product doctrine and the deliberative process privilege. Def.'s Br. at 7. Yet it fails to prove either (1) that this information was pre-decisional, deliberate, and antecedent to the adoption of agency policy (for the deliberative process privilege (*Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978), *abrogated on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C. Cir. 1981))); or (2) that this information was prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991).

The Antitrust Division failed to respond to Stolt-Nielsen's argument that otherwise protected information is subject to waiver once disclosed to third-parties. *See* Pl's Mot. Summ. J. 13-14. Therefore, the Court should treat this argument as conceded and the materials released forthwith. *See Bancoult*, 227 F. Supp. 2d at 149.

The Antitrust Division has also failed to establish an entitlement to withhold documents pursuant to Exemption (b)(5) (inter-agency or intra-agency memoranda or letters). According to the Division, one reason for Exemption (b)(5) privileges "is to avoid confusion about the agency's actual position as opposed to proposed positions" and that they "encourage open and frank discussions." Def.'s Br. at 7. These assertions do not relieve the government of its burden to prove information is properly withheld pursuant to Exemption (b)(5). And, simply, the government has not done that.

In Exhibit 5 of the Stolt-Nielsen Opposition, Stolt-Nielsen lists specific documents wrongfully withheld under Exemption 7(A) (records or information compiled for law

enforcement purposes that could reasonably be expected to interfere with enforcement proceedings). Stolt-Nielsen Opposition Ex. 5 at 1-7. The Division's opposition does not cure a fundamental defect in its *Vaughn* index and declarations—*i.e.*, a failure to provide any *facts* to show that these withheld documents could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1999); *see also Kanter*, 433 F. Supp. at 822-23 (holding that, to invoke Exemption 7(A), affidavits attempting "to depict the anticipated interference which release of withheld materials would engender" by merely providing a laundry list of government concerns are insufficient, and that "if the court is to hazard a guess as to the connection between the evils anticipated by the government and the documents in dispute, it must have a much clearer understanding of the contents of these documents").

Exhibit 5 of the Stolt-Nielsen Opposition catalogues the inadequacies in the government's claim that documents are properly withheld under Exemption 7(C) (information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy). Stolt-Nielsen Opposition Ex. 5 at 1-7. In short, nowhere does the Antitrust Division provide *facts* sufficient for this Court to determine that the release of this withheld information would be a clearly unwarranted invasion of *personal* privacy. *See Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 232 (1st Cir. 1994) (rejecting the government's argument that privacy concerns warrant withholding an entire document and stating that the government must provide more than unsupported conclusions to justify withholding entire documents based on this exemption); *see also Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (holding that the scope of Exemption 7(C) is limited to "the specific

information to which it applies, [but] not the entire page or document in which the information appears").

### C. Antitrust Division Documents Related To *The Curious Case of Stolt-Nielsen* (Request No. ATFY05-113)

Exhibit 5 to the Stolt-Nielsen Opposition provides detailed arguments as to why the government failed to adequately prove that withheld documents related to *The Curious Case of Stolt-Nielsen* are covered by Exemptions (b)(5) (inter-agency or intra-agency memoranda or letters) and (b)(6) (unwarranted invasion of personal privacy). Stolt-Nielsen Opposition Ex. 5 at 14-16. Although the government's Opposition does not add any more factual detail to support its arguments, specific responses to its Opposition are as follows:

- Information regarding the government alerting Walden to "factual errors" is not covered by Exemption (b)(5)'s deliberative process privilege, as it is neither pre-decisional nor antecedent to the adoption of agency policy. *See Jordan*, 591 F.2d at 774;

- Merely labeling information as reflecting "the impressions and thoughts of staff" is insufficient to prove that Exemption (b)(5) applies. *See id.*; and

- The government's *Vaughn* indexes and accompanying declarations fail to provide sufficient detail to this Court to determine whether the deliberative process privilege applies to the withheld information. *See* Stolt-Nielsen Opposition 29-32.

### D. Communications To Or From The Press, Bar Associations, Or Other Individuals Regarding Stolt-Nielsen Or The Investigation Into The Parcel Tanker Industry (Request No. ATFY05-131)

Exhibit 5 to the Stolt-Nielsen Opposition provides detailed arguments as to why the government failed to adequately prove that withheld communications to or from the press, bar associations, or other individuals regarding Stolt-Nielsen or the investigation into the parcel tanker industry are covered by Exemptions (b)(5), (b)(6), or 7(C). Stolt-Nielsen Opposition Ex. 5 at 16-18. Although the government's opposition does not add any more factual detail to support its arguments, specific responses to its opposition are as follows:

- "Internal communications between Division staff" are not automatically protected by the deliberative process privilege absent a showing that the communications were pre-decisional, deliberate, and antecedent to the adoption of agency policy. *See Jordan*, 591 F.2d at 774. The government does not even attempt to make such a showing. The government must also "pinpoint an agency decision or policy, or identify a decisionmaking process" to which the communications contributed. *Larson v. Dep't of State*, No. 1:02CV01937, 2005 WL 3276303, at *23-24 (D.D.C. Aug. 10, 2005). The Antitrust Division fails to provide this;

- These communications are not protected by the attorney work-product doctrine unless there is a showing that the communications were prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party." *Safecard Servs.*, 926 F.2d at 1203. The government has not made this showing; and

- The government's *Vaughn* indexes and accompanying declarations fail to provide sufficient detail to this Court to determine whether the Exemption 5 privileges apply to the withheld information. *See* Stolt-Nielsen Opposition 29-32.

## II.    There Is A Strong Public Interest In This Information

There is intense public interest in the Antitrust Division's amnesty program and the other information Stolt-Nielsen is seeking with its FOIA requests. *See, e.g.*, Holman W. Jenkins, Op-Ed, *If Sergio Leone Made a Move About Antitrust . . .*, Wall St. J., Oct. 25, 2006 (October Lau Decl. Ex. 22) ("Nine petitioners, including the U.S. Chamber of Commerce, have joined Stolt in urging the Supreme Court to find that Justice has no business indicting Stolt and its employees until the lower courts have definitively ruled the amnesty deal invalid."); John J. Vecchione, *What Is Confession Good For Now?*, Legal Times, Oct. 23, 2006 (October Lau Decl. Ex. 8) ("Now the only thing standing between Stolt-Nielsen and the prosecutors is a pending petition before the Supreme Court, asking the Court to help the company and, more important, the future of anti-cartel enforcement."); Editorial, *Corporate Leniency*, N.Y. Sun, Oct. 18, 2006 (October Lau Decl. Ex. 9) ("Later this month, the Supreme Court will decide whether to hear arguments in Stolt-Nielsen, S.A., et al. v. United States, and the court's action could have a major impact on the Department of Justice's increasingly aggressive pursuit of corporate crime."); Alison L.

Smith, *Stolt-Nielsen Indictment: A blow to amnesty program*, Nat'l L.J., Oct. 18, 2006 (October Lau Decl. Ex. 10) ("The American consumer was the big loser in the recent price-fixing indictment of Stolt-Nielsen S.A."); Lisa Brennan, *Feds' Power To Renege on Immunity May Be Tested in U.S. Supreme Court*, N.J.L.J., Oct. 16, 2006 (October Lau Decl. Ex. 11) ("The case piques the interest of not only antitrust lawyers but also white-collar criminal defense attorneys, because the lifting of immunity means that all items of evidence a cooperating company has willingly handed over can become weapons in the government's arsenal."); Mark Moller, *Amnesty? What Amnesty?*, CATO@LIBERTY, Oct. 9, 2006, http://www.cato-at-liberty.org/ 2006/10/09/amnesty-what-amnesty (October Lau Decl. Ex. 12) ("[T]he corporate interests at stake here [are] arguably far greater, from a due process standpoint, than a natural person's interests at the similar stage of proceedings."); Jesse Greenspan, *Support For Stolt Comes Pouring In*, Competition Law 360, Sept. 25, 2006, http://competition.law360.com/Secure/ ViewArticle.aspx?id=10676 (October Lau Decl. Ex. 13) ("Stolt's court battle with the DOJ has emerged as a bellwether concerning the fate of the antitrust division's cartel amnesty program."); Michael Peel & Patti Waldmeir, *Business Wants More Power For US Courts To Enforce Amnesty Deals*, Financial Times, Sept. 25, 2006 (September Lau Decl. Ex. 2); Daniel J. Popeo, Chairman, Washington Legal Foundation, (Advertorial), *What Happened to Justice?*, N.Y. Times, Sept. 25, 2006 at A29 (October Lau Decl. Ex. 14); Jim Mulrenan, *Friends rally to Stolt*, Tradewinds, Sept. 26, 2006 (October Lau Decl. Ex. 15) ("The government of Luxembourg and eight trade associations and other groups are backing Stolt-Nielsen's calls for the US supreme court to intervene in its antitrust troubles."); Press Release, Washington Legal Foundation, Court Urged To Permit Pre-Indictment Suits To Enforce Immunity Agreements (Sept. 21, 2006) (October Lau Decl. Ex. 16) ("The demise of accounting giant Arthur Andersen vividly

demonstrates the crippling effect that pending criminal charges can have on a company's ability to continue as a going concern."); Sue Reisinger, *Promise Breakers*, Corporate Counsel, Sept. 2006 (September Lau Decl. Ex. 1) ("If [freedom from indictment] is now in doubt or undermined, . . . it will impact the advice that corporate counsel provide.  And it will chill the likelihood that clients will be as interested in self-reporting or early resolution of complex cases."); Alison L. Smith, *Stoltz-Nielsen*[sic]*, S.A. v. United States: Raising The Risk In Pursuing Leniency*, Criminal Practice and Procedure Committee Newsletter (ABA Antitrust Section), Aug. 2006, at 15 (October Lau Decl. Ex. 17) ("The *Stolt* decision, . . . , could thus make some applicants think twice about the wisdom of seeking leniency"); Richard M. Cooper, *Nonprosecution Issues*, Nat'l L.J., Apr. 10, 2006 (October Lau Decl. Ex. 18) ("Particularly for a corporation, . . . an indictment may, in some circumstances, be economically as harmful as, or even more harmful than, an ultimate conviction."); Pamela A. MacLean, *3D Cir. To Hear Hot Antitrust Issue, Judge Enjoined DOJ From Indicting Based On Breach Of Immunity Deal*, Nat'l L.J., May 16, 2005 (October Lau Decl. Ex. 19) ("Everybody is nervous.  We have not had amnesty to worry about until this decision came out.  Now it would be the first item on my agenda:  seeing the government is not going to pull a Stolt-Nielsen on us."); Lyle Denniston, *Moot or live controversy? A case study*, SCOTUSBLOG, Oct. 9, 2006, http://www.scotusblog.com/movabletype/archives/2006/10/moot_or_live_co.html (October Lau Decl. Ex. 20).

　　　This public interest in the Stolt-Nielsen case far outweighs any privacy interest the government may claim.

III.    **The Division's Statement Of Genuine Disputed Issues In Response To Plaintiff's Statement Of Undisputed Facts Is Faulty**

Finally, the Court should deem as admitted the factual assertions contained in Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute ("Stolt-Nielsen's Statement of Facts") and disregard Defendant's Statement Of Genuine Disputed Issues In Response To Plaintiff's Statement of Disputed Facts ("Division's Statement Of Genuine Disputed Issues") because the Division's Statement Of Genuine Disputed Issues does not comply with this Court's Local Rules.

In pertinent part, Local Rules 7(h) and 56.1 state as follows:

> An opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.

"The procedure contemplated by the [local] rule . . . isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980). The Antitrust Division has failed to comply with this rule in several ways.

*First,* the Antitrust Division does not dispute *one single fact* in Stolt-Nielsen's Statement of Facts. "The Court is entitled to treat as admitted those facts identified in the moving party's statement and not controverted in that of the nonmovant." *Black v. Tomlinson*, 425 F. Supp. 2d 101, 107 (D.D.C. 2006) (citing Local Civ. R. 56.1). Because the Antitrust Division failed to controvert any of the factual assertions contained in Stolt-Nielsen's Statement of Facts, the Court should deem those facts as admitted.

*Second,* many of the assertions are made with no citation to facts in the record. *See, e.g.,* Division's Statement Of Genuine Disputed Issues ¶¶ 1-4. These paragraphs fail as a matter of

law. *See Tarpley v. Greene*, 684 F.2d 1, 7 (D.C. Cir. 1982) (affirming the grant of summary judgment and observing that the nonmoving party had not "cite[d] any record evidence" and, in his statement of genuine factual issues, "did not set forth specific, material facts, but simply asserted, without citing evidence in the record, that there was a disputed issue").

**Third**, the Division's Statement Of Genuine Disputed Issues consists mainly of denials of assertions made in the Introduction section of Stolt-Nielsen's memorandum of points and authorities, with either no citations at all or citations to its own legal memorandum. *See, e.g.*, Division's Statement Of Genuine Disputed Issues ¶ 1. The government also includes denials of Stolt-Nielsen's **legal conclusions** and other legal arguments. *Id.* ¶¶ 1, 4. This is also inadequate. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (in opposing a motion for summary judgment, the adverse party "may not rest upon the mere allegations or denials of [the adverse party's] pleading, but 'by affidavits or as otherwise provided in this rule,' must set forth specific facts showing that there is a genuine issue for trial" (quoting Fed. R. Civ. P. 56(e))).

## CONCLUSION

For these reasons, the Court should grant Stolt-Nielsen's motion for summary judgment.

Dated: October 27, 2006

Respectfully submitted,

**WHITE & CASE**LLP

By: _____
J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation Group Ltd.*