# Exhibit 10

▪ Law.com Home   ▪ Newswire   ▪ LawJobs   ▪ CLE Center   ▪ LawCatalog   ▪ Our Sites   ▪ Advertise

**LAW.COM CLE CENTER**                                    Enroll now

# THE NATIONAL LAW JOURNAL

Advanced Search
Subscribe | Contact Us

NLJ Home > Opinion

**STOLT-NIELSEN INDICTMENT**

## A blow to amnesty program

Alison L. Smith/Special to The National Law Journal
October 18, 2006


Tim Brinton

■ MORE NLJ HEADLINES

**Jury waiver rule to be tested by 'prophet'**
More News

**'Invisible' attorneys seek notice**
More In Focus

**CAFA Exceptions**
More Columns

―――――――ADVERTISEMENT―――――――





The American consumer was the big loser in the recent price-fixing indictment of Stolt-Nielsen S.A. The U.S. Department of Justice revoked its agreement not to prosecute Stolt after the company cooperated in the criminal investigation- the indictment is unfair to Stolt and may well be a breach of the government's agreement. Worse, the indictment undermines DOJ's corporate amnesty program. Prospective amnesty applicants must now question whether they can trust DOJ to keep its promises, and fewer may choose to report their crimes.

Some background is in order. In January 2003, under the umbrella of DOJ's Corporate Leniency Program, Stolt reported its participation in an alleged price-fixing conspiracy. DOJ accepted the company into its amnesty program and agreed "not to bring any criminal prosecution" against Stolt for the conspiracy. The agreement was conditional, as is the norm, and was subject to DOJ's verification of the truth of Stolt's representations. Stolt cooperated extensively in the government's antitrust investigation. It confessed its own involvement in the conspiracy and implicated others, producing volumes of evidence that DOJ used successfully to convict two other corporate co-conspirators and win $62 million in fines and jail time for those companies' executives.

Yet, after reaping the benefits of Stolt's cooperation, DOJ unilaterally revoked Stolt's amnesty. Here's why. DOJ requires amnesty applicants to meet several ambiguously worded conditions-including a requirement that the applicant represent that it took "prompt and effective action to terminate its part in the anticompetitive activity being reported upon discovery of the activity." DOJ claimed that, based on the evidence later revealed in its investigation, Stolt's representation had not been accurate.

For Stolt, the consequences were catastrophic. It had cooperated in the investigation. DOJ now planned to prosecute Stolt for the conspiracy that Stolt reported, using the evidence that Stolt gave it. Essentially defenseless, Stolt sued DOJ to stop the threatened indictment.

A Pennsylvania district court sided strongly with Stolt, rejecting DOJ's claims of misrepresentation and granting the injunction. The 3d U.S. Circuit Court of Appeals nonetheless reversed. Accepting DOJ's argument that its prosecutorial discretion was virtually absolute, the court held that the federal courts lack authority to enjoin DOJ from seeking an indictment, except in rare circumstances. So, despite DOJ's explicit promise not to prosecute Stolt, the court ruled that Stolt's constitutionally protected interests in the amnesty agreement would be adequately served with a post-indictment, preconviction judicial hearing. As the court explained, being indicted and forced to stand trial is not constitutional injury, but merely one of the "painful obligations" of citizenship.

The U.S. Supreme Court should grant Stolt's petition for certiorari and reverse.

Contrary to the 3d Circuit's conclusion, the district court's injunction did not interfere with DOJ's prosecutorial discretion. DOJ exercised that discretion when it agreed not to prosecute Stolt in exchange for cooperation. Holding DOJ to its agreements would do nothing to trench upon its discretion.

DOJ does have a legitimate interest in ensuring that amnesty applicants are truthful, and if Stolt made material misrepresentations to gain amnesty, it may deserve to forfeit its amnesty. But the district court found that no misrepresentation occurred. In any event, DOJ has no right to void the amnesty agreement on its own. Whether the Constitution permits Stolt to be deprived of its protected interests in the amnesty agreement is a question for an unbiased tribunal-not DOJ acting unilaterally. And that judicial determination should occur before-not after-an indictment. The vice of the indictment is that DOJ has irrevocably dishonored its agreement "not to bring any criminal prosecution" against Stolt. If, in a post-indictment hearing that the 3d Circuit thinks would be adequate, a district court again found that Stolt did not breach the agreement, Stolt could not be restored to the position it would have been in absent DOJ's breach.

**Indictment is no minor matter**

Contrary to the 3d Circuit's statement, suffering an indictment is not just a "painful obligation" of citizenship. It can kill a corporation, as it did Arthur Andersen, and irrevocably destroy the reputation and livelihood of a person. Indeed, DOJ's controversial Thompson memo counsels corporations seeking leniency from prosecution to sanction their "culpable" employees and cut off their attorney fees, thus unfairly depriving even innocent people of the resources to defend against an indictment and increasing the odds of a wrongful conviction.

Apart from fairness issues, DOJ's actions may irreparably damage the corporate amnesty program. The program is thought to be the greatest generator of criminal cartel cases, causing amnesty seekers to expose illegal conduct and helping DOJ detect and prosecute antitrust conspiracies that harm American consumers. But its success has always depended upon trust. If DOJ can extract all of the benefits of cooperation, and then turn on the applicant for alleged violations of ambiguous conditions, conspirators considering seeking amnesty might well conclude that real risks far outweigh any theoretical benefit.

*Alison L. Smith is a former deputy assistant attorney general for the Antitrust Division of the U.S. Department of Justice. She is currently a partner with Haynes and Boone in Houston. She can be reached at alison.smith@haynesboone.com.*

Printer-friendly Version    Email this Article    Comment on this Article    Reprints & Permissions

Copyright 2006 ALM Properties, Inc. All rights reserved.