# Exhibit 12

Amnesty? What Amnesty?

Here's an interesting and under-remarked, cert. petition involving separation of powers claims pending before the Court: *Stolt-Nielsen S.A. v. USA*. *Stolt* presents a minor key in a major symphony: the ongoing debate over the boundaries of judicial control over the executive branch. Here, the Department of Justice claims courts lack the power to enjoin the Department of Justice from breaching immunity agreements entered with corporate defendants in the cross-hairs of federal antitrust investigators.

A bit of background: The federal government operates an amnesty program, called the Corporate Leniency Program, under which DOJ covenants not to prosecute firms that cooperate with antitrust investigators, so long as a series of conditions are met.

In 2002, Stolt-Nielsen contacted the DOJ Antitrust Division with an offer to cooperate in the investigation of collusive trading practices between Stolt and two competitors. DOJ executed a conditional amnesty agreement, prompting Stolt to turn over a series of incriminating documents to DOJ attorneys, waiving, in the process, attorney-client privilege. Four months after entering the agreement, DOJ notified Stolt it was suspending the government's obligations under the agreement because Stolt had misrepresented the termination date of its own anticompetitive practices. In 2004, Stolt was indicted by a grand jury. Stolt sued to enjoin, contending it deserved an evidentiary hearing on the DOJ's claims prior to indictment.

The government argues that its leniency agreements do not offer immunity from indictment. As the Chamber of Commerce's *amicus* brief in support of Stolt's petition points out, that's rather different from the representations DOJ has used to induce corporate cooperation:

> The [DOJ Antitrust] Division defines "leniency" as "not *charging* such a firm criminally for the activity being reported" . . . The Antitrust Division's Grand Jury Practice Manual expressly states that the term of art "lenient treatment" "means not indicting such a firm." . . . . Representatives of the Antitrust Division have described the Leniency Policy as "a complete pass from criminal prosecution or total immunity for a company and its cooperating employees," and have observed that " . . . *the grant of amnesty is certain and is not subject to the exercise of prosecutorial discretion.*"

Even so, Stolt's case faces a number of barriers: (1) the settled rule that due process does not require a pre-indictment hearing on breaches of plea agreements entered by natural persons, coupled with (2) the fact that courts (wrongly, in my view) have refused to extend Fifth Amendment protection to a corporate entity's interests against self-incrimination. For more, see this pro-government article on the case.

It's questionable, though, whether ordinary plea agreements are an exact analogy to indictment of a corporate entity, since indictment can literally destroy companies as a going concern: witness Arthur Andersen, which melted down upon *indictment*, not conviction. As such, the corporate interests at stake here arguably far greater, from a due process standpoint, than a natural person's interests at the similar stage of proceedings.

Even so, I hold out little hope for Supreme Court attention: It has already rejected two motions to stay the Third Circuit's order. Moreover, judicial tolerance for misrepresentation in the context of prosecutorial bargaining is, unfortunately, both wide and deep—and, alas, likely to be wider and deeper in the corporate white collar context. *Cf.* Donald G. Gifford, *Meaningful Reform of Plea Bargaining: The Control of Prosecutorial Discretion*, 1983 U. Ill. L. Rev. 37 (In the criminal plea bargain, "[d]efendants assume they are receiving substantial sentence reductions in exchange for their guilty pleas. This benefit is often more illusory than real. . . . The prosecutor's recommendations, which appear attractive compared to maximum possible sentences, may in fact only correspond with the court's typical sentencing practices. . . . [L]ike parties victimized by unconscionable contracts, [defendants] do

not understand the terms of the bargain.").

*posted by Mark Moller on 10.09.06 @ 1:30 pm Email*

*Filed Under: General, Constitutional Studies, Law & Legal Issues, Civil Liberties*

[…] Mark Moller, a senior fellow in constitutional studies at the Cato Institute, writes at the Cato-at-liberty blog about Stolt's Supreme Court case. Moller is sympathetic, but he believes the Court is unlikely to hear the case: I hold out little hope for Supreme Court attention: It has already rejected two motions to stay the Third Circuit's order. Moreover, judicial tolerance for misrepresentation in the context of prosecutorial bargaining is, unfortunately, both wide and deep—and, alas, likely to be wider and deeper in the corporate white collar context. Cf. Donald G. Gifford, Meaningful Reform of Plea Bargaining: The Control of Prosecutorial Discretion, 1983 U. Ill. L. Rev. 37 (In the criminal plea bargain, "[d]efendants assume they are receiving substantial sentence reductions in exchange for their guilty pleas. This benefit is often more illusory than real. . . . The prosecutor's recommendations, which appear attractive compared to maximum possible sentences, may in fact only correspond with the court's typical sentencing practices. . . . [L]ike parties victimized by unconscionable contracts, [defendants] do not understand the terms of the bargain."). […]

*By Stolt Antitrust Blog » Blog Archive » Cato scholar on Stolt appeal on 10.09.06 4:27 pm | Permalink*

RSS feed for comments on this post TrackBack URI



## Welcome

Welcome to Cato @ Liberty -
The official Cato Institute blog.

Syndicate Cato @ Liberty: RSS or RSS2.

Questions? Comments? -
Email blog@cato.org.

  

## Authors

| Select an author