# Exhibit 18

Case 1:05-cv-02217-RJL    Document 42-20    Filed 10/27/2006    Page 1 of 2

Monday, April 10, 2006                               THE NATIONAL LAW JOURNAL/WWW.NLJ.COM                                                                 15

# BUSINESS CRIME

## Nonprosecution Issues

### By Richard M. Cooper



THE 3D U.S. CIRCUIT Court of Appeals recently held that a nonprosecution agreement does not bar the Department of Justice from obtaining an indictment before there has been a judicial determination that the private party breached the agreement. *Stolt-Nielsen S.A. v. U.S.*, No. 05-1480 (3d Cir. March 23, 2006). The decision was by two judges; Judge (now Justice) Samuel A. Alito Jr. heard arguments on the case, but did not participate in the decision.

Stolt-Nielsen S.A. provides parcel tanker shipping services. The company's general counsel discovered unlawful collusion between the company and two competitors, was dissatisfied with the reaction of management, resigned in March 2002, and sued the company in November 2002. Stolt-Nielsen then engaged outside antitrust counsel, advised him that antitrust violations had occurred, authorized him to seek amnesty under the Justice Department Antitrust Division's corporate leniency policy (see www.usdoj.gov/atr/public/guidelines/lencorp.htm), and in January 2003 entered into a conditional leniency (i.e., nonprosecution) agreement with the government.

### A closer look at the nonprosecution agreement

The agreement provided that, subject to Stolt-Nielsen's compliance with seven conditions under the corporate leniency policy, the government would not "bring any criminal prosecution against [Stolt-Nielsen] for any act or offense it may have committed prior to the date of [the agreement] in connection with the anticompetitive activity being reported." The agreement further provided that, if the division determined that Stolt-Nielsen had violated the agreement, it would be void; and the Antitrust Division "may thereafter initiate a criminal prosecution against [Stolt-Nielsen] without limitation."

The government's nonprosecution commitment extended to all officers and directors of Stolt-Nielsen who admitted their knowledge or participation in the reported conduct and cooperated fully.

With information from Stolt-Nielsen and its executives, the government obtained from the other co-conspirators guilty pleas leading to prison sentences and substantial fines.

One of the seven conditions under the corporate leniency policy was that the company, "upon its discovery of the illegal activity being reported, took prompt and effective action to terminate its part in the activity." Stolt-Nielsen learned of the collusion by March 2002. From its investigation, the government concluded that Stolt-Nielsen's participation in the conspiracy had continued, however, until November 2002.

A subordinate of Richard Wingfield, a company executive, had told outside antitrust counsel that the participation had ended in March.

In April 2003, the government told Stolt-Nielsen's outside antitrust counsel that it was suspending the company's obligations under the agreement, and was considering withdrawal of the grant of conditional amnesty. The government concluded that Wingfield had failed to fulfill his obligations under the agreement by not disclosing that the conspiracy had continued beyond March 2002. In June 2003, it filed a criminal complaint against him; it could not actually prosecute him, however, without an indictment. Shortly before the government revoked the grant of conditional leniency and announced it intended to indict Stolt-Nielsen and Wingfield, they sued for enforcement of the agreement and an injunction against such an indictment.

The district court, after an evidentiary hearing, held that due to the "irreparable consequences" of an indictment, Stolt-Nielsen and Wingfield were entitled to a preindictment judicial determination of whether they had breached the agreement. It further determined that the agreement did not specify a discovery date, that the agreement's integration clause barred the government's reliance on a tacitly understood discovery date, that the date of the termination of Stolt-Nielsen's participation in the conspiracy had not been established, and that the government had obtained the benefit of its bargain. The district court issued the requested injunction.

Relying on the general policy against judicial interference with the Executive Branch's discretion to decide whether or not to prosecute, the 3d Circuit reversed. The exception to that policy for protection of First Amendment rights was, of course, inapplicable; and the court expressly declined to discuss the exception for bad-faith prosecutions, which, it pointed out, the U.S. Supreme Court thus far has approved as to state prosecutions.

The court noted the strong policy that the government adhere strictly to immunity and other agreements with defendants or prospective defendants who are giving up constitutional rights. The existence of that policy supports jurisdiction in the courts to enforce such

> Particularly for a corporation, an indictment may be economically as harmful—or more so—as an ultimate conviction.

agreements at the request of private parties, even outside the First Amendment context.

There was no question as to whether Stolt-Nielsen and Wingfield were entitled to a preconviction judicial determination as to the alleged breach. The question was whether the due process clause entitled them to such a determination preindictment. In answering in the negative, the court commented that they could raise the issue either before or during the trial.

The due process issue turned on whether Stolt-Nielsen and Wingfield had a liberty or property interest in preindictment judicial review of the issue of breach, as contrasted with preconviction review. The court held that they did not.

In two cases in which an already indicted defendant entered into a full or partial immunity agreement, the government later claimed that there was a breach by the defendant and re-indicted him, and the defendant then claimed a due process violation for lack of a preindictment judicial determination of breach, the 7th Circuit held that a preconviction determination sufficed. *U.S. v. Meyer*, 157 F.3d 1067 (7th Cir. 1998); *U.S. v. Verrusio*, 803 F.2d 885 (7th Cir. 1986). In each case, however, the court, in dictum, expressed a preference for a preindictment determination, absent exigent circumstances. *Meyer*, 157 F.3d at 1077; *Verrusio*, 803 F.2d at 888 n.2, 889.

*Verrusio* involved a plea agreement, under which, in return for his cooperation and plea to one count, the defendant avoided the risk of conviction on the other pending counts as well as the risk of indictment and conviction on possible future charges relating to past conduct.

The court concluded that, to him, the principal benefit of his bargain was avoidance of the risk of conviction, and that, for purposes of due process, preconviction review of his alleged breach adequately protected him from that risk.

In *Meyer*, co-defendant Hoff was under indictment when he entered into an agreement for total immunity. The government later concluded that he had breached, and it re-indicted him. The court found no distinction between the governmental performances that Verrusio and Hoff had bargained for, and held that preconviction review sufficed.

Unlike Verrusio and Hoff, who already had suffered the harms flowing from indictment, Stolt-Nielsen and Wingfield had not been indicted at the time of Stolt-Nielsen's agreement. Therefore, they had a stronger argument that their constitutionally protected interest was in avoiding indictment as well as conviction.

The court characterized being indicted and tried—as distinct from being convicted and punished—as "not generally an injury for constitutional purposes but ...rather one of the painful obligations of citizenship." Slip op. at 20 (internal quotation omitted).

It commented that "other courts have not accepted the argument that the unpleasantness of an indictment brought in good faith constitutes an injury that may be remedied by a pre-indictment injunction, and neither have we." Id. at 22 n.5. It also invoked refusals to hear interlocutory appeals from denials of motions challenging indictments on a variety of grounds—although the defendants in those cases, like Verrusio and Hoff, had already been indicted.

### Precedents relied on involved individuals

Particularly for a corporation, which does not face a risk of imprisonment, an indictment may, in some circumstances, be economically as harmful as, or even more harmful than, an ultimate conviction (which may add relatively little to the harm caused by indictment and trial).

The entry of public corporations into nonprosecution agreements and plea agreements that require them to pay very large sums of money (comparable to fines) and to undertake extensive corrective action programs (beyond what a court would order) is evidence of the importance they attach to avoidance of indictment, although by such agreements they also avoid a trial.

Even a plea agreement with accompanying criminal information, and soon followed by an adjudication of guilt and a sentence, may be less harmful than an indictment that will remain outstanding during the ensuing criminal process. The precedents the 3d Circuit relied on involved individual defendants, not corporations.

The nonprosecution language in *Stolt-Nielsen*'s agreement was quite clear, but precedents the 3d Circuit cited have interpreted such language as barring successful prosecution only. See, e.g., *Heike v. U.S.*, 217 U.S. 423, 431 (1910).

One way to try to ensure a preindictment judicial determination of a defendant's breach is to negotiate for an express provision in the agreement for such a determination. The *Meyer* court noted the absence of such a provision in both Verrusio's and Hoff's agreements. 157 F.3d at 1077.

*Richard M. Cooper is a partner at Williams & Connolly in Washington. He can be reached via e-mail at rcooper@wc.com.*