# Exhibit 19



5/16/2005 NLJ S1, (Col. 1)                                                  Page 1

5/16/2005 Nat'l L.J. S1, (Col. 1)
(Publication page references are not available for this document.)


The National Law Journal
Vol. 27, No. 36
Copyright (c) 2005 by American Lawyer Media, ALM, LLC

May 16, 2005

In Focus: Circuit Court Review

### 3D CIR. TO HEAR HOT ANTITRUST ISSUE

JUDGE ENJOINED DOJ FROM INDICTING BASED ON BREACH OF IMMUNITY DEAL

Pamela A. MacLean
Staff Reporter

CORPORATE AMNESTY FOR the first member in a cartel to confess to price-fixing has become the most popular U.S. export since rock 'n' roll.

Now the 3d U.S. Circuit Court of Appeals could end the government's party.

A federal judge in Pennsylvania ruled in January that a court must review the government's decision to revoke a promise of immunity in an antitrust case before an indictment is returned. In addition, for the first time, the judge enjoined antitrust prosecutors from indicting those protected under an immunity deal. Stolt-Nielsen v. USA, No. C04-537TS.

Stolt-Nielsen Transportation Group Ltd., a Belgian company with 140 tankers shipping bulk liquids, sought and won amnesty. The company realized it had potential antitrust problems in February 2002, when its own in-house lawyer raised concerns about employee conduct. The company disclosed to U.S. Department of Justice (DOJ) officials in November 2002 that it and the two other chemical shippers that dominate the industry had secretly carved up the shipping routes four years earlier and agreed to stay away from one another's customers.

Stolt-Nielsen supplied evidence of the conspiracy in 2003; it pleaded guilty to price-fixing and promised to help convict the other participants.

But by 2004, the antitrust prosecutors became convinced that Stolt-Nielsen had not stopped its anti-competitive activity immediately in early 2002 and had forced out the in-house lawyer who first raised antitrust concerns in February of that year.

The government, after using Stolt-Nielsen's information for a year, winning convictions against two competitors and three executives, and collecting $62

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5/16/2005 NLJ S1, (Col. 1)                                                    Page 2

5/16/2005 Nat'l L.J. S1, (Col. 1)
**(Publication page references are not available for this document.)**

million in fines, announced it planned to revoke Stolt-Nielsen's immunity. It would prosecute the company, its parent and Richard Wingfield, the managing director of tanker trading.

Wingfield had supplied the 'smoking gun' evidence-25,000 pages of documents and customer lists to aid the government. Suddenly he faced criminal prosecution.

'Imagine the impact on his life,' said his attorney, Bobbie Liebenberg of Fine, Kaplan and Black in Philadelphia. 'He was arrested. He had to endure two very difficult years while the threat of prosecution hung over his head,' she said.

Liebenberg, along with Stolt-Nielsen lawyers, took the highly unusual step of filing a civil action in the Eastern District of Pennsylvania to enjoin the prosecutors from indicting the company and Wingfield. Much to the government's dismay, U.S. District Judge Timothy J. Savage issued the injunction this past January, finding that the government cannot unilaterally declare a breach in the grant of immunity but must first seek court approval.

Why indictment was enjoined

'Now that it has received the benefit of the bargain, DOJ cannot prosecute the party that incriminated itself when it delivered the evidence DOJ used to accomplish its goals,' Savage wrote.

He pointed out that DOJ does not say Stolt-Nielsen failed to cooperate or withheld information; rather, the justification to revoke the amnesty is that the company allegedly misrepresented the time it stopped the anti-competitive behavior. Although the government thought the company withdrew from the cartel in March 2002, the immunity agreement covered conduct to Jan. 15, 2003. 'Its inartful drafting cannot inure to its own benefit,' Savage wrote.

'The decision shows you do have a due process right and that the government can't unilaterally abrogate it,' Liebenberg said.

'This is hornbook contract law,' said J. Mark Gidley, a Stolt-Nielsen attorney in the Washington office of White & Case. 'Contracts require substantial performance, not perfect performance. The government had a quibble.'

The antitrust bar was stunned, first by the specter that the government might withdraw immunity agreements after cooperation was complete, and second that a judge might enjoin the government in advance of a potential indictment.

Scott Hammond, head of criminal enforcement for DOJ's Antitrust Division, declined to comment on the case, but others in the antitrust bar have weighed in.

'From the policy perspective, it is awfully dangerous for the judiciary to come in and issue an injunction against indictment,' said James Walden, a former federal prosecutor in New York and now with O'Melveny & Myers' white-collar defense group. The court 'is trampling on the right of prosecutors.' The executive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5/16/2005 NLJ S1, (Col. 1)                                                                           Page 3

5/16/2005 Nat'l L.J. S1, (Col. 1)
**(Publication page references are not available for this document.)**

branch should be allowed to go forward, and only after indictment should the defendant respond, he said.

'It is incredible for the court to reach into the preindictment phase,' Walden said.

DOJ's Antitrust Division won't let this decision stand without a fight. It is taking the case to the 3d Circuit.

Over the last decade, DOJ has enjoyed astonishing success in getting large companies to come clean about their roles in price-fixing cartels and exposing other cartel members in exchange for immunity from criminal prosecution as well as limiting the financial downside.

Price-fixing prosecutions

More than 50 corporations have been convicted of price-fixing in this program. Since 1997, more than $2 billion in fines have been levied against violators, 90% of that from international cartel activity. In the last five years, more than 80 individuals have served prison sentences stemming from these national and international cartels, according to DOJ numbers.

To win immunity from prosecution, a company had to be first in the door at DOJ, reveal a price-fixing scheme not yet under investigation and promise to cooperate with the government's prosecution of cartel members. The company also had to terminate its collusive activities.

Currently 50 sitting grand juries are investigating suspected international cartel activity, according to Hammond's speech to the American Bar Association in March.

Criminal amnesty has been so successful that other countries began adopting their own programs, with the encouragement of DOJ's Antitrust Division. The European Union and Canada have been early adopters and others have followed. It allows the firm seeking immunity to gain protection from potential civil or criminal liabilities around the world and it makes confessing more attractive.

Stolt-Nielsen was granted conditional immunity from fines by the European Commission for alleged collusion in its deep-sea parcel tanker and intra-European inland barge operations, according to a company statement in 2003.

Despite the financially attractive offer of immunity, in the early years corporate counsel still had to weigh the substantial financial risk of exposing the company to treble damages in private civil actions.

Recent protections enacted

In 2004, Congress stepped in with a new law adding protection for cooperators. That law allows only single damages against cooperating amnesty participants and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5/16/2005 NLJ S1, (Col. 1)                                                                 Page 4

5/16/2005 Nat'l L.J. S1, (Col. 1)
**(Publication page references are not available for this document.)**

it eliminates the doctrine of 'joint and several liability' for the amnesty-protected company.

'Amnesty programs have become our most popular export since rock 'n' roll,' said Jesse Markham, antitrust specialist in the San Francisco office of Morrison & Foerster.

A decade ago, the program met with serious skepticism.

'Lawyers [seeking amnesty for clients] proceed with great nervousness and suspicion,' said Markham. Walking a client into the government to admit wrongdoing in hopes of amnesty holds tremendous risks. 'If they elect to go forward, they may be shielding a client from criminal prosecution and exposing them to huge civil litigation,' he said.

That said, 'the U.S. amnesty program is the biggest change in antitrust law since the Sherman Act was signed,' Markham said. The government has broken up cartels in highly visible cases.

Savage's decision that he had authority to enjoin indictment of a company that prosecutors suspected of breaching an immunity deal shocked the antitrust bar.

'It was a fairly significant leap,' said Steven M. Kowel, head of white-collar defense at Bell, Boyd & Lloyd in Chicago. But he added that the government's decision to pull immunity protection unsettled the antitrust bar.

With large international companies, 'cartel conduct may happen in numerous places around the world. Suppose some midlevel manager in Asia continues [the illegal conduct]. Is that the kind of thing [where] the government says you did not really terminate the [cartel] agreement?' Kowel said. 'Are they in some jeopardy of prosecution?' he said.

Prior rulings on similar issues

Although Savage went further out on a legal limb than any other court, prior decisions suggest some courts may have been leaning in his direction.

As far back as 1986, the 7th Circuit said that the preferred procedure would be for the government to go to court for relief from an immunity agreement 'prior to indictment.' U.S. v. Verrusio, 803 F.2d 885 (7th Cir. 1986). In 1998, the 5th Circuit refused to let the government revoke an immunity deal in a Texas racketeering case, U.S. v. Castaneda, 162 F.3d 832 (5th Cir. 1998). The panel ruled: 'It ill behooves the government agents and prosecutors to enter into agreements of transactional immunity with mid-level co-conspirators, milk them of substantial leads and information that literally make the government's case against the 'big fish'...then, at the last moment, rely on some technical or relatively minor deficiency in performance to pull the rug from under the cooperating informant by claiming a breach and proceed to prosecute him in a slam-dunk case based largely on his own revelations.'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5/16/2005 Nat'l L.J. S1, (Col. 1)
**(Publication page references are not available for this document.)**

Judge Jacques Weiner Jr. said in Castaneda that if the government believes a defendant has breached the terms of a bargain, 'due process prevents the government from making this determination and nullifying the agreement unilaterally.' Instead, the government must prove to the court by a 'preponderance of the evidence' that the deal was breached.

That same year, the 7th Circuit again weighed in, suggesting that a judicial determination of a defendant's breach prior to trial is a 'de minimis inconvenience for the government.' U.S. v. Meyer, 157 F.3d 1067 (7th Cir. 1998). A year later in another 5th Circuit case, the court went a step further in saying that the court review of an alleged breach should be made prior to prosecution. U.S. v. Cantu, 185 F.3d 298 (5th Cir. 1999).

Now the Stolt-Nielsen case is in the hands of the 3d Circuit, with no date set for hearing the case, and briefing still a long way off.

Meanwhile, Markham said, antitrust lawyers can't afford to write the case off as an outlier at the edge of the law. 'Everybody is nervous. We have not had amnesty to worry about until this decision came out. Now it would be the first item on my agenda: seeing the government is not going to pull a Stolt-Nielsen on us.'

5/16/2005 NLJ S1, (Col. 1)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.