# Exhibit 1



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED | JUN 2 3 2004

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISANA

YANN GERON as CHAPTER 7 TRUSTEE
Of the Estate of O.N.E. SHIPPING, INC.
*Plaintiff*

Versus

**SECT. A MAG 5**

CASE NO. **04   1749**

ODFJELL ASA,
ODFJELL SEACHEM AS,
ODFJELL USA INC.,
ODFJELL TERMINALS (HOUSTON) LP,
ODFJELL AMERICAS, AS,
JO TANKERS AS,
JO TANKERS BV,
JO TANKERS INC.,
STOLT-NIELSEN TRANSPORATION GROUP LTD.,
STOLT PARCEL TANKERS INC.,
STOLTHAVEN TERMINALS, INC.,
COPENHAGEN TANKERS, INC.,
PARCEL TANKERS SERVICES, INC.,
PARCEL TANKERS DE COLUMBIA Y CIA LTDA.,
GRUPO TMM, &
TOKYO MARINE CO., LTD.
*Defendants*

JURY TRIAL DEMANDED

Fee $150.00
Process
Dktd
CtRmDep
Doc. No. 1

# **COMPLAINT**

Plaintiff, YANN GERON, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF O.N.E. SHIPPING (hereinafter "ONE"), by and through his undersigned attorneys, brings this action for treble damages, compensatory and punitive damages, interest on compensatory damages, attorneys' fees and costs. Plaintiff states claims under the antitrust laws of the United States, the applicable laws of the State of Louisiana, the General Maritime laws of the United States and under the common law, and demands a trial by jury.  Plaintiff alleges in support of his Complaint as follows:

## **A.    JURISDICTION AND VENUE**

This action is brought pursuant to 15 U.S.C. § 1 et. seq.  to recover damages for violations of the antitrust laws of the United States under Sections 1 and 2 of the Sherman Act (15 U.S.C. § 1) and Sections 4 and 16 of the Clayton Act (15 U.S.C. § 15-26), to recover compensatory, punitive, and treble damages and the costs of suit, including reasonable attorneys' fees.

Jurisdiction of this Court is founded on the afore-cited sections of the antitrust laws and on 28 U.S.C. § 1331, 1333 and 1337 and jurisdiction over the Defendants comports with the United States Constitution and 15 U.S.C. § 1 et. seq.  The Complaint is also brought pursuant to the General Maritime Laws of the United States; in tort against all Defendants; and brought

pursuant to the Louisiana Unfair Trade Practices Act LSA-R.S. 51:1401 for unfair trade practices and anti-competitive activity, and for engaging in a conspiracy to drive ONE from the market place pursuant to La. Civil Code Art. 2324. This Court's jurisdiction over the tort and state statutory and other federal claims is supplemental to its jurisdiction over the antitrust claims.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)-(d), 1395 and 15 U.S.C. § 15, 22 and 26 in that Defendants, as are more fully identified herein, inhabit, transact business, and/or are found and/or have agents in this District. Defendants regularly and continuously conduct business in domestic and international commerce into and out of the Port of New Orleans, and between the United States and foreign sovereign countries.

## B.   **BACKGROUND**

Plaintiff primarily seeks damages under the antitrust laws of the United States. This Complaint arises out of illegal contracts, combinations, and conspiracies in restraint of trade by the Defendants named herein and by individuals and corporate co-conspirators who will be specifically identified during the course of rule mandated disclosure and discovery. ONE, as more fully explained herein, operated ships known as Chemical Parcel Tankers. ONE was driven from business and into bankruptcy by the illegal contracts, combinations and conspiracies in restraint of trade by the Defendants. The antitrust violations involved the suppression and elimination of competition in

3

the market for the carriage by sea of chemicals, acids, fats and oils (hereinafter "Liquid Bulk Chemicals and Products") between the United States and Mexico, Central America, South America and the Caribbean. The violations include predatory pricing, attempted monopolization, and monopolization. The Defendants are other owners and/or operators of Chemical Parcel Tankers. Two of the Defendants also own and operate storage terminals in the United States and South America from where the Liquid Bulk Chemicals and Products carried aboard the Chemical Parcel Tankers are stored and distributed. Because some of the subject matter of this Complaint is particular to the shipping industry, a glossary of terms in common use in the shipping industry follows:

## DEFINITIONS

> "**Charter Party**" is an agreement between a shipowner and a supplier of cargo outlining terms and conditions for the transportation of goods. The charter party may be for one or several voyages ("Voyage Charter") or for a certain period of time.

> "**Chemical Parcel Tankers**" are highly specialized, technologically advanced ships designed for the simultaneous transportation of multiple liquid cargoes. A chemical tanker can have many separate tanks with complete segregations for its cargo lines and pumps. The cargo tanks are normally constructed of stainless steel or mild steel coated with epoxy or zinc-based paints.

> "**Contract of Affreightment**" ("COA") is an agreement between a shipowner and a supplier of cargo to transport given quantities of cargo during a certain period of time with the shipowner basically free to decide which ship will be used.

> "**Deep-Sea**" (Global) is seaborne trade that moves on intercontinental trade routes.

4

> "**Freight**" is the agreed upon cost to transport liquid chemical cargoes and other goods and is usually stipulated either per metric ton of cargo, cubic meter of cargo or as a lump sum for the total cargo.

> "**Liquid Bulk Chemicals and Products**" are organic and inorganic chemicals, including petrochemicals, vegetable oils, animal fats, alcohols, lubricating oils, and petroleum products, all carried in Chemical Parcel Tankers.

> "**Parcels**" is the name by which individual shipments of chemicals are transported by Chemical Parcel Tankers.

> "**Segregation**" is the division of a Chemical Parcel Tanker's cargo space into individual tanks.

> "**Short-Sea**" (Regional) is seaborne trade that moves on regional, as opposed to intercontinental, trade routes.

> "**Spot**" is the freight rate agreed for a voyage on the basis of current market conditions.

> "**Time Charter Party**" is an agreement where the shipowner lets his ship to a charterer for an agreed period of time during which time the charterer controls the commercial operation of the ship.

## C.    PARTIES

### a.    *PLAINTIFF*

1)    **YANN GERON, CHAPTER 7 BANKRUPTCY TRUSTEE FOR THE ESTATE OF O.N.E. SHIPPING, INC.**, is a member of the panel of private trustees established by the Region 2 United States Trustee in the Southern District of New York pursuant to 28 U.S.C. § 586. Plaintiff maintains offices at Geron & Associates, P.C., 13 East 37th Street, Suite 800, New York, New York 10016. ONE is a bankrupt Delaware corporation which had a principal place of business at 2 Ridgedale Avenue, Cedar

5

Knolls, New Jersey 07927.   The principal business of ONE, founded in 1963, was the operation of Chemical Parcel Tankers between the United States and Mexico, Central America, South America, and the Caribbean.   In 2002, ONE filed a petition for dissolution under Chapter 7 of the United States Bankruptcy Code resulting from  the illegal contracts, conspiracies and combinations of Defendants in violation of the antitrust laws of the United States and the laws of the State of Louisiana. This action brought on behalf of ONE is brought by Plaintiff, Yann Geron, as trustee of ONE's bankruptcy estate. Plaintiff's retention of the undersigned counsel for purposes of representing him in the instant action has been authorized by the United States Bankruptcy Court for the Southern District of New York. (See Order entered April 15, 2004, attached hereto as **"EXHIBIT A".**)

b.    **_DEFENDANTS_**

1)    **ODFJELL ASA, AND ITS SUBSIDIARIES, ODFJELL SEACHEM AS, ODFJELL USA INC., ODFJELL TERMINALS (HOUSTON) LP, and ODFJELL AMERICAS AS ("ODFJELL"),** is a publicly traded Norwegian corporation with an office and principal place of business at Conrad Mohrs Veg 29, in Bergen,

Norway. Its two largest shareholders are the Odfjell family of Bergen, Norway and Chemlog APS, a Danish company whose shares are beneficially owned by Peter Livanos, an American citizen. Odfjell's primary business is the worldwide transportation by sea of Liquid Bulk Chemicals and Products in Chemical Parcel Tankers and the storage and distribution of such Liquid Bulk Chemicals and Products. Defendant ODFJELL, through itself and its subsidiaries, operates Chemical Parcel Tankers worldwide in Deep Sea Trades and in Regional Trades from the United States to Mexico, Central America, South America, the Caribbean and Canada, and regularly conducts business in the Port of New Orleans and within this judicial district. Defendant ODFJELL admits that it controls a market share of approximately 25% in the ocean transportation of Liquid Bulk Chemicals and Products. Defendant ODFJELL operates through its subsidiary, Odfjell Terminals (Houston) Inc., a storage terminal in Bayport, Texas for the storage and distribution of Liquid Bulk Chemicals and Products and also owns and operates storage terminals throughout South America.

2)   **JO TANKERS AS, AND ITS SUBSIDIARIES JO TANKERS BV, and JO TANKERS INC. ("JO"),** upon information and belief, is a

Norwegian/Dutch company with offices and principal places of business at Kokstadflaten 5, Kokstad, Bergen, Norway, and Boyleweg 6, 3208 KA, Spijkenisse, The Netherlands. Its shareholders are the Odfjell family of Bergen, Norway. The primary business of Defendant JO is the transportation by sea and distribution of Liquid Bulk Chemicals and Products. JO operates, either through itself, through wholly-owned subsidiaries, or through cooperating partners, a fleet of approximately 40 Chemical Parcel Tankers in the Deep Sea and Short Sea Trades with a total deadweight tonnage of approximately 862,019 tons. Defendant JO operates Chemical Parcel Tankers from Europe to and from Central and South America and from the United States Gulf to and from the Caribbean and Venezuela, and regularly conducts business in the Port of New Orleans and within this judicial district. Defendant JO controls a market share of approximately 10% of the Chemical Parcel Tanker Market.

3) **STOLT-NIELSEN TRANSPORTATION GROUP LTD., AND ITS SUBSIDIARIES STOLT PARCEL TANKERS INC., and STOLTHAVEN TERMINALS, INC.("STOLT-NIELSEN")** is, upon information and belief, a Liberian corporation with an office and principal place of business at 8 Sound Shore Drive, Greenwich,

Connecticut, U.S.A. 06836.  Publicly traded on the NASDAQ, its principal shareholders are the STOLT-NIELSEN family of Oslo, Norway and NYK Line of Tokyo.  The primary business of STOLT-NIELSEN is the transportation in Chemical Parcel Tankers of Liquid Bulk Chemicals and Products and their storage and distribution through land-based terminals.  STOLT-NIELSEN operates, either through itself, through wholly-owned subsidiaries and affiliates, or with cooperating partners, over seventy Deep Sea Chemical Parcel Tankers with a total deadweight tonnage of approximately 2,100,000 tons.  STOLT-NIELSEN also operates either through itself or through wholly-owned subsidiaries, a fleet of over twenty-five Chemical Parcel Tankers in Regional Trades. STOLT-NIELSEN operates Chemical Parcel Tankers in trades from the United States to Mexico, Central America, South America and the Caribbean, and regularly conducts business in the Port of New Orleans and within this judicial district.    STOLT-NIELSEN has admitted that it controls a market share of approximately 34% of the specialty chemical market and a worldwide market share of approximately 24% of the Chemical Parcel Tanker Market involving ships larger than 10,000 deadweight tons.  Defendant STOLT-NIELSEN also operates --

through its subsidiary Stolthaven Terminals -- storage terminals in Braithwaite, Louisiana, Houston, Texas, and Santos, Brazil for the storage and distribution of Liquid Bulk Chemicals and Products.

4) **COPENHAGEN TANKERS, INC., AND ITS SUBSIDIARIES PARCEL TANKERS SERVICES, INC., and PARCEL TANKERS DE COLUMBIA Y CIA LTDA.,** **("COPENHAGEN"),** upon information and belief, is a domestic corporation with an office and principal place of business at 40 Richards Avenue, Norwalk, Connecticut 06854.  Its shareholders are the Tschudi + Eitzen Group of Lysaker, Norway, the Clipper Group, and Wonsild & Sons A/S.  The primary business of COPENHAGEN, including its affiliate or wholly-owned subsidiary PARCEL TANKER SERVICES, is to act as commercial manager for Panamerican Tankers, Inc., which transports Liquid Bulk Chemicals and Products on board Chemical Parcel Tankers.  COPENHAGEN operates, either through itself, or through affiliates and subsidiaries, a fleet of over thirty-five Chemical Parcel Tankers with a total deadweight tonnage of approximately 372,000 tons. Defendant COPENHAGEN's primary area of operation is in trades from the United States to Central and South America, and

regularly conducts business in the Port of New Orleans and within this judicial district.

5) **GRUPO TMM ("TMM")**, upon information and belief, is a foreign corporation with an office and principal place of business at Avenida de la Cuspide No. 4755, C.P. 14010 Col. Parque del Pedregal, Mexico City, Mexico. TMM is the largest logistics and transportation provider in Latin America and, according to its own website, "is the dominant provider of...specialized maritime" services to Mexico and has publicly stated that "if you [a customer] are shipping to and from Mexico, we [TMM] probably touch your product in one way or another". TMM operates, either through itself or through its affiliates NAVIERA DEL PACIFICO, a fleet of Chemical Parcel Tankers moving over a million tons of chemicals, oils, and molasses between Mexico and the United States annually, and regularly conducts business in the Port of New Orleans and within this judicial district.

(6) **TOKYO MARINE CO., LTD. ("TOKYO MARINE")**, upon information and belief, is a foreign corporation with an office and principal place of business at 5th Floor JP Building, 4-4, 30-chome, Nihonbashi-Muromachi, Chuo-ku, Tokyo, 103-0022 Japan. The primary business of TOKYO MARINE is the

11

transportation of Liquid Bulk Chemicals and Products. TOKYO MARINE operates, either through itself, through affiliates, and subsidiaries, a fleet of 41 chemical tankers with a total deadweight tonnage of approximately 623,000 tons. TOKYO MARINE controls an approximate market share of 6% of the Chemical Parcel Tanker Market.

Defendants **ODFJELL, JO, STOLT-NIELSEN, COPENHAGEN, TMM and TOKYO MARINE** are hereinafter sometimes referred to collectively as **"Defendants."**

## D.    <u>UNNAMED CO-CONSPIRATORS</u>

Upon information and belief, certain other shipowners or operators of Chemical Parcel Tankers as well as individuals and persons currently or previously employed by the Defendants and Unnamed Co-Conspirators, including senior management personnel, are co-conspirators with Defendants. These individuals, persons, other shipowners or operators of Chemical Parcel Tankers have facilitated, adhered to, participated in and communicated with Defendants regarding the illegal conspiracies, contracts and combinations in restraint of trade which resulted in the losses suffered by ONE.  These individuals, persons, and other shipowners or operators of Chemical Parcel Tankers that have caused harm to ONE have either acted willingly or, due to coercion by one or more of the named defendants, unwillingly, in furtherance

of the unlawful restraints of trade.  The identities of these co-conspirators will become specifically known through discovery and ONE reserves the right to amend this Complaint so as to make such co-conspirators Defendants herein.

**E.    THE U.S. EXPORT CHEMICAL TRADE AND THE ROLE PLAYED BY CHEMICAL PARCEL TANKERS TO SUPPORT THE U.S. EXPORT CHEMICAL TRADE**

The United States' chemical industry is vital to the economy of the United States. It is estimated that said industry generates over Four Hundred Billion ($400,000,000,000.00) Dollars of sales each year.  The U.S. chemical industry accounts for more than 25% of the annual $1.53 trillion in worldwide chemical sales.  Chemicals are also the leading U.S. export.  For example, in 1998, Sixty-eight Billion ($68,000,000,000.00) Dollars worth of chemicals were exported from the United States.

Because the vast majority of these chemicals are liquid and are exported in cargo lots or Parcels of 150 metric tons or greater, Chemical Parcel Tankers with their many segregations are the preferred means of transport.  In a typical transaction, owners and operators of Chemical Parcel Tankers such as ONE would negotiate Contracts of Affreightment and/or Charter Parties with the major chemical producers, manufacturers and shippers,  such as Petrocel, BASF, Chevron Phillips, Dow, ExxonMobil, Shell, HCI and Celanese.  The Contracts of Affreightment and Charter Parties would describe various commercial  details such as the loading and discharging

13

ports, type and amount of cargo to be shipped, and freight and demurrage rates. Chemical companies would then load their chemicals aboard Chemical Parcel Tankers as individual Parcels and the Chemical Parcel Tankers would then transport the Liquid Bulk Chemicals and Products to their intended destinations in exchange for the payment of freight.

From 1996 to 2001, an average of over five million (5,000,000) tons of Liquid Bulk Chemicals and Products were *exported* annually from the United States, including the Port of New Orleans, to Mexico, Central America, South America and the Caribbean. Upon information and belief, the manufacturers and shippers of those Liquid Bulk Chemicals and Products paid more than an estimated Three Hundred Sixty Million Dollars ($360,000,000) in ocean freight and other transportation charges to the owners and operators of Chemical Parcel Tankers, including ONE.

From 1996 to 2001, an average of over two million tons of Liquid Bulk Chemicals and Products were *imported* annually to the United States and through the Port of New Orleans from Mexico, Central America, South America and the Caribbean. Upon information and belief, the shippers of those Liquid Bulk Chemicals and Products paid more than an estimated One Hundred Fifty Million Dollars ($150,000,000) in ocean freight and other transportation charges to the owners and operators of Chemical Parcel Tankers, including ONE.

14

A significant portion of the total consumer cost of the Liquid Bulk Chemicals and Products is the cost of ocean transportation, i.e., freight. It is vital to the international competitiveness of the U.S. export involved that there be active, actual and unfettered competition among shipowners operating Chemical Parcel Tankers.

## F. THE DEFENDANTS HAVE COLLECTIVELY CONCEDED THAT THE CHEMICAL TANKER TRADE IS AN OLIGOPOLY

The Chemical Parcel Tanker trade consists of four (4) large operators: Defendants ODFJELL, JO, STOLT-NIELSEN and TOKYO MARINE. Each of these Defendants operates thirty (30) or more ships and collectively control over 60% of the Chemical Parcel Tanker tonnage. ODFJELL, JO, STOLT-NIELSEN and TOKYO MARINE sail their chemical tankers worldwide in the Deep Sea Trade and Defendants ODFJELL, JO and STOLT-NIELSEN each also maintain a presence in Deep Sea and Regional Trades in Central America, South America and the Caribbean. Defendants ODFJELL and STOLT-NIELSEN have each admitted to controlling approximately 25% of the worldwide Chemical Parcel Tanker Market involving ships greater than 10,000 deadweight tons. Defendant ODFJELL has also calculated that Defendant JO has a 10% worldwide share of the Chemical Parcel Tanker Market. In respect of trade to Mexico, with the elimination of ONE, Defendants ODFJELL, TMM and STOLT-NIELSEN have acquired a collective market share *in excess of*

*90%* of the Liquid Bulk Chemicals and Products exports from the United States to Mexico. With respect to trade lanes between the U.S. and Central and South America and the Caribbean, where Defendant COPENHAGEN also operates its Chemical Tankers, Defendants COPENHAGEN, ODFJELL, JO and STOLT-NIELSEN have acquired a collective market share *in excess of 90%* of the Liquid Bulk Chemicals and Products exported from the U.S. Gulf to Mexico, Latin America, South America and the Caribbean, and together have acquired a collective market share in excess of 80% of the Liquid Bulk Chemicals and Products imported from Latin America and South America to the United States. These market shares in Mexico, South and Central America, and the Caribbean have been acquired through the operation of illegal contracts, agreements, conspiracies and combinations in restraint of trade in suppression and elimination of competition and at the expense of ONE.

## G.    ONE'S BACKGROUND AND HISTORY

ONE was established in 1963 by Magnus Olsen, an American citizen, to operate Chemical Parcel Tankers between the United States, Mexico, South America, Central America and the Caribbean. For twenty-eight years, from 1963 until its forced withdrawal from the Chemical Parcel Tanker business in 2001, it was the most prominent carrier in the seaborne carriage of Liquid Bulk Chemicals and Products between the United States and Mexico, Central

America, South America and the Caribbean. ONE would lease or time charter high quality Chemical Parcel Tankers and operate them in trade lanes from United States to Mexico, Central America, South America and the Caribbean. Significant long-term customers of the ONE were Exxon, Shell, Petrocel, Celanese, BP, BASF and other major chemical and oil companies.

ONE was very successful over the years. Revenue earned by ONE more than doubled from 1992 to approximately 1998. Additionally, for that same period of time, the annual volume of cargoes carried by ONE's Chemical Parcel Tankers also more than doubled. ONE derived substantial profits despite occasional losses attributable to the cyclical nature of the Chemical Parcel Tanker Business. It was a measure of ONE's success that both Defendants JO and STOLT-NIELSEN actively sought to acquire ONE in 1998, but were unsuccessful.

## H.    CONDUCT OF DEFENDANTS, STOLT-NIELSEN, ODFJELL, JO TANKERS and TOKYO MARINE

By the late 1990's, ONE had a significant, established and profitable presence in the market for shipping Liquid Bulk Chemicals and Products between the United States and Mexico, Central America, South America and the Caribbean. In terms of the market share of cargo shipped, ONE carried approximately one-third of Liquid Bulk Chemicals and Products between the U.S. and Mexico and approximately half of the chemicals between the U.S. to Venezuela. ONE also had a significant presence in the market for the ocean

carriage of Liquid Bulk Chemicals and Products between the U.S. and Central America, the Caribbean and South America and in the market for U.S. imports of Liquid Bulk Chemicals and Products from South America, Central America, Mexico and the Caribbean.

Although Defendant STOLT-NIELSEN had competed with ONE in the Mexican, South American, and Central American markets for years, it had been unable to gain significant market share. ONE furthermore refused to join in any conspiracies, contracts, or combinations in restraint of trade with STOLT-NIELSEN or any of the other Defendants and refused to be bought out by STOLT-NIELSEN. Consequently, Defendant STOLT-NIELSEN decided on a course of action to drive ONE out of business. That course of action involved its co-conspirators and fellow defendants ODFJELL and TMM.

## I. THE WRONGFUL COURSE OF CONDUCT

In November of 1997, Defendant ODFJELL acquired Andino Chemical Tankers of Houston for $40,000,000.  Andino operated a fleet of six elderly Chemical Parcel Tankers in between the U.S. Gulf and Central America, the west coast of South America, and the Caribbean.  Before it acquired  Andino, Defendant ODFJELL had only a minor presence in the markets in which ONE operated. However, now it was in a position to  pose a major competitive threat to STOLT-NIELSEN. Thus, in the summer of 1998, after a series of clandestine meetings concluded in the United States and Europe, Defendants

STOLT-NIELSEN and ODFJELL concluded a clandestine and illegal conspiracy, contract, and combination with the aim of monopolizing the worldwide carriage of Liquid Bulk Products and the Chemical Parcel Tanker Market. This conspiracy provided that (i) Defendants ODFJELL and STOLT-NIELSEN would allocate customers and contracts of affreightment; (ii) divide markets; (iii) adjust and restrict shipping capacity; (iv) rig bids; and (v) eliminate competitors. One of the competitors Defendants STOLT-NIELSEN and ODFJELL targeted for elimination was ONE. Details of this illegal conspiracy were communicated to the senior commercial management of Defendant STOLT-NIELSEN at a meeting at the Greenwich Country Club in August of 1998. Defendant ODFJELL communicated this illegal conspiracy to its management in Bergen, Norway, and Houston, Texas at approximately the same time. Defendants ODFJELL and STOLT-NIELSEN invited Defendant JO TANKERS to join their conspiracy sometime in the second half of 1998. JO TANKERS accepted this "offer." TOKYO MARINE also agreed to join this conspiracy in late 1998. This conspiracy would directly and adversely affect ONE.

In particular, Defendants STOLT-NIELSEN, ODFJELL, JO and TOKYO MARINE (i) agreed not to compete with each other in markets in which ONE operated; (ii) further agreed to target contract customers of ONE and prepare bids for those customers' business in a below-cost predatory fashion; (iii)

agreed that, upon elimination of ONE, Defendants STOLT-NIELSEN, ODFJELL, JO and TOKYO MARINE would monopolize and then allocate the relevant markets by customer and divide those markets geographically; and (iv) to do those other things that would drive ONE from its long-established markets and eliminate ONE as a competitor. Defendants TMM and COPENHAGEN TANKERS joined this conspiracy at a later point in time.

These illegal conspiracies, agreements, contracts and combinations in restraint of trade among Defendants resulted in the loss of customers by ONE because of predatory pricing, a sharp and immediate decline in revenue leading to substantial losses and an eventual forced departure from the Chemical Parcel Tanker Business.   ONE suffered losses in excess of $8,000,000 for the period 1998-2002, did not earn profits it would have earned absent Defendants' criminal acts, incurred liabilities in excess of $25,000,000 because of its inability to satisfy contractual obligations, defaulted on time charter hire payments, and was forced to redeliver  their chartered Chemical Parcel Tankers to their respective owners. Two of ONE's Chemical Parcel Tankers were actually taken over by Defendants ODFJELL and TMM. ONE was driven from the Chemical Parcel Tanker business. Thus, ONE was left with no alternative but to declare bankruptcy in 2002.

J.    **CONDUCT OF DEFENDANTS, ODFJELL, STOLT-NIELSEN, JO TANKERS, TOKYO MARINE AND TMM**

As previously established, in the summer of 1998, Defendants ODFJELL and STOLT-NIELSEN (which Defendants JO TANKERS and TOKYO MARINE joined later that year) had entered into an illegal and clandestine worldwide agreement to (i) allocate customers and contracts of affreightment; (ii) divide markets geographically; (iii) adjust shipping capacity; (iv) rig bids; (v) eliminate competitors; and (vi) not compete.   A market targeted by this illegal and clandestine conspiracy was the Liquid Bulk Chemicals and Products market between the U.S., Mexico and the Caribbean. In 1998, ODFJELL, STOLT-NIELSEN, JO and TOKYO MARINE agreed that ONE would be eliminated from the market.   This agreement between Defendants STOLT-NIELSEN, ODFJELL, JO and TOKYO MARINE in turn allowed STOLT-NIELSEN and TMM to enter into a further conspiracy aided and abetted by Defendants ODFJELL, JO and TOKYO MARINE to conspire in order to eliminate competition and ONE from the U.S.-Mexico market.

At the time this illegal and clandestine worldwide conspiracy was entered into by Defendants STOLT-NIELSEN, ODFJELL, JO TANKERS and TOKYO MARINE, the leading Chemical Parcel Tanker operators in the U.S.-Mexico market were, respectively, ONE, Defendant GRUPO TMM and Defendant STOLT-NIELSEN.   Defendant TMM (which describes itself as the

"largest logistics and transportation company in Latin America", however, had only recently (in 1977) started operating Chemical Parcel Tankers in the U.S.– Mexico market.

Defendant TMM approached ONE in early 1999 to discuss "cooperation" in the market for shipping Liquid Bulk Chemicals and Products between the U.S. and Mexico. ONE rebuffed Defendant TMM and TMM then approached Defendant STOLT-NIELSEN. As a result of this approach and the discussions that ensued between Defendants TMM and STOLT-NIELSEN, an illegal conspiracy, contract, and combination in restraint of trade was hatched: the principal target of the conspiracy was ONE and the elimination of ONE as a competitor in the U.S.-Mexico-Caribbean Chemical Parcel Tanker shipping business.

The discussions between STOLT-NIELSEN and TMM in the front half of 1999 contemplated the establishment of a joint venture for the shipment of Liquid Bulk Chemicals and Products between the U.S. Gulf and Mexico. A secondary business for that jointly-owned company would have been the shipment of Liquid Bulk Chemicals and Products between U.S. ports and ports in Central America, the Caribbean, and northern South America. Using these discussions as cover, Defendants TMM and STOLT-NIELSEN conceived of, decided upon and implemented an illegal conspiracy, contract or combination in restraint of trade with the prime target to be the elimination

22

of ONE as a competitor to Defendants TMM and STOLT-NIELSEN and the proposed joint venture. To this end, Defendants TMM and STOLT-NIELSEN, being free of competition from Defendants ODFJELL, JO and TOKYO MARINE in the markets in which ONE competed with Defendants TMM and STOLT-NIELSEN, conspired and colluded by dividing ONE's existing customers between themselves and then engaging in a mutual campaign of predatory pricing well below Defendants' TMM and STOLT-NIELSEN'S operating costs. The aim of this predatory pricing conspiracy was to take ONE's customers, deprive ONE of revenue and bankrupt ONE, all in violation of the antitrust laws of the United States. Defendants TMM and STOLT-NIELSEN (along with Defendants JO, ODFJELL and TOKYO MARINE) succeeded in this scheme and were successful in their conspiracy to drive ONE out of business, and did indeed bankrupt ONE. Defendants ODFJELL, JO and TOKYO MARINE were conspirators by virtue of their participation in the worldwide conspiracy hatched in 1998. In 2001, after ONE was commercially eliminated, ODFJELL entered this market and, in 2001, commanded a market share of 20%.

## K. COLLUSION BETWEEN DEFENDANTS STOLT-NIELSEN AND TMM

In addition to this broad conspiracy among Defendants ODFJELL, JO TANKERS, TOKYO MARINE, TMM, and STOLT-NIELSEN, Defendants TMM

23

and STOLT NIELSEN acted to the detriment of ONE during the merger review process mandated by U.S. law.  On November 9, 1999, Defendants STOLT-NIELSEN and TMM announced their intention to merge their Caribbean and Gulf of Mexico Chemical Parcel Tanker businesses. The merger had been announced earlier that year, in July of 1999, in Defendant's STOLT-NIELSEN's in-house magazine, STOLTEN. This merger was subject to the approval of the Federal Trade Commission of the United States ("FTC") under the Hart-Scott-Rodino Act ("HSR").  Pending HSR approval, Defendants TMM and STOLT-NIELSEN were obliged by law to continue to compete with each other as well as others and to remain independent entities.

HSR approval was never granted and the merger was never consummated because of objections from ONE.   Nonetheless and notwithstanding the obligations imposed by law to continue to compete with each other and others and to remain independent entities pending FTC review, Defendants STOLT-NIELSEN and TMM had in fact ceased to compete with each other (and had, in fact, began to cooperate illegally with each other) beginning in the spring of 1999, when discussions about a merger began.  This illegal cooperation and lack of competition between Defendants TMM and STOLT-NIELSEN continued from the spring of 1999 through at least the spring of 2000.  In furtherance of this conspiracy, Defendants TMM and STOLT-NIELSEN allocated customers, divided markets, rigged bids,

engaged in predatory pricing, conspired to eliminate ONE as a competitor, and otherwise acted to monopolize the relevant markets.

These illegal conspiracies, contracts and combinations in restraint of trade between defendants STOLT-NIELSEN and TMM resulted in the loss of customers by ONE, a precipitous decline in revenue leading to significant losses and an eventual forced departure from the Chemical Parcel Tanker business. ONE suffered losses in excess of $8,000,000 for the period 1998-2002, incurred substantial liabilities because of its inability to satisfy contractual obligations, defaulted on time charter hire payments, and was forced to redeliver its time chartered Chemical Parcel Tanker to their respective owners. ONE was driven from the Chemical Parcel Tanker business. In addition to the trading losses, ONE was left with no alternative but to declare bankruptcy in 2002.

## L.    CONDUCT OF DEFENDANTS, ODFJELL, STOLT-NIELSEN, JO TANKERS AND COPENHAGEN

Beginning in 1998 and continuing until as late as November of 2002, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, and COPENHAGEN agreed among themselves not to compete against the others, to divide markets, to allocate customers, to rig bids in respect of Liquid Bulk Chemicals and Products exported from the United States to Mexico, South America, Central America and the Caribbean, and to monopolize those markets. These

conspiracies, contracts and combinations in restraint of trade were conceived of and implemented by Defendants ODFJELL, JO, STOLT-NIELSEN and COPENHAGEN and other unnamed co-conspirators and consisted of agreements to allocate customers, divide markets, rig bids, engage in predatory pricing and not compete with each other in the market for the import and export of Liquid Bulk Chemicals and Products between the United States and Mexico, South America, Central America and the Caribbean. Defendants ODFJELL, JO, STOLT-NIELSEN, and COPENHAGEN particularly targeted customers and markets of ONE and conspired among themselves to suppress and eliminate competition.

These illegal conspiracies, contracts and combinations in restraint of trade among defendants ODFJELL, STOLT-NIELSEN, COPENHAGEN and JO resulted in the loss of customers by ONE, a sharp decline in revenue leading to significant losses and an eventual forced departure from the Chemical Parcel Tanker shipping business. ONE suffered losses in excess of $8,000,000 for the period 1998-2002, incurred substantial liabilities because of its inability to satisfy contractual obligations, defaulted on time charter hire payments, and was forced to redeliver its time chartered Chemical Parcel Tankers to their respective owners. ONE was forced out of the Chemical Parcel Tanker business. In addition to the trading losses, ONE was left with no alternative but to declare bankruptcy in 2002.

## M. TWO DEFENDANTS HAVE ADMITTED TO PARTICIPATION IN A CRIMINAL CONSPIRACY, DEFENDANTS ODFJELL AND JO TANKERS HAVE EACH PLED GUILTY TO VIOLATIONS OF U.S. ANTITRUST LAWS AND PAID, RESPECTIVELY, FINES OF $42,500,000 AND $18,500,000

On September 29, 2003, Defendant ODFJELL agreed to plead guilty to a criminal charge that it participated in an international cartel to allocate customers, rig bids and fix prices on parcel tanker contracts of affreightment for the shipment of Liquid Bulk Products to and from the U.S. and elsewhere. ODFJELL also agreed to pay of a fine of $42,500,000.

According to the charges, between August 1998 and November 2002, ODFJELL participated in a conspiracy with co-conspirators which was carried out by:

- Attending meetings and engaging in discussions in the U.S. and elsewhere concerning customers and prices of contracts of affreightment for parcel tanker shipping of products to and from the U.S. and elsewhere;

- Agreeing during those meetings and discussions to allocate customers and to create and exchange customer lists in order to implement and monitor this agreement;

- Agreeing during those meetings and discussions not to compete for one another's customers either by not submitting prices or bids to

- certain customers, or by submitting intentionally high prices or bids
  to certain customers; and

- Discussing and exchanging prices to certain customers so as to not
  undercut one another's prices.

As a result, the Department of Justice ("DOJ") maintained that consumers in the market for international parcel tanker shipping services paid non-competitive and higher prices for parcel tanker shipping.[1]

On April 19, 2004, JO Tankers B.V. agreed to plead guilty and pay a $19.5 million criminal fine for participating in an international cartel to allocate customers, rig bids and fix prices on parcel tanker affreightment contracts for shipments of specialty liquids to and from the United States and elsewhere. As a result of the conspiracy, the DOJ maintained that consumers in the market for international parcel tanker shipping services paid non-competitive and higher prices for parcel tanker shipping.

According to the charges, between the second half of 1998 and November 2002, JO TANKERS participated with its co-conspirators in the parcel tanker shipping conspiracy which was carried out by:

- Engaging in meetings and discussions concerning customers and
  prices of parcel tanker shipping of products to and from the
  United States and elsewhere;

---

[1] The CEO of Odfjell, Bjorn Sjaastand, and his deputy, Erik Nilsen, were also fined and sentenced to prison.

28

- Agreeing not to compete for one another's customers either by not submitting prices or bids to certain customers, or by submitting intentionally high prices or bids to certain customers; and

- Discussing and exchanging prices submitted to certain customers so as to not undercut one another's prices.[2]

Copies of the Department of Justice press releases are attached hereto as **"EXHIBIT B (1-6)."**

## COUNT I AS AGAINST DEFENDANTS ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE (*CONSPIRACIES, COMBINATIONS AND CONTRACTS IN RESTRAINT OF TRADE*)

**1.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE are separate entities ostensibly competing in the worldwide freight market for the shipment by sea and storage of Liquid Bulk Chemicals and Products. An important market is the Liquid Bulk Chemicals and Products trade between ports located in the United States Gulf of Mexico and: (i) South America; (ii) Mexico; (iii) Central America; and (iv) the Caribbean. Defendants ODFJELL and STOLT-NIELSEN also ostensibly compete in the bulk storage

---

[2] The former managing director of JO also pled guilty and is in jail. A senior executive of Stolt-Nielsen, Richard Wingfield, was arrested in June of 2003 and charged with criminal price-fixing.

of these same Liquid Bulk Chemicals and Products in terminals in the United States, Brazil, Chile and Peru.

**2.**

Since at least the summer of 1998, and continuing as late as November 1, 2002, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE have entered into contracts, combinations, or conspiracies in restraint of interstate and international trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1, et. seq., the Clayton Act, 15 U.S.C. § 15 et. seq., the General Maritime Laws of the United States and the laws of the State of Louisiana.

**3.**

These unlawful contracts, combinations or conspiracies consist of attempts and agreements to (i) allocate customers and contracts of affreightment; (ii) divide markets; (iii) restrict shipping capacity; (iv) rig bids; (v) eliminate competitors; (vi) conduct predatory pricing; (vii) not compete; and (viii) monopolize the relevant markets.

**4.**

For the purpose of forming and carrying out the alleged contracts, combinations and conspiracies, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE and their employees did those things that they contracted, combined and conspired to do, including *inter alia*:

(a) Participating in clandestine meetings and conversations to discuss customer allocation, the division of markets, the adjustment of capacity bid rigging, elimination of competitors, predatory pricing, non-competition and monopolization;

(b) Agreeing, during these clandestine meetings and conversations, to allocate customers, divide markets, adjust capacity, rig bids, eliminate competitors, charge predatory pricing, not compete, and monopolize markets with the aim, *inter alia*, of driving ONE from the Chemical Parcel Tanker business.

**5.**

These anticompetitive contracts, combinations and conspiracies described herein are *per se* unlawful.

**6.**

Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS' and TOKYO MARINE's restraints of trade or commerce have substantially affected commerce between the United States and foreign nations and have had the following effects:

(a) ONE has been eliminated as a competitor in the market for the carriage by sea of Liquid Bulk Chemicals and Products;

(b)     ONE has been driven to insolvency and left with no alternative but to declare bankruptcy;

(c)     Competition between STOLT-NIELSEN, ODFJELL, JO TANKERS and TOKYO MARINE has been virtually eliminated;

(d)     Public and private institutions, facilities and agencies and citizen consumers have been deprived of the benefits of free, open and unrestricted competition in the establishment of ocean freight rates for the carriage by sea of Liquid Bulk Chemicals and Products;

(e)     Competition in establishing ocean freight rates for the carriage by sea and storage of Liquid Bulk Chemicals and Products has been illegally and unlawfully restrained, suppressed and eliminated.

## 7.

Substantial portions of the Defendants' unlawful and illegal conspiratorial conduct occurred within the United States. Defendants derive more ocean freight revenue from chemical manufacturers, shippers and products located in the United States than in any other country. Defendants intended and expected, at the time they devised, implemented and maintained their anticompetitive conspiracies, contracts, and combinations in restraint of trade alleged herein, that they would affect, suppress, and eliminate

competition in the carriage by sea and storage of Liquid Bulk Chemicals and Products.

**8.**

Absent these anticompetitive conspiracies and the elimination of competitors, Defendants could not have successfully engaged in predatory pricing and could not have eliminated ONE as a competitor.

**9.**

ONE did not know of Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS' and TOKYO MARINE's unlawful contracts, combinations and conspiracies in restraint of trade and, in the exercise of due diligence, could not have reasonably discovered them more than four years before the filing of this Complaint because of Defendants' fraudulent concealment.    In particular, Defendants conducted secret meetings and conferences and communicated in code specifically in order to avoid detection.  As a consequence of this fraudulent concealment, all applicable statutes of limitations or other prescriptive periods are tolled.

**10.**

ONE estimates the damages ONE's estate has suffered as a result of Defendants' ODFJELL's, STOLT-NIELSEN's, JO TANKERS' and TOKYO MARINE's unlawful contracts, combinations and conspiracies in restraint of trade to be in the tens of millions of dollars.

**11.**

In addition to the foregoing, ONE is entitled to recover attorneys' fees, interest and expenses, and treble damages, from Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE.

## COUNT II AS AGAINST DEFENDANTS
## ODFJELL, STOLT-NIELSEN, TMM, TOKYO MARINE and JO TANKERS

**12.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TOKYO MARINE and TMM are separate entities ostensibly competing in the ocean freight market for the carriage of Liquid Bulk Chemicals and Products by sea worldwide and between the U.S. and Mexico and for their storage and distribution for the benefit of customers.

**13.**

Since at least the summer of 1998, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE entered into contracts, combinations, or conspiracies in restraint of interstate and international trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1, et. seq., the Clayton Act, 15 U.S.C. § 15 et. seq., the General Maritime Laws of the United States and the laws of the State of Louisiana.

34

**14.**

Additionally, since at least the spring of 1999, Defendants ODFJELL, STOLT-NIELSEN and TMM have entered into contracts, combinations, or conspiracies in restraint of interstate and international trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1, et. seq., the Clayton Act, 15 U.S.C. § 15 et. seq., the General Maritime Laws of the United States and the laws of the State of Louisiana.

**15.**

These unlawful contracts, combinations or conspiracies consist of agreements to (i) allocate customers; (ii) divide markets; (iii) adjust shipping capacity; (iv) rig bids; (v) eliminate competitors; (vi) engage in predatory pricing; and (vii) not compete.

**16.**

For the purpose of forming and carrying out the alleged contracts, combinations and conspiracies, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TOKYO MARINE and TMM and their employees and representatives did those things that they contracted, combined and conspired to do, including *inter alia*:

   (a)   Participating in clandestine meetings and conversations to discuss customer allocation, the division of markets, the

adjustment of capacity, rigging of bids, elimination of competitors, predatory pricing and non-competition;

(b) Agreeing, during these clandestine meetings and conversations, to allocate customers, divide markets, adjust capacity, rig bids, eliminate competition, engage in predatory pricing and not compete with the aim, *inter alia*, of driving ONE from the U.S.-Mexican market;

(c) By virtue of its participation in the illegal and clandestine conspiracy with STOLT-NIELSEN in 1998, Defendants ODFJELL, JO TANKERS and TOKYO MARINE agreed not to compete in the market for the shipment of Liquid Bulk Chemicals and Products between the U.S. and Mexico and the Caribbean and are full and active participants in the conspiracy in restraint of trade between TMM and STOLT-NIELSEN.

## 17.

These anticompetitive contracts, combinations and conspiracies described herein are *per se* unlawful.

## 18.

Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS', TOKYO MARINE's and TMM's restraints of trade or commerce have substantially

affected commerce between the United States and Mexico and have resulted in the elimination of competition and have had the following non-exclusive effects:

    (a)   ONE has been eliminated as a competitor in the chemical shipping market between the U.S. and Mexico and between the U.S. and the Caribbean;

    (b)   Competition among and between STOLT-NIELSEN, ODFJELL, JO TANKERS, TOKYO MARINE and TMM has been eliminated;

    (c)   Public and private institutions, facilities and agencies have been deprived of the benefits of free, open and unrestricted competition in the establishment of ocean freight rates for the carriage by sea of Liquid Bulk Chemicals and Products;

    (d)   Competition in establishing ocean freight rates for the carriage by sea and storage of Liquid Bulk Chemicals and Products has been illegally and unlawfully restrained, suppressed and eliminated.

**19.**

Substantial portions of the above Defendants' unlawful and illegal conspiratorial conduct occurred within the United States. Defendants derive more ocean freight revenue from chemical manufacturers, shippers and

products in the United States than in any other country. Defendants intended and expected, at the time they devised, implemented and maintained their anticompetitive conspiracies alleged herein, that their conspiracies would affect *inter alia*, competitive ocean freight rates for the carriage by sea and storage of Liquid Bulk Chemicals and Products worldwide but most of all in the United States.

**20.**

Absent these anticompetitive conspiracies, and the elimination of competitors, Defendants could not have acquired and maintained their relative "competitive" positions in the Chemical Parcel Tanker trade between the U.S. Gulf and Mexico and the U.S. Gulf and the Caribbean without risking the loss of business to one or another Defendant or Defendants or their competitors.

**21.**

Plaintiff did not know of Defendants' unlawful contracts, combinations and conspiracies and, in the exercise of due diligence, could not have reasonably discovered these unlawful contracts, combinations, and conspiracies more than four years before the filing of this Complaint because of Defendants' fraudulent concealment. As a consequence of this fraudulent concealment, all applicable statutes of limitations or other prescriptive periods are tolled.

**22.**

Plaintiff estimates the damages ONE's estate has suffered as a result of Defendants' unlawful contracts, combinations and conspiracies to be in the tens of millions of dollars.

**23.**

In addition to the foregoing, ONE is entitled to recover attorneys' fees, interest and expenses and treble damages from Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TOKYO MARINE and TMM.

## COUNT III AS AGAINST DEFENDANTS ODFJELL, STOLT-NIELSEN, TMM, JO TANKERS and COPENHAGEN TANKERS

**24.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TMM and COPENHAGEN are separate entities ostensibly competing in the freight market for the carriage of Liquid Bulk Chemicals and Products by sea from the U.S. Gulf to Central America and South America and from South America and Central America to the U.S.

**25.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TMM and COPENHAGEN together now control the shipment of over 80% of the Liquid Bulk Chemicals and Products exported from the U.S. to Central America , South America and the Caribbean.

**26.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TMM and COPENHAGEN together now control the shipment of over 80% of the chemicals imported to the U.S. in 2001 from Central America and South America by chemical manufacturers and shippers, including ONE.

**27.**

The respective market positions of Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TMM and COPENHAGEN were achieved as a consequence of Defendants having entered into contracts, combinations, or conspiracies in restraint of interstate and international trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1, et. seq., the Clayton Act, 15 U.S.C. § 15 et. seq., the General Maritime Laws of the United States and the laws of the State of Louisiana.

**28.**

These unlawful contracts, combinations or conspiracies consist of agreements to (i) allocate customers; (ii) divide markets; (iii) adjust shipping

capacity; (iv) rig bids; (v) eliminate competitors; (vi) engage in predatory pricing; and (vii) not compete in respect of the carriage by sea and storage and distribution of Liquid Bulk Chemicals and Products to and from Central and South America.

<b>29.</b>

For the purpose of forming and carrying out the alleged contracts, combinations and conspiracies, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, TMM and COPENHAGEN did those things that they contracted, combined and conspired to do, including *inter alia*:

(a)   Participating in clandestine meetings and conversations to discuss customer allocation, the division of markets, the adjustment of capacity bid rigging, elimination of competitors, predatory pricing and non-competition in respect of the carriage by sea of Liquid Bulk Chemicals and Products and the rates charged for the storage and distribution of these Liquid Bulk Chemicals and Products;

(b)   Agreeing, during these clandestine meetings and conversations, to allocate customers, divide markets, adjust capacity, rig bids, eliminate competitors, charge predatory pricing and not compete in respect of the carriage by sea and

the storage and distribution of Liquid Bulk Chemicals and Products;

(c)    Agreeing, during these clandestine meetings and conversations, to rig bids on Contracts of Affreightment and Charter Parties so that ONE's competing bids would not be accepted, to allocate customers, among themselves, and to allocate market share of customers, both in the United States and worldwide.

## 30.

These anticompetitive contracts, combinations and conspiracies described herein are *per se* unlawful.

## 31.

Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS', TMM's and COPENHAGEN's restraints of trade or commerce have substantially affected commerce between the United States and foreign nations and have resulted in the elimination of competition and, in particular, have had the following non-exclusive effects:

(a)    ONE has been eliminated as a competitor in the shipping market for Bulk Liquid Chemicals between the U.S. and Central and South America;

(b) Competition among and between Defendants STOLT-NIELSEN, ODFJELL, JO, TMM and COPENHAGEN has been eliminated;

(c) Public and private institutions, facilities and agencies have been deprived of the benefits of free, open and unrestricted competition in the establishment of ocean freight rates for the carriage by sea of Liquid Bulk Chemicals and Products;

(d) Competition in establishing ocean freight rates for the carriage by sea and storage of Liquid Bulk Chemicals and Products has been illegally and unlawfully restrained, suppressed and eliminated.

**32.**

Substantial portions of the above Defendants' unlawful and illegal conspiratorial conduct occurred within the United States. Defendants derive more ocean freight revenue from chemical manufacturers, shippers and products in the United States than in any other country. Defendants intended and expected, at the time they devised, implemented and maintained their anticompetitive conspiracies alleged herein, that their conspiracies would affect *inter alia*, competitive ocean freight for the carriage by sea and storage of Liquid Bulk Chemicals and Products worldwide but most of all in the United States.

**33.**

Absent these anticompetitive conspiracies, Defendants could not have acquired and maintained their relative "competitive" positions in the Chemical Parcel Tanker trade between the U.S. and Central and South America without risking the loss of business to one another Defendant or Defendants or their competitors.

**34.**

Plaintiff did not know of Defendants' unlawful contracts, combinations and conspiracies and, in the exercise of due diligence, could not have reasonably discovered these unlawful contracts, combinations, and conspiracies more than four years before the filing of this Complaint because of Defendants' fraudulent concealment. As a consequence of this fraudulent concealment, all applicable statutes of limitations or other prescriptive periods are tolled.

**35.**

ONE estimates the damages ONE's estate has suffered as a result of Defendants' unlawful contracts, combinations and conspiracies to be in the tens of millions of dollars.

44

**36.**

In addition to the foregoing, ONE is entitled to recover attorneys' fees, interest and expenses and treble damages from Defendants.

## COUNT IV AS AGAINST DEFENDANTS ODFJELL, STOLT-NIELSEN, JO TANKERS, & TOKYO MARINE

**37.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, and TOKYO MARINE are separate entities ostensibly competing in the worldwide freight market for the carriage of Liquid Bulk Chemicals and Products by sea.

**38.**

Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, and TOKYO MARINE together now control the shipment of over 65% of the Liquid Bulk Chemicals and Products exported from the U.S. to the Caribbean.

**39.**

The respective market positions of Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS and TOKYO MARINE were achieved as a consequence of Defendants having entered into unlawful contracts, combinations, or conspiracies in restraint of interstate and international trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1, et. seq., the Clayton

Act, 15 U.S.C. § 15 et. seq., the General Maritime Laws of the United States and the laws of the State of Louisiana.

**40.**

These unlawful contracts, combinations or conspiracies consist of agreements to (i) allocate customers; (ii) divide markets; (iii) adjust shipping capacity; (iv) rig bids; (v) eliminate competitors; (vi) engage in predatory pricing; and (vii) not compete in respect of the carriage by sea and storage and distribution of Liquid Bulk Chemicals and Products to and from Central and South America.

**41.**

For the purpose of forming and carrying out the alleged contracts, combinations and conspiracies, Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, and TOKYO MARINE did those things that they contracted, combined and conspired to do, including *inter alia*:

(a)    Participating in clandestine meetings and conversations to discuss customer allocation, the division of markets, the adjustment of capacity bid rigging, elimination of competitors, predatory pricing and non-competition in respect of the carriage by sea of Liquid Bulk Chemicals and Products and the rates charged for the storage and distribution of these Liquid Bulk Chemicals and Products;

(b) Agreeing, during these clandestine meetings and conversations, to allocate customers, divide markets, adjust capacity, rig bids, eliminate competitors, charge predatory pricing and not compete in respect of the carriage by sea and the storage and distribution of Liquid Bulk Chemicals and Products;

(c) Agreeing, during these clandestine meetings and conversations, to rig bids on Contracts of Affreightment and Charter Parties so that ONE's competing bids would not be accepted, to allocate customers, among themselves, and to allocate market share of customers, both in the United States and worldwide.

**42.**

These anticompetitive contracts, combinations and conspiracies described herein are *per se* unlawful.

**43.**

Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS', and TOKYO MARINE's restraints of trade or commerce have substantially affected commerce between the United States and foreign nations and have resulted in the elimination of competition and, in particular, have had the following non-exclusive effects:

47

(a)  ONE has been eliminated as a competitor in the shipping market for Bulk Liquid Chemicals between the U.S. and Central and South America;

(b)  Competition among and between Defendants STOLT-NIELSEN, ODFJELL, JO, and TOKYO MARINE has been eliminated;

(c)  Public and private institutions, facilities and agencies have been deprived of the benefits of free, open and unrestricted competition in the establishment of ocean freight rates for the carriage by sea of Liquid Bulk Chemicals and Products;

(d)  Competition in establishing ocean freight rates for the carriage by sea and storage of Liquid Bulk Chemicals and Products has been illegally and unlawfully restrained, suppressed and eliminated.

**44.**

Substantial portions of the above Defendants' unlawful and illegal conspiratorial conduct occurred within the United States. Defendants derive more ocean freight revenue from chemical manufacturers, shippers and products in the United States than in any other country. Defendants intended and expected, at the time they devised, implemented and maintained their anticompetitive conspiracies alleged herein, that their conspiracies would

affect *inter alia*, competitive ocean freight for the carriage by sea and storage of Liquid Bulk Chemicals and Products worldwide but most of all in the United States.

**45.**

Absent these anticompetitive conspiracies, Defendants could not have acquired and maintained their relative "competitive" positions in the Chemical Parcel Tanker trade between the U.S. and Central and South America without risking the loss of business to one another Defendant or Defendants or their competitors, nor could Defendants have eliminated ONE as a competitor.

**46.**

Plaintiff did not know of Defendants ODFJELL's, STOLT-NIELSEN's, JO TANKERS', and TOKYO MARINE's unlawful contracts, combinations and conspiracies and, in the exercise of due diligence, could not have reasonably discovered these unlawful contracts, combinations, and conspiracies more than four years before the filing of this Complaint because of Defendants' fraudulent concealment. As a consequence of this fraudulent concealment, all applicable statutes of limitations or other prescriptive periods are tolled.

**47.**

ONE estimates the damages ONE's estate has suffered as a result of Defendants' ODFJELL's, STOLT-NIELSEN's, JO TANKERS', and TOKYO

MARINE's unlawful contracts, combinations and conspiracies to be in the tens of millions of dollars.

**48.**

In addition to the foregoing, ONE is entitled to recover attorneys' fees, interest and expenses and treble damages from Defendants ODFJELL, STOLT-NIELSEN, JO TANKERS, and TOKYO MARINE.

## COUNT V AS AGAINST DEFENDANTS ODFJELL, STOLT-NIELSEN, TMM, TOKYO MARINE, JO TANKERS and COPENHAGEN TANKERS (State Law Civil Conspiracy)

**49.**

Plaintiff reavers and reasserts the allegations of the preceding paragraphs as if copied herein *in extenso.*

**50.**

Defendants' conduct as set forth hereinabove, consists of acts knowingly carried out in concert with each other such that defendants are solidarily liable unto defendant for all damages occasioned by their acts as set forth in article 2324 of the Louisiana Civil Code.

**51.**

As a result of these acts, Plaintiff is entitled to recover all damages occasioned by said acts.

## COUNT VI AS AGAINST DEFENDANTS ODFJELL, STOLT-NIELSEN, TMM, TOKYO MARINE, JO TANKERS and COPENHAGEN TANKERS (State Law Unfair Trade Practices)

### 52.

Plaintiff reavers and reasserts the allegations of the preceding paragraphs as if copied herein *in extenso.*

### 53.

Defendants' conduct as set forth hereinabove, consists of acts knowingly carried out in concert with each with the intent to restrict trade, manipulate prices and unlawfully eliminate ONE as a competitor in the Chemical Parcel Tanker trade; said conduct offending established public policy and which is unethical, oppressive, unscrupulous, and substantially injurious and therefore comprising an Unfair Trade Practice pursuant to La. R.S. 51:1401 *et. seq.*

### 54.

As a result of these acts, ONE is entitled to recover its losses that were occasioned as a result of defendants' unlawful schemes plus attorneys' fees, interest and expenses pursuant to La. R.S. 51:1409.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by a jury.

# PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF prays for relief as follows**:

(1)    That the unlawful contracts, combinations and conspiracies described herein be adjudged and decreed to be unreasonable restraints of trade or commerce in violation of the Sherman and Clayton Acts;

(2)    That ONE be found to have been damaged by the unlawful contracts, combinations and conspiracies in restraint of trade entered into by Defendants;

(3)    That Plaintiff recover compensatory damages and interest thereon as provided by the applicable laws invoked herein and that judgment be entered against Defendants;

(4)    That Plaintiff recover treble damages as provided by law;

(5)    That plaintiff recover all costs of suit, including attorneys' fees as provided by law; and

(6)    That this Court award such other and further relief, including equitable relief, in favor of Plaintiff as this Court deems just and appropriate.

Respectfully submitted,

CONRAD S.P. WILLIAMS, III (#14499) T.A.
MICHAEL X. ST. MARTIN (#12365)
CHARLES C. BOURQUE, JR. (#20118)
JOSEPH G. JEVIC III (#23145)
CHRISTOPHER ST. MARTIN (#26122)
ST. MARTIN & WILLIAMS
4084 Hwy. 311
P.O. BOX 2017
HOUMA, LOUISIANA  70360
(985) 876-3891    fax (985) 851-2219
**SPECIAL COUNSEL &**
**ATTORNEYS FOR PLAINTIFF**

## SERVICE INFORMATION    *Yann Geron as Chapter 7 Trustee of ONE Shipping, Inc.  v  Odfjell, et al*

1) ODFJELL, ASA
2) ODFJELL SEACHEM AS
@ its principal place of business:
Conrad Mohrs
Veg 29
5892 Bergen
NORWAY

3) ODFJELL USA INC.
4) ODFJELL TERMINALS (HOUSTON) LP
@ its principal place of business:
12211 Port Road
Seabrook, Texas   77586
USA

5) ODFJELL AMERICAS AS
@ its principal place of business:


6) JO TANKERS AS
@ its principal place of business:
Kokstadflaten 5
Kokstad
5863 Bergen
NORWAY

7) JO TANKERS BV
@ its principal place of business:
Boyleweg 6
3208 KA Spijkenisse
The NETHERLANDS


8) JO TANKERS INC.
@ its principal place of business:
12600 North Featherwood Drive
Houston, Texas  77034
USA

9) STOLT-NIELSEN TRANSPORTATION GROUP LTD.
10) STOLTHAVEN TERMINALS
11) STOLT PARCEL TANKERS INC.
@ its principal place of business:
8 Sound Shore Drive
Greenwich, Connecticut 06836
USA

12) COPENHAGEN TANKERS INC.
@ its principal place of business:
40 Richards Avenue
Norwalk, Connecticut 06854
USA

13) PARCEL TANKERS SERVICES, INC.
14) PARCEL TANKERS DE COLUMBIA Y CIA, LTDA.
@ its principal place of business:
Carrera 7 No. 71-52
Oficina 503 / Torre A
Edificio Carrera Septima,/td
Bogota D.C.
COLUMBIA

15) GROUPO TMM
@ its principal place of business:
Avenida de la Cuspide No. 4755
C.P. 14010 Col Parque del Perdregal
Mexico City,
MEXICO

16) TOKYO MARINE CO., LTD.
@ its principal place of business:
5th Floor JP Building
4-4, 3-chome
Nihonbashi-Muromachi
Chuo-ku, Tokyo
JAPAN

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED