# Exhibit 2

```
CV 02-0190051S              )   SUPERIOR COURT

O'BRIEN, PAUL               )   STAMFORD/NORWALK J.D.
VS.                         )   AT STAMFORD
STOLT-NEILSON et al         )   JULY 27, 2004


                     B E F O R E
           THE HONORABLE TAGGART D. ADAMS, JUDGE


A P P E A R A N C E S

DAVID GOLUB, ESQ.
     Attorney for the Plaintiff

JONATHAN WEIR, ESQ.
PETER CARNEY, ESQ.
CHRISTOPHER CURRAN, ESQ.
JONATHAN SACK, ESQ.
MARK J. GIDLEY, ESQ.
     Attorneys for the Defendants






                                      VANESSA FJELLDAL
                                      COURT MONITOR
```

---

1

1   THE COURT: The matter is O'Brien
2   versus Stolt-Neilson. You have three
3   motions to seal on the calendar today.
4   Just so that I am clear, I believe I have
5   read all the papers that have been
6   submitted, not only on the motions to seal
7   but the various other matters. On the
8   motions to seal, there is a motion to seal
9   plaintiff's sur-reply papers on the
10  summary judgment motion. There is a
11  motion to seal defendants' response to
12  that sur-reply, which I guess is another
13  way of saying a sur sur reply. Then there
14  is a motion to seal the plaintiff's
15  opposition to one of the motions to seal.
16  Is that a fairly accurate rendition of the
17  sealing -
18       MR. WEIR: That is correct.
19       THE COURT: - issue? All right.
20       MR. GOLUB: There is an intermediate
21  filing also by the defendants, a motion to
22  lodge. I think that was superceded by
23  their motion to seal. The only reason I
24  mention it is because plaintiff's response
25  to the last motion to seal was in response
26  to the objection to motion to lodge.
27  Motion to lodge the plaintiffs sealing

2

1   opposition papers, it turned into a motion
2   to seal.
3        THE COURT: I think I read those
4   papers.
5        MR. GOLUB: Right.
6        THE COURT: Although, at that time
7   there is a possibility my eyes were
8   glazing over. All right. We also have
9   some discovery issues that I want to take
10  up later. But I would like to say very
11  briefly without a lot of elaboration that
12  I am very concerned that this case has
13  gotten off the track. This is a civil
14  case. We seem to have gotten considerably
15  entangled in matters that I don't think
16  necessarily should be involved in this
17  case. It is going to be my goal over the
18  next few hours, the next few days, the
19  next few weeks and, if necessary, the next
20  few months, to get this case back on
21  track. I am not quite sure how I am going
22  to do that yet, but I have to say that I
23  believe the reason it has gotten off the
24  track is because we have extremely zealous
25  advocacy on all sides. I think it has now
26  reached the stage of possibly being to an
27  excess. It is time for counsel and the

3

1   parties to sit back, think through exactly
2   what their goals are in this litigation,
3   and take them in light of the
4   circumstances of other matters that are
5   going on, which I am perfectly aware of,
6   and see if there is another way to do
7   things than the way it is being done in
8   this particular case. All right, I may
9   have some suggestions at some point. I am
10  not going to go into them now, but
11  forewarned is forearmed.
12       Now, with respect to the motions to
13  seal, my understanding is that both
14  parties, and when I say both parties I
15  mean plaintiff and defendants, I realize
16  that there is more than one defendant,
17  all parties, seek to put on testimony. We
18  are going to do that first. I will say
19  before that, however, there is a motion to
20  quash a deposition. Not a deposition
21  subpoena, it is a subpoena for today's
22  proceedings to the record keeper of Stolt-
23  Neilson Transportation Group. I am not
24  going to - I am going to grant that
25  motion. I don't need to hear from the
26  record keeper of STN, SNTG, at least at
27  this point. So, I think the moving

100

1  THE COURT: Perhaps you should.
2  Q  The question was, how did you get the
3  documents?
4  A  I asked my former paralegal or
5  assistant to copy these documents while I was
6  with Stolt-Neilson.
7  Q  And then you took them with you when
8  you left, correct?
9  A  No.
10 Q  How did you get possession of the
11 documents?
12 A  I entrusted them to an attorney for
13 safekeeping before I left Stolt-Neilson. I
14 asked that attorney to return them to me after
15 I left Stolt-Neilson.
16 Q  Who was the attorney you gave them to?
17 A  Conrad Williams.
18 Q  Duke Williams?
19 A  That is his name.
20 Q  He is an old friend of yours, right?
21 A  A very old friend, yes sir, a trusted
22 friend.
23 Q  The two of you were associated together
24 at Philips Dunbar, correct?
25 A  Yes, sir in 1983, 84, 85 and 86.
26 Q  So while you were employed –

101

1  THE COURT: Can I get this gentleman's
2  name, real name?
3  MR. CURRAN: Sure. It is Conrad
4  Williams, Your Honor. He is a partner at
5  the Louisiana law firm of St. Martin &
6  Williams.
7  THE COURT: Do you agree with that,
8  Mr. O'Brien?
9  MR. O'BRIEN: Yes, Your Honor.
10 THE COURT: He is your friend?
11 MR. O'BRIEN: Very good friend, yes,
12 Your Honor.
13 MR. CURRAN: I feel like I know him,
14 Your Honor.
15 THE COURT: Okay. And he gave the
16 documents back to you when your
17 resignation became effective?
18 MR. O'BRIEN: Your Honor, I have very
19 serious concern about –
20 MR. GOLUB: One second, Mr. O'Brien.
21 One second.
22 THE COURT: You are objecting to my –
23 MR. GOLUB: No, I am not objecting to
24 you –
25 THE COURT: You may.
26 MR. CURRAN: It makes me feel better,
27 Your Honor.

102

1  MR. GOLUB: I am trying to preserve.
2  There are some things that may be
3  necessary to answer and may not be
4  necessary to answer. I think that just by
5  clarification, I think that you might want
6  to separate the documents into two
7  segments. I think the overwhelming number
8  of documents were filed with Mr. Williams.
9  You might want to- You are asking the
10 witness about all the documents. We don't
11 have to get into what they are right now
12 if you don't want to but there might be an
13 easier way to do this without involving
14 disclosure of information.
15 MR. CURRAN: Was there a question
16 pending from Your Honor?
17 THE COURT: I can't remember. I was
18 just trying to find out where these
19 documents came from.
20 MR. GOLUB: The reason I interceded,
21 Judge, because I don't think they all come
22 from the same source. I think that the
23 question inadvertently may have confused
24 that issue.
25 THE COURT: All right.
26 MR. CURRAN: May I proceed, Your
27 Honor?

103

1  THE COURT: Yes.
2  Q  Mr. O'Brien, let's put aside for a
3  second the so-called Wingfield journals and
4  let's talk about the other documents in that
5  stack of over seven hundred pages. Were those
6  the documents that you sent to Duke Williams?
7  A  The documents that I sent to Duke
8  Williams were my, for lack of a better term,
9  OFAC, Iran Sudan file.
10 Q  You sent those to Mr. Williams with the
11 understanding that he would return them to you
12 after your resignation?
13 A  I sent them to Mr. Williams with the
14 express understanding that he keep them safe.
15 Q  Did you view the use of Mr. Williams in
16 that regard as somehow excusing your secreting
17 of the documents from Stolt-Neilson?
18 A  Absolutely not.
19 MR. GOLUB: Objection, Your Honor.
20 Objection. If he wants to ask a question
21 related to the issues in this hearing, but
22 that is not a question that is related to
23 the issues this hearing.
24 THE COURT: Overruled.
25 A  I said absolutely not.
26 Q  Why did you send the documents to Duke
27 Williams?

```
CV 02-0190051S          )   SUPERIOR COURT
O'BRIEN, PAUL           )   STAMFORD/NORWALK J.D.
VS.                     )   AT STAMFORD
STOLT-NEILSON et al     )   JULY 27, 2004
```

C E R T I F I C A T I O N

    I, Vanessa E. Fjelldal, Court Recording Monitor for the Superior Court, Fairfield County, State of Connecticut, do hereby certify that the foregoing is a true and accurate transcription of the tape recorded proceedings had in the above-entitled case.

*Vanessa E. Fjelldal*
VANESSA E. FJELLDAL