UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |

**OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE SURREPLY**

Defendant, United States Department of Justice ("DOJ"), opposes plaintiff's November 14, 2006 Motion for Leave to File Surreply (Dk# 45). Plaintiff did not confer with defendant to determine whether defendant would consent to the filing of a surreply, as required by Local Rule 7(m) . In addition, defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment did not, as alleged by plaintiff, present new facts, misstatements of fact, or a new argument. Plaintiff's proposed surreply "merely reiterates arguments already made," and hence plaintiff's motion should be denied. *Robinson v. The Detroit News, Inc.*, 211 F. Supp. 2d 101, 113

(D.D.C. 2002).

## I. Legal Standard

Local Civil Rule 7 governs motions practice in this district. That rule does not provide for any filing after the reply. In *Robinson v. The Detroit News, Inc.*, 211 F.Supp.2d 101, 113 (D.D.C. 2002), Judge Urbina struck plaintiff's surreply on the basis that it merely reargued the points raised in an earlier brief. The court noted that the "standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." Id. (quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). If the opposing party's reply merely raised issues that the parties have already addressed or had the opportunity to address, the surreply should be denied. *U.S. Commodity Futures Trading Com'n v. Whitney*, 441 F. Supp. 2d 61, 73 (D.D.C. 2006). *See also Corel Corp. v. U.S.*, 165 F.Supp.2d 12, 18 n. 1 (D.D.C. 2001) ("Because I find that the arguments raised in Corel's surreply could have been raised in Corel's opposition brief, Corel's motion to file a surreply will be denied").

## II. Connolly Declaration

Plaintiff requests leave to respond to the Connolly declaration filed with defendant's reply. However, the Connolly declaration merely responded to prior arguments made by plaintiff and contains no new information. Plaintiff previously knew whom Golub, Levine, Williams, and Torres represent, and discussed in prior pleadings the litigation they have filed involving plaintiff. Pl.'s Mem. Supp. Mot. Partial Summ. J. (Dk# 14-1, Civ. Action 1:06-cv-00474-RJL) at 5-6, 15-16; Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 36-1[1]) at 19-24 ("Division is withholding documents concerning its communications with attorneys who are private damages plaintiffs' lawyers . . . ." *Id*.

---

[1] Unless otherwise indicated, docket numbers cited refer to the docket for civil action number 1:05-cv-02217-RJL.

at 19; *see also id.* at 22-24 (detailing information about suits filed by Golub and Torres)). In addition, plaintiff asserts, as it has previously, that because lawsuits filed by these attorneys are public, and that Williams' representation of Paul O'Brien also is public knowledge, these attorneys have no expectation of confidentiality regarding their communications with the Antitrust Division ("the Division"). Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 36-1) at 19, 22, 23. As discussed in defendant's reply, the fact that some information about confidential sources is public does not mean that a waiver of the protections of FOIA exemption 5 U.S.C. § 552(b)(7)(D) has occurred with respect to information given to law enforcement by a confidential source. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 40-1) at 10-11. Plaintiff also has previously "raise[d] the [baseless] specter" that the Division "could" be seeking to use civil discovery mechanisms in its grand jury investigation. Pl.'s Surreply Concerning Def's Mot. Summ. J. ("Pl.'s Surreply") at 2, 5; Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 36-1) at 23 ("[G]overnment is not to use a civil discovery mechanism in connection with criminal proceedings. *See United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005)"). There is nothing unusual about the Division or any other prosecuting agency communicating in the course of a grand jury investigation with victims of the criminal actors being investigated, and victims of cartel participants frequently are involved in damage actions against the cartel participants. Plaintiff's argument that the protections afforded crime victims under 18 U.S.C. § 3771 are inapplicable in this civil FOIA proceeding, Pl.'s Surreply at 7, is misleading given that plaintiff is using the FOIA to obtain information for use in the criminal proceeding the Division has brought against it.

### III. Division Speechmaking

Plaintiff claims that defendant made new assertions in its reply brief that were false,

namely that the Division's Deputy Assistant Attorney General Scott Hammond did not give a speech detailing how a second firm in the Division's parcel tanker grand jury investigation approached the Division seeking amnesty and that the Division has not engaged in a "'publicity campaign'" against plaintiff but rather that the Division only "'responded to inquiries from the public . . . to provide requested guidance to the antitrust bar.'" Pl.'s Surreply at 7.

A. **Odfjell Discussion**

Plaintiff falsely asserted in its Opposition to Defendant's Motion for Summary Judgment that the "Deputy Assistant Attorney General of the Division recently g[a]v[e] a speech that detailed how a second firm in the ongoing parcel tanker grand jury investigation approached the Antitrust Division seeking amnesty." Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 36-1) at 1. Hence, the statement by the Division in its reply that no such speech occurred was necessary to correct this falsity. Plaintiff repeated this misstatement in its Reply Supp. Mot. Summ. J. (Dk# 42-1) at 7 (emphasis added) and footnote 1:

> Mr. Hammond gave a speech at the 54th Annual American Bar Association Section of Antitrust Law Spring Meeting in which he disclosed facts as to the Division's ***amnesty agreement*** with Odfjell Seachem AS, the "second in the door company" in the Division's parcel tanker industry investigation - in the Spring of 2003.
>
> . . .
>
> In his speech, Mr. Hammond stated: "For example, in the Division's parcel tanker investigation, Odfjell received a 30% discount off the bottom of its minimum Guidelines sentence. Odfjell contacted the Division to offer its cooperation the day after the investigation went overt. It made its key personnel available to the Division in a timely manner, and two of its top executives agreed to submit to U.S. jurisdiction, serve jail terms, and cooperate with our investigation. For its cooperation, Odfjell was rewarded with a 30% discount off its minimum Guidelines fine."

*See also* Pl.'s Surreply at 7-8.

Plaintiff's assertions regarding this speech reflect a misunderstanding of the Division's

Corporate Leniency Program. Mr. Hammond did not detail in the cited speech an *amnesty agreement* with Odfjell, as alleged by plaintiff, but rather discussed benefits Odfjell received at its sentencing hearing pursuant to its *plea agreement*. Moreover, the plea agreement discussed by Mr. Hammond and the supporting Rule 11 sentencing pleadings were publicly filed more than two years prior to the speech, and the public sentencing proceeding also occurred more than two years prior to the speech. *See* Plea Agreement, *United States v. Odfjell Seachem AS*, Crim. No. 03-654 (E.D. Pa. 2003); Gov't's Sentencing Mem. and Mot. for a Guidelines Downward Departure (U.S.S.G. § 8C4.1), *United States v. Odfjell Seachem AS*, Crim. No. 03-654 (E.D. Pa. 2003), *both available at* http://www.usdoj.gov/atr/cases/odfjell.htm. Indeed, plaintiff filed Odfjell's plea agreement, not an amnesty agreement, with this Court as Exhibit 3 to its proposed Surreply (Dk# 45-7). A leniency recipient does not plead guilty to a criminal antitrust offense and is not the subject of a sentencing proceeding. Thus, no such speech as characterized by plaintiff occurred.

Plaintiff is perhaps confusing the Division's Corporate Leniency Program with leniency programs offered by foreign antitrust agencies that offer leniency to multiple applicants. The Antitrust Division's Corporate Leniency Program only provides for leniency to the first qualifying applicant in order to maximize incentives for early cooperation and has no provision for "second-in" *leniency* provided by some foreign antitrust agencies.

### B. Publicity Campaign

Plaintiff's assertions regarding the Division's alleged publicity campaign present no new arguments and are in response to no new arguments by defendant. Plaintiff has alleged since the filing of its original complaint in this litigation that the Division has engaged in a "public

speaking campaign" concerning Stolt-Nielsen.  Compl. (Dk# 1), Civ. Action 1:05-cv-02217-RJL, at 6, ¶ 19.  In its proposed surreply, plaintiff does not identify any Division speeches that it has not discussed in prior filings in this litigation.  Plaintiff discussed the March 3, 2005 panel discussion before the ABA National Institute on White Collar Crime in its 2005 complaint and even attached a transcript of the panel discussion as an exhibit to its summary judgment motions.  Compl. (Dk# 1) at 6, ¶19; Exhibits 8A and 8B to Pl.'s Mot. Summ. J. (Dk# 25-9 and 25-10); Exhibits 8A and 8B to Pl.'s Mot. Partial Summ. J. (Dk# 15-9 and 15-10, Civ. Action 1:06-cv-00474-RJL).  Plaintiff discussed the November 5, 2005 ABA Section of Antitrust Law Fall Forum panel discussion[2] in its 2006 complaint, quoting the same language in its complaint.  Compl. (Dk# 1-1, Civ. Action 1:06-cv-00474-RJL) at 8-9, ¶ 25f.  Since it filed its initial pleading in this matter, the defendant has denied plaintiff's allegations regarding a public speaking campaign, but rather has maintained that it has responded to inquiries from the antitrust bar as to the Division's future interpretation and application of its leniency program in light of the Division's revocation of plaintiff's conditional leniency in order to provide necessary guidance to the antitrust bar concerning the continued use of the Division's leniency program.  Answer (Dk# 11, Civ. Action 1:05-cv-02217-RJL) at 7, ¶¶ 19-20; *see also* Answer (Dk# 13-1, Civ. Action 1:06-cv-00474-RJL) at 9-10, ¶21, 25.[3]

---

[2] While plaintiff highlights that the panel discussion occurred in a room at the National Press Club building, Pl.'s Surreply at 8, the panel discussion occurred before an ABA conference of antitrust lawyers.

[3] Moreover, defendant does not possess the audio CD-ROMs referred to by plaintiff (nor were written versions of the remarks ever created by Mr. Hammond) and is under no obligation pursuant to the FOIA to purchase merchandise from an outside party in order to respond to a FOIA request.  *See* 5 U.S.C. § 552(a)(3)(D) ("[S]earch means to review, manually or by automated means, *agency* records for the purpose of locating those records which are responsive to a request.") (emphasis added); 5 U.S.C. § 552(f)(2) ("[R]ecord . . . includes any information that would be an *agency* record subject to the requirements of this section *when maintained by an agency* in any format.") (emphasis added); 28 C.F.R. § 16.4(a) ("[T]he component that first receives a request for a record and *has possession of that record* is the component responsible for responding to the request.") (emphasis added); *see also Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("[T]he FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained."); *Kissinger v.*

### IV. Defendant's 5 U.S.C. § 552(b)(2) Argument

Plaintiff claims that defendant has raised a new amnesty argument in its reply. Plaintiff fails to note that defendant's citations and discussions of *Nat'l Treasury Union v. U.S. Customs*, 802 F.2d 525, 530 n.19 (D.C. Cir. 1986) and *Kaganove v. EPA*, 856 F.2d 884 (7th Cir. 1988) were based on FOIA Exemption 2, 5 U.S.C. § 552(b)(2), and were made in support of arguments defendant previously made concerning Exemption 2. As noted by this Court before, it is doubtful that "the existence of statutory or case law can ever be 'new matter' so as to permit the filing of a surreply." *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.* 238 F. Supp. 2d 270, 277 (D.D.C. 2002). Defendant raised the Exemption 2 argument in its summary judgment brief, the Richards declaration, and its Amended 2006 *Vaughn* Index, and defendant's summary judgment brief even cited *Nat'l Treasury Employees Union v. U.S. Customs*. Def.'s Mem. Supp. Mot. Summ. J. (Dk# 28-1) at 17-19[4]; Richards decl. (Dk# 30-2) at

---

*Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("[P]ossession or control is a prerequisite to FOIA disclosure duties . . . . The Act . . . only obligates [agencies] to provide access to [documents] which it in fact has created and retained.").

[4] "Exemption (b)(2) applies primarily to . . . (2) internal agency matters of some public interest 'where disclosure may risk circumvention' of statutes or agency regulations. *Dep't of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *Nat'l Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); . . . .

The second category under Exemption 2, sometimes referenced in the governing case law as the 'high (b)(2) category,' *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992), exempts from mandatory disclosure documents relating to more substantive internal matters. *Id.* An agency is authorized to withhold documents in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, *id.*; would disclose guidelines for law enforcement investigations; or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. *See Crooker*, 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*); *Hardy v. ATF*, 631 F.2d 653, 656 (9th Cir. 1980).

Here the agency withheld amnesty agreements under Exemption 2 because if disclosed, they would reveal information relating to the operation of the Division's amnesty program and impede the effectiveness of that program. The Division routinely promotes the confidentiality of the amnesty program, and the program's confidentiality provides an incentive for amnesty application[s], which ha[ve] advanced the majority of the Division's major cartel investigations. If the amnesty agreements are disclosed, it would interfere with ongoing or prospective enforcement proceedings and would discourage future amnesty applicants due to loss of confidentiality. (Hammond decl. ¶¶ 6-11, Exhibit B.)." Def.'s Mem. Supp. Def's Mot. Summ. J. at 17-19.

7

16-17, ¶ 28[5]; Amended 2006 *Vaughn* Index (Dk# 29, civ. 1:06-cv-00474-RJL) at 155-160[6]. In fact, plaintiff specifically attacked defendant's Exemption 2 arguments in its opposition brief, thus precipitating the defendant's responsive discussion of the Exemption 2 arguments in its reply. Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 36-1) at 13-14; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. Summ. J. (Dk# 40-1) at 6-8. Hence, defendant raised no new FOIA argument in its reply.[7]

## V. Conclusion

For the reasons discussed above, the Court should deny plaintiff's Motion for Leave to File Surreply.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar No. 434122
Assistant U.S. Attorney

_____
CHARLOTTE A. ABEL, D.C. Bar No. 388582
Assistant U.S. Attorney

---

[5] "The second category under under Exemption 2 exempts from mandatory disclosure documents relating to more substantive internal matters, such as documents that would reveal techniques and procedures for law enforcement investigations or prosecutions, would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. Amnesty agreements are withheld under Exemption 2 because if disclosed, they would reveal information relating to the operation of the Division's amnesty program, would interfere with ongoing or prospective enforcement proceedings, and would discourage future amnesty applicants due to loss of confidentiality." *Id.* at 17.

[6] "Documents also reveal information relating to internal practices of the Division, including . . . internal agency matters, the disclosure of which would impede the effectiveness of the Division's law enforcement activities by interfering with the confidentiality of the Division's amnesty program." *Id.* at 156; *See also id.* at 158, 160.

[7] Plaintiff's quotation of the Griffin testimony in its surreply, Pl.'s Surreply at 11, is meritless as the quoted testimony refers to the Division's model leniency letter, not letters given to specific leniency applicants.

Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332