# Exhibit 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Criminal No. 3:02CR220-V

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT BRADLEY DUTTON,<br><br>Defendant. | **DEFENDANT ROBERT BRADLEY DUTTON'S MOTION *IN LIMINE* TO EXCLUDE AMNESTY AGREEMENT** |

Defendant Robert Bradley Dutton ("Dutton") hereby moves *in limine* to exclude from evidence the letter agreement between The United States Department of Justice, Antitrust Division, DuPont-Akra Polyester, LLC, ("DuPont-Akra"), E.I. du Pont de Nemours and Company ("DuPont"), and Alfa S.A. de C.V. ("Alfa"), as part of an amnesty application submitted by these companies (hereinafter referred to as the "Amnesty Agreement") (copy attached hereto as Exhibit A). Mr. Dutton will be unfairly prejudiced if the Amnesty Agreement is admitted into evidence at trial. Additionally, the Amnesty Agreement is hearsay and should be excluded. In the alternative, Defendant respectfully requests a limiting instruction to the jury regarding the Amnesty Agreement.[1]

Defendant submits the following Memorandum in support of this Motion *in Limine* to exclude the Amnesty Agreement.

---

[1] The Court has ordered that proposed jury instructions be submitted on September 15, 2003. Defendant will submit a number of proposed special instructions on or before September 15, 2003.



CLT01/4609341v1



## MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
## TO EXCLUDE AMNESTY AGREEMENT

### I. INTRODUCTION AND BACKGROUND

On September 13, 2002, a Grand Jury returned an indictment against Dutton alleging that he, in his capacity as a sales manager of Nan Ya Plastics Corporation, America, participated in a conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1. The Indictment in this case charges Defendant, along with unnamed co-conspirators, with conspiring to "suppress and restrain competition in the sale of polyester staple sold in the United States." *See* Indictment at ¶ 2. The allegations amount to meetings and conversations that Defendant allegedly had with his competitors. *See Id.* at ¶ 8. Prior to indicting Defendant, the government entered into the Amnesty Agreement with DuPont-Akra, Dupont, and Alfa. As stated in the Amnesty Agreement, these companies apparently desired to report to the government "possible price fixing or other conduct violative of the Sherman Act." *See* Amnesty Agreement ¶ 1. This stated purpose for the Amnesty Agreement is then referenced throughout the Agreement using the conclusory phrase, "the anticompetitive activity being reported."

As part of its proposed exhibits, the government has indicated its intention to attempt to enter into evidence at trial, and therefore rely on at trial, the Amnesty Agreement. As shown below, it would be extremely prejudicial to Defendant to admit the Amnesty Agreement into evidence and allow the government to rely on this document in its efforts to prove that Defendant is criminally responsible for any alleged anticompetitive activity.

### II. ARGUMENT

It is within the sound discretion of the trial judge to exclude or admit evidence at trial. *See United States v. Russell*, 971 F.2d 1098, 1104 (4th Cir. 1992), *cert. denied*, 506 U.S. 1066,

113 S. Ct. 1013 (1993); *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995), *cert. denied*, 516 U.S. 1121, 116 S. Ct. 929 (1996). In fact, it is the "better approach" for the trial judge to make preliminary determinations concerning evidentiary questions before trial. *Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1123 (8th Cir. 1985), *cert. denied*, 475 U.S. 1046, 106 S. Ct. 1263 (1986).

### A. Defendant will be unfairly prejudiced by the Amnesty Agreement

Rule 403, Fed.R.Evid., provides that evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Fourth Circuit has stated that "[g]uilty pleas or convictions of non-testifying co-defendants or coconspirators are not admissible as substantive evidence of the defendant's guilt." *United States v. Beeks*, 55 Fed. Appx. 660, 661 (4th Cir. 2003). Such evidence "raises the concern that a defendant might be convicted upon the charges against the co-defendants, rather than upon an individual assessment of the remaining defendant's personal culpability." *United States v. Blevins*, 960 F.2d 1252, 1260 (4th Cir. 1992).

Although the Amnesty Agreement is not a plea agreement, and does not rise to the same level as a plea agreement entered after a Rule 11 hearing, the risks of prejudicing an alleged co-conspirator are the same. The government cannot by law rely on the Amnesty Agreement to prove its case against Mr. Dutton. The fact that the DuPont entities received "amnesty" for "anticompetitive activity" in the polyester staple industry does not prove that Mr. Dutton is guilty of the same conduct or conspiracy. Any probative value the Amnesty Agreement has, which Defendant asserts is little to none, certainly is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury if the Amnesty Agreement is admitted

into evidence and used by the government against Defendant. *See Beeks*, 55 Fed. Appx. at 661; *Blevins*, 960 F.2d at 1260. Therefore, pursuant to Rule 403, Fed.R.Evid., and applicable Fourth Circuit case law, the Amnesty Agreement should be excluded.

### B.   The Amnesty Agreement is inadmissible hearsay and should be excluded

Even if the Court decides that the Amnesty Agreement should not be excluded pursuant to Rule 403, Fed.R.Evid., the Amnesty Agreement should be excluded pursuant to Rule 802, Fed.R.Evid. as inadmissible hearsay. The Amnesty Agreement clearly is hearsay to the extent that the government offers it for the truth of the assertions contained therein, such as in an attempt to prove that Mr. Dutton participated in an alleged conspiracy to fix prices and allocate customers. *See* Rule 801(c), Fed.R.Evid.; *see also, e.g., TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 401 (4th Cir. 1994) (excluding a writing because "the written words of the document constitute hearsay as do the statements of TLT, through its representatives, summarized in the document").

Thus, in order to be admissible, the Agreement must fall within an exception to the general hearsay exclusion. Defendant submits that no exception to the rule against hearsay applies in this instance. Additionally, exclusion of the Agreement is warranted based on the policy underlying the hearsay rule, namely, that Dutton will be unable to cross-examine the words written in the Agreement, if offered by the government for their truth. *See, e.g., Anderson v. United States*, 417 U.S. 211, 220, 94 S. Ct. 2253, 2260 (1974) ("The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross- examine the absent declarant whose out-of-court statement is introduced into evidence.").

In short, the Amnesty Agreement and the words contained therein, if offered for their truth, constitute inadmissible hearsay, and the government will be unable to carry its burden of

demonstrating that any hearsay exception applies to save it from being inadmissible. Thus, the Agreement should be excluded from the evidence.

### C. In the alternative, the Court should give a limiting instruction to the jury regarding the Amnesty Agreement

Defendant respectfully urges the Court to exclude the Amnesty Agreement from trial for the reasons set forth above. In the alternative, should the Court allow the government to introduce and use the Amnesty Agreement, Defendant respectfully requests that the Court give the jury an appropriate cautionary and limiting instruction concerning this document.

### III. CONCLUSION

For the foregoing reasons, Defendant Dutton respectfully requests that the Court exclude the Amnesty Agreement.

Respectfully submitted this the 8th day of September, 2003.

/s/ Mark T. Calloway
Mark T. Calloway, Esquire
N.C. State Bar No.: 10822
ALSTON & BIRD LLP
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
(704) 444-1089

/s/ E. Bart Daniel by Mark T. Calloway
E. Bart Daniel, Esquire
Seven State Street
Charleston, South Carolina 29401
(843) 722-2000

/s/ Matthew R. Hubbell by Mark T. Calloway
Matthew R. Hubbell, Esquire
Seven State Street
Charleston, South Carolina 29401
(843) 720-3184

**Attorneys For Defendant Robert Bradley Dutton**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Criminal No. 3:02CR220-V

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT BRADLEY DUTTON, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

This is to certify that I have this date served the within and foregoing **Defendant Robert Bradley Dutton's Motion *In Limine* to Exclude Amnesty Agreement** via facsimile *without exhibits* on September 8, 2003 and via hand-delivery *with exhibits* on September 9, 2003:

Mitchell R. Chitwood, Esq.
Paul D. Kohler, Esq.
Delia I. Neil, Esq.
U.S. Department of Justice
Thanksgiving Tower
1601 Elm Street, Suite 4950
Dallas, TX 75201-4717

This the 9th day of September, 2003.

Mark T. Calloway

U. S. Department of Justice

Antitrust Division

*Office of the Deputy Assistant Attorney General*     Washington, D.C. 20530

**VIA FACSIMILE**

Mr. Kent A. Gardiner
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595

Mr. Peter D. Standish
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, N.Y. 10153

Mr. Richard Ben-Veniste
Weil, Gotshal & Manges LLP
1615 L Street, N.W.
Suite 700
Washington, D.C. 20036

Dear Messrs. Gardiner, Standish and Ben-Veniste:

This letter sets forth the terms and conditions of an agreement between the Antitrust Division of the United States Department of Justice and DuPont-Akra Polyester, LLC ("DuPont-Akra"), and the two joint venture partners in DuPont-Akra, E.I. du Pont de Nemours and Company ("DuPont") and Alfa S. A. de C. V. ("Alfa") (collectively "DuPont-Akra and/or its Parents") in connection with possible price fixing or other conduct violative of Section 1 of the Sherman Act, 15 U.S.C. § 1, in the polyester staple industry in North America. This agreement is conditional and depends upon DuPont-Akra and its Parents satisfying the conditions set forth below. After all of these conditions are met, the Antitrust Division will notify DuPont-Akra and its Parents in writing that the application has been granted. It is further agreed that disclosures made by counsel for DuPont-Akra or its Parents in furtherance of the amnesty application will not constitute a waiver of the attorney-client privilege or the work-product privilege.

## AGREEMENT

1. **Representations:** DuPont-Akra and its Parents desire to report to the Antitrust Division possible price fixing or other conduct violative of the Sherman Act in the polyester staple industry in North America ("the anticompetitive activity being

1

reported"). DuPont-Akra and its Parents represent to the Antitrust Division that, in connection with the anticompetitive activity being reported, it:

 (a) took prompt and effective action to terminate its part in the anticompetitive activity being reported upon discovery of the activity; and

 (b) did not coerce any other party to participate in the activity and was not the leader in, or the originator of, the anticompetitive activity being reported.

2. **Cooperation**: DuPont-Akra and its Parents agree to provide full, continuing, and complete cooperation to the Antitrust Division in connection with the activity being reported (execpt that Alfa is not obligated to cooperate concerning any conduct that predates the creation of the DuPont-Akra joint venture), including, but not limited to, the following:

 (a) providing a full exposition of all facts known to DuPont-Akra and its Parents relating to the anticompetitive activity being reported;

 (b) providing promptly, and without requirement of subpoena, all documents or other items in their possession, custody or control, wherever located, requested by the Antitrust Division, to the extent not already produced;

 (c) using its best efforts to secure the ongoing, full, and truthful cooperation of the current and former directors, officers, and employees of DuPont-Akra, DuPont, Alfa and related entities, and encouraging such persons voluntarily to provide the Antitrust Division with any information they may have relevant to the anticompetitive activity being reported;

 (d) facilitating the ability of current and former directors, officers, and employees to appear for such interviews or testimony in connection with the anticompetitive activity being reported as the Antitrust Division may require at the times and places designated by the Antitrust Division;

 (e) using its best efforts to ensure that current and former directors, officers, and employees who provide information to the Antitrust Division relevant to the anticompetitive activity being reported respond completely, candidly, and truthfully to all questions asked in interviews, grand jury appearances, and at trial;

2

(f)  using its best efforts to ensure that current and former directors, officers, and employees who provide information to the Antitrust Division relevant to the anticompetitive activity being reported make no attempt either falsely to protect or falsely to implicate any person or entity; and

(g)  making all reasonable efforts, to the satisfaction of the Antitrust Division, to pay restitution to any person or entity injured as a result of the anticompetitive activity being reported in which DuPont-Akra or its Parents were participants.

3. **Corporate Leniency**: Subject to verification of DuPont-Akra and its Parent's representations in paragraph 1 above, and subject to its full, continuing, and complete cooperation, as described in paragraph 2 above, the Antitrust Division agrees conditionally to accept DuPont-Akra and its Parents into Part A of the Corporate Leniency Program, as explained in an Antitrust Division policy statement dated August 10, 1993 (attached). Pursuant to that policy, the Antitrust Division agrees not to bring any criminal prosecution against DuPont-Akra or its Parents for any act or offense committed prior to the date of this letter in connection with the anticompetitive activity being reported (except that this non-prosecution agreement does not cover any conduct on the part of Alfa that predates the creation of the DuPont-Akra joint venture). The commitments in this paragraph are binding only upon the Antitrust Division, although, upon request of DuPont-Akra or its Parents, the Antitrust Division will bring this Agreement to the attention of other prosecuting offices or administrative agencies. If the Antitrust Division at any time determines that DuPont-Akra or its Parents has violated this Agreement, this Agreement shall be void, and the Antitrust Division may revoke the conditional acceptance of DuPont-Akra and its Parents into the Corporate Leniency Program. Should the Antitrust Division revoke the conditional acceptance of DuPont-Akra and its Parents into the Corporate Leniency Program, the Antitrust Division may thereafter initiate a criminal prosecution against DuPont or its Parents without limitation. Should such a prosecution be initiated, any documentary or other information provided by DuPont-Akra or its Parents as well as any statements or other information provided by any current or former director, officer, or employee of DuPont-Akra, DuPont, Alfa or related entities to the Antitrust Division pursuant to this Agreement, may be used against DuPont-Akra or its Parents in any such prosecution.

4. **Non-Prosecution Protection for Corporate Directors, Officers, and Employees**: Subject to DuPont-Akra and its Parents's full, continuing, and complete cooperation, the Antitrust Division agrees that current and former directors, officers, and employees of DuPont-Akra, DuPont, Alfa and related entities who admit their knowledge of, or participation in, and fully and truthfully cooperate with the Antitrust Division in its investigation of the anticompetitive

3

activity being reported, shall not be prosecuted criminally by the Antitrust Division for any act or offense committed during their period of employment at DuPont-Akra, DuPont, Alfa or related entities prior to the date of this letter in connection with the anticompetitive activity being reported. Such full and truthful cooperation shall include, but not be limited to:

(a) producing in the United States all documents and records, including personal documents and records, and other materials requested by attorneys and agents of the United States;

(b) making himself or herself available for interviews in the United States upon the request of attorneys and agents of the United States;

(c) responding fully and truthfully to all inquiries of the United States in connection with the anticompetitive activity being reported, without falsely implicating any person or intentionally withholding any information;

(d) otherwise voluntarily providing the United States with any materials or information not requested in (a)-(c) of this paragraph, that he or she may have relevant to the anticompetitive activity being reported; and

(e) when called upon to do so by the United States, testifying in trial and grand jury or other proceedings in the United States, fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621) and making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), in connection with the anticompetitive activity being reported.

The commitments in this paragraph are binding only upon the Antitrust Division, although, upon request of DuPont-Akra or its Parents, the Antitrust Division will bring this Agreement to the attention of other prosecuting offices or administrative agencies. In the event a current or former director, officer, or employee of DuPont-Akra, DuPont, Alfa or related entities fails to comply fully with his/her obligations hereunder, this Agreement as it pertains to such individual shall be void, and any leniency, immunity or non-prosecution granted to such individual under this Agreement may be revoked by the Antitrust Division. Should any leniency, immunity, or non-prosecution granted be revoked, the Antitrust Division may thereafter prosecute such person criminally, and any statements or other information provided by such person to the Antitrust Division pursuant to this Agreement may be used against him/her in such prosecution.

5. **Entire Agreement**: This letter constitutes the entire agreement between the Antitrust Division and DuPont-Akra and its Parents and supersedes all prior understandings, if any, whether oral or written, relating to the subject matter herein.

6. **Authority and Capacity**: The Antitrust Division and DuPont-Akra and its Parents represent and warrant each to the other that the signatories to this Agreement on behalf of each party hereto have all the authority and capacity necessary to execute this Agreement and to bind the respective parties hereto.

The signatories below acknowledge acceptance of the foregoing terms and conditions.

Sincerely yours,

Date: *April 27, 2000*

James M. Griffin
Deputy Assistant Attorney General
Antitrust Division

Kent A. Gardiner
Counsel for DuPont-Akra Polyester, LLC
and E.I. du Pont de Nemours
and Company

Date: *April 28, 2000*

Peter D. Standish
Counsel for DuPont-Akra Polyester, LLC
and Alfa S.A. de C.V.

Date: *May 2, 2000*

___ Attachment

5