EXHIBIT A

United States District Court
For The District Of Columbia

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SUPPLEMENTAL DECLARATION OF WAYNE FOSTER

### I. INTRODUCTION

I, Wayne Foster, hereby declare the following to be a true and correct statement of facts:

1. I am a Paralegal Specialist for the Department of Justice (DOJ), Antitrust Division, Freedom of Information Act/Privacy Act Unit. I have served in that capacity for over nine years. My assigned duties include searching the Division's systems of records for and conducting a line-by-line review of responsive documents for Freedom of Information Act (FOIA) requests made to the Antitrust Division.

2. The statements I make hereinafter are made on the basis of my review and search of the official files and records of the Antitrust Division, or on the basis of information acquired by me through the performance of my official duties.

3. This Declaration is provided as a supplement to the Declaration of Ann Lea Richards (Dk# 30-2, Exhibit A to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment)[1]/, which I have reviewed and am familiar with, to describe the Antitrust Division's search for records in response to nine of plaintiff's twelve FOIA requests, numbered ATFY05-071, 05-072, 05-080, 05-088, 05-113, 05-131, 06-002, 06-003, 06-019, 06-026, 06-038, and 06-040, submitted by the law firm of White & Case on behalf of Stolt-Nielsen Transportation Group, Ltd (SNTG). All twelve requests were assigned to me for processing. Plaintiff has indicated in its Motion for Summary Judgment (Aug. 18, 2006)(Dk# 23-1 at 1) that it seeks no further information for request ATFY05-071 (pertaining to a meeting with John Nannes). Plaintiff also withdrew its requests for ATFY05-088 and ATFY06-026 (both concerning communications with foreign agencies that are International Competition Network members), in Exhibit 5 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dk# 36-1 at 13, 32)(Sept. 27, 2006). Accordingly, only the search for agency records responsive to the remaining nine requests will be discussed in this Declaration.

4. When I processed plaintiff's requests, after receipt of potentially responsive documents, I reviewed the documents and separated responsive records from non-responsive records. I carefully reviewed responsive pages line-by-line. Applying the FOIA exemptions, I marked the pages with my recommendations for redacting portions of pages and/or withholding

---

[1]/ Unless otherwise noted, the docket numbers herein refer to the docket for Civil Action No. 05-2217 (RJL).

entire pages, and I segregated the nonexempt portions for release. My recommendations were then forwarded to Ann Lea Richards, Chief, FOIA/PA Unit, who made the final determinations for releasing or withholding Division records, in accordance with the FOIA, 5 U.S.C. § 552; Privacy Act, 5 U.S.C. § 522a; and DOJ regulations, 28 C.F.R. §§ 16.3 *et seq* and §§ 16.40 *et seq.* In particular, as for the amnesty agreements that are the subject of plaintiff's current motion, I also reviewed the amnesty agreements and forwarded my recommendations to Ann Lea Richards for the final determination on disclosure. After Ms. Richard's final review was completed, the exempt documents that were to be withheld in their entirety were separated and marked accordingly. Exempt portions of the remaining disclosable documents were redacted using opaque tape and marked with applicable FOIA exemptions. Pages containing no exemptions were released in full. The redacted documents and those to be released in full were copied and produced to plaintiff.

## II. SYSTEMS OF RECORDS AND CATEGORIES OF RECORDS

5. The Antitrust Division has published eight systems of records. The use of these systems is not limited to the processing of FOIA requests. Indeed, the primary use of these systems is for the fulfillment of the Antitrust Division's law enforcement mission. Any documents responsive to plaintiff's FOIA requests would have been located in and retrieved from two systems of records: (1) ATR-004, Statements by Antitrust Division Officials (ATD Speech File); and/or (2) ATR-006, Antitrust Management Information System (AMIS) – Matter Report. The AMIS system contains the primary application, called the Matter Tracking System (MTS), which is used by personnel to locate information about the Division's merger, civil non-merger, and criminal investigations and cases.

3

6. No other systems of records, besides ATR-004 and ATR-006, would be likely to contain records responsive to plaintiff's requests. For example, two systems of records, which are maintained on index cards and used for historical purposes only, do not contain information on current defendants and cases and would not contain responsive information: (1) ATR-003, Index of Defendants in Pending and Terminated Antitrust Cases;[2]/ and (2) ATR-007, Antitrust Division Case Cards.[3]/ Also, the remaining four systems do not contain information related to the subject matter of plaintiff's requests: (1) ATR-001, Antitrust Division Expert Witness File; (2) ATR-005, Antitrust Management Information System (AMIS)-Time Reporter; (3) ATR-009, Public Complaints and Inquiries File; and (4) ATR-014, Civil Investigative Demand (CID) Tracking System.

7. ATR-004, ATD Speech File, contains, among other items, an index record for each public statement or speech issued or made by employees of the Antitrust Division. The index is maintained for ready reference by Department personnel for the identification of the subject matter of and persons originating public statements by Antitrust Division employees. The reference is utilized in aid of compliance with requests from the public and within the agency for

---

[2]/ATR-003 contains information on defendants in pending and terminated criminal and civil cases brought by the United States under the antitrust laws between approximately July 1, 1909 and July 25, 2001. The system contains an index reference to each case in which an individual or corporation is or was a defendant. Included in the information is the proper case name, judicial district, number of the case, and the date filed. This system is maintained on index cards filed by the defendant's name, in the FOIA Unit's Antitrust Documents Group, and is used for historical purposes. Current cases are not maintained in this system.

[3]/ATR-007 contains an index reference to the case in which an individual or corporation is or was a defendant between approximately July 1, 1909 and May 10, 1990. Included in the information is proper case name, the judicial district, number of the case, the commodity involved, each alleged violation, the section of the Antitrust Division responsible for the matter, internal file number, and the disposition of the case. This system is maintained on index cards filed by case name, in the FOIA Unit's Antitrust Documents Group, and is used for historical purposes. Current cases are not maintained in this system.

access to texts of these statements. Texts of speeches are also maintained in binders in the FOIA Unit's Antitrust Documents Group, filed by individual names and by date. Since 1985, the text of speeches by Assistant Attorneys General and Deputy Attorneys General have been posted on the Division's Web-site at http://www.usdoj.gov/atr/public/speeches/speeches.htm. Division sections also maintain their own speech files.

8. ATR-006, AMIS, contains, among other items, a computerized records index known as the Matter Tracking System (MTS), which is a major information system containing information about each matter currently or formerly under investigation. The system contains the names of Antitrust Division employees and their case/investigation assignments, the name of individual defendants and investigation targets as they relate to a specific case/investigation, the alleged violations, the industry in which the subject participates, DOJ file numbers, Hart-Scott-Rodino Act enforcement information, consent decree information, including divestitures and reporting requirements. The MTS contains selected internal memoranda and pleadings relating to the cases and investigations included in the system. Also, information reflecting the current status and handling of Antitrust cases/investigations is included in this system and whether the files are maintained in Washington, DC or at the field offices. Thus, although the physical records that comprise this system of records are maintained in different offices, the Division uses MTS to determine which offices maintain the records pertaining to the search. The files can then be physically retrieved from the appropriate locations. One of the purposes of the MTS is to enable Division personnel to locate matters currently and formerly under investigation, identify assigned staffs, obtain memoranda and pleadings, and ascertain the progress and current status of cases and investigations within the Division. MTS information is maintained electronically and

is retrieved by a variety of key search words and terms such as the name of a company, name of an individual, DOJ file number, or an industry code. The computerized information is updated on a daily basis.

## III. SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

9. On June 3, 2005, plaintiff submitted two FOIA requests to the Antitrust Division. These requests were assigned control numbers ATFY05-071 (pertaining to a meeting with John Nannes, withdrawn, see ¶ 3 above) and ATFY05-072.

The second request, ATFY05-072, sought:

> [C]opies of, and notes related to, the following speeches given by Scott D. Hammond, Deputy Assistant Attorney General and [formerly the] Director of Criminal Enforcement: (1) In Las Vegas, Nevada during the 19th Annual National Institute on White Collar Crime 2005, on March 3-4, 2005; (2) At the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 - April 1, 2005; (3) At the Langdon Hall 2005 Competition Law and Policy Invitational forum in Canada on May 6, 2005; and (4) Any other public speeches or presentations in which Mr. Hammond discussed the Antitrust Division's pending action(s) against SNTG . . . .

> [A]ny drafts of *The Curious Case of Stolt-Nielsen, S.A. v. United States*\* and any comments, notes or other documents relating to this article that were prepared by any Antitrust Division employees, whether located in Washington, D.C. or the Antitrust Division's Philadelphia Field Office.

> \*Jim Walden and Kristopher Dawes, *The Curious Case of Stolt-Nielsen, S.A. v. United States*, THE ANTITRUST SOURCE (March 2005).

(Richards Decl. ¶ 10, Dk# 30-2; Exhibit H to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-8).

10. On June 7, 2005, I contacted the Office of Scott Hammond, Deputy Assistant Attorney General and Director of Criminal Enforcement, and his assistant James Ragsdale to

request copies of, and notes related to, the named speeches and other public speeches or presentations in which Mr. Hammond discussed the Antitrust Division's pending actions against Stolt-Nielsen Transportation Group, Ltd in response to request number ATFY05-072. I also requested that Mr. Hammond's office conduct a search for documents relating to an article entitled: *The Curious Case of Stolt-Nielsen, S.A. v. United States*, written by Jim Walden and Kristopher Dawes.

11. On June 9, 2005, I searched for responsive records by searching the term "Stolt" within the Division's computerized records index MTS, in the system of records ATR-006. As stated above, this computerized records system contains information about each matter currently or formerly under investigation and may be searched by the name of a company, the name of an individual, DOJ file number, or an industry code. My search revealed an ongoing Philadelphia Field Office matter involving Stolt-Nielsen. Records relating to an ongoing Division investigation are maintained in the Section conducting the investigation. I, accordingly, contacted Robert Connolly, Chief of the Philadelphia Field Office, to which the matter was assigned, forwarded copies of the two requests, and asked that a search be conducted for responsive records. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 below.

12. For request ATFY05-072, Scott Hammond conducted a search and produced responsive documents to the FOIA Unit on August 30-31, 2005. Before contacting Mr. Hammond's office I separately obtained a copy of the speech he gave at the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 - April 1, 2005. In addition, Ms. Belinda Barnett, Senior Counsel for Criminal Enforcement, conducted a search of relevant

7

electronic and hard copy files. Ms. Barnett produced potentially responsive documents to the FOIA Unit on June 16, August 10, 2005 and March 2006. I have read and am familiar with the Supplemental Declaration of Belinda A. Barnett, attached as Exhibit B, to Defendant's Response to Plaintiff's Supplement to its Motion for Partial Summary Judgment. John Powers and John Fonte of the Division's Appellate Section also provided potentially responsive documents to the FOIA Unit. In addition, in the process of verifying data sent to the FOIA Unit in the preparation of Defendant's Response to Plaintiff's Supplement to its Motion for Partial Summary Judgment, on March 22, 2007, the FOIA Unit became aware of, and was produced with, a shorter, apparently later version of ATR-336-342. ATR-336-342 was released in full to plaintiff on March 28, 2006 in a supplemental response to ATFY05-072. See Amended 2005 Vaughn Index p.17 (DK# 31-2). The FOIA Unit is releasing the newly discovered version to plaintiff in its entirety (Bates number ATR-4990-4994).

13. Upon being advised that plaintiff had filed a FOIA request, Robert Connolly set forth the following procedures for searching for responsive documents:

(a) Mr. Connolly immediately contacted all office personnel who had worked on the parcel tanker shipping investigation and informed them that the office had received a FOIA request requiring them to search for responsive documents. He informed all attorneys, paralegals, secretaries and other support staff who had worked on the investigation that they should maintain all documents generated during this investigation, including drafts and notes.

(b) Mr. Connolly designated Melissa Lenzi, a supervisory paralegal, to be the point of contact to collect all responsive documents from staff in the Philadelphia Office and forward them to the FOIA Unit for their determination as to whether the documents were exempt

from disclosure under any applicable FOIA exemption.

     (c)   Thereafter, Mr. Connolly forwarded a copy of plaintiff's FOIA request to each employee who had any involvement with the parcel tanker investigation with instructions to search for any potentially responsive documents, and to produce such documents to Ms. Lenzi. He instructed the staff to produce any potentially responsive document without regard to whether it might be withheld, in whole or in part, under an applicable FOIA exemption.

     (d)   All Philadelphia office employees were instructed to search every possible location where there might be responsive documents in systems of records (1) ATR-004, Statements by Antitrust Division Officials (ATD Speech File) and/or (2) ATR-006, Antitrust Management Information System (AMIS). This included searching all electronic files whether official office files or independent working files create by the staff member, all official hard copy files maintained in this office, any personal working files that an attorney or support staff may have set up, and any other possible location such as a desk file, or shelf, where someone may have retained documents that might be responsive to the FOIA requests.

     (e)   All potentially responsive documents were given by staff to Melissa Lenzi, who forwarded them to the Antitrust Division's FOIA Unit.

     14. On June 13, 2005, plaintiff submitted a third request. This request was assigned control number ATFY05-080 and sought:

> [A]ny and all documents relating to the opening of the antitrust investigation of the parcel tanker industry in November 2002, including but not limited to documents and information specifically relating to the following: (1) The article, '*Stolt-Nielsen Is Probed For Traffic With Iran*,' published in the Wall Street Journal;** (2) The request to open an investigation by the Philadelphia Field Office of the Antitrust Division, including but

not limited to the Preliminary Inquiry Request Memorandum and any memoranda to the Federal Bureau of Investigation requesting assistance; and (3) Any documents memorializing actions taken by the Antitrust Division in opening such investigation.

\*\*James Handler & John McKinnon, *Stolt-Nielsen Is Probed For Traffic With Iran*, WALL ST. J., Nov. 22, 2002 at A3.

(Richards Decl. ¶ 11, Dk# 30-2; Exhibit I to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-9).

15. I forwarded request ATFY05-080 to Robert Connolly at the Philadelphia Field Office, on June 15, 2005, seeking responsive records. As stated above, records relating to an open investigation are maintained by the Section conducting that investigation. Mr. Connolly forwarded request ATFY05-080 to Belinda Barnett. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 above.

16. Ms. Barnett searched relevant electronic and hard copy files in the Office of Criminal Enforcement and forwarded potentially responsive documents for request ATFY05-080 to the FOIA Unit beginning on July 13, 2005.

17. On June 27, 2005 plaintiff submitted a fourth request. This request was assigned control number ATFY05-088 (withdrawn, see ¶ 3 above) and forwarded to Robert Connolly on June 28, 2005.

18. On August 23, 2005, plaintiff submitted a fifth request. This request was assigned control number ATFY05-113 and sought:

[A]ny and all correspondence between Antitrust Division officials and Jim Walden and/or Kristopher Dawes of O'Melveny & Myers LLP related to the antitrust investigation into the parcel tanker industry, particularly relating to the article by Mr. Walden and Mr. Dawes.\*\*\*

10

***Jim Walden and Kristopher Dawes, <u>The Curious Case of Stolt-Nielsen, S.A. v. United States</u>, The Antitrust Source (March 2005).

(Richards Decl. ¶ 13, Dk# 30-2; Exhibit K to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-11).

19. I forwarded a copy of request ATFY05-113 to Robert Connolly on August 30, 2005, seeking responsive records. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 above. I also provided Belinda Barnett a copy of this request. Ms. Barnett and Mr. Hammond had previously searched relevant electronic and hard copy files and provided the FOIA Unit with potentially responsive documents to this request in their response to ATFY05-072, which overlapped with request ATFY05-113. John Powers and John Fonte also provided documents to this requests.

20. On July 14, 2005, the Philadelphia Field Office forwarded approximately two boxes of documents potentially responsive to requests one through five. On August 31, 2005, Robert Connolly advised me that he had "received replies from all possible sources of responsive documents" and that they did not have any "additional responsive documents."

21. By letter dated September 13, 2005, the Division's FOIA Unit produced 280 pages of documents as a response to requests one through five (ATFY05-071, ATFY05-072, ATFY05-080, ATFY05-088, ATFY05-113)(Richards Decl. ¶ 23, Dk# 30-2; Exhibit S to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-19).[4]

22. On September 20, 2005, the Division received a sixth request from plaintiff. This request was assigned control number ATFY05-131 and sought:

------------

[4] The September 13, 2005, letter states there were 277 pages, but there were actually 280 pages released.

11

[A]ny and all documents that reflect, memorialize, embody or contain communications to or from (1) the press, including trade press, (2) bar associations, or (3) any other external communications with individuals uninvolved in the litigation with SNTG or the investigation into the parcel tanker industry regarding SNTG or the investigation into the parcel tanker industry. In particular, SNTG requests (a) communications to or from James Bandler of the Wall Street Journal, (b) communications to or from reporter(s) at the Tradewinds publication, and (c) internal Department circulation of press stories regarding SNTG or the investigation into the parcel tanker industry.

(Richards Decl. ¶ 14, Dk# 30-2; Exhibit L to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-12).

23. On September 21, 2005, I forwarded a copy of request ATFY05-131 to Robert Connolly, at the Philadelphia Field Office and provided a copy to Belinda Barnett. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 above. By letter dated September 29, 2005, Ann Lea Richards, Chief, FOIA/PA Unit, denied the request in its entirety pursuant to FOIA Exemption 5 U.S.C. § 552(b)(7)(A). However, during subsequent reviews of responsive documents, Ms. Richards determined that certain of the 280 pages of documents produced to plaintiff on September 13, 2005 were responsive to request number ATFY05-131. These documents were, accordingly, produced in full or as redacted. See Ann Lea Richard's Declaration for a description of the records produced to plaintiff (Richards Decl. ¶ 24, Dk# 30-2; Exhibit U to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-21).

24. Plaintiff appealed all six requests to the Office of Information and Privacy (OIP) on October 13, 2005. Plaintiff was advised by OIP, on January 24, 2006, that further action would be inappropriate due to plaintiff's filing of a Complaint in the U.S. District Court for the District

12

of Columbia.

25. Upon notification of the appeal and Complaint, the FOIA Unit notified Robert Connolly and the Office of Criminal Enforcement and requested that staff conduct a search for documents responsive to plaintiff's sixth request, control number ATFY05-131. I also contacted Mark Pletcher, an attorney in the Division's National Criminal Enforcement Section, who conducted a search and forwarded potentially responsive documents to the FOIA Unit. Ms. Barnett forwarded records to the FOIA Unit in October and December 2005 and February and March 2006, which were potentially responsive to ATFY05-131. Ann O'Brien, Senior Counsel for Criminal Enforcement, also forwarded me potentially responsive records. Mr. Connolly forwarded potentially responsive documents to the FOIA Unit on February 7, 2006.

26. I conducted a line-by-line review, marked the exempt portions, and forwarded these documents potentially responsive to ATFY05-131, as well as additionally discovered documents responsive to ATFY05-072 and ATFY05-080, to Ann Lea Richards for a final determination of their disclosure under FOIA. The non-exempt material was provided to plaintiff on March 28, 2006, for requests ATFY05-072, ATFY05-080, and ATFY05-131. *See* Ann Lea Richard's Declaration for a description of the supplemental records produced to plaintiff on that date (Richards Decl. ¶ 24, Dk# 30-2; Exhibit U to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-21).

27. On October 14, 2005 plaintiff submitted two additional requests. These requests, (the seventh and eighth requests) were assigned control numbers ATFY06-002 and ATFY06-003. Request number ATFY06-002 sought:

> [A]ny and all amnesty agreements entered into by the Antitrust
> Division from August 1993 to the present.

(Richards Decl. ¶ 16, Dk# 30-2; Exhibit N to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-14).

Request number ATFY06-003 sought:

> [A]ny and all documents that reflect, memorialize, embody or
> contain communications regarding the investigation into the parcel
> tanker industry, to or from: (1) David S. Golub; (2) Jonathan M.
> Levine; (3) James M. Griffin, following his departure from the
> Antitrust Division in December 2004; and (4) Donald I. Baker, the
> author of a September 26, 2005 article in the *Legal Times* entitled
> *True Confessions*.

(Richards Decl. ¶ 15, Dk# 30-2; Exhibit M to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-13).

28. On October 14, 2005, I discussed the receipt of request ATFY06-002 with Ann Lea Richards. By e-mail, dated October 20, 2005, Ms. Richards contacted Belinda Barnett, Senior Counsel for Criminal Enforcement. I forwarded copies of request numbers ATFY06-002 and ATFY06-003 to Ms. Barnett on October 25, 2005, seeking responsive documents. Mr. Connolly was also notified of these requests on October 25, 2005, and asked that his staff conduct a search for responsive records. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 above. I personally went to the Office of Criminal Enforcement to review the amnesty agreements and their content. Belinda Barnett also personally reviewed the amnesty agreements located and maintained in the Office of Criminal Enforcement amnesty files. Ms. Barnett and her paralegal Cassi Wiseman also contacted each Division criminal section to ensure that the Office of Criminal Enforcement had copies of all Division amnesty agreements. The Office of Criminal Enforcement provided me with copies of

all amnesty agreements responsive to ATFY06-002. The Office of Criminal Enforcement and each Division criminal section, including the Philadelphia Field Office, searched for amnesty agreements in system of records ATR-006. No other system of records would be likely to contain responsive documents.

29. On October 27, 2005, Belinda Barnett determined that amnesty agreement (Bates # ATR-3160-3164 (later re-Bates numbered ATR-4611-4616) had been entered into evidence at a Division criminal trial and on that date forwarded the agreement to the FOIA Unit. On November 17, 2005, Ms. Barnett also forwarded to the FOIA Unit, three amnesty letters (Bates #'s ATR-2015-2018, ATR-2023-2025, and ATR-2012-2014) that had been admitted into evidence at Division trials and published to a jury, plus one additional amnesty letter involving Stolt-Nielsen's litigation (Bates # ATR-2019-2022) which was entered into evidence during litigation with the Division. On November 22, 2005, Mr. Connolly forwarded all potentially responsive documents to the FOIA Unit for requests ATFY06-002 and ATFY06-003.

30. Request ATFY06-003 sought, among other items, communications with Donald I. Baker. Ms. Barnett indicated that when Mr. Baker contacted the Division regarding his article about the Stolt-Nielsen litigation, she handled the communications with Mr. Baker and alerted him to any factual errors in his article via reference to the public record. Ms. Barnett searched relevant electronic and hard copy files for documents potentially responsive to request ATFY06-003 and forwarded potentially responsive documents to the FOIA Unit in October, November, and December 2005 and March 2006.

31. On November 9, 2005 plaintiff submitted a ninth request. This request was assigned control number ATFY06-019 and sought:

15

[C]opies of speeches, speech outlines, audio or video recordings of speeches including audio tapes, video tapes, CD-ROM or DVDs, program materials announcing the speaking event, notes of any DOJ participant at a speech, emails relating to speeches, and any other documents related to any speeches (collectively "speeches and speech-related materials") by any Antitrust Division official, which discusses in any way SNTG, SNTG's status in the Division's Amnesty Program, the circumstances and rationale for the Division's attempted withdrawal of amnesty from SNTG, and/or the Antitrust Division's litigation with SNTG over SNTG's amnesty status in the Eastern District of Pennsylvania and the appeal to the Third Circuit and/or the investigation into SNTG ("the SNTG matters"). In particular, SNTG requests material related to: (1) Any speeches and speech-related materials relating to speeches relating to the SNTG matters by Scott D. Hammond, Deputy Assistant Attorney General and Director of Criminal Enforcement, from June 2, 2005 (the date of SNTG's prior FOIA request, assigned control number ATFY05-072) to the present, including but not limited to the speeches given by Mr. Hammond (a) in New York City on September 14, 2005, and (b) in Brussels, Belgium on October 26, 2005; and (2) Any public speeches and speech-related materials relating to speeches given by any other Antitrust Division official concerning the SNTG matters, including but not limited to Lisa Phelan (currently Chief, National Crime Enforcement Division), from March 1, 2004 to the present.

(Richards Decl. ¶ 17, Dk# 30-2; Exhibit O to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-15).

32. I forwarded a copy of request ATFY06-019 to Belinda Barnett and Robert Connolly on November 15, 2005, seeking responsive records. Mr. Connolly's instructions and process for gathering documents for this request are identified in paragraph 13 above. I also sent this request to Scott Hammond seeking responsive records. I searched the Division's web-site using the individual terms: "Stolt," "SNTG," "parcel," and "tanker," to determine whether there were any speeches, as well as requested the assistance of a Legal Assistant within the Antitrust Documents Group, who also searched the web-site using those search terms. In another attempt to locate any

16

responsive material relating to speeches about Stolt-Nielsen since March 1, 2004, I contacted

Bruce McDonald, another Division Deputy Assistant Attorney General; Scott Watson, Chief of

the Division's Cleveland Field Office; and Lisa Phelan, Chief of the Division's National Criminal

Enforcement Section; all of whom had contacted Ms. Barnett regarding potential public remarks

or public inquiries regarding Stolt-Nielsen's leniency revocation. All Division Section Chiefs and

Ann O'Brien were asked for documents relating to speeches about Stolt-Nielsen since March 1,

2004. Belinda Barnett; Scott Watson; Lisa Phelan; Phillip Warren, Chief of the Division's San

Francisco Field Office; Bruce McDonald; and Ann O'Brien forwarded potentially responsive

documents to the FOIA Unit. The Philadelphia Field Office found no records responsive to

request number ATFY06-019 that it had not previously forwarded to the FOIA Unit in response to

previous requests.

33. On December 7, 2005, plaintiff submitted a tenth request. This request was assigned

control number ATFY06-026 (withdrawn, see ¶ 3 above).

34. On January 24, 2006, plaintiff submitted an eleventh request. This request was

assigned control number ATFY06-038 and sought:

> [C]opies of speeches, speech outlines, audio or video recordings of
> speeches including audio tapes, video tapes, CD-ROM or DVDs,
> program materials announcing the speaking event, notes of any DOJ
> participant at a speech, emails relating to speeches, and any other
> documents related to any speeches (collectively "speeches and
> speech-related materials") by any Antitrust Division official, which
> discusses in any way SNTG, SNTG's status in the Division's
> Amnesty Program, the circumstances and rationale for the
> Division's attempted withdrawal of amnesty from SNTG, and/or the
> Antitrust Division's litigation with SNTG over SNTG's amnesty
> status in the Eastern District of Pennsylvania and the appeal to the
> Third Circuit and/or the investigation into SNTG (the "SNTG
> matters"). In particular, SNTG requests material related to: (1) Any

17

speeches and speech-related materials related to speeches relating to
the SNTG matters by Scott D. Hammond, Deputy Assistant
Attorney General and Director of Criminal Enforcement, from
November 9, 2005 (the date of SNTG's prior FOIA request,
assigned control number ATFY06-019) to the present, including but
not limited to the speech given by Mr. Hammond at the National
Press Club in Washington, D.C. on November 16, 2005; and (2)
Any public speeches and speech-related materials relating to
speeches given by any other Antitrust Division official concerning
the SNTG matters, including but not limited to Lisa Phelan
(currently Chief, National Crime Enforcement Division), from
March 1, 2004 to the present.

(Richards Decl. ¶ 19, Dk# 30-2; Exhibit Q to Memorandum of Points and Authorities in Support
of Defendant's Motion for Summary Judgment, Dk# 28-17).

35.   I requested responsive records for request ATFY06-038 from the Philadelphia Field

Office and the Office of Criminal Enforcement through Robert Connolly and Belinda Barnett on

January 26, 2006.  Mr. Connolly's instructions and process for gathering documents for this

request are identified in paragraph 13 above.  I also requested any responsive records from all

Section Chiefs on January 27, 2006.

36.   Belinda Barnett and Scott Hammond searched relevant electronic and hard copy files

and provided documents potentially responsive to request ATFY06-038 to the FOIA Unit in

January 2006.  Bruce McDonald, Phillip Warren, Ann O'Brien, and Scott Watson also provided

potentially responsive records to the FOIA Unit.  Lisa Phelan advised that she had no responsive

records other than those produced for ATFY06-019.  The Philadelphia Field Office found no

records responsive to ATFY06-038 that it had not previously forwarded to the FOIA Unit in

response to previous requests.

37.   On January 26, 2006 plaintiff submitted a twelfth request.  This request was assigned

control number ATFY06-040 and sought:

18

> [A]ny and all documents that reflect, memorialize,
> embody, or contain communications regarding the
> investigation into the parcel tanker industry, to or
> from: (1) Any attorney with St. Martin & Williams,
> including but not limited to Conrad S.P. "Duke"
> Williams III; and (2) Any attorney with Kasowitz,
> Benson, Torres & Friedman LLP, including but not
> limited to: (I) Hector Torres: (ii) Harold G.
> Levinson; or (iii) Gary W. Dunn.

(Richards Decl. ¶ 20, Dk# 30-2; Exhibit R to Memorandum of Points and Authorities in Support

of Defendant's Motion for Summary Judgment, Dk# 28-18).

38. I forwarded request ATFY06-040 to Robert Connolly and Belinda Barnett on January

31, 2006 and requested responsive documents from the Philadelphia Field Office and the Office

of Criminal Enforcement.

39. On February 7, 2006, Robert Connolly forwarded all potentially responsive

documents to the FOIA Unit for request ATFY06-040. Ms. Barnett's office had no contacts with

these firms, and hence, no responsive records.

## IV. SUPPLEMENTAL RECORD RELEASES TO PLAINTIFF

40. By letter dated September 13, 2005, the FOIA Unit initially produced 280 pages of

documents as a response to requests one through five (ATFY-071, ATFY-072, ATFY-080,

ATFY-088, and ATFY-113)(Richards Decl. ¶ 23, Dk# 30-2; Exhibit S to Memorandum of Points

and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-19). The

Division's FOIA Unit produced supplemental non-exempt material to plaintiff on January 31,

2006 for request ATFY05-072. See Ann Lea Richard's Declaration for a description of the

supplemental records produced to plaintiff on that date (Richards Dec. ¶ 24, Dk# 30-2; Exhibit T

to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-20).

41. After an expanded search was conducted by appropriate Division staff, additional responsive documents were located. I carefully conducted a line-by-line review, marked the exempt portions, and forwarded these documents to Ann Lea Richards for a final determination of their public availability. The supplemental non-exempt material was provided to plaintiff on March 28, 2006, for requests ATFY05-072, ATFY05-080, and ATFY05-131. See Ann Lea Richard's Declaration for a description of the supplemental records produced to plaintiff on that date (Richards Decl. ¶ 24, Dk# 30-2; Exhibit U to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-21).

42. On April 27, 2006, defendant responded to all six of plaintiff's FY 2006 requests. See Ann Lea Richard's Declaration for a description of the records produced to plaintiff on that date (Richards Decl. ¶ 25, Dk# 30-2; Exhibits V-AA to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-22 – 28-26). Regarding plaintiff's request ATFY-06-002, seeking amnesty agreements, the FOIA Unit released to plaintiff, four amnesty agreements (14 pages) in their entirety, three of which had been admitted into evidence at Division trials and published to a jury, plus Stolt-Nielsen's own agreement that had been entered into evidence in a civil action concerning the revocation of its amnesty agreement: (1) Bates # ATR-2015-2018, (2) Bates # ATR-2023-2025, (3) Bates # ATR-2012-2014, and (4) Stolt-Nielsen (Bates # ATR-2019-2022).

43. On June 14, 2006, Belinda Barnett learned from the Chicago Field Office that the amnesty agreement (Bates numbered ATR-3165-3169) had been entered into evidence at a

20

Division criminal trial. After the Chicago Office faxed the letter to Ms. Barnett, she forwarded it to the FOIA Unit.

44. On July 7, 2006, in conjunction with filing a *Vaughn* Index, a supplemental document production was released to plaintiff that included numerous documents, including two amnesty agreements that had been admitted into evidence at Division trials: (1) Bates # ATR-3160-3164, and (2) Bates # ATR-3165-3169, which were both released in full. *See Vaughn* Index filed in Case 06-cv-474-RJL (Dk# 22-1 at pp. 137-142). Bates # ATR-3160-3164 would have been released earlier but for defendant's belief that plaintiff had limited the scope of request ATFY06-002 to agreements dated after the date of this agreement.

45. On September 5, 2006, defendant filed an Amended 2006 *Vaughn* Index in Case 05-cv-2217 (RJL) (Dk# 31-3). Defendant discovered duplicate Bates numbering after these two cases were consolidated. To avoid confusion, many of these documents had to be re-Bates numbered, including some of the amnesty agreements. In the Amended 2006 *Vaughn* Index, the amnesty agreements are Bates numbered as follows: Bates # ATR-4611-4616 (previously Bates # 3160-3164), and ATR-4617-4621 (previously Bates # ATR-3165-3169), and other amnesty agreements withheld (Bates # ATR-4622-4989). *See* Amended 2006 *Vaughn* Index (Dk# 31-3 at 153-160).

46. Upon further review of previously redacted or withheld in full documents, by letter dated November 6, 2006, defendant removed some or all of the redactions on twenty-six documents and produced the documents in full or with a portion of previously redacted material disclosed. *See* Nov. 6, 2006 Ann Lea Richards' letter to Lucius B. Lau (Dk# 44-2).

47. In the process of assisting with this response, Ms. Barnett found six e-mails (twelve

21

pages) potentially responsive to request ATFY05-072. (Barnett Decl. ¶ 8). On March 20, 2007, Ms. Barnett forwarded these records to the FOIA Unit for processing. Accordingly, the FOIA Unit is processing the records (Bates # ATR-4995-5006), and any nonexempt portions will be released to plaintiff shortly. In addition, as noted in paragraph 12 above, on March 22, 2007, the FOIA Unit became aware of, and was provided with, a document (four pages) that is a shorter version of a document previously produced to plaintiff (Bates # ATR-336-342) and is releasing the document in its entirety. It is bates numbered ATR-4990-4994.

## V. THE *DUTTON* ATTACHMENT

48. On February 20, 2007, defendant, through its counsel, learned that plaintiff had located one of the amnesty agreements that defendant had withheld in response to request ATFY06-002, which sought "any and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present" (Richards Decl. ¶ 16, Dk# 30-2; Exhibit N to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-14). Plaintiff provided defendant's counsel with (1) a pretrial motion, Defendant Robert Bradley Dutton's Motion *In Limine* To Exclude Amnesty Agreement with an attached corporate amnesty agreement, filed September 8, 2003 in *United States of America v. Robert Bradley Dutton*, Case No. 3:02CR220-V (W.D. N.C. Case Dk# 50)(Dk# 50)(Dk# 47-5, 47-6); (2) Government's Response to Defendant's Motion *in Limine* to Exclude Amnesty Agreement and proposed Order file-stamped September 15, 2003 (W.D. N.C. Case Dk# 47-7); and (3) an April 27, 2006 letter from Ann Lea Richards to Lucius B. Lau and Mark B. Gidley, White & Case LLP, in response to request ATFY06-002, which released four amnesty agreements (14 pages) that "had been entered into evidence at trial" (Richards Decl. ¶ 25; Dk#

22

30-2; Exhibit W to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-23).

49. I personally checked the records and reviewed the *Vaughn* Indexes filed in this FOIA litigation to determine if the amnesty agreement contained in the *Dutton* filing was among those that were found in the Division's initial search for responsive documents and withheld as set forth in the *Vaughn* Indexes filed in this case. I confirmed that the agreement had Bates Numbers ATR-4766-4770 and was included in the Amended 2006 *Vaughn* Index filed on September 5, 2006 in Case 05-cv-2217 (RJL) (Dk# 31-3 at 157) and Case 06-cv-00474-RJL (Dk# 29-2 at 157).

50. As initially found, the amnesty agreement (Bates # ATR-4766-4770) was not marked with any exhibit sticker or court-filed date stamp to indicate that it had been filed in a case. It was later marked with Bates numbers ATR-4766-4770 for the *Vaughn* Indexes in this case.

51. Ms. Barnett had contacted Duncan Currie, Chief, Dallas Field Office, and Mitchell Chitwood, Assistant Chief, Dallas field office, to inquire whether the amnesty agreement (Bates # ATR-4766-4770) had been entered into evidence and used at the Dutton trial and was told that the agreement had not been so used. According to Mr. Chitwood the government had initially planned to introduce the agreement (Bates # ATR-4766-4770) as evidence at trial, but ultimately decided not to use it at trial after all (Barnett Decl. ¶ 6, Exhibit B).

52. In February 2007, I attempted to retrieve the agreement filed in the *Dutton* case from the Western District of North Carolina's PACER Web-site. I found that all of the documents filed in the *Dutton* case were unavailable on PACER. I called the W.D.N.C. clerk's office and was informed that all criminal cases before November 2004 are restricted by the court and not available on PACER. However, I was able to obtain the motion and attached amnesty agreement

23

(W.D.N.C. Dk# 50) from the clerk's office by using the case name and number. The motion was marked with a court file-stamped date, but the amnesty agreement that I received from the court had no court file-stamp date or exhibit sticker affixed to it that would indicate it had been filed in a court case.

## VI. CONCLUSION

As indicated above, the Division's systems of records were searched for responsive records to plaintiff's FOIA requests. The search of those systems of records located the responsive records described in Ann Lea Richard's Declaration (Dk# 30-2). The responsive records located in the initial search included the amnesty agreement that was the subject of Mr. Dutton's motion, which was also included in the *Vaughn* Indexes filed in this case. No other records were located. There are no other systems of records maintained by the Division in which records responsive to plaintiff's request would likely be located. Plaintiff was provided with all nonexempt records located that were responsive to the plaintiff's FOIA request.

I declare under penalty of perjury that the matters set forth in this Declaration and Exhibits are correct and true to the best of my information, knowledge, and belief.

Executed this 23 day of March, 2007.

Wayne Foster, Paralegal
FOIA/Privacy Act Unit
Antitrust Division
United States Department of Justice

24

EXHIBIT B

United States District Court
For The District Of Columbia

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SUPPLEMENTAL DECLARATION OF BELINDA A. BARNETT

### I. INTRODUCTION

I, Belinda A. Barnett, hereby declare the following to be a true and correct statement of facts:

1. I am the Senior Counsel to Scott Hammond, Deputy Assistant Attorney General for Criminal Enforcement of the United States Department of Justice (DOJ), Antitrust Division. I have served in that capacity for seven years. Among other assigned duties, I review and provide advice on indictment, plea agreement, and amnesty recommendations and draft speeches. From 2000 until June 2004, I was the sole Senior Counsel in the Division's Office of Criminal

Enforcement and reviewed work from all of the Division's eight criminal sections. From June 2004 until March 2007, when an additional Senior Counsel was in the Office of Criminal Enforcement, I reviewed the work of four of the Division's criminal sections. The Division's Philadelphia Field Office has been one of my assigned sections the entire seven years I have been Senior Counsel. Thus, I am very familiar with the Philadelphia Field Office's investigation of the parcel tanker industry, including Stolt-Nielsen Transportation Group and related companies, since the investigation began in November 2002.

2. The statements I make hereinafter are made on the basis of my personal knowledge in the performance of my duties in responding to the many Freedom of Information Act (FOIA) requests made by the above named plaintiff.

3. This Declaration is provided as a supplement to the Declaration of Ann Lea Richards (Dk# 30-2, Exhibit A to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment).[1]/ I have reviewed and am familiar with the statements made in Ann Lea Richard's Declaration (Dk# 30-2) and the Supplemental Declaration of Wayne Foster, a paralegal in the Division's FOIA Unit, attached as Exhibit A to Defendant's Response to Plaintiff's Supplement to its Motion for Partial Summary Judgment. In Plaintiff's Supplement to its Motion for Partial Summary Judgment, it challenges the adequacy of the Division's search for amnesty agreements in response to its FOIA request ATFY06-002 based on plaintiff's discovery of one amnesty agreement ("the *Dutton* Attachment") attached to a defense motion filed in *United States v. Dutton* in U.S. District Court for the Western District of North Carolina. *See* Exhibit 2 to Lau Declaration for Plaintiff's Supplement to its Motion for Partial Summary

---

[1]/ Unless otherwise noted, the docket numbers herein refer to the docket for Civil Action No. 05-2217 (RJL).

Judgment (Dk# 47-6). Within the Office of Criminal Enforcement, I served as the coordinator of the search for documents potentially responsive to this request. Hence, this affidavit will address the search for responsive amnesty agreements, as well as my recent discovery of a small number of additional documents potentially responsive to plaintiff's FOIA request ATFY05-072. As described more fully below, I conducted a search for responsive amnesty agreements in the Antitrust Division's system of records ATR-006, Antitrust Management Information System (AMIS) - Matter Report and a search for documents potentially responsive to ATFY05-072 in the Division's system of records ATR-004, Statements by Antitrust Division Officials (ATD Speech File).

## II. SEARCH FOR AMNESTY AGREEMENTS RESPONSIVE TO PLAINTIFF'S REQUEST

4. On October 14, 2005 plaintiff submitted its seventh FOIA request to the Antitrust Division. This request was assigned control number ATFY06-002. Request number ATFY06-002 sought:

> [A]ny and all amnesty agreements entered into by the Antitrust
> Division from August 1993 to the present.

(Richards Decl. ¶ 16, Dk# 30-2; Exhibit N to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-14).

5. I was informed of the substance of request ATFY06-002 on October 20, 2005, and a copy of request number ATFY06-002 was forwarded to me on October 25, 2005. The Office of Criminal Enforcement maintains copies of all Division amnesty agreements. In addition, with respect to ATFY06-002, I and my paralegal Cassi Wiseman also contacted each Division criminal section to ensure that OCE had copies of all Division amnesty agreements. I personally read every amnesty agreement located and maintained in the Office of Criminal

3

Enforcement amnesty files or obtained by the Office of Criminal Enforcement from a Division criminal section in order to make a recommendation to the FOIA Unit on whether redaction of the agreements was possible. Based on my review and my knowledge of, and experience with, the Division's Corporate Leniency Program, I recommended to the FOIA Unit that redaction was not possible. Mr. Foster came to the Office of Criminal Enforcement to review the amnesty agreements, and the Office of Criminal Enforcement later provided Mr. Foster with copies of all Division amnesty agreements responsive to ATFY06-002.

6.     Through my work in the Office of Criminal Enforcement, I was aware that trials had occurred in certain investigations that had involved an amnesty applicant. Thus, I contacted trial staffs whose underlying investigations had involved an amnesty applicant to determine if the pertinent applicant's amnesty agreement had been disclosed in Division trial proceedings. In the process of doing this, the Division's FOIA Unit instructed me that it would disclose amnesty agreements that had been made exhibits and entered into evidence at Division trials. I ultimately also contacted all Division criminal section chiefs to determine whether any amnesty agreements had been made exhibits at Division trials. I specifically contacted Duncan Currie, Chief of the Division's Dallas Field Office, and Mitchell Chitwood, Assistant Chief of the Dallas office and the lead attorney for the Division in the *Dutton* litigation, about the *Dutton* trial and was told the *Dutton* Attachment was not used as an exhibit at the *Dutton* trial. While, according to Mr. Chitwood, the trial staff had originally planned to use the agreement as an exhibit at trial, the staff ultimately decided against its use at trial and the agreement was not made an exhibit. As a result of my inquiries, I was ultimately informed that five amnesty agreements had been entered into evidence as exhibits at Division trials and was given copies of those trial exhibit agreements

4

by the pertinent field office. I produced copies of those five trial exhibit agreements to Mr. Foster. I also produced to Mr. Foster, a copy of plaintiff's amnesty agreement provided to me by the Division's Appellate staff that was entered into evidence in plaintiff's litigation against the Division concerning the revocation of its amnesty agreement. These six agreements were provided to plaintiff on April 27, 2006 and July 7, 2006. (ATR-2012-2014, ATR-2015-2018, ATR-2019-2022, ATR-2023-2025, ATR- 4611-4616 (previously Bates ATR-3160-3164), ATR-4617-4621 (previously Bates ATR-3165-3169), Amended 2006 *Vaughn*, Dk# 31-3, pages 2-3, 153-154.)

## III. DISCOVERY OF ADDITIONAL DOCUMENTS POTENTIALLY RESPONSIVE TO FOIA REQUEST ATFY05-072

7. On June 3, 2005 the Division received its first two FOIA requests from plaintiff. One request was assigned control number ATFY05-072.

Request ATFY05-072 sought:

> [C]opies of, and notes related to, the following speeches given by Scott D. Hammond, Deputy Assistant Attorney General and [formerly the] Director of Criminal Enforcement: (1) In Las Vegas, Nevada during the 19th Annual National Institute on White Collar Crime 2005, on March 3-4, 2005; (2) At the Spring 2005 American Bar Association Antitrust Section Meeting, on March 30 - April 1, 2005; (3) At the Langdon Hall 2005 Competition Law and Policy Invitational Forum in Canada on May 6, 2005; and (4) Any other public speeches or presentations in which Mr. Hammond discussed the Antitrust Division's pending action(s) against SNTG . . .
>
> [A]ny drafts of The Curious Case of *Stolt-Nielsen, S.A. v. United States*\* and any comments, notes or other documents relating to this article that were prepared by any Antitrust Division employees, whether located in Washington, D.C. or the Antitrust Division's Philadelphia Field Office.
>
> \*Jim Walden and Kristopher Dawes, The Curious Case of *Stolt-Nielsen, S.A. v. United States*, THE ANTITRUST SOURCE (March

5

2005).

(Richards Decl. ¶ 10, Dk# 30-2; Exhibit H to Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dk# 28-8).

8. On June 7, 2005, Mr. Foster notified Scott Hammond and his assistant James Ragsdale of plaintiff's FOIA request ATFY05-072. Mr. Hammond produced documents to Mr. Foster potentially responsive to ATFY05-072 on August 30-31, 2005. I was notified of the contents of FOIA request ATFY05-072 by at least June 9, 2005. I searched relevant electronic and hard copy files in the Antitrust Division's system of records ATR-004, Statements by Antitrust Division Officials (ATD Speech File). I produced documents potentially responsive to 05-072 to Mr. Foster on June 16, 2005 and an additional document on August 10, 2005. I also produced to Mr. Foster in March 2006 a potentially responsive document I received from Mr. Hammond. In addition, in assisting with the Division's response to Plaintiff's Supplement to its Motion for Partial Summary Judgment, I spent innumerable hours verifying data sent to the FOIA Unit, and in that process, out of the over 200 documents I produced to the FOIA Unit in connection with plaintiff's twelve FOIA requests, discovered on March 20, 2007 six e-mails relating to potential remarks by Mr. Hammond at the May 6, 2005 Langdon Hall conference. It is not abundantly clear whether all of these e-mails are responsive to ATFY05-072 and those that are most likely responsive are largely duplicative of a document previously accounted for on defendant's Amended 2005 *Vaughn* index. This request was not as broad as the majority of plaintiff's FOIA requests and did not request all documents relating to listed speeches, nor e-mails relating to listed speeches, as did other FOIA speech requests made by plaintiff. However, out of an abundance of caution, I produced these e-mails to the Division's FOIA Unit on March 20, 2007. The Division's FOIA Unit is processing the records, and any nonexempt portions will

6

be released to plaintiff. All of the e-mails relate to documents ATR 375-377 and 378, which were previously produced to the Division's FOIA Unit and accounted for on the defendant's *Vaughn* index. *See* Amended 2005 *Vaughn* index Dk# 31-2 at 20-21. One e-mail attaches an earlier draft of ATR 375-377 and another e-mail copies ATR-375-377 into the text of an e-mail, except for underlining that is present in ATR-375-377 which does not appear in the e-mail text.

## IV. CONCLUSION

As indicated above in the description of my search for records potentially responsive to plaintiff's FOIA requests ATFY06-002 and 05-072, the Division's systems of records ATR-006 and ATR-004 were searched for such records. No other records were located. There are no other systems of records maintained by my office in which records responsive to plaintiff's request would likely be located. Plaintiff was provided with all nonexempt records located that were responsive to the plaintiff's FOIA requests.

I declare under penalty of perjury that the matters set forth in this Declaration and Exhibits are correct and true to the best of my information, knowledge, and belief.

Executed this 23rd day of March, 2007.

Belinda A. Barnett
Senior Counsel to the Deputy Assistant Attorney General
for Criminal Enforcement
Antitrust Division
United States Department of Justice

7

EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Leslie Alfred Brunskill,              )
                                     )
              Plaintiff,          )
                                       )
            v.                  )    Civil Action No. 99-3316 (TPJ)
                                       )
United States Department of Justice, et al., )
                                       )
             Defendants.         )

**FILED**

MAR 19 2001

NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This matter is before the Court upon review of defendant's motion for summary judgment and various motions filed by plaintiff. Because defendant's motion will be granted, plaintiff's motions will be denied.

### FACTS

Leslie Alfred Brunskill is a Florida state inmate who was sentenced in 1986 to life in prison. In a letter dated May 26, 1996, Mr. Brunskill requested records from the Federal Bureau of Investigation regarding an investigation conducted by its Portland, Oregon field office that resulted in his arrest on October 11, 1985. See Declaration of Scott A. Hodes ("Hodes Decl."), ¶ 4, Exh. A. Mr. Brunskill also made several unlimited requests, such as "All notes . . . that the Portland Office transferred to other agencies . . . ." Id. The FBI construed Mr. Brunskill's request broadly as seeking all records regarding himself. Id., ¶ 11, Exh. H. In his request and subsequent correspondence, Mr. Brunskill explained that he was looking for erroneous information contained in agency records that he could use to challenge his 1986 Florida state conviction and to help obtain a prison transfer to Panama. The FBI did

#34
(N)

not provide a substantive response to Mr. Brunskill's FOIA request until December 30, 1998 when it produced 44 pages and withheld 10 pages of responsive records under FOIA Exemptions 1, 7(C) and 7(D). Hodes Decl., ¶ 20, Exh. Q. In response to Mr. Brunskill's administrative appeal, the FBI provided a supplemental release of 6 pages, but otherwise affirmed its initial response. Id., ¶ 24, Exh. U.

Mr. Brunskill filed this action in December 1999 for judicial review of the agency's response to his FOIA request. In preparing its motion for summary judgment, the agency reviewed its production and disclosed an additional 4 pages of records. Hodes Decl., ¶ 29, Exh. V. Defendant continues to withhold four pages in their entirety and portions of other pages on the grounds of FOIA Exemption 7(C) and 7(D).

## DISCUSSION

Plaintiff filed this action to compel the disclosure and correction of records regarding himself pursuant to the Privacy Act and the Freedom of Information Act, 5 U.S.C. §§ 552 and 552a. Defendant moves for summary judgment on the grounds that it has complied with its statutory obligations. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

2

U.S. 317, 322 (1986). In FOIA cases, the courts may, and often do, grant summary judgment

on the basis of government affidavits or declarations that explain how requested information

falls within a claimed exemption, as long as the affidavits or declarations are sufficiently

detailed, non-conclusory, and submitted in good faith, and as long as the plaintiff has no

significant basis for questioning their reliability. Goland v. Central Intelligence Agency, 607

F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

A.    Privacy Act

Defendant denied plaintiff's request under the Privacy Act, citing 5 U.S.C.

§ 552a(j)(2). Privacy Act exemption (j)(2) allows an agency, by regulation, to exempt from

mandatory disclosure:

> records maintained by an agency or component thereof which performs
> as its principal function any activity pertaining to the enforcement of
> criminal laws . . . and which consists of . . . (B) information compiled
> for the purpose of a criminal investigation, including reports of
> informants and investigators, and associated with an identifiable
> individual; or (C) reports identifiable to an individual compiled at any
> stage of the process of enforcement of the criminal laws from arrest or
> indictment through release from supervision.

All documents responsive to plaintiff's FOIA/Privacy Act request are maintained in the FBI's

Central Records System and concerns criminal investigations. See Hodes Decl., ¶ 35. All

records contained in this system are exempt from disclosure under the Privacy Act by

regulation. 28 C.F.R. § 16.96.[1] Consequently, disclosure of records regarding plaintiff could

---

[1]    Nor does plaintiff have the right to correct records in the investigative files of
the FBI. See 5 U.S.C. § 552a(k); Doe v. Federal Bureau of Investigation, 936 F.2d 1346,
1352 (D.C. Cir. 1991) (agency may properly exempt certain systems of records from Privacy
Act's amendment requirements); 28 C.F.R. § 16.96 (exempting FBI's investigative files from
disclosure and amendment requirements of Privacy Act). As previously noted, plaintiff cannot

only be obtained pursuant to the Freedom of Information Act.

    B.    <u>Freedom of Information Act</u>

        1.    Adequacy of Search

Defendant searched its Central Records System for records regarding plaintiff. <u>See</u> Hodes Decl., ¶ 28. The FOIA requires an agency to conduct only a reasonable search for requested records using "methods reasonably expected to produce the information requested." <u>Oglesby v. United States Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990). Because plaintiff would not be entitled to disclosure of records regarding other persons without a signed waiver, <u>see</u>, <u>e.g.</u>, <u>Hatcher v. United States Dep't of Justice</u>, 910 F. Supp. 1, 2-3 (D.D.C. 1995), the FBI reasonably interpreted plaintiff's request as seeking records regarding himself.

Plaintiff argues that defendant failed to locate records regarding his 1975 arrest in Florida. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." <u>SafeCard Services, Inc. v. Securities and Exchange Comm'n</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Plaintiff also argues that defendant should have searched for responsive records in the United States Customs Service. The FBI is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." <u>Kowalczyk v. Department of Justice</u>, 73 F.3d 386, 389 (D.C. Cir. 1996). Particularly here, where the Customs Service is part of a separate department (Treasury) from the FBI (Justice), there is no basis to compel defendant to conduct

---

obtain damages resulting from such errors in his file that he claims resulted in his unlawful conviction without first obtaining habeas relief. <u>See</u> Memorandum and Order, filed December 15, 1999.

its search outside its own systems of records. Because plaintiff has not offered evidence to the contrary or identified inconsistencies in defendant's declaration, the Court finds that defendant's search was adequate because it was "reasonably calculated to uncover all relevant documents." Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

2.    Withholdings pursuant to FOIA Exemption 7(C)

Defendant withheld the names and other identifying information of FBI Special Agents and other federal and foreign law enforcement officers on the ground that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy . . .." 5 U.S.C. § 552(b)(7)(C); see Hodes Decl. ¶¶ 36-40. Deletion of the names of law enforcement personnel under similar circumstances is routinely upheld. See Lesar v. United States Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); Pray v. Department of Justice, 902 F. Supp. 1, 3 (D.D.C. 1995), aff'd in relevant part, 1996 WL 734142 (D.C. Cir. 1996) (finding possibility of animosity toward FBI agents outweighed any possible benefit from disclosure). Exemption 7(C) affords broad privacy rights to those identified in law enforcement files unless a significant public interest exists for disclosure. United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773-775 (1989); SafeCard Services Inc. v. Securities and Exchange Comm'n, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991). The disclosure of the identities of law enforcement officers would serve a significant public interest only where "there is compelling evidence that the agency denying the

5

FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992).

Plaintiff argues that he is entitled to obtain records that were not disclosed to him during his criminal trial, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Plaintiff's intended purpose for seeking these records does not give him any greater rights under the FOIA than any other person would have. The merits of an agency's FOIA determinations do not rest on the identity of the requester or the purpose for which the information is intended to be used. United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. at 770-71. Moreover, requests for impeachment evidence, such as that required to be produced pursuant to Brady v. Maryland, are "outside the proper role of FOIA." Johnson v. United States Dep't of Justice, 758 F. Supp. 2, 5 (D.D.C. 1991). See also Canning v. United States Dep't of Justice, 919 F. Supp. 451, 457 (D.D.C. 1994) (Greene, J.) (collecting cases within the D.C. Circuit, all of which hold that correction of alleged Brady violation was not a "public interest" served by the FOIA).

Plaintiff also argues that the public interest outweighs the individuals' privacy interests because the records would shed light on the FBI's illegal treatment of minorities, including himself. The records disclosed to plaintiff do not support an inference that the FBI mistreated minorities or plaintiff, and the minimal information withheld does not appear to "shed any light on the conduct of any Government agency or official." United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. at 772-773. The Court finds that defendant has made a sufficient showing that the privacy interests at stake outweigh any public

6

interest to warrant summary judgment on both exemptions.

3.    Withholdings pursuant to FOIA Exemption 7(D)

Defendant withheld the names of confidential informants and confidential information pertaining to informants on the basis that disclosure "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D); see Hodes Decl. ¶¶ 41-42. To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Engelking v. Drug Enforcement Administration, 119 F.3d 980 (D.C. Cir. 1997) (quoting United States Dep't of Justice v. Landano, 508 U.S. 165, 174 (1993)). The information withheld by the FBI pursuant to Exemption 7(D) was provided under an express assurance of confidentiality between the FBI and certain foreign law enforcement agencies. Hodes Decl. ¶ 42. Defendant's deletions of information on the basis of Exemption 7(D) was proper.

CONCLUSION

In support of its motion for summary judgment, defendant attached a sworn declaration and copies of the responsive records disclosed to plaintiff. Considering the type of documents at issue, the relatively minimal withholdings made and the agency's description of and justification for its withholdings contained in its supporting declaration, the Court finds that the agency conducted a reasonable search for responsive records, justified its withholdings and disclosed all segregable material. Consequently, defendant's motion for summary judgment

must be granted.

An appropriate order accompanies this Memorandum Opinion.

Thomas Penfield Jackson
United States District Judge

DATE: 3/15/01

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Leslie Alfred Brunskill,                  )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )    Civil Action No. 99-3316 (TPJ)
                                          )
United States Department of Justice, et al.,  )    **FILED**
                                          )
            Defendants.                   )    MAR 1 9 2001

                                          NANCY MAYER WHITTINGTON, CLERK
                                          U.S. DISTRICT COURT

## JUDGMENT

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendant's motion for summary judgment [#14] is GRANTED and

plaintiff's motion for summary judgment [#22] is DENIED; it is

FURTHER ORDERED that plaintiff's motions to strike defendant's motion for

summary judgment [#21], for postponement of time to file discovery [#23], for production of

documents [#35], and for appointment of counsel and to transfer to federal custody [#36] are

DENIED; and it is

FURTHER ORDERED that JUDGMENT is entered in favor of defendant. Any other

pending motions are denied as moot. This is a final appealable order. See Fed. R. App. P.

4(a).

                                          Thomas Penfield Jackson
                                          United States District Judge

DATE: 3/15/01

#40
(2)

2001 U.S. App. LEXIS 25850, *

2 of 2 DOCUMENTS

Leslie Alfred Brunskill, Appellant v. Department of Justice, et al., Appellees

No. 01-5135

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

2001 U.S. App. LEXIS 25850

October 15, 2001, Filed

NOTICE: [*1] RULES OF THE DISTRICT OF COLUMBIA CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

PRIOR HISTORY: 99cv03316.

DISPOSITION: Motion for appointment of counsel denied. Motion for summary affirmance granted.

JUDGES: BEFORE: Rogers and Tatel, Circuit Judges; Williams, Senior Circuit Judge.

OPINION:

### ORDER

Upon consideration of the motion for appointment of counsel; and the motion for summary affirmance, the opposition thereto, and the reply, it is

ORDERED that the motion for appointment of counsel be denied. With the exception of defendants appealing or defending in criminal cases, appellants are not entitled to appointment of counsel when they have not demonstrated sufficient likelihood of success on the merits. It is

FURTHER ORDERED that the motion for summary affirmance be granted. The merits of the parties' positions are so clear as to warrant summary action. See Taxpayers Watchdog, Inc. v. Stanley, 260 U.S. App. D.C. 334, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam); Walker v. Washington, 201 U.S. App. D.C. 82, 627 F.2d 541, 545 (D.C. Cir.) (per curiam), cert. denied, 449 U.S. 994 (1980). [*2] Regarding the information withheld, appellant argues only that it should be released because it is over 25 years old and was previously released during his 1986 jury trial, and the records are no longer part of criminal investigations. Because appellant did not raise these arguments in district court, we will not consider them for the first time

on appeal. See District of Columbia v. Air Florida, Inc., 243 U.S. App. D.C. 1, 750 F.2d 1077, 1084 (D.C. Cir. 1984). As to appellant's additional argument that he was denied the opportunity to amend his complaint, the district court did not sua sponte dismiss his claim under the Freedom of Information Act ("FOIA") but decided the claim on the merits of the government's motion for summary judgment, and appellant was given the opportunity to challenge the claimed exemptions in response to the motion for summary judgment. Regarding appellant's contention that he was improperly denied discovery as to his FOIA claim, because appellant did not articulate why he needed discovery to oppose the motion for summary judgment, the district court did not abuse its discretion in denying his motion for discovery. See Strang v. United States Arms Control & Disarmament Agency, 275 U.S. App. D.C. 37, 864 F.2d 859, 861 (D.C. Cir. 1989). [*3]

Finally, similar to the dismissed claim under the Federal Tort Claims Act, which is not challenged here, appellant's claim under Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), must fail because it is precluded by Heck v. Humphrey, 512 U.S. 477, 486-87, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994). See Williams v. Hill, 316 U.S. App. D.C. 78, 74 F.3d 1339 (D.C. Cir. 1996) (applying Heck to actions against federal officials under Bivens). A damages claim under 42 U.S.C. § 1983 that challenges the fact or duration of a prisoner's conviction or confinement is not cognizable unless that conviction or confinement has been invalidated in a separate proceeding. See Heck, 512 U.S. at 486-87. A plaintiff who seeks to recover damages for allegedly unconstitutional confinement, or other harm caused by actions whose unlawfulness would render a sentence invalid, must prove that the sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. [*4] A judgment in favor of appellant on his challenge to proceedings conducted in connection with his criminal

2001 U.S. App. LEXIS 25850, *

trial would necessarily imply the invalidity of his conviction and sentence, and his sentence has not been invalidated in a prior proceeding.

To the extent appellant seeks discovery related to his Bivens claim, the district court did not abuse its discretion in denying relief because the requested discovery — of information relating to the state of mind of government officials in making statements in support of the warrant against him — is not relevant to the basis for the dismissal of the claim.

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

EXHIBIT D

FILE COPY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN SHEWCHUN,

       Plaintiff,

       v.                      Civil Action No. 95-1920 (JR)

IMMIGRATION AND NATURALIZATION
SERVICE,

       Defendant.

**FILED**

**DEC 10 1996**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

### MEMORANDUM

Plaintiff sues under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, seeking access to all records maintained by the Immigration Naturalization Service concerning him. Before the court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion will be granted.

Facts

In May 1995, plaintiff made a request to INS for all records maintained in his files. By letter dated December 1, 1995, INS advised plaintiff that it had located 411 pages responsive to his request and would release 365 pages, in whole or part, withholding approximately 46 pages. INS updated this disclosure on March 6, 1996, releasing 18 pages of the previously withheld

(N)

31

material.  INS has withheld the remaining material under
Exemption 7(C) of FOIA, 5 U.S.C. § 552(b)(7)(C).

Plaintiff initiated this action on October 10, 1995,
challenging INS' invocation of Exemption 7(C) as improper and
maintaining that INS had failed to conduct a reasonably adequate
search.  Plaintiff also seeks access to the withheld information
under the Privacy Act.

FOIA claim

    a.   Exemption 7(c)

Exemption 7(C) protects "records or information compiled for
law enforcement purposes, but only to the extent that the
production of such law enforcement records . . . (C) could
reasonably be expected to constitute an unwarranted invasion of
personal privacy." 5 U.S.C. § 552(b)(7)(C).  This test requires
the balancing of the individual's right to privacy against any
public interest that would be served by disclosure.  See United
States Dep't of Justice v. Reporters Comm. for Freedom of the
Press, 489 U.S. 749, 762 (1989).

The information in question, in the case of the redacted 44
pages, consists of the identities of third-parties who provided
information to INS, INS nonsupervisory investigators, and one
Royal Canadian Mounted Police Officer.  In addition, the eight

- 2 -

pages withheld in full consist of medical records of a third-party witness. These records were compiled in the course of INS's investigation of plaintiff for deportability pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1251(a). (Thomas Decl. ¶ 14).

The government's claims of exemption under Exemption 7(C) are proper. INS is a federal agency charged with the enforcement of immigration law, and the documents in question relate directly to the agency's law enforcement duties. See Doherty v. United States Dep't of Justice, 775 F.2d 49, 52 (2nd Cir. 1985) (applying 7(C) to INS documents). It is well-established that the identities of INS employees are covered by Exemption 7(C), see id., as well as the identities of individuals providing information during the course of a law enforcement investigation, see Safecard Services Inc. v. SEC, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991). Such protection extends to information which may tend to reveal the identity of the individuals. See Alirez v. NLRB, 676 F.2d 423, 427-28 (10th Cir. 1982).

Plaintiff challenges the withholding of the identities of Royal Canadian Mounted Police Officers on the grounds that the privacy interest of foreign nationals is not protected. Contrary to plaintiff's argument, however, foreign nationals, including

- 3 -

RCMP employees, have the same privacy protection granted to
United States citizens. See United States Dep't of State v. Ray,
502 U.S. 164, 175-79 (1991); Shaw v. United States Dep't of
State, 559 F. Supp. 1053, 1067 (D.D.C. 1983).

The withholding of medical records of a third-party witness
is also adequately justified.  A strong privacy interest has been
recognized in medical records. See McDonnell v. United States, 4
F.3d 1227, 1253-55 (3rd Cir. 1993).  It is, indeed, the exact
kind of interest Exemption 7(C) was intended to protect.  The
disclosure of such records could reveal the individual's identity
and would reveal intimate details about that individual,
resulting in the violation of that person's privacy.  See Marzen
v. HHS, 825 F.2d 1148, 1153-54 (7th Cir. 1987).

Plaintiff has failed to identify any cognizable public
interest sufficiently compelling to overcome the legitimate
privacy interests identified above.[1]  Disclosure of the withheld
information would reveal very little about INS's investigation

---

[1]  Plaintiff raises an argument akin to waiver, contending
that INS's invocation of Exemption 7(C) is "frivolous" because
some of the redacted names appear elsewhere in the records.  The
fact that some released documents may disclose the identities of
some individuals does not diminish those individuals' privacy
interests and does not justify the release of additional
information.  See Kirk v. United States Dep't of Justice, 704 F.
Supp. 288, 292 (D.D.C. 1989).

- 4 -

into plaintiff's deportation.  See Reporter's Committee, supra,
489 U.S. at 773.

Plaintiff makes the additional argument that Exemption 7(C)
does not afford any protection to the withheld information
because INS has engaged in illegal activity.  Plaintiff relies
upon Safecard Services Inc., supra, 926 F.2d at 1205-06, which
states, in dicta, that if "there is compelling evidence that the
agency denying the FOIA request is engaged in illegal activity,
and access to names of private individuals . . . is necessary in
order to confirm or refute that evidence," then public interest
may weigh in favor of disclosure.  Plaintiff offers no
"compelling evidence," however, and only makes conclusory
allegations that numerous documents are "'missing' or not
supplied," raising the implication that documents have been
deliberately destroyed or secretly withheld.  (Shewchun Decl.
¶ 14).  These allegations fail to create a genuine issue of
material fact.

b.   Adequacy of Search

Plaintiff challenges the adequacy of INS's search to locate
responsive documents, asserting that numerous documents are
missing and that INS's subsequent disclosure of additional
documents indicates bad faith.  INS responds that it has met its

— 5 —

duty to search for documents and is not required to go on a
fishing expedition to locate every document plaintiff believes
exists.

FOIA imposes upon an agency the duty to conduct a
"reasonable" search for responsive documents. Oglesby v. United
States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). If an
agency has met that duty, then the granting of summary judgment
is appropriate. In evaluating the reasonableness of the search,
the central inquiry is "not whether there might exist any other
documents possibly responsive to the request, but rather whether
the search for those documents was adequate." Steinberg v.
United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir.
1994) (emphasis added). Mere speculation that other documents may
exist does not undermine the reasonableness of the agency's
search, id. at 552, nor does the subsequent disclosure of
documents not located in the initial search. Courts have treated
the additional release of records as evidence of an agency's
good-faith efforts. See Maynard v. CIA, 986 F.2d 547, 565 (1st
Cir. 1993).

The search conducted by INS was reasonable and satisfied its
duty under FOIA. The agency first conducted a search of
plaintiff's A-file, the file in which alien records are normally

- 6 -

located, which was maintained at the Detroit District Office.
(Thomas Decl. ¶ 12). In response to plaintiff's representation
that two other offices may have records, INS conducted a search
of those offices, located in Oakdale, Louisiana, and Washington,
D.C. No records, other than a few items of correspondence, were
uncovered as a result of those searches. (Hooks Decl. ¶ 5;
McClain Decl. ¶ 7).

Plaintiff's allegation, based upon a review of the disclosed
documentation, that some 37 documents appear to be missing does
not undermine the court's finding that the search was reasonable.
The agency is under no duty to "document the fate of documents it
cannot find," see Roberts v. United States Dep't of Justice, No.
92-1707, 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993). Nor does
plaintiff's identification of undisclosed documents that he has
obtained through other sources render the search unreasonable.
See Miller v. United States Dep't of State, 779 F.2d 1378, 1385
(8th Cir. 1985)(an agency is not required "to account for
documents which the requester has in some way identified if it
has made a diligent search for those documents in places in which
they might be expected to be found").

Finally, plaintiff cannot rely upon INS's late disclosure of
additional documents responsive to plaintiff's request as

evidence of INS's bad faith.  Discovery of additional documentation is evidence that the search was not thorough, but it is not conclusive of bad faith. Goland v. CIA, 607 F.2d 339, 355 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980)(upholding grant of summary judgment based on affidavits demonstrating reasonableness of search despite late release of missing file). INS's explanation that the additional documents were located upon a second review of plaintiff's A-file in search of the specific documents plaintiff identified as "missing" is plausible. (See Dobson Decl. ¶ 1). Furthermore, acceptance of plaintiff's argument would create a disincentive for agencies to conduct reviews of their initial searches. See Maynard, supra, 986 F.2d at 565.

Privacy Act Claim

Plaintiff has also challenged the withholding of the information in question pursuant to the Privacy Act.[2]  As discussed above, the withheld records are all law enforcement records.  Under the Privacy Act, law enforcement records are

---

[2]  In his opposition, plaintiff attempts to argue that INS has failed to maintain records with accuracy and completeness as required by 5 U.S.C. § 552a(g)(1)(C) and (g)(4).  By order dated March 11, 1996, this court denied plaintiff's motion to amend the complaint to add this Privacy Act count, and thus this argument is not relevant to the present case.

- 8 -

exempt from disclosure under subsection (k)(2), 5 U.S.C.

§ 552a(k)(2), as implemented by 28 C.F.R. § 16.99 (1995).


_____
JAMES ROBERTSON
United States District Judge

DATED:  December 9, 1996

**FILE COPY** OIP

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 97-5044

September Term, 1996
95cv01920

John Shewchun, Ph.D.,
    Appellant

v.

Immigration & Naturalization Service,
    Appellee



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUN - 5 1997

CLERK

BEFORE:   Williams, Ginsburg, and Rogers, Circuit Judges

## O R D E R

Upon consideration of the motion for summary affirmance and the response thereto, it is

ORDERED that the motion be granted, substantially for the reasons stated by the district court in the memorandum opinion filed December 10, 1996. The merits of the parties' positions are so clear as to warrant summary action. See Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam), Walker v. Washington, 627 F.2d 541, 545 (D.C. Cir.) (per curiam), cert. denied, 449 U.S. 994 (1980).

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C. Cir. Rule 41.

Per Curiam

1997 U.S. App. LEXIS 19067, *

7 of 7 DOCUMENTS

John Shewchun, Ph.D., Appellant v. Immigration & Naturalization Service, Appellee

No. 97-5044

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA
CIRCUIT

1997 U.S. App. LEXIS 19067

June 5, 1997, FILED

**NOTICE:** [*1] RULES OF THE DISTRICT OF
COLUMBIA CIRCUIT COURT OF APPEALS MAY
LIMIT CITATION TO UNPUBLISHED OPINIONS.
PLEASE REFER TO THE RULES OF THE UNITED
STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** 95cv01920.

**DISPOSITION:** Motion for summary affirmance
granted.

**COUNSEL:** JOHN SHEWCHUN, Ph.D., Pro se,
Bloomfield Hills, MI.

For IMMIGRATION & NATURALIZATION
SERVICE: R. Craig Lawrence, Assistant U.S. Attorney,
Eric H. Holder, Jr., U.S. Attorney, U.S. Attorney's
Office, (USA) Civil Appellate, Washington, DC. Carol
S. Hebert, U.S. Department of Justice (DOJ), Office of
Privacy & Information, Washington, DC.

**JUDGES:** BEFORE: Williams, Ginsburg, and Rogers,
Circuit Judges

**OPINION:**

   **ORDER**

   Upon consideration of the motion for summary
affirmance and the response thereto, it is

   **ORDERED** that the motion be granted,
substantially for the reasons stated by the district court in
the memorandum opinion filed December 10, 1996. The
merits of the parties' positions are so clear as to warrant
summary action. See Taxpayers Watchdog, Inc. v.
Stanley, 260 U.S. App. D.C. 334, 819 F.2d 294, 297
(D.C. Cir. 1987) (per curiam); Walker v. Washington,
201 U.S. App. D.C. 82, 627 F.2d 541, 545 (D.C. Cir.)
(per curiam), [*2] cert. denied, 449 U.S. 994 (1980).

   The Clerk is directed to withhold issuance of the
mandate herein until seven days after disposition of any
timely petition for rehearing. See D.C. Cir. Rule 41.

   **Per Curiam**